IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,

        Plaintiff,

v.

CHECK POINT SOFTWARE
TECHNOLOGIES LTD., CHECK POINT
SOFTWARE TECHNOLOGIES, INC.,
McAFEE, INC., SYMANTEC CORP.,
TREND MICRO INCORPORATED, AND
TREND MICRO, INC. (USA),

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 10-1067-LPS

JURY TRIAL DEMANDED

REDACTED VERSION

**INTELLECTUAL VENTURES I LLC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISQUALIFY WILSON SONSINI GOODRICH & ROSATI AS COUNSEL
FOR CHECK POINT SOFTWARE TECHNOLOGIES, INC. AND CHECK POINT
SOFTWARE TECHOLOGIES LTD.**

Parker C. Folse III *(admitted pro hac vice)*
Brooke A.M. Taylor *(admitted pro hac vice)*
Lindsey N. Godfrey *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lngodfrey@susmangodfrey.com

Ryan C. Kirkpatrick *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3107
Facsimile: (310) 789-3150
rkirkpatrick@susmangodfrey.com

John P. Lahad *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 653-7859
Facsimile: (713) 654-3386
jlahad@susmangodfrey.com

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com

*Attorneys for Plaintiff Intellectual
Ventures I LLC*

Dated: April 6, 2011

## TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................ 2

   A.  WSGR Received IV's Confidential Information in the Course of its Six-and-a-Half Year
       Relationship with IV and its Most Senior Executives ........................................... 2

   B.  WSGR Terminates IV as a Client For Business Reasons and Acknowledges It Cannot be
       Adverse to IV in the Future .................................................................................. 6

   C.  WSGR Attempts to Cure the Conflict by Screening ............................................. 7

IV.  ARGUMENT ............................................................................................................... 8

   A.  WSGR is Violating Rule 1.9(a) and Should be Disqualified .................................. 8

       i.    IV I is a Former Client of WSGR ................................................................... 9

       ii.   WSGR's Representation of IV ███████████████████
             ███████████████████████████—is
             Substantially Related To The Present Litigation .......................................... 10

       iii.  WSGR's Representation of Check Point Is Materially Adverse to IV, and IV Has
             Not Consented to the Adverse Representation ............................................... 16

   B.  WSGR's "Ethical Wall" Does Not Cure Its Violation of Rule 1.9(a) ..................... 16

   C.  IV I Immediately Notified WSGR of the Conflict, Promptly Filed this Motion, and Check
       Point Will Not Suffer Any Material Prejudice Given the Early Stage of the Litigation .. 17

V.   CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Apeldyn Corp. v. Samsung Electronics Co., Ltd.*,
    660 F. Supp. 2d 557 (D. Del. 2010)...................................................................8, 9, 14

*Apeldyn Corp. v. Samsung Electronics Co., Ltd.*,
    693 F. Supp. 2d 399 (D. Del. 2010)...................................................................9, 11, 15

*Avocent Redmond Corp. v. Rose Electronics*,
    491 F. Supp. 2d 1000 (W.D. Wash. 2007)......................................................13, 14, 15, 17

*Colorpix Systems of America v. Broan Mfg. Co., Inc.*,
    131 F. Supp. 2d 331 (D. Conn. 2001)................................................................10

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*,
    808 F. Supp. 1200 (E.D. Pa. 1992) ..................................................................11

*Conley v. Chaffinch*,
    431 F. Supp. 2d 494 (D. Del. 2006) ..................................................................11

*In re Corn Derivatives Antitrust Litigation*,
    748 F.2d 157 (3d Cir. 1984)..............................................................................11

*Enhanced Security Research LLC v. Cisco Systems, Inc., et al.*,
    No. 1:09-cv-00571-LPS, D.I. 47 .........................................................................17

*Gay v. Beverly Health and Rehabilitation Services, Inc.*,
    68 F. Supp. 2d 1304 (N.D. Fla. 1999) ...............................................................10

*In re Riles*,
    243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000).................................15

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    470 F. Supp. 2d 424 (D. Del. 2007)...................................................................12

*Jack Eckerd Corp. v. Dart Group Corp.*,
    621 F. Supp. 725 (D. Del. 1985)........................................................................17

*Madukwe v. Delaware State University*,
    552 F. Supp. 2d 452 (D. Del. 2008)................................................................ passim

*Micro Chem., Inc. v. Lextron, Inc.,*
317 F.3d 1387 (Fed. Cir. 2003)...................................................................................12

*Novozymes A/S v. Genencor Intern., Inc.,*
474 F. Supp. 2d 592 (D. Del. 2007)..........................................................................12

*Thorner v. Sony Computer Entertainment America, Inc.,*
No. 09-1894, 2009 WL 4041624 (D.N.J. Nov. 20, 2009) .........................................15

**Rules**

D. Del. LR 83.6(d)....................................................................................................8

Model Rule of Professional Conduct 1.9...................................................1, 2, 8, 11

Model Rule of Professional Conduct 1.10.................................................16, 17

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Intellectual Ventures I LLC (referred to individually as "IV I" and collectively with its predecessors and affiliates as "IV") filed this patent infringement action against six defendants, including Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. (collectively, "Check Point").    IV I filed its complaint on December 8, 2010, alleging infringement of four patents: U.S. Patent Nos. 5,987,610; 6,073,142; 6,460,050 B1; and 7,506,155 B1.  (D.I. 1).  All defendants have answered the complaint.  (D.I. 21, 23, 28 & 30).

Check Point's answers disclose that it is being represented in this action by the law firm of Wilson Sonsini Goodrich & Rosati ("WSGR"), long-time counsel for IV.    (D.I. 24 & 30). On March 17, 2011, IV I wrote to the Court requesting a conference regarding the filing of this Motion.  (D.I. 46).  After a telephone conference with the Court on April 1, 2011, the parties to this suit filed two stipulations on April 4, 2011: one regarding this Motion's briefing schedule, and one regarding treatment of the privileged and confidential information contained within this Motion and its supporting documents.  (D.I. 53 & 54).

## II.    SUMMARY OF ARGUMENT

1.     IV I moves to disqualify WSGR from representing Check Point, or any other party adverse to IV I, in these proceedings.    Rule 1.9 of the Model Rules of Professional Conduct ("Model Rules" or "M.R.P.C.") adopted by this Court precludes WSGR from this representation adverse to the interests of its former client IV.

2.     WSGR represented IV in substantially related matters for the six-and-a-half years from November 2002 to May 2009.  During that time, WSGR served as primary counsel for IV in a variety of matters, including ███████████████████████████████████ ████████████████.  Over the course of the engagement, IV gave WSGR unfettered access to virtually every aspect of IV's ██████████████████████████████████ ████.  WSGR communicated regularly ██████████████ regarding ███████████ ██████████ From 2002 to 2009, WSGR represented IV in connection with ███████████ ████████████████████████████████████████████████████████████████████.

WSGR has intimate knowledge of ███████████████████████████████ ████████████████████████. At least twenty-one current WSGR partners and employees performed work for IV, the majority of whom work out of the same Palo Alto office as the two principal WSGR attorneys who have appeared adverse to IV in this action. IV paid WSGR over ███████████ for its services.

3.      Even before the commencement of this litigation, IV repeatedly made clear to WSGR that it could never be adverse to IV in light of all the confidential information that had been disclosed to it and WSGR's intimate involvement in IV's affairs. For example, when WSGR abruptly dismissed IV as a client in 2009 because of pressure from another large WSGR client, IV told WSGR both orally and in writing that WSGR could never be adverse to IV in light of the knowledge it had acquired over the prior six-and-a-half years. In response, WSGR never disagreed; rather, it expressly acknowledged that the termination did not change anything from a conflicts perspective.

4.      Now, after ███████████████████████████ learning the most intimate details of IV's business, ████████████████████████████████ ████████████████████████████████████ WSGR seeks to take on its former client and ███████████████████████████████████████ ████████████████████████. This conduct violates Rule 1.9 (a). Indeed, Rule 1.9(a) is crafted to prevent precisely this sort of side-shifting, and federal courts have not hesitated to disqualify counsel on similar facts. Consequently, IV respectfully submits that WSGR should be disqualified from representing Check Point in this matter.

## III.   STATEMENT OF FACTS

### A.      WSGR Received IV's Confidential Information in the Course of its Six-and-a-Half Year Relationship with IV and its Most Senior Executives

IV I is an affiliate of ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████. IV I is managed by IV Management. *Id.*; D.I. 1 at ¶ 12. Since

its founding, IV has been deeply involved in the business of invention. D.I. 1 at ¶¶ 13-15. IV creates inventions and files patent applications for those inventions; collaborates with others to develop and patent inventions; and acquires and licenses patents from individual inventors, universities, and other institutions. *Id.* IV Management holds responsibility for managing the plaintiff in this case, IV I, and licensing patents owned by IV I. Detkin Decl. at ¶ 2.

IV first retained WSGR in November 2002. Detkin Decl. at ¶ 2, Ex. A. WSGR's representation included the legal services necessary to ███████████████████████████████ ████████████████████████████ WSGR's engagement letter—executed by IV co-founder Gregory Gorder—explains the retainer of WSGR to ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

WSGR Partner Jerry Chacon led ████████████████████████████ with the assistance of numerous other WSGR attorneys and staff. *Id.* at ¶ 3. In addition, WSGR served as ████████████████████████ ███ However, WSGR's work extended beyond ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████

IV's communications with WSGR related to ███████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Mr. Chacon led these activities as well, assisted by other WSGR attorneys including Partner Charles Compton, Partner Suzanne Bell, Associate Jonathan Axelrad, Partner Herbert Fockler, and others. *Id.* Mr. Compton also played an extensive role in ████████████████████████████████████ ████████████████████████████████████ Mr. Compton's legal advice continued over a period of many years, and included ████████████████████

WSGR also played a substantial role in ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ WSGR ████████████████████████████████████████████████ ████████████████████████████████████████████ As part of this representation, WSGR ████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████

Peter Detkin, one of IV's co-founders and Managing Director (and a former WSGR Partner), personally worked with WSGR on ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ In fact, WSGR represented ██████████████ ██████████████████████████ █ ████████████████████ ██████████████████████████████████ , IV provided WSGR attorneys with unfettered access to—█████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



For purposes of this motion, IV I performed a preliminary analysis of confidential, attorney-client communications between IV and WSGR. Taylor Decl. at ¶ 2. IV I identified tens of thousands of emails on which WSGR was either the author or a recipient. *Id.*[1] These communications include, for example:

---

[1] As this Court observed in *Madukwe v. Delaware State University,* 552 F. Supp. 2d 452 (D. Del. 2008), a party seeking disqualification need not "reveal the specific confidential information it claims [the conflicted attorneys] obtained." *Id.* at 461. Instead, "'a conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.'" *Id.* (quoting M.R.P.C. Rule 1.9(a), cmt. 3).

Over the course of the six-and-a-half year representation, IV paid WSGR ▮▮▮▮▮ in attorneys' fees and expenses. Detkin Decl. at ¶ 16.

### B.   WSGR Terminates IV as a Client For Business Reasons and Acknowledges It Cannot be Adverse to IV in the Future

In 2006, WSGR informed IV that some of the firm's clients were unhappy with WSGR's representation of IV, and that WSGR was considering terminating its relationship with IV. Detkin Decl. at ¶ 17. In response, Mr. Detkin met personally with several WSGR Partners, including WSGR Partner and General Counsel Don Bradley. *Id.* Mr. Detkin explained that, given the amount of IV's confidential information to which it had been exposed, WSGR could never be adverse to IV. *Id.* WSGR ultimately relented; Mr. Bradley called Mr. Detkin after the meeting and told Mr. Detkin that he was correct in his conflicts analysis, that the issue of whether WSGR would represent IV was "behind us," and he promised Mr. Detkin that the issue would not come up again. *Id.* Reassured that this issue was "behind us" and that the relationship had been restored, IV continued to employ WSGR and to disclose to WSGR privileged and confidential information





### C.   WSGR Attempts to Cure the Conflict by Screening

In spite of its intimate involvement at the highest levels of IV, WSGR now appears in this litigation on behalf of Check Point and adverse to its former client.  (D.I. 24 & 30).  When contacted regarding the conflict on February 9, 2011, WSGR asserted that no conflicts arose out of its representation of the IV entities, and that it has "no confidential information related to Intellectual Ventures I LLC or the subject matter of the litigation."  Taylor Decl., Ex. A.

In an attempt to support its claim, WSGR provided IV with an "Ethical Wall Memorandum," that purports to show efforts taken by WSGR to cure the conflict. *Id.*, Ex. B. The "Ethical Wall Memorandum" shows that at least twenty-one WSGR attorneys and employees who performed work for IV remain with the firm. *Id.* Moreover, the majority of those twenty-one WSGR attorneys and employees work in the *same WSGR office* as the two principal attorneys appearing on behalf of Check Point in this litigation. *Id.* at ¶ 5. For example, WSGR Partner Suzanne Bell—███████████████████████████████ ████████████████████████████████—works in the same Palo Alto office as Stefani Shanberg and Matthew Argenti, who have appeared in this action adverse to IV. *Id.*; *see also http://www.wsgr.com/wsgr/DBIndex.aspx?SectionName=attorneys* (last visited March 16, 2011).

WSGR never sought or obtained IV's consent to its representation of Check Point. Detkin Decl. at ¶ 23. ██████████████████████████████████████████████ ██████████████████████. Prior to filing the present motion, counsel for IV I met and conferred with WSGR. Taylor Decl. at ¶ 6. WSGR nonetheless refused to withdraw. *Id.*

## IV.   ARGUMENT

### A.   WSGR is Violating Rule 1.9(a) and Should be Disqualified

The conduct of an attorney is governed by the standards of the court before which the attorney is appearing. *See Apeldyn Corp. v. Samsung Electronics Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009) ("*Apeldyn I*"). The United States District Court for the District of Delaware has adopted the American Bar Association's Model Rules of Professional Conduct as its standards for attorney conduct. D. Del. LR 83.6(d). Model Rule 1.9(a) provides as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

M.R.P.C. Rule 1.9(a).

In carrying out its supervisory function, "a court may disqualify an attorney for failing to

8

avoid even the appearance of impropriety." *Apeldyn I*, 660 F. Supp. 2d at 561 (quoting *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992)).  Counsel must avoid even the appearance of impropriety, because "'[t]he maintenance of public confidence in the conduct of those associated with the administration of justice is' important." *Id.* (citations omitted).  "As the Third Circuit has explained, M.R.P.C. Rule 1.9 exists for the purpose of preventing even the potential that a former client's confidences and secrets may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is retained." *Id.* (citations and internal quotations omitted).

As this Court noted in *Apeldyn I*, Rule 1.9(a) contains four requirements:  "(1) 'the lawyer must have had an attorney-client relationship with the former client;' (2) 'the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a substantially related matter;' (3) 'the interests of the second client must be materially adverse to the interests of the former client;' and (4) 'the former client must not have consented to the representation after consultation.'" *Id.* (quoting *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 422 (D. Del. 1986)).  In evaluating these requirements, "any doubt as to the propriety of the representation should be resolved in favor of disqualification." *Apeldyn Corp. v. Samsung Electronics Co., Ltd.*, 693 F. Supp. 2d 399, 404 (D. Del. 2010) ("*Apeldyn II*") (internal citations omitted).  As discussed below, the application of Rule 1.9(a) in this case is straightforward:  WSGR should be disqualified.

### i.  IV I is a Former Client of WSGR

Beginning in 2002, WSGR established and maintained its attorney-client relationship with IV, including ███████ plaintiff IV I.  WSGR's engagement letter states that WSGR undertook to ███

9

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████

Even if █████████████████████████████, courts have repeatedly held that "when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client's affiliates, the attorney can be deemed to have an attorney client relationship with the affiliate." *Estate of Jones ex rel. Gay v. Beverly Health and Rehabilitation Services, Inc.*, 68 F. Supp. 2d 1304, 1309 (N.D. Fla. 1999); *Colorpix Systems of America v. Broan Mfg. Co., Inc.*, 131 F. Supp. 2d 331, 336-337 (D. Conn. 2001) (stating that, in determining whether an affiliate should be deemed a former client, courts look at the relationship of the affiliates and whether they have an "identity of interest," and finding that affiliate was a "vicarious client" of law firm).

In this representation, ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

WSGR knew of IV's expectations with regard to its representation ███████████

██████████████████████    ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████

    **ii.**  **WSGR's Representation of IV in Connection With** ███████████

████████████████ **is Substantially Related To The Present Litigation**

A substantial relationship exists where the similarity between "the two representations is enough to raise a common-sense inference that what the lawyer learned from the former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Apeldyn II*, 693 F. Supp. 2d at 403 (internal citations omitted). The comments to the Model Rules provide concrete examples that make clear that the matters need not be the "same" for a substantial relationship to exist:

> For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations[.]

M.R.P.C. 1.9, cmt. 3. When determining whether a substantial relationship exists, courts err on the side of protecting client confidences. *See In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984) (Model Rule 1.9 "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him"). Indeed, "[w]hile a party seeking disqualification bears the burden of establishing a 'substantial relationship,' any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences." *Madukwe*, 552 F. Supp. 2d at 458.

This Court has set forth a three-part inquiry for determining whether a substantial relationship exists: "(1) what is the nature and scope of the prior representation at issue; (2) what is the nature of the present lawsuit ...; and (3) in the course of the prior representation, might the client have disclosed to [the] attorney confidences which could be relevant to the present action and, in particular, could any such confidences be detrimental to the former client in the current litigation?" *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496-97 (D. Del. 2006) (internal citations omitted). In analyzing the nature and scope of the present lawsuit, "the court should evaluate the issues raised . . . and the underlying facts." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*,

808 F. Supp. 1200, 1204 (E.D. Pa. 1992).

WSGR's six-and-a-half year representation of IV encompassed ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

It is likely that the defendants will argue that IV's confidential disclosures—▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In representing IV, WSGR received confidential and privileged information and understands ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



WSGR's prior representation of IV



Case law from inside and outside this District confirms that disqualification is required under these circumstances. In *Madukwe*, this Court ordered the disqualification of a University's former law firm where the prior representation was "broad in scope" and encompassed the same "legal issues" as a subsequent representation. 552 F. Supp. 2d at 460. Specifically, the law firm represented the University in employment-related litigation; later, it "changed sides" and sought to represent a plaintiff adverse to the University in an employment claim. *Id.* at 460. Noting that the University's Vice President worked closely with the disqualified law firm to develop defensive strategies in employment litigation, the Court found it impermissible that "[l]ittle more than a year after attorneys from [the law firm] sat next to DSU officials on their side of the table (for consultation, at internal grievance proceedings, mediations, and in court), some of those same attorneys switched to the other side of the table, to face off against their former client." *Id.* at 460-61.

Similarly, in *Avocent* the district court disqualified a law firm from representing the defendant in a patent infringement action. 491 F. Supp. 2d at 1008 (applying Washington Rule of Professional Conduct 1.9(a), which is identical to Model Rule 1.9(a)). ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ The court agreed, and granted the motion to disqualify. *Id.*

This Court also reached a similar result in *Apeldyn*, granting a motion to disqualify the plaintiff's law firm where one of the firm's attorneys previously represented the defendant in a patent lawsuit related to similar technology but involving different patents. *See Apeldyn I*, 660 F.

14

Supp. 2d at 561.  In denying a motion for reconsideration, the Court noted that the firm's consideration of the relationship between the lawsuits failed to adequately take into account how it would demonstrate infringement, and what defensive theories and strategies might be used by the defendant—its former client. *Apeldyn II*, 693 F. Supp. 2d at 407.  This Court then concluded that a "substantial relationship" arises out of the "common-sense inference" that the plaintiff would necessarily rely on many of the same documents collected by the conflicted attorney in the previous litigation. *See id.* at 406.[4]

Like the disqualified firm in *Apeldyn*, WSGR failed to consider—or worse—willfully ignored the reality that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ WSGR now seeks to █████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████

WSGR's own statements and conduct confirm that it cannot be adverse to IV.  When WSGR threatened to terminate the representation in 2006, IV directly told WSGR that WSGR could never be adverse to IV even if it terminated the representation, and WSGR acknowledged that IV's conflict analysis was correct.  Detkin Decl. at ¶ 17.  ████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ – █████████████████████████ ███████████████████████████████████ ███████████████████████████████

---

[4] *See also In re Riles*, 243 F.3d 553, 2000 WL 1062086, **2-3 (Fed. Cir. July 20, 2000) (declining to reverse decision disqualifying patent counsel that was based on "the length of the prior relationship as well as the specific knowledge gained from the prior relationship, which the district court noted to include information regarding [defendant's] litigation and settlement strategies in infringement actions"); *Thorner v. Sony Computer Entertainment America, Inc.*, No. 09-1894, 2009 WL 4041624, *8 (D.N.J. Nov. 20, 2009) (disqualifying attorney and law firm under Rule 1.9(a) of the New Jersey Rules of Professional Conduct where attorney had previously represented the defendant Sony in the prosecution of patents involving technology related to the patents-in-suit).

████████████████████████████ WSGR should be disqualified under Model Rule 1.9(a).

### iii. WSGR's Representation of Check Point Is Materially Adverse to IV, and IV Has Not Consented to the Adverse Representation

The instant facts satisfy the third and fourth requirements for disqualification under Rule 1.9. WSGR cannot dispute that it is materially adverse to IV in this litigation; and WSGR never sought or obtained IV's consent to this representation, in writing or otherwise. Rather, IV expressly rejected the propriety of any such representation on several occasions, including long before this litigation began. Accordingly, disqualification is required.

### B.    WSGR's "Ethical Wall" Does Not Cure Its Violation of Rule 1.9(a)

The Model Rules make it clear that Rule 1.9's prohibition extends not only to a specific attorney involved in a prior representation but also to all members of the lawyer's firm:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, *unless the prohibition is based on a personal interest of the prohibited lawyer* and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

M.R.P.C. 1.10 (emphasis added). This rule is intended to "give effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm." M.R.P.C. 1.10, cmt. 2.

WSGR has recently established an ethical wall screening the eight attorneys and staff currently working on its Check Point representation from the *twenty-one* attorneys and staff who formerly advised and represented IV and remain at the firm.[5]  *See* Taylor Decl., Ex. B.  But, under the Model Rules, screening does not permit a representation prohibited by Rule 1.9 in a

---

[5] Those attorneys are, in addition to the aforementioned WSGR partners Suzanne Bell and Charles Compton, WSGR partners Herbert P. Fockler, Andrew J. Hirsch, Ivan H. Humphries, John Mao, Michael J. Murphy, Scott Sher, John Slafsky, Matthew W. Sonsini, and J. Robert Suffoletta; WSGR associates Aaron W. Barker, Catalin Cosovanu, Erik F. Franks, and Kristin B. Harrer; WSGR attorneys of counsel Stephen P. Berke and George A. Willman; WSGR special counsel Glenn J. Luinenburg; WSGR paralegals Nancy K. Bouch and Margaret LaMore; and WSGR employee Marianne Stark-Bradley.  Taylor Decl., Ex. B.  The tainted WSGR attorneys' areas of practice include corporate finance, corporate law and governance, entrepreneurial services, mergers and acquisitions, venture capital, project development and finance, privacy and data security, energy and clean technology, tax, antitrust, trademarks, copyrights and advertising, consumer regulatory and privacy, global outsourcing transactions, retail consumer and advertising, technology transactions, and intellectual property counseling and patents. *http://www.wsgr.com/wsgr/DBIndex.aspx?SectionName=attorneys* (last visited March 15, 2011).

case such as this one, where the conflict does not arise from the personal interest of a lawyer or from a WSGR lawyer's prior association with another firm, but rather WSGR's *own* representation of IV. *See* M.R.P.C. 1.10(a)(2) (authorizing screening only where "the prohibition is based upon Rule 1.9(a) or (b) and *arises out of the disqualified lawyer's association with a prior firm*"). Where the firm *itself* represented the former client in a substantially related matter, disqualification of the entire firm follows almost as a matter of course. *See Madukwe*, 552 F. Supp. 2d at 463; *Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 729, 733-34 (D. Del. 1985) (disqualifying a law firm despite its establishment of a "Chinese Wall"); *Avocent*, 491 F. Supp. 2d at 1009.

### C.   IV I Immediately Notified WSGR of the Conflict, Promptly Filed this Motion, and Check Point Will Not Suffer Any Material Prejudice Given the Early Stage of the Litigation

IV I notified WSGR of the conflict on February 9, 2011, nine days after WSGR first appeared on behalf of Check Point Software Technologies, Inc., and before WSGR made an appearance on behalf of Check Point Software Technologies Ltd. Moreover, IV notified WSGR that it could not be adverse to IV in January 2009, well before this litigation commenced.

No scheduling order has been issued, and Check Point can easily retain other counsel at this early stage without prejudicing its own interests in this lawsuit. Indeed, Check Point is represented in two other patent litigation matters by Reed Smith LLP, a law firm that does not have any conflicts with IV. Taylor Decl., Exs. C & D. Check Point was also recently represented by Quinn Emanuel in patent litigation in this Court. *See Enhanced Security Research LLC v. Cisco Systems, Inc., et al.*, No. 1:09-cv-00571-LPS, D.I. 47. Accordingly, Check Point will not suffer any material prejudice from this disqualification. IV, by contrast, will suffer extreme prejudice if—having extensively relied on WSGR's advice ████████ ████████████████████████████████—it is forced to litigate against its long-time counsel. Accordingly, disqualification of WSGR is warranted.

## V.   CONCLUSION

When WSGR fired IV as a client, it acknowledged that its lengthy representation would

preclude future actions adverse to its former client due to confidential information obtained during its representation ██████████████████ WSGR ████████████ ████████████████ and enjoyed the trust and confidence of its founders. Rule 1.9 prohibits WSGR's representation and the firm should be disqualified.

For the reasons explained above, IV I respectfully requests that WSGR be disqualified from representing Check Point in this litigation.

Dated: April 6, 2011                          Respectfully submitted,

                                              FARNAN LLP

                                              /s/ Brian E. Farnan
                                              Joseph J. Farnan, III (Bar No. 3945)
                                              Brian E. Farnan (Bar No. 4089)
                                              919 N. Market Street, 12th Floor
                                              Wilmington, Delaware 19801
                                              (302) 777-0300
                                              (302) 777-0301
                                              jjfarnan@farnanlaw.com
                                              bfarnan@farnanlaw.com

                                              Parker C. Folse III (admitted *pro hac vice*)
                                              Brooke A.M. Taylor (admitted *pro hac vice*)
                                              Lindsey N. Godfrey (admitted *pro hac vice*)
                                              SUSMAN GODFREY L.L.P.
                                              1201 Third Avenue, Suite 3800
                                              Seattle, WA 98101-3000
                                              Telephone:    (206) 516-3880
                                              Facsimile:    (206) 516-3883
                                              pfolse@susmangodfrey.com
                                              btaylor@susmangodfrey.com

                                              Ryan C. Kirkpatrick (admitted *pro hac vice*)
                                              SUSMAN GODFREY L.L.P.
                                              1901 Avenue of the Stars, Suite 950
                                              Los Angeles, California 90067-6029
                                              Telephone:    (310) 789-3107
                                              Facsimile:    (310) 789-3150
                                              rkirkpatrick@susmangodfrey.com

                                              John P. Lahad (admitted *pro hac vice*)
                                              SUSMAN GODFREY L.L.P.

1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:    (713) 653-7859
Facsimile:    (713) 654-3386
jlahad@susmangodfrey.com