IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES LTD., CHECK POINT SOFTWARE TECHNOLOGIES, INC., McAFEE, INC., SYMANTEC CORP., TREND MICRO INCORPORATED, AND TREND MICRO, INC. (USA),<br><br>Defendants. | § § § § § § § § § § § § § § § § § §   Case No. 10-1067-LPS<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

**INTELLECTUAL VENTURES I LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY WILSON SONSINI GOODRICH & ROSATI AS COUNSEL FOR CHECK POINT SOFTWARE TECHNOLOGIES, INC. AND CHECK POINT SOFTWARE TECHNOLOGIES LTD.**

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lngodfrey@susmangodfrey.com

Ryan C. Kirkpatrick (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3107
Facsimile: (310) 789-3150
rkirkpatrick@susmangodfrey.com

John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 653-7859
Facsimile: (713) 654-3386
jlahad@susmangodfrey.com

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com

*Attorneys for Plaintiff Intellectual Ventures I LLC*

Dated: May 2, 2011

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. WSGR's Representation of IV is Substantially Related to the Present Matter ...... 2

        1. WSGR Received IV's Confidential Information Over the Course of its Six-and-a-Half Year Representation of IV ................................................. 2

        2. WSGR Provided IV With Legal Advice Regarding Litigation Issues ....... 3

        3. WSGR [redacted] ........................................................................................ 4

        4. WSGR's [redacted] Work is Substantially Related to the Present Patent Litigation Matter ............................................................................... 5

        5. WSGR Never Disputed That It Was Conflicted from Being Adverse to IV in Patent Litigation ................................................................................. 7

        6. The Principal Case Upon Which WSGR Relies is Inapposite .................... 8

    B. WSGR's "Ethical Wall" Does Not Cure Its Violation of Model Rule 1.9(a) ......... 9

III. CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Apeldyn Corp. v. Samsung Elec. Co., Ltd.,*
  660 F. Supp. 2d 557 (D. Del. 2010) .................................................................................. 3

*Apeldyn Corp. v. Samsung Electronics Co., Ltd.,*
  693 F. Supp. 2d 399 (D.Del. 2010) ................................................................................... 6

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.,*
  No. 09-166-LPS, 2011 WL 1193024 (D. Del. Mar. 30, 2011) ......................................... 8

*Avocent Redmond Corp. v. Rose Electronics,*
  491 F. Supp. 2d 1000, 1008 (W.D. Wash. 2007) ............................................................. 6

*Blumenthal Power Co. v. Browning-Ferris, Inc.,*
  903 F. Supp. 901 (D. Md. 1995) ...................................................................................... 8

*Boston Scientific Corp. v. Johnson & Johnson,*
  647 F. Supp. 2d 369 (2009) .......................................................................................... 2, 9

*Brittingham v. Bd. of Adjustment of City of Rehoboth Beach,*
  2005 WL 170690 (Del. Super. Jan. 14, 2005) .................................................................. 8

*Commissariat A L'Energie Atomique v. Samsung Electronics Co., Ltd.,*
  430 F. Supp. 2d 366 (D. Del. 2006) ................................................................................. 7

*Conley v. Chaffinch,*
  431 F. Supp. 2d 494 (D. Del. 2006) ................................................................................. 8

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.,*
  142 F. Supp. 2d 579 (D. Del. 2001) ................................................................................. 9

*End of the Road Trust v. Terex Corp.,*
  No. 99-477, 2002 WL 242464 (D. Del. Feb. 20, 2002) .................................................. 10

*Madukwe v. Del. State Univ.,*
  552 F. Supp. 2d 452 (D. Del. 2008) .............................................................................. 6, 9

*Nemours Found. v. Gilbane, Aetna, Fed Ins. Co.,*
  632 F. Supp. 418 (D. Del. 1986) .................................................................................... 10

*Talecris Biotherapeutics v. Baxter Int'l,*
  491 F. Supp. 2d 510 (D. Del. 2007) ................................................................................. 6

## I. INTRODUCTION

Wilson, Sonsini, Goodrich & Rosati ("WSGR") admits that █████████ █████████. WSGR does not deny that it was given access to confidential information regarding these issues over the course of its six-and-a-half year representation, or that IV's entire business revolves around patents. Yet, relying on declarations from three of the twenty current WSGR attorneys who performed work for IV, WSGR nevertheless contends that the present litigation is not "substantially related" to its prior work because, according to WSGR, (a) █████████ █████████ █████████. WSGR's arguments fail.

First, the relevant question is not whether WSGR represented IV in patent litigation, but whether in the course of its six-and-a-half year representation WSGR received confidential information from IV that is substantially related to this matter. WSGR did.

Second, WSGR did advise IV ███████████████.



Third, WSGR's averment that █████████ defies logic and the contemporaneous evidence. █████████

---

[1] Plaintiff Intellectual Ventures I LLC is referred to individually as "IV I" and collectively with its predecessors and affiliates as "IV." Defendants Check Point Software Technologies, Inc. and Check Point Software Technologies Ltd. are referred to collectively as "Check Point."

1

███████████████████████████████████████

Fourth, WSGR's contention that it did not provide advice regarding ███████████████████████████████████████

Fifth, none of the cases cited by WSGR supports its contention that an ethical wall is sufficient under the facts of this case. The primary case relied upon by WSGR—*Boston Scientific Corp. v. Johnson & Johnson*, 647 F. Supp. 2d 369 (D. Del. 2009)—held that a violation of Model Rule 1.7's bar on concurrent representation did not automatically require disqualification where (i) the matters were unrelated, (ii) the attorneys were working out of different offices, and (iii) the client engaged in "obfuscatory conduct." None of those circumstances is present here.

Rather than demonstrating that its representation of Check Point is proper, WSGR's response highlights the damage to the legal profession that occurs when attorneys take on their former clients in substantially related matters. Having represented IV on patent matters for six-and-a-half years and collected ███████ in fees, WSGR has turned on its former client, ███████████████████████████████████ IV respectfully submits that its motion to disqualify should be granted.

## II. ARGUMENT

### A. WSGR's Representation of IV is Substantially Related to the Present Matter

#### 1. WSGR Received IV's Confidential Information Over the Course of its Six-and-a-Half Year Representation of IV

WSGR focuses much of its response on the question of whether WSGR represented IV in patent litigation. This argument misses the mark. The relevant question is whether, during the

2

course of the six-and-a-half year representation, WSGR received confidential information relating to the subject matter of this representation. It did.

IV is not a diversified conglomerate; its entire business revolves around invention and patents. Nor is IV a public company; its business plans, financial results, and patent portfolio are all confidential information. WSGR received extensive confidential information. (D.I. 58 at ¶¶ 6-7, Exs. B, E & F)  Rule 1.9(a) exists to prevent even the potential for this to occur. *See Apeldyn Corp. v. Samsung Elec. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2010) ("As the Third Circuit has explained, M.R.P.C. Rule 1.9 exists for the purpose of preventing even the potential that a former client's confidences and secrets may be used against him[.]").

### 2. WSGR Provided IV With Legal Advice Regarding Litigation Issues

 Under WSGR's logic, merger and acquisition

---

2

lawyers provide no advice regarding potential shareholder litigation, and patent prosecutors provide no advice regarding future patent litigation. These suggestions are, of course, not true.

The fallacy of WSGR's argument is particularly apparent in light of the work that WSGR admits it performed for IV. Among other things, Ms. Bell ████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

(D.I. 24 at ¶ 52)

Further, contrary to his assertions, ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

3.  **WSGR Was** ████████████████████████████████

To bolster its argument that it never advised IV on litigation issues, WSGR claims that IV ████████████████████████████████████████████████████████████████
████████████████████████████████████. (D.I. 67 at ¶ 4)
████████████████████████████████████████████████████████████ (*Id.*)

These assertions are easily disproved by contemporaneous evidence. From the outset of the representation, IV discussed openly with WSGR ████████████████████. (Detkin

Supp. Decl., Ex. A)



Mr. Bradley's assertion regarding the scope of WSGR's representation is also wrong. As Ms. Bell acknowledges in her declaration, WSGR represented IV in connection with ▆▆▆▆▆▆▆▆▆▆▆▆ (D.I. 67 at ¶ 4) Mr. Bradley's declaration is not credible.

4. **WSGR's** ▆▆▆▆▆▆▆

While acknowledging that it represented IV in connection with ▆▆▆▆▆▆

---

[3] WSGR submits two articles to purportedly support the proposition that IV ▆▆▆▆▆▆. (D.I. 66, Exs. A and B)

5



of a substantial relationship. *See Avocent Redmond Corp. v. Rose Electronics*, 491 F. Supp. 2d 1000, 1008 (W.D. Wash. 2007). This Court should not be expected to make discovery and evidentiary rulings before deciding a motion to disqualify; rather, "any doubts about whether disqualification is appropriate should be resolved in favor of the moving party." *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008).[4]

---

[4] Citing a single sentence in a footnote in *Talecris Biotherapeutics v. Baxter Int'l*, 491 F. Supp. 2d 510 (D. Del. 2007), WSGR also argues that confidential information that would otherwise be discoverable in this action cannot be considered in the disqualification analysis. (D.I. 63 at 12 [citing *id.* at 515 n.2]). This argument is without merit. First, IV has submitted numerous privileged, non-discoverable communications to this Court, and WSGR attorneys participated in hundreds of hours of oral, non-discoverable discussions of those issues. Second, the footnote in *Talecris Biotherapeutics* is inconsistent with the "prove useful" standard set forth in *Madukwe*, the analysis conducted in *Apeldyn*, and the comments to Model Rule 1.9. *See Apeldyn Corp. v. Samsung Electronics Co., Ltd.*, 693 F. Supp. 2d 399, 406 (D.Del. 2010) (finding substantial relationship where attorney "will necessarily be using specimens and documentation that are of the same type, if not the same, as those collected and reviewed [in prior litigation]," without any indication that those specimens and documents were non-discoverable).

### 5. WSGR Never Disputed That It Was Conflicted from Being Adverse to IV in Patent Litigation

WSGR admits that, in 2006, 

If Mr. Bradley disagreed with this view in 2006, he had an ethical obligation to notify Mr. Detkin so that IV could terminate the relationship and stop providing confidential information to WSGR. *See* Model Rule 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); *Commissariat A L'Energie Atomique v. Samsung Electronics Co., Ltd.*, 430 F. Supp. 2d 366, 370 (D. Del. 2006) ("open communication between attorneys and their clients is a bedrock principle upon which the rules of professional conduct depend"). Mr. Bradley did not do so. As a consequence, IV continued to disclose confidential information and trade secrets to WSGR *for three more years*. Whatever Mr. Bradley now claims as motivation for his silence,

his actions and non-action constitute a legal acknowledgment that WSGR could not be adverse to IV in patent litigation in light of the prior work it had performed.[5]

### 6. The Principal Case Upon Which WSGR Relies is Inapposite

The principal case upon which WSGR relies—*Blumenthal Power Co. v. Browning-Ferris, Inc.*, 903 F. Supp. 901 (D. Md. 1995)—is factually inapposite. In that case, an associate had represented the defendant in a single matter changed firms, and her new firm filed a lawsuit against the defendant. *Id.* at 902. It was "undisputed" that the two matters were "factually unrelated," but the defendant nonetheless moved to disqualify the attorney based on an assertion that the attorney had been exposed to the defendant's "overall corporate philosophy and strategy . . . in litigation matters." *Id.* The court properly denied the motion to disqualify, finding that the conclusory assertion was insufficient to show a substantial relationship. *Id.*

The facts in *Blumenthal* do not come close to resembling those present here. IV's motion is not premised on any "playbook" argument; it is premised on the fact that IV's patent counsel for six-and-a-half years is appearing adverse to IV in patent litigation. Unlike the defendant in *Blumenthal*, IV



---

[5] *See Brittingham v. Bd. of Adjustment of City of Rehoboth Beach*, 2005 WL 170690, at *5 (Del. Super. Jan. 14, 2005) ("When a duty to speak exists, it is said that 'silence gives consent.'"); *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, No. 09-166-LPS, 2011 WL 1193024, at *4 (D. Del. Mar. 30, 2011) ("[A] party's agreement with a fact stated by another may be inferred from (or 'adopted' by) silence. Such an inference may arise when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception.") (citation omitted).

[6] Even if IV had not submitted any evidence to this Court regarding these topics, it is not credible for WSGR to suggest, over the course of its six-and-a-half year relationship with a client focused exclusively on patents, WSGR did not learn any information that could be used to the detriment of that client in patent litigation. *See Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) ("In determining whether a 'substantial relationship' exists, the court need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation. Rather, the court's primary concern is whether confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action.") (citations and internal quotations omitted).

8

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ While WSGR ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓,[7] that is not the proper inquiry; IV need only show that "the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe*, 552 F. Supp. 2d at 458; *see also* Model Rule 1.9, cmt. 3. IV has done so.

### B. WSGR's "Ethical Wall" Does Not Cure Its Violation of Model Rule 1.9(a)

WSGR's argument that an ethical wall can cure its violation under the facts of this case is without merit. *Boston Scientific*—the principal case relied upon by WSGR—involved a violation of Model Rule 1.7(a), which prohibits concurrent representation in even unrelated matters. 647 F. Supp. 2d at 374. In finding an ethical wall sufficient, Judge Robinson relied on *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, in which the court opined that, "even given a violation of Model Rule 1.7(a), disqualification would not be warranted where, *inter alia*, the law firm's concurrent representations were in unrelated matters; were 'being done out of different offices in different cities;' and were being done with an ethical wall in place between the two matters." *Id.* (quoting *Elonex*, 142 F. Supp. 2d 579, 583-84 (D. Del. 2001)). Judge Robinson found all of those conditions satisfied. *Id.* Judge Robinson also relied on the fact that the law firm's "failure to comply with Model Rule 1.7 is, to a significant degree, due to [its client's] conduct," which Judge Robinson deemed "obfuscatory." *Id.* at 374-75.

None of the facts relied upon by Judge Robinson in *Boston Scientific* is present here: (i) the two representations are not unrelated matters; (ii) the work was not performed out of different offices or cities—to the contrary, both the IV representation and the Check Point representation are based out of WSGR's Silicon Valley office, where *twenty* WSGR attorneys

---

[7] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

who represented IV still work; and (iii) IV did not engage in any obfuscatory conduct ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Boston Scientific* does not support WSGR's position.[8]

WSGR's reliance on *Nemours Found. v. Gilbane, Aetna, Fed Ins. Co.*, 632 F. Supp. 418 (D. Del. 1986), is also misplaced. *Nemours* involved imputed conflicts under Model Rule 1.10(a), which arise when a lawyer conflicted because of his association with a prior firm moves to a new firm. Model Rule 1.10(a) expressly permits an ethical wall to prevent imputation of the conflict to the rest of the firm's lawyers.[9] This case does not involve imputed conflicts under Model Rule 1.10(a); WSGR—not two dozen individual lawyers—represented IV for six-and-a-half years. Model Rule 1.9(a), unlike Model Rule 1.10, does not authorize the use of an ethical wall. Indeed, WSGR has not cited *any* case, from *any* jurisdiction, authorizing the use of an ethical wall to cure a violation of Model Rule 1.9(a), let alone a case (i) involving a six-and-a-half year representation (ii) where twenty attorneys involved in prior representation continue to work in the same office as the attorneys working on the subsequent representation.

Moreover, Check Point has not submitted any evidence of prejudice that would result from disqualification. This case is in its infancy; Check Point has used other litigation counsel for cases in this District and elsewhere (D.I. 61 at ¶¶ 6-7); and, in opposing IV's motion, WSGR did not submit a single declaration from Check Point supporting a claim of prejudice.

### III. CONCLUSION

For the foregoing reasons, and those set forth in IV's opening brief, IV respectfully submits that its motion to disqualify should be granted.

---

[8] WSGR also cites *End of the Road Trust v. Terex Corp.*, No. 99-477, 2002 WL 242464 (D. Del. Feb. 20, 2002). That case also involved a Model Rule 1.7(a) violation where (a) the matters were wholly unrelated, (b) the work was performed out of different offices in different cities, (c) the concurrent representation lasted three months and ended before the disqualification motion was filed, and (d) the concurrent representation was the product of an inadvertent error resulting from the merger of two law firms. *Id.* at **1-3. This case does not support WSGR's novel position.

[9] Notably, WSGR did not even comply with Model Rule 1.10(a), which requires that "written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule." WSGR issued its ethical wall memorandum on December 27, 2010. WSGR did not provide that memorandum to IV until February 11, 2011, after being confronted by IV's counsel about the conflict.

10

Dated: May 2, 2011

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:   (206) 516-3880
Facsimile:    (206) 516-3883
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com

Ryan C. Kirkpatrick (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone:   (310) 789-3107
Facsimile:    (310) 789-3150
rkirkpatrick@susmangodfrey.com

John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:   (713) 653-7859
Facsimile:    (713) 654-3386
jlahad@susmangodfrey.com