# FARNAN LLP

May 19, 2011

**VIA HAND DELIVERY**                                    **REDACTED VERSION**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street, Unit 26, Room 6124
Wilmington, DE  19801-3556

Re:   ***Intellectual Ventures I LLC v. Check Point Software Technologies, et al.,***
      **(Case No. 10-1067-LPS)**

Dear Judge Stark:

Pursuant to the Court's request at the May 16 hearing on IV I's motion to disqualify Wilson Sonsini Goodrich & Rosati ("WSGR"), we submit this letter brief addressing the two new cases cited by WSGR at that hearing: *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341 (D.N.J. 2006) ("*Carlyle*"), and *Exterior Systems, Inc. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062 (N.D. Ind. 2002) ("*Exterior Systems*").  Neither case supports WSGR's position that its representation in this action comports with Rule 1.9(a).

In *Carlyle*, the law firm represented a condominium association in a lawsuit against several developers.  The law firm filed suit on behalf of the plaintiff association in 1995, and had no conflict at the time the action was filed.  944 F. Supp. at 343.  In 1996, however, through a complicated series of mergers and acquisitions, one of the law firm's other clients, Woodman, became a subsidiary of a successor entity to one of the defendants in the lawsuit, CrossLand.  *Id.*  Thus, through no fault of the law firm, the law firm's former client was now an affiliate of a company that the firm was suing.  Upon notification of the conflict, the firm terminated its representation of Woodman—thereby ending the concurrent representation—and continued representing the plaintiff.  *Id.* at 344.  Defendant CrossLand nonetheless sought to disqualify the firm, arguing that the three-month concurrent representation violated Rule 1.7, and also that the firm violated Rule 1.9(a).  *Id.* at 344-345.

The *Carlyle* court rejected both arguments.  With respect to Rule 1.7, the court held that disqualification was not warranted because (i) the conflict arose after the commencement of the litigation through no fault of the law firm, (ii) the law firm promptly eliminated the conflict after being notified of it, and (iii) the plaintiff would be prejudiced by the disqualification given that the law firm had represented it in the matter for four years.  *Id.* at 349.

With respect to Rule 1.9(a), the defendant principally relied on the law firm's prior drafting of a public offering statement ("POS") for Woodman and the fact that the current litigation involved a dispute over a wholly unrelated POS issued by CrossLand.  *Id.* at 350-351.  Critically, the defendant "concede[d] that the factual basis of the two representations is distinct," and argued instead that the "identity of legal issues requires disqualification."  *Id.* at 350.  The court rejected this argument, finding the Woodman POS to be "clearly totally unrelated and irrelevant to the Carlyle/Crossland POS" and that "no client confidences obtained from drafting the Woodman POS would have any relevance to the Carlyle suit" *Id.* at 349, 351.

Here, ███████████████████████████████████████

*Carlyle* does not come close to supporting WSGR's position.[2]

*Exterior Systems* is similarly inapposite. There, the plaintiff corporation filed an action in 2001 against its former owner for breach of covenants not to compete, and the former owner counterclaimed alleging the breach of an executive benefit plan. 210 F. Supp. 2d at 1064. The law firm representing the plaintiff employed two attorneys and one paralegal who, while working at a different law firm, had represented the defendant and certain of his companies years earlier. *Id.* at 1064-65. The two attorneys stopped representing the defendant sixteen and eight years, respectively, before the commencement of the lawsuit at issue and neither attorney was representing the plaintiff. *Id.* at 1065-66. The defendant nonetheless moved to disqualify the law firm, arguing, *inter alia*, that (a) the first attorney had provided advice between 1972 to 1985 regarding other, unrelated non-compete agreements not at issue in the litigation, (b) the second attorney had, as associate eleven years earlier, billed 5.2 hours to researching whether the executive benefit plan at issue in the current litigation was subject to the provisions of ERISA, and (c) the work that other attorneys at the old firm had performed was imputed to both of these attorneys until they left that firm in 1993, and was further imputed to all attorneys at their new law firm. *Id.* at 1064-65.

The Northern District of Indiana properly rejected these arguments. With respect to the first attorney's work on other non-compete agreements sixteen years earlier, the court found that "[t]he non-compete contracts at issue in this case are wholly distinct from those [the attorney] drafted on behalf of the [defendant]." *Id.* at 1069. With respect to the second attorney's work on the defined benefit plan, the court found the attorney rebutted the presumption that she had received client confidences, noting that the attorney was an inexperienced lawyer that never spoke to the client and likely received no client confidences when "she spent a mere 5.2 hours researching a discrete legal issue under ERISA, which has never been part of this case." *Id.* at 1075. The court also found that (i) both attorneys had rebutted any presumption that they had received any of defendant's confidential information from other attorneys at their former firm, (ii) the other attorneys at the new firm did not owe any duty of loyalty to the defendant apart from a duty to maintain client confidences; and (iii) the defendant waived his right to seek disqualification by waiting twelve months after learning of the potential conflict to file his motion. *Id.* at 1072-73, 1076.

The facts here do not resemble those at issue in *Exterior Systems*.

---

[2] Notably, the *Carlyle* court reaffirmed the fundamental legal principles that WSGR now contests, <u>viz</u>. that (a) "doubts are to be resolved in favor of disqualification," *id.* at 345 (citation omitted); (b) Rule 1.9 "is a prophylactic rule to prevent <u>even the potential</u> that a former client's confidences and secrets may be used against him," *id.* at 350 (citations omitted; emphasis added); and (c) "a substantial relationship between matters will exist where the 'adversity . . . has created a climate for disclosure of relevant confidential information,'" *id.* at 351.

*See Apeldyn Corp. v. Samsung Electronics Co., Ltd.,* 660 F. Supp. 2d 557, 561 n.5 (D. Del. 2009) (noting that "there is no substantial difference between the former and current versions" of Rule 1.9 and relying on pre-2008 authorities).

In sum, neither *Carlyle* nor *Exterior Systems* support WSGR's contention that it has complied with Rule 1.9(a).

This Court's prior decisions also make clear that the existence of a substantial relationship , but rather "whether similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe v. Delaware State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008) (emphasis added).

For these reasons, and those set forth in IV's opening brief and reply brief, IV I respectfully submits that its motion to disqualify should be granted.

Respectfully submitted,

Brian E. Farnan

cc:  Counsel for Wilson Sonsini Goodrich & Rosati (*via e-mail*)

---

[3] *See* M.R.P.C. 1.9, cmt. 3 (stating that a substantial relationship exists whenever there is "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter," and providing examples of substantial relationship where the prior representation was transactional).

[4] *See Webb v. E.I. Du Pont de Nemours & Co., Inc.*, 811 F. Supp. 158, 159-160 (D. Del. 1992) (disqualifying attorney where prior representation consisted of "advising [defendant] on ERISA benefit matters," and noting risk that attorney will have an unfair advantage with respect to "what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject"); *Avocent Redmond Corp. v. Rose Electronics*, 491 F. Supp. 2d 1000 (W.D. Wash. 2007) (disqualifying law firm where prior representation consisted of corporate counseling, intellectual property transactions, and commercial licensing and finding that additional conflicts would arise when law firm would be required to review and produce documents related to work for its former client); *H2O Plus, LLC v. Arch Personal Care Products, L.P.*, 2010 WL 4869096 (D.N.J. Nov. 23, 2010) (disqualifying law firm that previously represented plaintiff in sale of its business).