

Three Embarcadero Center, Seventh Floor
San Francisco, CA 94111-4024
415.434.1600 main
415.677.6262 fax
howardrice.com

May 20, 2011

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street, Unit 26, Room 6124
Wilmington, DE 19801-3556

REDACTED-PUBLIC VERSION

Re: Intellectual Ventures I LLC v. Check Point Software Technologies, et al.
(Case No. 10-1067-LPS): Motion to Disqualify Counsel for Check Point

Dear Judge Stark:

This is in response to the Court's request for additional briefing on the standards for disqualification when a law firm's prior representation was transactional or advisory in nature.

Over the last two decades, courts have refused to order disqualification based upon superficial similarities. See *Madukwe v. Delaware State Univ.*, 552 F. Supp. 2d 452 (D. Del. 2008) (movant must show attorney gained knowledge of *specific facts* in prior representation; general knowledge of the client's policies and practices insufficient) (citing Model Rule 1.9, Comment 3); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1285 ("More facts of a relationship are needed than a simple statement of prior work done in a superficially similar area"). Because transactional and advisory work is often general in nature and could easily result in disqualification based on superficial similarities, courts have developed two rules to help them decide disqualification motions based on such work.

**First**, the fact that a law firm represented a former client on many matters over a long period of time will not suffice to justify disqualification, even where the law firm formed the corporation or learned information about its structure or finances. *See, e.g., Exterior Systems, Inc. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062 (N.D. Ind. 2002); *Haworth, Inc. v. Wickes Mfg. Co.*, 1994 WL 16099352, *2 (W.D. Mich.) ("general knowledge of a company's inner workings ... is not sufficient to warrant disqualification"). This is, essentially, a "you know our playbook" argument. In its reply, IV told the Court that its motion is "not premised on any playbook argument." Reply at 8.

**Second**, a law firm cannot be disqualified based on the fact that it advised a client on general legal principles unless that advice was tethered to *particular facts that are at issue in the subsequent representation*. As one court described it, where "the previous matters consisted not of litigation but of advice within a particular factual context and with regard to particular concerns ... the prior representation may be considered substantially related only *if the facts occasioning the need for advice have a substantial bearing on this suit*." *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 38-39 (D.C. 1984) (emphasis added).

In *Laker*, Swissair wanted to participate in a trade association (IATA), but was aware that doing so could expose it to antitrust claims. Swissair retained attorney Farmer to advise it on how to avoid such claims. Subsequently, Laker, a competitor airline, sued Swissair and other defendants, alleging that they had violated the antitrust laws in a variety of ways. When Farmer appeared to represent Laker, Swissair moved to disqualify him.

The district court denied the motion. The court held that the representations were not substantially related because the advice Swissair had sought arose out of facts that were not at issue in the antitrust lawsuit. "The advice sought and given did not relate to any particular factual activities or transactions involving IATA or any of its members." *Id.* at 39. As in *Laker*, ██████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████[1]

██████ Swissair's motion was "brimming with claims of apparent similarities," including the common area of law (antitrust) and the fact that both matters involved IATA, its operation and activities. The court pronounced these areas of resemblance "general and superficial." "Absent such [specific] similarities, there is no case for disqualification." *Laker*, 103 F.R.D. at 39-40. IV's motion is far weaker than Swissair's motion. In *Laker*, the former client had actually been sued for an antitrust violation. ████████████████████████████████████
████████████████████████ "Disqualifications are not based on speculation." *Id.* at 39, fn. 66; *see also M-I LLC v. Stelly*, 2010 WL 2196281 *7 (S.D. Tex) ("The Court will not disqualify counsel based on a hypothesized future conflict of interest").

In *Exterior Systems*, Defendant Welter sold his company, Fabwell, to ESI. ESI later sued Welter, alleging he had violated the covenant not to compete. One of ESI's lawyers, Weaver, had been Welter's main transactional counsel for 13 years and had done "extensive legal work" for Welter, including forming Fabwell and drafting numerous non-compete agreements. Welter argued that Weaver had "inside information and knowledge regarding Welter's thought process concerning non-compete agreements." *Id.* at 1069. The court denied the motion. Although Weaver had worked on the same type of legal problem, *the contract at issue in the ESI case was distinct* and therefore there was no substantial relationship. ████████████████████████████████
██████████████████████[2]██████████████████████
██████████████████████████████████████████████████

*Carlye Towers Condo Ass'n v. Crossland Sav.*, 944 F. Supp. 341 (D. N.J. 1996), arose out of the construction and sale of the Carlyle Towers condominiums. Plaintiff's counsel had previously represented the defendant in connection with the sale of a different condominium project. That prior

---

[1] ██████████████████████████████████████████████████
██████████████████████████████████████████████████ Absent such evidence, the Court cannot make a detailed comparison of the two representations, as required by the cases.

[2] IV attempts to distinguish *Exterior Systems* with the incorrect assertion that WSGR may be disqualified solely to avoid the appearance of impropriety. That is no longer the law of this district or the Third Circuit. *See In re Corn Derivatives Antitrust Litigation*, 748 F. 2d 157, (3d Cir. 1984) (noting Model Rules' departure from Model Code's "appearance of impropriety" standard); *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 693 F. Supp. 2d 399, 404 (D. Del. 2010) ("the court's analysis does not, as Apeldyn alleges, begin and end with the apparent impropriety of Mr. Goodwyn's involvement in the instant litigation"); *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 425 (D. Del. 1986) (under Model Rule 1.9, the "rigid formalism underlying Canon 9's injunction against an 'appearance of impropriety' is strongly rejected").

representation included preparing the Proposed Offer of Sale memorandum and advising on potential seller liability. The court denied defendant's motion to disqualify, noting that because the law firm's work was transactional in nature, it would not have acquired any insight into the prior client's litigation philosophy. The court's substantial relationship analysis turned entirely on whether the underlying facts of the two representations overlapped. *Id.* at 351. Because they did not—the matters involved sales of two separate properties—the court held that there was no substantial relationship. ▉

▉ *See Faughn v. Perez*, 145 Cal. App. 4th 592, 607 (Cal. Ct. App. 2006). ▉ As noted above, disqualification may not be based on speculation.

In another transactional disqualification case in this district, the court held that an attorney who assists a client in acquiring a patent may be adverse to that client in a patent infringement suit involving *the same patent*. *Reliant Pharm., Inc. v. Par Pharm., Inc.*, 2008 WL 1826036 (D. Del). Reliant accused Par, a generic drug manufacturer, of infringing the '588 patent. The Frommer firm appeared to represent Par. A year earlier, the Frommer firm had represented Reliant in its purchase of the drug Rythmol and the '588 patent. Reliant sought to disqualify the Frommer firm.

▉ Reliant argued that Frommer had advised it on a host of potential issues that were relevant to the litigation including potential infringement, design around, validity and the exclusivity period. Looking past these broad-brush claims, the court found the evidence too scanty and speculative. For example, Reliant submitted evidence that a Frommer attorney had advised on exclusivity—an issue in the patent suit. But examining the emails submitted with the motion, the court found that the firm's advice appeared to be limited to general advice about the law, not a specific application to any particular generic drug challenge. *Id.* at *3. Despite the overlap in topics, the court held that the firm's work for Reliant was unlikely to have resulted in the disclosure of relevant confidences.[3]

As reflected in the cases cited herein and in WSGR's opposition brief, ▉

Very truly yours,

/s/ Pamela Phillips

Pamela Phillips

W03 052611-056790012/U10/1649602/v1

---

[3] IV cites *H2O Plus, LLC .v Arch Personal Care Products, L.P.*, 2010 WL 4869096 (D. N.J. 2010) for support But H2O supports Checkpoint's argument: in the first representation, the law firm learned about mold problems, and in the second representation, mold problems were at issue.

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on May 27, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Joseph J. Farnan, III, Esquire
>Brian E. Farnan, Esquire
>FARNAN LLP
>919 North Market Street, 12th Fl.
>Wilmington, DE 19801
>*Attorneys for Plaintiff Intellectual Ventures I LLC*
>
>William J. Marsden, Jr., Esquire
>Linhong Zhang, Esquire
>FISH & RICHARDSON P.C.
>222 Delaware Avenue, 17th Fl.
>Wilmington, DE 19801
>*Attorneys for Defendant McAfee, Inc.*
>
>Jack B. Blumenfeld, Esquire
>Thomas C. Grimm, Esquire
>Ramy E. Hanna, Esquire
>MORRIS, NICHOLS, ARSHT & TUNNELL
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>*Attorneys for Defendant Symantec Corp.*
>
>Karen Jacobs Louden, Esquire
>MORRIS, NICHOLS, ARSHT & TUNNELL
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>*Attorneys for Defendant Trend Micro Inc.*

I further certify that I caused copies of the foregoing document to be served on May 27, 2011, upon the above listed counsel and the following via electronic mail:

Park C. Folse, III, Esquire
Brooke A.M. Taylor, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Suite 3800
Seattle, WA 98101-3000
*Attorneys for Plaintiff Intellectual Ventures I LLC*

Ryan K. Kirkpatrick, Esquire
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067-6029
*Attorneys for Plaintiff Intellectual Ventures I LLC*

John P. Lahad, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 1500
Houston, TX 77002
*Attorneys for Plaintiff Intellectual Ventures I LLC*

David Healey, Esquire
Garland Stephens, Esquire
Anita Kadala, Esquire
Benjamin C. Elacqua, Esquire
FISH & RICHARDSON P.C.
One Houston Center
1221 McKinney – Suite 2800
Houston, TX 7010
*Attorneys for Defendant McAfee, Inc.*

Mark A. Flagel, Esquire
Yury Kapgan, Esquire
Jeff Myung, Esquire
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
*Attorneys for Defendant Symantec Corp.*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Defendant Check Point Software Technologies Ltd. and Check Point Software Technologies Inc.*