## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,    :
          :
     Plaintiff,    :
          :
       v.    :   Civ. No. 10-1067-LPS
          :
CHECKPOINT SOFTWARE    :
TECHNOLOGIES LTD., CHECKPOINT    :
SOFTWARE TECHNOLOGIES, INC.,    :
MCAFEE, INC., SYMANTEC CORP.,    :
TRENT MICRO INC., and    :
TREND MICRO, INC., (USA),    :
          :
     Defendants.    :

## MEMORANDUM OPINION

Joseph J. Farnan, III, Brian E. Farnan, FARNAN LLP, Wilmington, DE; John P. Lahad, Houston, TX; Parker C. Folse III, Brooke A.M. Taylor, Lindsey N. Godfrey, Seattle, WA; Ryan C. Kirkpatrick, Los Angeles, CA, SUSMAN GODFREY L.L.P.,

    Attorneys for Plaintiff.

Jack B. Blumenfeld, Thomas Grimm, Ramy E. Hanna, MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, DE; Mark A. Flagel, Yury Kapgan, Los Angeles, CA; Dean G. Dunlavey, Orange County, CA, LATHAM & WATKINS LLP

    Attorneys for Symantec.

John W. Shaw; Andrew E. Russell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Stefani Shanberg, Palo Alto, CA; Larry Shatzer, Washington, D.C., WILSON SONSINI GOODRICH & ROSATI, PC,

    Attorneys for CheckPoint Software Technologies, LTD, and CheckPoint Software Technologies, Inc.

William J. Marsden, Jr., Linhong Zhang, Lauren Murphy Pringle,, Wilmington, DE; David Healy, Houston, TX, FISH & RICHARDSON, P.C.,

    Attorneys for McAfee, Inc.

Karen Jacobs Louden, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Yar R. Chaikovsky, Silicon Valley, CA; David M. Beckwith, Orange County, CA, MCDERMOTT, WILL & EMERY,

 Attorneys for Trend Micro Inc., and Trend Micro Inc., (USA).

June 22, 2011
Wilmington, Delaware

**Stark, U.S. District Judge:**

Pending before the Court is Defendants' motion to transfer venue to the Northern District of California, brought pursuant to 28 U.S.C. § 1404(a). (D.I. 35) For the reasons set forth below, Defendants' motion is DENIED.

**The Parties**

Plaintiff, Intellectual Ventures I LLC ("IV"), is a limited liability company that organized under the laws of Delaware on November 9, 2010. (D.I. 36 at 2) IV filed this patent infringement suit against Defendants on December 8, 2010. (*Id.* at 2) IV's principal place of business is in Bellevue, Washington. (*Id.* at 3) It also has an office in northern California, within the Northern District of California. (*Id.* at 3)

IV's parent company is Intellectual Ventures Management, LLC, which is also based in Bellevue, Washington. (*Id.* at 3) Further, IV is an indirectly wholly-owned subsidiary of Invention Investment Fund I, LP (the "Fund"). (D.I. 60 at 3) The Fund is a limited partnership formed in Delaware on June 30, 2003. (*Id.* at 3)

There are four patents-in-suit: U.S. Patent Nos. 5,987,610; 6,073,142; 6,460,050; and 7,506,155. (D.I. 36 at 2) The Fund acquired the four patents-in-suit in 2006 and 2007 and, at the time of acquisition, placed these patents in four Delaware entities that were indirectly owned by the Fund. (D.I. 60 at 3) After IV was organized as a Delaware LLC in November 2010, the four entities that had held the patents-in-suit were merged into IV. (D.I. 60 at 4) Generally, IV alleges that Defendants infringe the patents-in-suit by making, using, selling, importing and/or offering for sale certain antivirus and internet security products. (D.I. 1)

Defendant Check Point Software Technologies Inc. ("Check Point") is incorporated in

1

Delaware and has its principal place of business in Redwood City, California (in the Northern District of California). (*Id.* at 4)  Its parent, Defendant Check Point Software Technologies Ltd. ("Check Point Israel"), is incorporated in Israel and has its principal place of business in Israel. (*Id.* at 5)  Check Point's allegedly infringing technology was developed outside of Delaware. (*Id.* at 5)  The parties debate whether it was developed in California (D.I. 80 at 9 n.14) or in Israel and Sweden (D.I. 60 at 4-5), but they are in agreement there was no development activity in Delaware.  Check Point had annual revenues of $1.09 billion in 2010 and employs 2,200 individuals worldwide. (*Id.* at 5)

Defendant Trend Micro, Incorporated (U.S.A.) ("Trend Micro USA") is incorporated in California and has its principal place of business in Cupertino, California (in the Northern District of California). (D.I. 36 at 4)  Its parent, Defendant Trend Micro Incorporated ("Trend Micro Japan"), is incorporated in Japan, where it also has its principal place of business. (*Id.* at 4)  Trend Micro USA's allegedly infringing technology was developed in Taiwan, China, and Cupertino. (D.I. 36 at 4; D.I. 60 at 6)  In 2010, Trend Micro USA and Trend Micro Japan had combined revenues of more than $1.0 billion and employed more than 4,400 individuals worldwide. (D.I. 60 at 6)

Defendant McAfee, Inc. ("McAfee") is incorporated in Delaware and has its principal place of business in Santa Clara, California (in the Northern District of California). (D.I. 36 at 5)  Its allegedly infringing technology was developed outside of Delaware. (D.I. 36 at 5)  In 2010, McAfee reported annual revenues of more than $2.0 billion and employed 6,100 people worldwide. (D.I. 60 at 6)

Finally, Defendant Symantec Corporation ("Symantec") is incorporated in Delaware and

has its principal place of business in Mountain View, California (in the Northern District of California). (D.I. 36 at 5) Symantec's allegedly infringing technology was developed outside of Delaware. (*Id.* at 6) At least some of its products were developed in Ontario and the United Kingdom. (D.I. 60 at 5) In 2010, Symantec reported annual revenues of $6.0 billion, operated in over 40 countries, and employed 18,500 employees. (*Id.* at 5)

All of the Defendants' accused products have been sold in Delaware. However, none of the parties has an office or any employees in Delaware.

## Section 1404(a)

Defendants' request arises under 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Specifically, Defendants jointly ask that the Court transfer this action to the United States District Court for the Northern District of California.

## Applicable Legal Standards

Section 1404(a), as the Third Circuit has explained, "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) ("Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice."). The Third Circuit has also emphasized that "the

3

plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).

Consequently, the burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted) (emphasis in original); *see also CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009); *ADE Corp. v. KLA-Tencor Corp.*, 138 F.Supp.2d 565, 567-68 (D. Del. 2001). It follows that "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010) (internal citations omitted); *see also Illumina, Inc. v. Complete Genomics, Inc.*, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

Unless the defendant "is truly regional in character" – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is almost always inappropriate. *See Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004). When transfer is sought by a defendant with operations on a national or international scale, that defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F.Supp.2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted); *see also In re TCW/Camil Holding, L.L.C.*, 2004 WL 1043193, at *1

4

(D. Del. Apr. 30, 2004).[1]

"A motion to transfer may also be granted if there is a related case which has been first

filed or otherwise is the more appropriate vehicle to litigate the issues between the parties.

*Praxair*, 2004 WL 883395, at *1 (internal citations omitted); *see also Mallinckrodt Inc. v. E-Z-*

*Em, Inc.*, 670 F.Supp.2d 349, 357-58 (D. Del. 2009) ("In an instance where related litigation in a

transferee forum involves the same parties, similar technologies, and a common field of prior art,

this Court has previously held that transfer is appropriate in the interests of justice.").

Given the necessarily individualized, fact-specific, case-by-case nature of a decision

whether to transfer venue, it is inevitable that the multitude of transfer opinions – including the

many issued in this District – will not entirely harmonize with one another. As Chief Judge Sleet

has explained:

> By definition, a transfer analysis is a thoughtful weighing of
> interests. And, as an exercise of discretion, this process is, at least
> to some extent, subjective.
>
> Thus, while the Court can look to precedent for guidance, it
> reminds the parties that the weight which one court might afford to
> one factor on one day might very well differ from the weight
> afforded to that same factor by a different court, located in a
> different district, presiding over a different litigation, between
> different parties, concerning a different cause of action, involving

---

[1]*See generally Intel v. Broadcom*:

[Defendant] is a multi-billion dollar company that does business on an
international scale. Furthermore, the conveniences of modern travel and
communication technology have made it more difficult to argue that litigating in a
particular forum is inconvenient for the parties and witnesses. Therefore, to meet
its burden [defendant] must establish that litigating this case in Delaware will
pose a unique or unusual burden on [its] business operations. It has not done so.

167 F. Supp.2d 692, 706 (D. Del. 2001) (internal quotation marks and citations omitted).

> different facts, different witnesses, and different documents on a
> different day.

*Affymetrix, Inc., v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D. Del. 1998). It bears emphasis that

such differences may also be evident even among different judges sitting in the same District.

## Appropriateness of the Transferee Venue

In determining whether transfer is appropriate, the Court must first determine whether

this action could have been brought in the proposed transferee venue, which here is the Northern

District of California. "The party moving for transfer bears the burden of proving that the action

properly could have been brought in the transferee district in the first instance." *Mallinckrodt,*

670 F.Supp.2d at 356 (internal citations omitted). It is undisputed that this action could have

been brought in the Northern District of California, where all of the U.S. Defendants have their

principal places of business. (D.I. 36 at 10) The Northern District of California also has

personal jurisdiction over the foreign Defendants to at least the same extent as does the District

of Delaware. Accordingly, the first requirement for a § 1404(a) transfer is satisfied.

## The *Jumara* Factors

Since two proper venues have been identified, the Court must balance the appropriate

considerations and determine whether, under the particular facts of this case, the request to

transfer venue should be granted. The Third Circuit has observed that in undertaking such an

analysis "there is no definitive formula or list of the factors to consider." *Jumara,* 55 F.3d at

879. Instead, courts must analyze "all relevant factors to determine whether on balance the

litigation would more conveniently proceed and the interests of justice be better served by

transfer to a different forum." *Id.*

6

Nevertheless, the Third Circuit has also identified a set of private interest and public interest factors for courts to consider. *See id* at 879-80. The private interest factors to consider include: (1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." The public interest factors to consider include: (1) "the enforceablity of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted)

Below, the Court considers and weighs each of these public and private interest factors, to the extent relevant in the particular circumstances presented here.

### Private Interest Factors

#### Plaintiff's choice of forum

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte,* 431 F.2d at 25 (internal citations and quotations omitted). That is, "courts normally defer to a plaintiff's choice of forum." *Jumara,* 55 F.3d at 880. Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the

7

forum for some legitimate reason." *Cypress Semiconductor Corp*, 2001 WL 1617186, at *2 (internal citations omitted).

Here, the parties dispute the amount of weight to be accorded IV's choice of Delaware as its preferred forum. IV insists that its choice of Delaware is entitled to "paramount" consideration, citing a long line of decisions from the Third Circuit and this District. *See, e.g.*, *Shutte*, 431 F.2d at 25; *Gielata v. Heckmann*, 2010 WL 3940815, at *3 (D. Del. Oct. 6, 2010). Defendants counter, however, by asserting that because IV's headquarters is in the Northern District of California, Delaware is not IV's "home turf," so IV's choice to sue outside of its "home turf" is not entitled to substantial weight. *See In re TCW/Camil Holdings L.L.C.*, 2004 WL 1043193, at *2 ("[P]laintiff is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's 'home turf,' since it maintains its principal place of business in New York."); *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) (stating that where plaintiff chooses to litigate outside its principal place of business, its choice of forum is entitled to less deference).

As Defendants acknowledged at oral argument, while there are cases supporting Defendants' view that Delaware is not IV's "home turf," there are likewise numerous cases from this District in which a plaintiff's "home turf" has been construed to include its state of incorporation, which here is Delaware. (D.I. 91, transcript of oral argument ("Tr.") at 5) *See, e.g.*, *Praxair*, 2004 WL 883395, at *1-2 (holding Delaware is "home turf" as long as company is incorporated in Delaware, regardless of location of principal place of business). The Court agrees with those cases that include a corporate entity's state of incorporation as part of its "home turf." Accordingly, because IV has sued Defendants in Plaintiff's "home turf," its choice of

8

Delaware as a litigation forum is entitled to paramount consideration.

Even if Delaware were not considered to be among IV's "home turf," IV nevertheless had a legitimate and rational basis for suing Defendants in Delaware. IV, as well as its predecessors-in-interest and the Fund, have all chosen to avail themselves of the rights, benefits, and obligations that Delaware law affords. The same is true of three of the four domestic Defendants, which are all Delaware corporations. Additionally, each of the Defendants have sold or offered for sale their accused products and services in Delaware. There is no dispute that this District has personal jurisdiction over all Defendants. Given these legitimate and rational reasons for suing in Delaware, Plaintiff's choice of Delaware as its preferred forum is entitled, at minimum, to "significant deference." *Mallinckrodt*, 670 F. Supp. at 356; *see also Angiodynamics*, 2010 WL 3037478, at *2 ("The movant's burden in overcoming the plaintiff's choice of forum is *somewhat lessened* where, as here, the plaintiff has not filed suit in its 'home turf.' . . . [T]he Court still accords Plaintiff's choice of forum *substantial weight* because the choice of this forum relates to Plaintiff's legitimate, rational concerns as a Delaware corporation.") (emphasis added).

Defendants also attack IV's connection to Delaware by characterizing IV as "a non-practicing patent holding company that organized in Delaware less than a month before filing this lawsuit." (D.I. 36 at 1) But this is misleading. IV's predecessors-in-interest, which held the patents-in-suit since 2006 and 2007, were Delaware entities, and merged into IV when it was formed (in Delaware) in November 2010. IV and its predecessors were and/or are indirectly owned by the Fund, which was formed as a Delaware entity in 2003. (D.I. 60 at 11) Neither IV, nor any entity affiliated with it that has held the patents-in-suit, has ever been organized under

9

the laws of any state other than Delaware.

Hence, the Court concludes that Delaware is IV's "home turf" and, further, that IV has

legitimate and rational reasons for filing suit in this District. Accordingly, IV's preference to

litigate its dispute in Delaware is entitled to substantial, indeed "paramount," weight.

**Defendants' forum preference**

"[D]efendants strongly favor transfer to the Northern District of California, based upon

the location of the parties, witnesses, operative facts and other sources of proof, as well as the

location of the parties' counsel." (D.I. 36 at 12-13) More specifically, Defendants justify their

preference for the Northern District of California on the following grounds:

> The domestic defendants are each headquartered in that district,
> most of the accused products were developed there, and the
> majority of the relevant potential witnesses reside there. Indeed,
> IV also has an office there, its negotiator who contacted some of
> the defendants resides there, and all meetings took place there.
> . . .
> Third-party witnesses, whose testimony will be central to this case,
> are located in California, and do not have occasion to come to
> Delaware. Certain of these non-party witnesses, including one of
> the co-inventors of the '050 patent, are not within the subpoena
> power of the District of Delaware, making them unavailable for
> trial in this forum. Conversely, many such non-party witnesses *are*
> within the subpoena power of the Northern District of California,
> and could be compelled to provide their requisite testimony there .
> . . .

(D.I. 36 at 2-3)

IV counters by emphasizing that three of the four domestic Defendants have chosen to

incorporate in Delaware, and, therefore, should not be heard to argue that defending litigation

here poses an unusual or unique burden. Moreover, IV claims that many of the likely trial

witnesses are within the subpoena power of this Court and, even if they are not, Defendants'

10

ability to present their case effectively will not be severely prejudiced.

The Court largely agrees with IV, for reasons that it will discuss below in connection with the convenience of the parties and convenience for the witnesses factors. For now it is enough to say that while Defendants have legitimate and rational reasons for their preference for an alternative forum, their concerns are more properly addressed in connection with other private *Jumara* factors. Consequently, this factor, while favoring transfer, is entitled to little weight.[2]

### Location of operative events

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Here, the allegedly infringing products and services are sold nationwide, including in Delaware and the Northern District of California. Although Delaware has no other connection to the operative events, the Northern District of California does, as there is evidence that some amount of research and development of some of the accused products and services was conducted within that District. However, some of this evidence is contested and, on the present record, it appears that a bulk of the research and development activity occurred outside of both the Districts of Delaware and the Northern District of California. Hence, this factor weighs in favor of transfer, but only slightly.

---

[2]Plaintiff suggests the Court should give little weight to Defendants' preference for a non-Delaware forum, because Defendants have been sued in this District before and have not moved to transfer those other actions. (D.I. 60 at 7) The Court disagrees. Because transfer decisions are case-specific, the fact that Defendants may have (for whatever reason) on occasion chosen not to raise concerns about the purported inconvenience of litigating here is not particularly pertinent to the balance required in the instant case.

### Convenience of the parties

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition" *Jumara*, 55 F.3d at 879. Defendants insisted at oral argument that it would be a "major inconvenience" to litigate this case in this District. (Tr. at 7) In their briefing, Defendants sounded the same theme, contending: "A trial across the country from where the parties are located would ***significantly disrupt*** their [i.e., the parties'] operations and their employees' work and family lives." (D.I. 36 at 13 (emphasis added); *see also id.* at 19 ("With the case in Delaware, virtually everyone involved in this case . . . would need to travel significant distances and give up significant amounts of time from work and family to do so. This would unnecessarily disrupt their employers' businesses as well as their families' lives, and would force them to incur expenses for travel, lodging and local counsel.") (emphasis added))

The Court is unpersuaded. Each of the Defendants is a global corporation, employing at least 1,000 people, and earning annual revenues in excess of $1 billion. On its face, then, Defendants' contention that litigating one patent infringement action in Delaware would "significantly disrupt" their operations strikes the Court as implausible. *See generally Affymetrix,* 28 F.Supp.2d at 202 ("Financially, . . . [the defendants] are capable of shouldering this burden. They are all multi-million dollar corporations with interests and activities spanning the globe. While their resources are not infinite, they are vast. Litigating in Delaware should not impose an undue financial burden on them.") (internal citations omitted). Nothing in the record convinces the Court of the contrary.

Moreover, as a practical matter, most of the discovery process will take place in California, in the offices of the parties' attorneys and in the areas where the parties maintain their

documents. *See Cypress Semiconductor Corp.*, 2001 WL 1617186, at *4 ("[C]onvenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in California regardless of the trial venue."). The only events likely to occur in Delaware are the claim construction hearing, any hearing on motions (but not discovery motions, as this Court almost exclusively addresses such disputes by teleconference), the pretrial conference, and trial. It is likely that no witnesses will be necessary at any of these proceedings other than trial. A trial (if this case gets to trial)[3] is likely to last two weeks at most – and, even during trial, even key witnesses are unlikely to need to be present in Delaware any longer than a week.

Additionally, the Court also takes notice of the widespread prevalence of laptop, notebook, and tablet computers; high-speed internet connections; smartphones; and the relative availability of video conferencing technologies. All of this technology, which appear to be standard issue for employees of large corporations such as Defendants, make it far easier today for a traveling employee to "keep in touch" with the "home office" and, thereby, reduce the disruptions to their work.

As importantly, the Court emphasizes that three of the four domestic Defendants chose to incorporate in Delaware. "[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware." *Mallinckrodt,* 670 F. Supp. 2d at 357 (internal citations omitted); *see also Praxair*, 2004 WL 883395, at *2 ("By availing themselves of the advantages of

---

[3]See below at "Convenience for the witnesses" for a discussion of the statistical unlikelihood of any case actually going to trial.

13

Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in

Delaware."). "[A]s the judges of this court have noted, one aspect of a company's decision to

incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit

itself to the jurisdiction of the courts in this state for the purposes of resolving this type of

commercial dispute." *ADE Corp*, 138 F. Supp.2d at 572. Thus, "absent some showing of a

unique or unexpected burden, a company should not be successful in arguing that litigation in its

state of incorporation is inconvenient." *Id.* at 573. No such showing has been made here.

In sum, Defendants have failed to demonstrate that litigating in Delaware will pose any

unique or unusual burden. Accordingly, the convenience of the parties factor does not favor

transfer.

### Convenience for the witnesses

The next factor is "the convenience of the witnesses – but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n

reviewing a motion to transfer, courts frequently look to the availability of witnesses as an

important factor, as it can be relevant to protecting a defendant's opportunity to put on its case

with witnesses who will appear in person at the trial." *ADE. Corp.*, 138 F. Supp.2d at 569; *see*

*also id.* at 574 ("The court does have an interest in seeing that a plaintiff's choice of a forum does

not deprive a defendant of its ability to put on a defense that effectively communicates the

matters in issue to the judge and the jury.").

The Court agrees with Chief Judge Sleet, who held that the weight to be accorded to

concerns about convenience for the witnesses varies depending on the type of witness at issue:

14

> Party witnesses or witnesses who are employed by a party
> carry no weight in the "balance of convenience" analysis since
> each party is able, indeed, obligated to procure the attendance of its
> own employees for trial.  Expert witnesses or witnesses who are
> retained by a party to testify carry little weight in determining
> where the "balance of convenience" lies (especially in an action for
> patent infringement) because they are usually selected [on the
> basis] of their reputation and special knowledge without regard to
> their residences and are presumably well compensated for their
> attendance, labor and inconvenience, if any.  Fact witnesses who
> possess first-hand knowledge of the events giving rise to the
> lawsuit, however, have traditionally weighed quite heavily in the
> "balance of convenience" analysis.

*Affymetrix,* 28 F. Supp.2d at 203 (internal citations and quotation marks omitted).  With respect

to the last category – fact witnesses with first-hand knowledge – the Court should be particularly

concerned not to countenance undue inconvenience to third-party witnesses, who have no direct

connection to the litigation.  *See generally id.* (explaining that non-party fact witnesses weigh

heavily in the analysis); *see also Headon v. Colo. Boys Ranch*, 2005 WL 1126962, at *7 (E.D.

Pa. May 5, 2005) (noting that convenience of non-party witnesses is "perhaps the most important

factor"); 8 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and

Procedure*, § 3851 (3d ed. 2008) ("Often cited as the most important factor in passing on a

motion to transfer under Section 1404(a) of Title 28 of the United States Code, and the one most

frequently mentioned by the courts, as the plethora of illustrative cases cited in the note below

demonstrate, is the convenience of witnesses, most particularly nonparty witnesses who are

important to the resolution of the case.").

Turning to the facts of the instant case, the Court finds that many of the witnesses

identified by the parties as having potentially relevant testimony are either party witnesses or

witnesses employed or retained by one of the parties.  The Court accords no weight to any

15

purported inconveniences that might be suffered by such witnesses were they to be required to come to Delaware to participate in this litigation. It is likely that most if not all of the party witnesses travel at least on occasion for business. *See generally Asten Inc. v. Weavexx Corp.*, 2000 WL 1728354, at *4 (D. Del. Feb. 11, 2000) ("It is likely that the six employees Weavexx identifies – upper level management including the company's president and three vice-presidents – are sometimes called upon to travel for company business."). Also, as noted above, parties are obligated to procure the attendance of their employees for trial. *See Affymetrix*, 28 F.Supp.2d at 203. Finally, experts are compensated for their time and expenses, including expenses for travel, and have made an affirmative decision to participate in this litigation; experts are retained without regard for their residence. Accordingly, the location of experts carries very little weight.

For third-party fact witnesses, the parties disagree as to which venue, Delaware or the Northern District of California, will be more convenient. Defendants emphasize that "not a single known or likely witness resides in Delaware or is subject to this Court's subpoena power." (D.I. 36 at 1) Plaintiff contends, by contrast, that "three of the inventors of the patents-in-suit are within the subpoena power of this Court (and not the Northern District of California), and this forum is more convenient for eight of the eleven inventors." (D.I. 60 at 18) The Court does not find it necessary to choose between the parties' competing visions of the location and preferences of the likely third-party fact witnesses who will testify at trial, for the following reasons.

First, the extent of the Court's subpoena power is relevant only to ensuring that witnesses come to Delaware to testify *at trial*. Every witness' deposition testimony can be compelled by some court, as some court will have jurisdiction to enforce a deposition notice and/or deny a motion to quash same. *See generally* Fed. R. Civ. Proc. 45(b)(2) (providing that subpoena may

16

be served at any place within the district of the issuing court or outside that district within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection).

It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will *not* actually go to trial. For instance, during the twelve-month period ending June 30, 2010, of the 295,499 federal civil cases that were terminated, only 3,321 reached trial. *See* U.S. Courts, Statistical Tables for the Federal Judiciary, June 30, 2010, Table C-4 at 37.[4] That is, only 1.1% of federal civil cases had a trial. The same data show that among these federal civil cases, 2,766 were patent cases, and of these only 86 – or 3.1% – reached trial. *See id.* at 39; *see also Improving Federal Court Adjudication of Patent Cases: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary*, 109th Cong. 6-7 (2005) (statement of Kimberly A. Moore, noting about 3000 patent cases are filed annually and only 3% go to trial).

If this case turns out to be one of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact witnesses with material, non-cumulative evidence will voluntarily appear at trial. *See ADE Corp.*, 138 F.Supp.2d at 570 ("Previous decisions in this court have suggested that the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed.").[5] Here, there is no evidence from which the Court can

---

[4]Available at http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary /2010/C04Jun10.pdf (last visited June 9, 2011).

[5]*But see Nilssen v. Everbrite, Inc.*, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power.") (internal citations omitted).

conclude that necessary trial witnesses will refuse to appear in Delaware for trial without a subpoena. If such witnesses will not appear at trial, their testimony can always be compelled through a deposition, by service of a notice of deposition and enforcement of such by a court with jurisdiction over the witness at issue. While deposition testimony is not a complete substitute for live trial testimony, *see In re DVI Inc.*, 2004 WL 1498593, at *2 (D. Del. June 23, 2004) ("[T]he Court notes that it has previously rejected the argument made by Plaintiff that deposition testimony may serve as an adequate substitute for material non-party witnesses that a party is unable to procure for trial."), it is a fallback that in almost all instances will prevent a miscarriage of justice.

Finally, it bears emphasis that the risk that this case will go to trial and that a crucial witness will be outside of this Court's subpoena power and refuse to appear at trial voluntarily is a risk borne by *all* parties to this case. Just as IV bears the burden on some issues in dispute (such as infringement), so do Defendants bear the burden on other issues (such as invalidity of the patents-in-suit). Under these circumstances, the Court does not accord great weight to Defendants' concerns about convenience to the witnesses.

Therefore, while the convenience to the witnesses factor slightly favors transfer, the Court gives this factor little weight.[6]

_____

[6]The Court recognizes that there are decisions from this District that accord this factor much greater weight. *See, e.g., In re DVI, Inc.,* 2004 WL 1498593, at *2 ("[T]he Court concludes that the presence of . . . witnesses . . . [who] reside outside of the subpoena power of the Court, weighs heavily in favor of transferring this action."); *Angiodynamics,* 2010 WL 3037478, at *3 (holding lack of subpoena power over five former employees favored transfer); *Affymetrix,* 28 F. Supp.2d at 204 (stating that interests of witnesses who were residents of California, and thus outside scope of this Court's subpoena power, "weigh heavily in favor of transfer"). On the other hand, as the Federal Circuit recently stated, in affirming this Court's denial of a motion to transfer a patent infringement action, "The district court also pointed out

### Location of relevant evidence

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. The Federal Circuit has recently observed: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Nevertheless, as this Court has repeatedly recognized, "recent technological advances have reduced the weight of this factor to virtually nothing." *Affymetrix*, 28 F. Supp.2d at 208 (D. Del. 1998); *see also See Nihon Tsushin Kabushkiki Kaisha v. Davidson*, 595 F.Supp.2d 363, 372 (D. Del. 2009) (same). In particular, "[w]ith new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles." *ADE Corp.*, 138 F. Supp.2d at 571; *see also Cypress Semiconductor*, 2001 WL 1617186, at *3 ("Advances in technology have significantly lessened the burden of litigating in a distant district. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.") (internal citations and quotation marks omitted). Defendants, in fact, concede that this factor is neutral. (Tr. at 15)

The Court agrees with these cases explaining that technological advances, absent unusual

---

that the convenience of the witnesses did not favor either forum, because most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware. This was correct . . . ." *Micron Tech., Inc. v. Rambus Inc.*, 2011 WL 1815975, at *18 (Fed. Cir. May 13, 2011).

circumstances, have significantly reduced the burden of transferring evidence, and, consequently, have greatly diminished this as a factor in a transfer analysis. Here, then, the location of relevant evidence favors transfer, but only slightly.

**Public Interest Factors**

### Enforceability of judgment

There is no suggestion that a judgment would be unenforceable in either District. Defendants admit this factor is neutral. (D.I. 36 at 18)

### Practical considerations

The Court also takes account of "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. In this regard, Defendants complain that, under the local rules of this Court, they will be required to retain Delaware counsel, which will drive up the expense of resolving this litigation. *See* D. Del. L.R. 83.5(b) (2010). The Court finds, however, that the parties are more than capable of bearing this additional expense, particularly in light of the size of the parties and the magnitude of their dispute. *See Affymetrix*, 28 F. Supp.2d at 206 ("While transferring these two cases would reduce the costs of litigation for all parties by eliminating the need for local counsel, . . . these three corporations are capable of bearing the financial burden of litigating here."). Hence, while this factor favors transfer, it does so only slightly.

### Administrative difficulties in getting case to trial

Turning next to the "relative administrative difficulty in the two fora resulting from court congestion," *Jumara*, 55 F.3d at 879, Defendants cite 2010 Federal Case Management Statistics, which show the average time to trial in Delaware is 25.2 months, while in the Northern District

20

of California the average time to trial is only 21.5 months. (D.I. 36 at 19)  Defendants

acknowledge that any difference in average trial time is not a "strong factor" in their favor. (Tr.

at 15)  The Court agrees with IV that this 3.7 month differential is "inconsequential." (D.I. 60 at

17)  Notwithstanding the heavy caseload carried by the judges in this District, and the ongoing

judicial vacancy, the Court is not persuaded that administrative difficulties due to court

congestion favor transfer. *See Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196, at

*3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion,

to the extent there is any, will be so great as to weigh strongly in favor of a transfer.").  Instead,

this factor is neutral.

### Local interests in dispute

Defendants acknowledge that Delaware has an interest in adjudicating disputes involving

companies incorporated in Delaware, and also point out that the Northern District of California

has an interest in deciding disputes that arise within its boundaries involving companies

headquartered there. (D.I. 36 at 20)  In Defendants' view, the Northern District of California's

interests outweigh Delaware's interests and favor transfer. (D.I. 36 at 20)

The Court disagrees.  Delaware's interests are substantial and must be accorded at least

equal weight to those of the Northern District of California. *See, e.g., Autodesk Can. Co. v.*

*Assimilate, Inc*, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009) ("Delaware clearly has a

substantial interest in addressing lawsuits brought against Delaware corporations.");

*Mallinckrodt Inc.*, 670 F. Supp. 2d at 357 (same).  Moreover, in patent infringement cases the

local interest factor is typically neutral "because patent issues do not give rise to a local

controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537

21

F.Supp.2d 635, 643 (D. Del. 2008); *see also In re Hoffman-La Roche Inc.*, 587 F.3d at 1338 ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."); *Praxair*, 2004 WL 883395, at *2 ("Patent cases are explicitly federal issues and the rights determined thereunder are national in scope.").

Thus, the local interest factor is neutral.

### Public policy

Defendants acknowledge this factor is neutral. (D.I. 36 at 20)

### Judges' familiarity with state law in diversity cases

This is not a diversity case. Instead, "[p]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations and quotation marks omitted). The parties do not even address this factor, and it is entitled to no weight in this Court's analysis.

## Conclusion

Plaintiff's choice of forum, which is given paramount consideration, weighs heavily against transfer. IV sued in Delaware, its home turf, which is a legitimate and rational choice, for reasons including that IV is incorporated here and also that three of the four domestic Defendants are incorporated here as well. Other private interests weigh in favor of transfer – Defendants' choice of forum, location of operative events, convenience to the witnesses, and location of relevant evidence – but none of these strongly favor transfer or are accorded great weight. One

22

public interest factor weighs slightly in favor of transfer: practical considerations. Other public

factors – convenience to the parties, enforceability of judgment, administrative difficulties, local

interests, and public policy – are neutral. On the whole, then, recognizing the appropriate weight

to be granted to each factor, and paying attention to the heavy burden on Defendants, the Court

finds that the public and private interest factors in combination weigh against transfer.

Defendants have failed to satisfy their burden of showing that the balance of convenience factors

and interests of justice weigh strongly in favor of transfer. The Court, then, will exercise its

discretion and not disturb IV's choice of forum.[7]

---

[7]Several recent opinions from the Federal Circuit have found an abuse of discretion in a district court's denial of a motion to transfer a patent infringement action. *See In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) (granting mandamus); *In re Acer America Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) (same); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) (same); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) (same); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2009) (same). The Court has considered these cases and concluded that they do not affect the foregoing analysis. Each of these cases arose in the context of a petition for mandamus to the Eastern District of Texas. Each, therefore, applied Fifth Circuit law. *See generally Micron Tech.*, 2011 WL 1815975, at *17 ("This Court reviews this issue [i.e., transfer] under the law of the relevant regional circuit."). Transfer analysis under the law of the Third Circuit differs from that in the Fifth Circuit in at least the following significant respects: (i) plaintiff's choice of forum is explicitly a factor to be weighed (and weighed heavily) in the Third Circuit, while in the Fifth Circuit, it is error to consider plaintiff's preference as a separate factor, *see TS Tech*, 551 F.3d at 1320 ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."); (ii) in the recent Federal Circuit cases, the parties generally were not incorporated in Texas, whereas in almost all the cases arising in this District, most if not all of the defendants (and often the plaintiffs as well) are incorporated in Delaware, which the Federal Circuit has recognized as an important factor, *see Micron*, 2011 WL 1815975, at *18 ("[G]iven that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."); and (iii) the Fifth Circuit has endorsed a "100-mile rule," which provides that "when the distance between a plaintiff's chosen venue for trial and the potential transferee venue is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled," *TS Tech*, 551 F.3d at 1320 (internal citations and quotation marks omitted); *see also Genentech*, 566 F.3d at 1343, while no such rule has been recognized in the Third Circuit.

23

Accordingly, Defendants' motion to transfer (D.I. 35) is DENIED.  An Order follows.