IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-1067 (LPS) |
| | ) | |
| CHECK POINT SOFTWARE TECHNOLOGIES | ) | |
| LTD., CHECK POINT SOFTWARE | ) | |
| TECHNOLOGIES, INC., MCAFEE, INC., | ) | |
| SYMANTEC CORP., TREND MICRO | ) | |
| INCORPORATED (JAPAN), and | ) | |
| TREND MICRO INCORPORATED (USA), | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT TREND MICRO'S
MOTION TO SEVER AND TRANSFER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com
*Attorneys for Defendants Trend Micro
Incorporated and Trend Micro, Inc. (USA)*

*Of Counsel:*

Yar R. Chaikovsky
MCDERMOTT, WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

August 1, 2012

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II.    SUMMARY OF ARGUMENT .......................................................................................1

III.    STATEMENT OF FACTS .............................................................................................2

IV.    LEGAL STANDARDS .................................................................................................4

    A.    Applicable Law ................................................................................................4

    B.    Severance .........................................................................................................5

    C.    Transfer ............................................................................................................6

V.    ARGUMENT ...............................................................................................................7

    A.    The Claims Against Trend Micro Do Not Arise from "the Same Transaction or Occurrence" ...................................................................................................7

    B.    The Northern District of California is the Far More Convenient Venue for the Claims Against Trend Micro .........................................................................10

VI.    CONCLUSION ...........................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012).................................................................9

*Eastman Chem. Co. v. AlphaPet Inc.*,
  No. 09-971-LPS, 2011 WL 7121180 (D. Del. Dec. 29, 2011)..................9

*In re Altera*,
  Misc. No. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012)....................3

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012)..........................................................passim

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011).................................................................3

*In re Trend Micro Inc.*,
  467 F. App'x. 881 (Fed. Cir. 2012)...........................................................3

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008).................................................................5

*In re Verizon Business Network Servs., Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) ..................................................................6

*InvestPic, LLC v. SAS Institute Inc.*,
  No. 10-1028-RGA, 2012 WL 1753665 (D. Del. May 15, 2012)...............6

*IpVenture, Inc. v. Acer, Inc.*,
  No. 11-588-RGA, 2012 WL 3016958 (D. Del. July 24, 2012) .........passim

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ....................................................... 6, 7, 11, 12

*Philips Elec. N. Am. Corp. v. Contec Corp.*,
  220 F.R.D. 415 (D. Del. 2004) .................................................................9

*Softview LLC v. Apple Inc.*,
  No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012)..................9

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).....................................................................................6

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
   No. 10-63-LPS, 2012 WL 2061932 (D. Del. June 5, 2012).....................................................9

*Wacoh Co. v. Kionix, Inc.*,
   No. 10-167-RGA, 2012 WL 70673 (D. Del. Jan. 9, 2012) ......................................... 6, 10, 11

**STATUTES**

28 U.S.C. § 1404(a)............................................................................................................passim

**RULES**

Fed. R. Civ. P. 1 ...................................................................................................................13

Fed. R. Civ. P. 20 ........................................................................................................... 2, 5, 7, 8

## I.     NATURE AND STAGE OF PROCEEDINGS

Defendants Trend Micro Incorporated and Trend Micro Inc. (USA) (collectively, "Trend Micro"), respectfully move the Court to sever the claims of Plaintiff Intellectual Ventures I, LLC ("IV") against Trend Micro pursuant to Federal Rules of Civil Procedure 20 and 21.  If the Court severs the claims, Trend Micro further moves the Court to transfer the severed claims to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II.     SUMMARY OF ARGUMENT

Trend Micro does not belong in this lawsuit.  Trend Micro's network security software products are distinct from—and were developed independently from—those of the other defendants in this suit.  Based on this fact alone, the Federal Circuit's decision in *EMC* mandates that Trend Micro be severed from this case.  *See In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) (vacating denial of severance and transfer on writ of mandamus).  In *EMC*, the Federal Circuit adopted a bright-line rule that joinder of multiple, unrelated patent defendants is not appropriate under Rule 20 "where different products or processes are involved." *Id.* at 1359.

Beyond this, however, there are facts that set Trend Micro apart from the other defendants in this case.  Unlike the other defendants, Trend Micro had no pre-suit notice of the patents-in-suit, and did not engage in pre-suit negotiations with IV.  *See* D.I. 28 at ¶ 17.  Trend Micro is also the sole party to this lawsuit not incorporated in Delaware.  *See* D.I. 43 at ¶¶ 2, 3. Trend Micro's unique position in this lawsuit requires a legal analysis different from that applied to its co-defendants.  A joint trial on liability—particularly one including issues of willful infringement and damages—would deny Trend Micro a "meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages." *In re EMC Corp.*, 677 F.3d at 1355.  Trend Micro should not be forced to litigate alongside unrelated

1

defendants with unrelated products, all of whom are direct competitors, while IV has the opportunity to paint the facts of the case as to all defendants and their products with the same broad brush. The law, the facts, and basic fairness concerns mandate Trend Micro's severance from this case.

Post-severance, because of the facts unique to Trend Micro, even with IV's choice of forum being given substantial deference, the private and public factors weigh heavily in favor of transfer. Trend Micro, Inc. (USA) is a California corporation, with its headquarters in the Northern District of California. Trend Micro Incorporated (Japan) is a Japanese corporation, with its headquarters in Tokyo, Japan. There is no dispute that IV has its principal place of business in Seattle, Washington, and offices in the Northern District of California. Only **one** potential witness has been identified within the subpoena power of this Court, while dozens of potential witnesses for Trend Micro, IV, and third parties have been identified in California. On similar facts, this Court recently granted a motion to transfer post-severance. *See IpVenture, Inc. v. Acer, Inc.*, No. 11-588-RGA, 2012 WL 3016958 (D. Del. July 24, 2012). Post-severance transfer of the claims against Trend Micro to the Northern District of California is therefore warranted under Fed. R. Civ. P. 20 and 28 U.S.C. § 1404(a).

## III. STATEMENT OF FACTS

### A. Procedural Background

IV filed the present lawsuit on December 8, 2010. *See* D.I. 1. The defendants in this lawsuit, direct competitors in the security software industry, are accused by IV of infringing U.S. Patent Nos. 5,987,610 ("the '610 patent"), 6,073,142 ("the '142 patent"), 6,460,050 ("the '050 patent"), and 7,506,155 ("the '155 patent") (collectively, "the patents-in-suit") by making, using, selling, importing and/or offering for sale certain software security products. *See* D.I. 1 at

5-13.  IV's claims of infringement against the defendants are based upon different accused products.  *Id.*  IV has not alleged that any Trend Micro product was designed in conjunction with any product sold by any other defendant.

On March 8, 2011, all defendants moved to transfer the case to the Northern District of California pursuant to 28 U.S.C. §1404(a).  *See* D.I. 36.  The Court denied transfer on June 22, 2011.  *See* D.I. 95.  Approximately six months later, on December 2, 2011, the Federal Circuit issued its opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), determining that the United States District Court for the District of Delaware had abused its discretion in denying transfer under §1404(a) on facts similar to those presented in this case.  *Id.* at 1225.  The defendants subsequently petitioned the Federal Circuit for a writ of mandamus ordering transfer on March 6, 2012.  D.I. 187.  The Federal Circuit denied that petition without prejudice in *In re Trend Micro Inc.*, 467 F. App'x 881, 882 (Fed. Cir. 2012); D.I. 196.  Based on the Federal Circuit's guidance in its decision, the defendants moved for reconsideration of the Court's denial of transfer on May 7, 2012.  *See* D.I. 205, 207.

On July 20, 2012, the Federal Circuit issued its denial of a petition for rehearing in *In re Altera*, Misc. No. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012).  In *Altera*, the Federal Circuit noted that in denying transfer the District of Delaware had explained that "not only was Delaware [IV's] 'home' venue, but all of the parties had availed themselves to 'rights, benefits, and obligations that Delaware law affords by incorporating in that state.'"  *Id.* at *1. The *Altera* decision further noted that "unlike *Link_A_Media*, there are rational grounds for denying transfer given that ***all*** of the parties (not just a single defendant) had incorporated in Delaware and some witnesses would potentially find Delaware more convenient."  *Id.* at *2.

On July 30, 2012, this Court entered an Oral Order denying the defendants' joint motion for reconsideration without prejudice to Trend Micro renewing its request for transfer if the Court severs Trend Micro from this action.  D.I. 294.  This is Trend Micro's motion for severance and renewed motion for transfer in the event severance is granted.

### B.  Background on the Parties and Potential Witnesses

Trend Micro Incorporated is incorporated in Japan with a principal place of business in Tokyo.  D.I. 43 at ¶ 3.  Its United States subsidiary, Trend Micro, Inc. (USA), is incorporated and headquartered in California.  *Id.* at 2.  Engineering of the accused products took place in Taiwan and China, with some research activities in Cupertino, California.  *Id.* at ¶ 6.  Trend Micro has never employed any personnel in Delaware to perform research, development, or testing.  *Id.* at ¶ 7.  IV's principal place of business is in Bellevue, Washington.  It also has offices in Mountain View, California, which is within the Northern District of California.  With respect to non-party witnesses, two of the named inventors of the patents-in-suit (Sonjaya Tandon and Mark Raymond Pace) reside within 100 miles of courthouses in the Northern District of California.  *See* D.I. 80 at 4-5.  Prosecuting attorneys for two of the four patents-in-suit reside in the Northern District of California.  *See* D.I. 42 at 3, ¶ 9.  None of the remaining inventors or prosecuting attorneys for the patents-in-suit reside in Delaware.  *Id.* at ¶¶ 8, 10.  Only one named inventor resides within this Court's trial subpoena authority, but just barely within the 100 mile bulge—in Silver Spring, Maryland.  D.I. 80 at 5.

## IV.   LEGAL STANDARDS

### A.    Applicable Law

Federal Circuit law applies to the analysis of severance, and Third Circuit law to the analysis of transfer.  *See In re EMC*, 677 F.3d at 1354 ("[M]otions to sever are governed by

4

Federal Circuit law because joinder in patent cases is based on an analysis of the accused acts of infringement, and this issue involves substantive issues unique to patent law."); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying regional circuit law to analysis of transfer).

### B.    Severance

The Federal Circuit recently addressed under what circumstances the joinder of defendants is proper in patent infringement lawsuits in *In re EMC Corp.*, 677 F.3d at 1354. Joinder of independent defendants is "not appropriate where different products or processes are involved." *Id.* at 1359.  Joinder is "only appropriate where the accused products or processes are the same in respects relevant to the patent." *Id.*

Rule 20 frames the analysis of severance. *Id.* at 1356.  When considering a motion to sever under Rule 21, "courts have looked to Rule 20 for guidance." *Id.* (citations omitted).  Defendants may be joined in a single action only if the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences." *See* Fed. R. Civ. P. 20(a)(2). *Id.*  Even then, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC*, 677 F.3d at 1360.

Under *EMC*, "independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action." *Id.* at 1358. "The logical relationship test is satisfied if there is substantial *evidentiary* overlap in the facts giving rise to the cause of action against each defendant." *Id.* (emphasis added).  Evidentiary overlap is not established by "the sameness of the accused products or processes" alone. *Id.* at 1359.  Sameness may be due to "distinct, albeit coincidentally identical" facts instead of the

"shared, overlapping" facts that are required for the defendants to be deemed part of the "same transaction." *Id.* Thus, "independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*

This Court has recently applied the Rule 20 standard in granting motions to sever and transfer defendants. *See Wacoh Co. v. Kionix, Inc.*, No. 10-167-RGA, 2012 WL 70673, at *7 (D. Del. Jan. 9, 2012) ("*Wacoh*") (granting motion to sever and transfer defendants to two different venues); *InvestPic, LLC v. SAS Institute Inc.*, No. 10-1028-RGA, 2012 WL 1753665, at *6 (D. Del. May 15, 2012) (granting severance and transfer); *IpVenture, Inc. v. Acer, Inc.*, No. 11-588-RGA, 2012 WL 3016958, at *6 (D. Del. July 24, 2012).

## C. Transfer

Whether venue is proper under § 1404(a) must be determined on a case-by-case basis, with the district court weighing a number of case-specific factors relating to the convenience of the parties and witnesses, and the proper administration of justice, based on the individualized facts on record. *In re Verizon Business Network Servs., Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In conducting a transfer analysis, both private and public interest factors are weighed. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interest factors include: 1) plaintiff's forum preference as manifested in the original choice; 2) defendant's forum preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties as indicated by their relative physical and financial condition; 5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records, to the extent that the files could not be produced in the alternative forum. *Id.*

6

The public interest factors include:  1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) in diversity cases only, the familiarity of the trial judge with the applicable state law.  *Id.*

## V.    ARGUMENT

Severance of Trend Micro is proper because the claims against Trend Micro do not arise from the same "transaction or occurrence."  The claims of infringement against Trend Micro concern different accused products than do the claims against other defendants.  *See In re EMC*, 377 F.3d at 1359 ("[J]oinder is not appropriate where different products or processes are involved.").  Trend Micro's accused products were developed and built independently—in some cases much earlier—than the other products accused.  IV has not alleged otherwise.  In addition, there is no significant relationship between Trend Micro and the other defendants.  The defendants are direct competitors whose relationship has historically been adversarial.  Moreover, Trend Micro is the only defendant that was not engaged in license negotiations with IV before the filing of this lawsuit.  *See* D.I. 28 at ¶ 17.  Thus, the common "transaction or occurrence" requirement of Rule 20 is not satisfied for Trend Micro in this case.

### A.    The Claims Against Trend Micro Do Not Arise from "the Same Transaction or Occurrence"

The first requirement of Rule 20 is that the claims against the defendants must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  Under *In re EMC*, this requirement is satisfied when there is "a logical relationship between the separate causes of action."  *In re EMC*,

7

377 F.3d at 1358.  "Logical relationship," in turn, means "substantial *evidentiary* overlap in the facts giving rise to the cause of action against each defendant."  *Id.* (emphasis added).

In this case, there is no evidentiary overlap in the facts giving rise to IV's claims of patent infringement.  The Trend Micro accused products are different from the other accused products, with different histories of development by different software engineers at companies that are direct competitors.  Trend Micro is incorporated in Japan with a principal place of business in Tokyo.  D.I. 43 at ¶ 3.  Engineering of the accused products took place in Taiwan and China, with some research activities in Cupertino, California.  *Id.* at ¶ 6.  McAfee and Symantec are headquartered in Silicon Valley, where their products accused of infringement were developed.  D.I. 37 at ¶¶ 2, 6 (McAfee); D.I. 39 at ¶¶ 2, 5 (Symantec).  Check Point is an Israeli corporation with headquarters in Tel Aviv.  D.I. 25, 30 at ¶ 3.  The development that Check Point does in the United States also takes place in Silicon Valley.  D.I. 44 at ¶ 6.

Defendants are direct competitors in the same industry.  Because the various defendants' accused products offer features that have been developed to meet similar customer demands, they may coincidentally offer (at least superficially) similar features.  But the Federal Circuit ruled in *In re EMC* that coincidental similarities are insufficient to demonstrate the "evidentiary overlap" needed to satisfy the "transaction or occurrence" requirement under Rule 20.  *See In re EMC*, 677 F.3d at 1359 ("To be part of the 'same transaction' requires shared, overlapping facts ... not just distinct, albeit coincidentally identical, facts.").  Without more, "independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical."  *Id.*

The second independent requirement of Rule 20 is of a "question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a)(2)(B).  Common questions of claim

construction and invalidity have been deemed insufficient at least to satisfy the "same transaction or occurrence" requirement of Rule 20.  *See In re EMC*, 377 F.3d at 1357 ("[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity.") No other significant questions of law or fact appear to be shared among the defendants.

To the contrary, the questions of law and fact raised by IV's claims against Trend Micro appear to be distinct from the questions raised for the other defendants.  Trend Micro is alone among the defendants in not having engaged in negotiations with IV prior to the filing of the lawsuit.  To the extent that IV has any claims of willfulness, those claims do not apply to Trend Micro under the "objectively high likelihood of infringing a valid patent" standard.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012); *Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, No. 10-63-LPS, 2012 WL 2061932, at *2 (D. Del. June 5, 2012); *Softview LLC v. Apple Inc. et al.*, No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012).  It would be extremely prejudicial to Trend Micro to be tried alongside defendants accused of willful infringement.  *See Philips Elec. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) (granting severance where there was "a substantial risk of prejudice" that would result if the jury were to believe the defendants linked); *see also Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS, 2011 WL 7121180, at *8 (D. Del. Dec. 29, 2011). Nor should the claims against Trend Micro be consolidated with claims against the other defendants.  Significant prejudice to Trend Micro would result from consolidation.  *Contec*, 220 F.R.D. at 418; *AlphaPet*, 2011 WL 7121180, at *8.  Consolidation of IV's case against Trend with IV's case against the other defendants would be improper for the same reasons that joinder is improper.

9

Trend Micro's circumstances here are remarkably similar to those of the ASUS defendants in a case recently decided by this Court. *See IpVenture, Inc. v. Acer, Inc. et al.*, No. 11-588-RGA, 2012 WL 3016958 (D. Del. July 24, 2012). In that case, the Court granted a motion to sever and transfer the ASUS defendants to the Northern District of California. *Id.* at *3, *6. The Court noted in *IpVenture* that the ASUS defendants, like Trend Micro here, are headquartered in Asia, with their U.S. subsidiaries incorporated and headquartered in California. *Id.* at *3. Citing *EMC*, the Court granted the motion to sever by the ASUS defendants. *Id.* at *3. According to the Court, the plaintiff IpVenture's allegations against the "direct competitors" joined as defendants were insufficient to maintain joinder because there was no "allegation that they are selling the same products or processes." *Id.* at *2. In the present lawsuit, severance of Trend Micro from its direct competitors is proper for the same reasons.

In both *IpVenture* and *Wacoh*, the Court granted motions to transfer post-severance. *See IpVenture*, 2012 WL 3016958 at *6 (transferring ASUS to the N.D. Cal.); *Wacoh*, 2012 WL 70673 at *7 (transferring Kionix to the Northern District of New York and VTI to the Northern District of California). Should the Court grant Trend Micro's motion to sever, as Trend Micro believes is mandated by *EMC*, the section below discusses why post-severance transfer of the claims against Trend Micro is also appropriate in this case.

**B.    The Northern District of California is the Far More Convenient Venue for the Claims Against Trend Micro**

Post-severance, the analysis of transfer weighs heavily in favor of transferring Trend Micro to the Northern District of California, even with IV's choice of forum being given appropriate consideration. In each of the cases mentioned in the preceding section, the analysis of convenience under § 1404(a) was applied to the defendant groups *separately* post-severance.

10

On balance, both private and public factors weigh in favor of transfer of the claims against Trend Micro to the Northern District of California. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).   The private interest factors include:   1) plaintiff's forum preference as manifested in the original choice; 2) defendant's forum preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties as indicated by their relative physical and financial condition; 5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records, to the extent that the files could not be produced in the alternative forum. *Id.*

With respect to choice of forum, as the Court noted in both *IpVenture* and *Wacoh*, while plaintiff's choice of forum in Delaware weighs against transfer, that weight was not as strong "as it would [be] if the plaintiff had its principal place of business (or, indeed, any place of business) in Delaware." *IpVenture*, 2012 WL 3016958 at *4, *7; *Wacoh*, 2012 WL 70673 at *3. In this case, IV's principal place of business is in Bellevue, Washington, and IV has not identified any operations or facilities in Delaware.   Accordingly, IV's choice of forum is entitled to less weight.

The remaining private and public factors overwhelmingly favor transfer of Trend Micro.   Trend Micro prefers the Northern District of California, where its United States headquarters are located in Cupertino, California.  D.I. 43 at ¶ 2.  Cupertino is also the location of most of the Trend Micro witnesses and documents that are located in the United States. *Id.* at ¶ 6.  No party witnesses or documents are located in Delaware.   Traveling to and from Wilmington will be far less convenient for these witnesses than traveling to and from their homes to a courthouse in the San Francisco Bay Area.  It  is fundamentally unfair to discount the relative inconvenience to these witnesses by the relative financial means of Trend Micro as a

company — especially given that IV's witnesses, documents, and counsel are also on the West Coast, and IV has previously filed co-pending litigation in the Western District of Washington. *See* Bartow Decl. at ¶ 2, Ex. A.  None of the documents or known witnesses relevant to this lawsuit is located in Delaware.  To the extent there are physical documents related to research and development in the United States, those are located in Cupertino, California.  D.I. 43 at ¶ 6.

On remarkably similar facts, the Court granted severance and transfer of the ASUS defendants in *IpVenture*.  *See IpVenture*, 2012 WL 3016958 at *3, *6.  The plaintiff in *IpVenture* had its principal place of business on the West Coast with offices in the Northern District of California, but no offices or facilities in Delaware.  *Id.* at *3.  The ASUS defendants included a parent corporation incorporated and headquartered in Taiwan and a United States subsidiary headquartered within the Northern District of California and incorporated in California.  *Id.*  Thus, the claims against ASUS in *IpVenture* constituted "a business dispute between three corporations with no connection to Delaware, but with extensive connections to the Northern District of California."  *Id.* at *5.  As a result, trial against the ASUS defendants may well be "hundreds of thousands of dollars less expensive" in the Northern District of California, given the West Coast locations of the parties, their counsel, and potential witnesses. *Id.*  Essentially the same analysis applies post-severance to Trend Micro here.

Similarly, the public factors weigh overwhelmingly in favor of transferring Trend Micro to the Northern District of California.  The public interest factors include:  1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public

policies of the fora; and 6) in diversity cases only, the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879.

The first factor is neutral because both this Court and the Northern District of California would be able to enforce any judgment in this case. But practical considerations weigh heavily in favor of transfer. It would be far easier for both Trend Micro and IV to litigate and try this dispute in the Northern District of California. On similar facts, the Court especially emphasized the practical considerations as weighing heavily in favor of transfer of ASUS to the Northern District of California in *IpVenture*. *See IpVenture*, 2012 WL 3016958 at *5. The administrative difficulties posed by the relative congestion of the two dockets in the respective fora also favors transfer because Federal Case Management Statistics show the District of Delaware as reporting 25.2 months to trial in civil cases, while N.D. Cal. reports 21.5 months. D.I. 38 at ¶ 6.

But most importantly, the local interest and public policy factors heavily favor transfer of the claims against Trend Micro to the Northern District of California. Unlike the other parties to this lawsuit, Trend Micro is not incorporated in Delaware. There is no local interest or public policy that favors keeping a Japanese corporation with a United States subsidiary incorporated and headquartered in California in a fight among Delaware corporations. On the other hand, the Northern District of California has a strong interest in deciding disputes that involve parties and witnesses located within its boundaries. Trend Micro has been unfairly lumped in with the other defendants in this case, and should be extricated. Severance and transfer here are proper "to secure the just, speedy, and *inexpensive* determination" of this proceeding. Fed. R. Civ. P. 1 (emphasis added).

13

## VI.     CONCLUSION

For the foregoing reasons, defendant Trend Micro asks the Court for the severance of the claims against Trend Micro from those against the other defendants in the case. In the event that severance is granted, Trend Micro respectfully requests that the Court transfer the severed claims against Trend Micro to the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Karen Jacobs Louden (#2881)
OF COUNSEL:                             Michael J. Flynn (#5333)
                                        1201 North Market Street
Yar R. Chaikovsky                       P.O. Box 1347
D. Stuart Bartow                        Wilmington, DE  19899-1347
Michael F. Martin                       (302) 658-9200
MCDERMOTT, WILL & EMERY LLP             klouden@mnat.com
275 Middlefield Road, Suite 100         mflynn@mnat.com
Menlo Park, CA  94025
(650) 815-7400                          *Attorneys for Defendants Trend Micro*
                                        *Incorporated and Trend Micro, Inc. (USA)*
August 1, 2012
6156079.3

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 1, 2012, upon the following individuals in the manner indicated:

Joseph J. Farnan, III                                    *VIA ELECTRONIC MAIL*
Brian E. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Parker C. Folses III                                     *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor
Lindsey N. Godfrey
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
*Attorneys for Plaintiff*

Ryan C. Kirkpatrick                                      *VIA ELECTRONIC MAIL*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
*Attorneys for Plaintiff*

John P. Lahad                                            *VIA ELECTRONIC MAIL*
Weston O'Black
Richard W. Hess
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
*Attorneys for Plaintiff*

Jack B. Blumenfeld                                          *VIA ELECTRONIC MAIL*
Thomas C. Grimm
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
*Attorneys for Check Point Software*
*Technologies Ltd. and Check Point Software*
*Technologies Inc.*

Clement S. Roberts                                          *VIA ELECTRONIC MAIL*
Joseph C. Gratz
DURIE TANGRI, LLP
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for Check Point Software*
*Technologies Ltd. and Check Point Software*
*Technologies Inc.*

Collins J. Seitz, Jr.                                       *VIA ELECTRONIC MAIL*
SEITZ ROSS ARONSTAM & MORITZ LLP
100 South West Street, Suite 400
Wilmington, DE  19801
*Attorneys for McAfee, Inc.*

Edward G. Poplawski                                         *VIA ELECTRONIC MAIL*
Sandra S. Fujiyama
Olivia M. Kim
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
*Attorneys for McAfee, Inc.*

Vernon M. Winters                                           *VIA ELECTRONIC MAIL*
SIDLEY AUSTIN LLP
555 California Avenue Street, Suite 2000
San Francisco, CA  94104
*Attorneys for McAfee, Inc.*

Bryan K. Anderson
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
*Attorneys for McAfee, Inc.*

Jack B. Blumenfeld                                          *VIA ELECTRONIC MAIL*
Thomas C. Grimm
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
*Attorneys for Symantec Corp.*

Mark A. Flagel                                              *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
*Attorneys for Symantec Corp.*

Dean G. Dunlavey                                           *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
*Attorneys for Symantec Corp.*

Andrew J. Fossum                                          *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX  77002
*Attorneys for Symantec Corp.*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)