IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-1067 (LPS) |
| | ) | |
| CHECK POINT SOFTWARE | ) | **PUBLIC VERSION** |
| TECHNOLOGIES LTD.; CHECK POINT | ) | |
| SOFTWARE TECHNOLOGIES, INC.; | ) | |
| McAFEE, INC.; SYMANTEC CORP.; | ) | |
| TREND MICRO INCORPORATED and | ) | |
| TREND MICRO, INC. (USA), | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SYMANTEC CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

**Confidential Version Filed: January 18, 2013**

**Public Version Filed: February 26, 2013**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iii

I.     INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 2

     A.     Symantec's Early Discovery Requests Concerning IV's Licensing Policies ......... 3

     B.     Symantec's Recent Discovery of Facts Relevant to Alleging Patent Misuse .......... 4

           1.     IV's Recent Productions Show That IV Has Artificially Aggregated Patents in an Anticompetitive Manner ..................................... 4

           2.     Symantec Recently Discovered Facts Evidencing IV's Coercive Package Licensing Policies ......................................................................... 5

           3.     Symantec Recently Discovered Facts Demonstrating That IV Includes Irrelevant Patents in Its Portfolio Licenses ................................... 8

           4.     IV's Recent Productions Show That It Abuses the Patent System ............ 10

           5.     IV Has Acknowledged That Allegations of Antitrust Violations and Patent Misuse Are an Expected Consequence of Its Business Practices ...................................................................................................... 10

III.     LEGAL STANDARD ............................................................................................ 11

IV.     ARGUMENT .......................................................................................................... 12

     A.     Good Cause Exists For the Proposed Amendment Under Rule 16(b) ................... 12

           1.     Symantec Was Not Able to Obtain Relevant Facts Supporting Its New Defense Until After the Deadline for Amending Pleadings ............. 12

           2.     The Newly Discovered Facts Establish Symantec's Affirmative Defense of Patent Misuse .......................................................................... 13

     B.     IV Cannot Establish Any Reason to Deny Leave Under Rule 15(a) ..................... 16

           1.     Symantec Has Sufficiently Pled Its Affirmative Defense of Patent Misuse ..................................................................................................... 16

           2.     IV Will Not Be Prejudiced by the Amendment Because It Possesses All of the Information Relevant to Symantec's New Defense ................................................................................................... 18

3.      Symantec Diligently Pursued Discovery Regarding Patent Misuse
        and Requests Leave to Amend in Good Faith ..........................................19

V.      CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Aerocrine AB v. Apieron Inc.*,
  2010 WL 1225090 (D. Del. Mar. 30, 2010) ..........................................................18

*Agere Systems Guardian Corp. v. Proxim, Inc.*,
  190 F. Supp. 2d 726 (D. Del. 2002) .............................................................16, 17

*Am. Securit Co. v. Shatterproof Glass Corp.*,
  268 F.2d 769 (3d Cir. 1959) ..........................................................................14

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  2011 WL 6934557 (D. Del. Dec. 30, 2011) .......................................................17

*Bechtel v. Robinson*,
  886 F.2d 644 (3d Cir. 1989) ..........................................................................18

*BigBand Networks, Inc. v. Imagine Commc'ns, Inc.*,
  2010 WL 2898286 (D. Del. July 20, 2010) .......................................................19

*Cadence Pharm., Inc. v. Paddock Laboratories, Inc.*,
  2012 WL 4565013 (D. Del. Oct. 1, 2012) (Stark, J.) ..........................................17

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) .......................................................................14

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001) ..........................................................................18

*Dole v. Arco Chemical Co.*,
  921 F.2d 484 (3d. Cir 1990) ..........................................................................11

*Enzo Life Sciences, Inc. v. Digene Corp.*,
  270 F. Supp. 2d 484 (D. Del. 2003) ...........................................................11, 19

*Hill v. City of Scranton*,
  411 F.3d 118 (3d Cir. 2005) ..........................................................................11

*ICU Med., Inc. v. RyMed Techs., Inc.*,
  674 F. Supp. 2d 574 (D. Del. 2009) .................................................................19

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .........................................................................16

*Internet Media Corp. v. Hearst Newspapers, LLC*,
  2012 WL 3867165 (D. Del. Sept. 6, 2012) .......................................................17

*Koken v. GPC Int'l, Inc.*,
  443 F. Supp. 2d 631 (D. Del. 2006) .................................................................16

*Leader Techs. v. Facebook, Inc.*,
    2010 WL 2545959 (D. Del. Jun. 24, 2010) (Stark, J.)............................................11

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010)..............................................................................13

*Roquette Freres v. SPI Pharma, Inc.*,
    2009 WL 1444835 (D. Del. May 21, 2009)....................................................11, 19

*Senza-Gel Corp. v. Seiffhart*,
    803 F.2d 661 (Fed. Cir. 1986)................................................................................16

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000)...................................................................................16

*Weed v. Ally Fin. Inc.*,
    2012 WL 2469544 (E.D. Pa. June 28, 2012).........................................................17

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    868 F. Supp. 2d 376 (D. Del. 2012).......................................................................17

## <u>Statutes</u>

Fed. R. Civ. P. 9(b) ......................................................................................................17

Fed. R. Civ. P. 12(b)(6)...............................................................................................16

Fed. R. Civ. P. 15(a) ........................................................................................11, 16, 19

Fed. R. Civ. P. 16(b) ........................................................................................11, 12, 19

# I.    <u>INTRODUCTION</u>

During the last several months, well after the May 25, 2012 deadline to amend pleadings, Defendant Symantec Corporation ("Symantec") has learned from documents produced by Plaintiff Intellectual Ventures I LLC ("IV"), and the testimony of IV's witnesses, that IV has engaged in improper, anticompetitive conduct to expand the scope of the patents-in-suit beyond that granted by the Government, with anticompetitive effect. For these reasons, Symantec respectfully requests leave of Court to amend its Answer to plead a new affirmative defense that the patents-in-suit are unenforceable due to patent misuse by IV.

Indeed, IV has used its patent portfolio to extract "hold-up" payments from numerous companies, including competitors of IV's own investors. As just one example, IV revealed only last month that its recent $██████ settlement with former defendant McAfee, a competitor of each of the other defendants in this action, included a ████████████████████████████ ███████████████████████████████████████████████. In the words of IV's co-founder and CEO, companies that do not pay extra for IV's offered package licenses are ████████████████████████████████████ ██. IV has committed patent misuse through its massive patent aggregation and anticompetitive use of its patent portfolio, including the patents-in-suit, to improperly seek and secure supra-competitive prices, or alternatively, to seek to block entry or continued participation by competitors in essential markets, such as the market for security and antivirus software.

As further detailed below, good cause exists to permit Symantec to conform its pleadings to the evidence recently uncovered. Allowing Symantec to amend its Answer will not prejudice IV, cause any surprise, or result in any additional discovery because all of the facts pertinent to

Symantec's patent misuse defense are in IV's possession and because Symantec does not need any additional discovery to pursue this defense.

## II.    STATEMENT OF FACTS

IV filed this lawsuit on December 8, 2010 against Symantec and three other defendants. (D.I. 1.)  Symantec answered the Complaint on January 31, 2011 and asserted, among other things, six affirmative defenses and two counterclaims.  (D.I. 23.)  In its Answer, Symantec expressly stated that it reserved the right to allege "all affirmative defenses . . . that may be available in the future based on discovery and further factual investigation in this action."  (*Id.* at 11.)

The deadline to amend or supplement pleadings was May 25, 2012.  (D.I. 119 ¶ 2.) However, depositions of IV's witnesses did not begin until August 31, 2012, three months after the amendment deadline.  Although fact discovery technically closed on November 21, 2012 (D.I. 403 ¶ 1), depositions are continuing until at least January 23, 2013 because, among other reasons, IV did not identify witnesses for some of Defendants' Rule 30(b)(6) topics until December 18 (Declaration of Yury Kapgan ("Kapgan Decl.") Ex. G), despite Defendants' repeated requests for IV to produce such witnesses.  (*Id.* Ex. F.)  IV did not identify the Rule 30(b)(6) designee on its licensing practices and policies until September 7, 2012.  (*Id.* Ex. E at 1.)

Similarly, documents in this case have been and continue to be produced well after the February 7, 2012 deadline by which the Court set document production to be "substantially complete."  (D.I. 119 ¶ 3b.)  IV produced only four volumes of documents by February 7, 2012. (Kapgan Decl. Ex. A at 1-3.)  IV produced approximately *twenty-three* additional volumes thereafter.  (*Id.* at 4-24.)  Indeed, IV produced documents as recently as January 15, 2013.

(*Id.* Ex. CC.)  Further, IV still has not responded to certain of Defendants' requests for documents.  (*Id.* Ex. L.)

The facts supporting Symantec's patent misuse defense were not fully revealed until IV's more recent productions of documents as well as recent depositions of IV witnesses, all of which occurred after the Court-ordered deadlines.  In some cases, Symantec did not have an opportunity to depose IV witnesses concerning such documents until several months after the documents were produced.  (*See, e.g.*, Kapgan Decl. Ex. M (no knowledgeable witness available concerning Dep. Ex. IV-43 until November 9, 2012).)  Symantec requires no additional discovery to pursue its patent misuse defense.

A.     <u>Symantec's Early Discovery Requests Concerning IV's Licensing Policies</u>

Early on, Symantec pursued discovery of facts that would be relevant to a potential misuse defense.  For example, on August 9, 2011, Symantec served its first set of requests for production of documents (D.I. 116), seeking documents relating to IV's licensing policies, practices, agreements and business plans, among other things:

- "All documents and things relating to your policy or practices concerning your entry into license, royalty, authorization-to-use agreements, assigning, selling, purchasing or otherwise conveying technology, including patents, regardless of date."  (Kapgan Decl. Ex. B at 9 (Request No. 7).)

- "All documents and things relating to license agreements, settlement agreements or other agreements containing a license or covenant not to sue with respect to patent rights, including any to the Patents-in-Suit, and those relating to the same subject matter as, or subject matter that you consider comparable to, the Patents-in-Suit."  (*Id.* (Request No. 6).)

- "All documents and things relating to . . . your business plans and strategies."  (*Id.* at 21 (Request No. 93).)

In addition, Defendants served their First Common Set of Interrogatories to IV on August 23, 2011.  (D.I. 122.)  Interrogatory No. 6 requested that IV "[i]dentify and describe all

patent licenses, offers to license, attempts to negotiate a license, license negotiations, settlement negotiations, settlement agreements, covenants not to sue, and any other communications, negotiations or agreements involving the Patents-in-Suit . . . ."  (Kapgan Decl. Ex. C at 10.)

### B. Symantec's Recent Discovery of Facts Relevant to Alleging Patent Misuse

Despite Symantec's early requests for discovery relating to IV's licensing policies, practices and agreements, IV did not produce many relevant documents until after May 25, 2012. IV's witnesses on these subjects were not made available until at least several months later.  The evidence uncovered reveals that IV, alone and in combination with affiliates and other entities, has engaged and is continuing to engage in a plan to broaden the scope of its patents, including the patents-in-suit, beyond the scope granted by the Government and with anticompetitive effect.

### 1. IV's Recent Productions Show That IV Has Artificially Aggregated Patents in an Anticompetitive Manner

IV produced documents after May 25, 2012 indicating that it has attempted to create an artificial thicket of patents reading on Internet security and antivirus technologies, which it is using to raise prices to monopoly levels.  As revealed in a document that IV produced on September 14, 2012 (Kapgan Decl. Ex. A at 16), by the end of 2010, IV—through Invention Investment Fund I, L.P. and Invention Investment Fund II, LLC ("Fund I" and "Fund II")—had

███████████████████████████████████████████████████████████

█████████████████████.  (*Id.* Ex. R at HHM_001229.)  IV co-founder and managing partner, Peter Detkin, proclaimed in an article produced on July 18, 2012 (*id.* Ex. A at 7) that "the access and negotiating strength of a large portfolio provides a powerful market advantage." (*Id.* Ex. K at IV-SEC-00087315.)

## 2. Symantec Recently Discovered Facts Evidencing IV's Coercive Package Licensing Policies

Symantec learned through depositions and recently produced documents that IV systematically abuses its market power to coerce licensing "targets" into taking massive portfolio licenses at supra-competitive prices as the only means to secure patent peace with IV. IV co-founder and CEO, Nathan Myhrvold, stated in an email produced on July 18, 2012 (Kapgan Decl. Ex. A at 7) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* Ex. O at IV-SEC-00088015.)  Mr. Myhrvold's deposition testimony regarding his statements in this email did not occur until October 16, 2012. (*Id.* Ex. T at 121:8-122:23.)

Richard Harris, one of IV's licensing executives and a Rule 30(b)(6) designee, testified during his September 14, 2012 deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(*Id.* Ex. U at 152:16 – 153:2 (emphasis added).)

Ryan Clark, a former IV licensing executive, stated in a presentation produced on July 18, 2012 (*id.* Ex. A at 7) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* Ex. S at IV-SEC-00085434.)  Mr. Clark's deposition testimony regarding this presentation did not occur until November 15, 2012.  (*Id.* Ex. V at 76:23-79:20.)

Edward Jung, IV's co-founder and former head of licensing, was only deposed a few days ago on January 15, 2013 after the Court ordered his deposition.  Mr. Jung testified that, to his knowledge, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* Ex. AA at 150:6-151:2.)

In addition, Mr. Jung testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED] (*Id.* at 146:10-149:4.)  Mr. Jung further acknowledged  that  [BLACK BAR — REDACTED]

[BLACK BAR — REDACTED] (*Id.* at 84:13-87:14.)  Mr. Jung conceded, " [BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED] " (*Id.* at 86:15-19.)

IV's plan to coerce companies into licensing large (and to a meaningful extent unnecessary) patent portfolios has panned out in practice.  IV has secured portfolio licenses, which include the patents-in-suit, from numerous companies that are not even in the Internet security and software space.  For example, Sanjay Prasad, client account and licensing executive at IV, testified at his September 18, 2012 deposition that [BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED] (*Id.* Ex. Y at 145:14-146:2.)  Further, through a document produced on September 6, 2012 (*id.* Ex. A at 15), Symantec learned that IV has portfolio licenses, which include the patents-in-suit, with at least the following additional companies: [BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

[BLACK BAR — REDACTED]

█████ ██ ██ ████ █████ ██████ ██ █ ████ ████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ (*Id.* Ex. Q.)  None of these companies appears to make Internet security or antivirus software products, yet all of them have licenses to the patents-in-suit as the result of being required to take out large portfolio licenses.

IV also demanded certain investors to take "Old IP" licenses, or licenses to all of the patents that IV had previously acquired, regardless of whether those patents are relevant to the new investor.  For example, ███████████████████████████████████████████ ██████████████████████████████████████████████████████████ (*Id.* Ex. M at IV-SEC-00008395.)  ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* at IV-SEC-00008410.)  Symantec did not have the opportunity to depose any knowledgeable IV witness concerning this document until Mr. Detkin's deposition on October 30, 2012.  (*Id.* Ex. Z at 340:2-342:14; Ex. U at 73:6-15 (Richard Harris stating that he had never seen Dep. Ex. IV-43 before).)  Moreover, at his deposition only a few days ago, Mr. Jung testified that ██████████ ███████████████████████████████████████████████████████ (*Id.* Ex. AA at 151:19-25.)  Although Mr. Jung ███████████████████████████████, Mr. Detkin explained in an email produced on July 18, 2012 (*id.* Ex. A at 7) that "███████████ ██████████████████████████████████████████████████" (*Id.* Ex. DD.)

### 3. Symantec Recently Discovered Facts Demonstrating That IV Includes Irrelevant Patents in Its Portfolio Licenses

Symantec recently learned that IV includes admittedly irrelevant patents in its portfolio licenses. IV packages weak and disparate patents together ██████████████████████ ████████████████████████████████████████████████████████████ (Kapgan Decl. Ex. N at IV-SEC-00114468.) Don Merino, IV's Senior Vice President of Licensing, testified at his November 7, 2012 deposition that ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ (*Id.* Ex. W at 28:21-31:17.) As IV admitted in a document produced on October 3, 2012 (*id.* Ex. A at 17), "█████████████████████ ███████████████████████████" (*Id.* Ex. N at IV-SEC-00114489.)

At his November 9, 2012 deposition, Joseph Kosiara, IV's director of finance and Rule 30(b)(6) designee, testified that ████████████████████████████████████████ ████████████████████████████████████████ (*Id.* Ex. X.) Specifically, IV ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* Ex. M at IV-SEC-00008386.) Symantec did not have the opportunity to depose any IV witness on its internal accounting system until Mr. Kosiara's November 9, 2012 deposition. (*See, e.g.*, *id.* Ex. U at 73:6-15 (Richard Harris stating that he had never seen Dep. Ex. IV-43 before).)

Mr. Kosiara testified that ███████████████████████████████████████

███████████████████████████████████████████████████████████████

(*Id.* Ex. X at 125:6-10.)  Defendants promptly requested during Mr. Kosiara's deposition that IV produce these documents, and sent a follow-up email on November 16, 2012 requesting the documents.  (*Id.* Ex. H.)  IV responded by producing one document on December 5, 2012.  (*Id.* Ex. I.)  This document revealed that IV licensed ███████ patents and patent applications to McAfee/Intel as part of the settlement agreement.  (*Id.* Ex. J.)  A mere ████████████████

██████████████ (*Id.*) ████████████████████████████████████

████████████████████ (*Id.*)

By IV's own admission, therefore, ██████ of the ██████ patents that IV licensed to McAfee/Intel were included in the package license for no reason at all, or simply because they were in the same broad category as patents that IV believes may actually be relevant to McAfee/Intel.  Further, Symantec learned from Mr. Kosiara that, in accordance with IV's standard policy, ████ of the revenue generated from the McAfee/Intel settlement was allocated to

██████████████████████████████████████████████████████████

████████ (*Id.* Ex. X at 126:18-130:18; Ex. M at IV-SEC-00008386 – 00008387.)

Mr. Kosiara further testified that, ███████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████ (*Id.* Ex. X at 206:24-207:5.)

### 4. IV's Recent Productions Show That It Abuses the Patent System

IV produced documents after May 25, 2012 indicating that it abuses the patent system's legal remedies to threaten companies that hesitate to comply with IV's demands. Mr. Myhrvold admonished in an email that █████████████████████████████████

████████████████████████████████████████████████████████

██ (*Id.* Ex. BB.) Mr. Myhrvold elaborated on this email at his deposition on October 16, 2012, explaining that ██████████████████████████████████████████████

████████████████████████████████████ (*Id.* Ex. T at 237:9-12.)

As a former IV executive explained in an article produced on July 18, 2012 (*id.* Ex. A at 7), IV's strategy is "to hold entire industries hostage with high licensing fees . . . ." (*Id.* Ex. P at IV-SEC-00087350.) Any company that refuses to take a license "will face a lawsuit funded by some seriously deep pockets." (*Id.*)

### 5. IV Has Acknowledged That Allegations of Antitrust Violations and Patent Misuse Are an Expected Consequence of Its Business Practices

In a document produced on October 3, 2012 (Kapgan Decl. Ex. A at 17), IV acknowledged that █████████████████████████████████████████████

(*Id.* Ex. N at IV-SEC-00114493.) "████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ " (*Id.*) IV acknowledged that "████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ " (*Id.*) Moreover, IV recognized, "████████

███████████████████████████████████████████████████████

██████████████████████████████████████ " (*Id.*)

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) and 16(b) govern Symantec's motion for leave to amend its Answer.  Rule 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. Proc. 15(a)(2).  The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities.  *See, e.g.*, *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).  Courts have repeatedly held that leave to amend ordinarily should be granted unless it is "apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

Rule 16(b) requires a showing of "good cause" by the movant to modify a scheduling order.  Fed. R. Civ. Proc. 16(b)(4).  This good cause element focuses on the diligence of the moving party rather than on prejudice to the opposing party.  *See, e.g.*, *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009).  Establishing good cause requires the movant to show that, even with diligence, the moving party could not have met the deadlines set by the court.  *See, e.g.*, *id.*; *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 488-89 (D. Del. 2003) (granting motion for leave to amend five weeks after depositions provided new evidence of inequitable conduct, even though defendant had knowledge of the same facts prior to the amending deadline); *Leader Techs. v. Facebook, Inc.*, 2010 WL 2545959, at *6 (D. Del. Jun. 24, 2010) (Stark, J.) (granting leave to amend answer to include an inequitable conduct defense and counter claim after the close of fact discovery).

## IV.    ARGUMENT

### A.    Good Cause Exists For the Proposed Amendment Under Rule 16(b)

#### 1.    Symantec Was Not Able to Obtain Relevant Facts Supporting Its New Defense Until After the Deadline for Amending Pleadings

In order to conform the pleadings to the evidence produced in this case, Symantec should be permitted to amend its Answer to include a patent misuse defense.  Symantec has shown good cause to modify the Scheduling Order under Rule 16(b) because, despite its diligence, the facts supporting the defense did not come to light until well after the May 25, 2012 deadline for amended pleadings.

Very early on in the case, Symantec sought information regarding IV's licensing policies, practices and agreements.  For example, as described above, Symantec requested productions of all such documents in its very first Request For Production to IV on August 9, 2011.  Symantec continuously and diligently sought such information throughout discovery.  IV produced approximately twenty-three volumes of documents after the February 7, 2012 deadline for the substantial completion of document production; IV's most recent production occurred on January 15, 2013.  Depositions of IV's witnesses did not begin until August 31, 2012—well after the May 25 amendment deadline—and they have not yet been completed.

As described above, Symantec learned numerous facts supporting a misuse defense only after the May 25 deadline and after depositions commenced.  For example, Symantec first learned of the specific terms of IV's settlement with McAfee/Intel during Mr. Kosiara's deposition on November 9, 2012.  Even then, it was not until after December 5, 2012 that IV produced the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Further, IV produced documents on July 18, 2012 evidencing its policy of abusing companies that hesitate to comply with IV's offered package licenses. IV co-founder Mr. Myhrvold stated at his deposition on October 16, 2012 that ████████████████████ ████████████████████

### 2. The Newly Discovered Facts Establish Symantec's Affirmative Defense of Patent Misuse

As stated in Symantec's proposed Amended Answer, the evidence demonstrates that IV, alone and in combination with affiliates and other entities, has engaged and is continuing to engage in a scheme to impermissibly broaden the scope of its patents, including the patents-in-suit, with anticompetitive effect. *See Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 2480, 179 L. Ed. 2d 1209 (2011).

First, IV has compelled and sought to compel licensees to take—and pay for—licenses to irrelevant and unwanted patents as a condition for obtaining licenses to patents reading on Internet security and antivirus products. IV asserts it has monopoly power in the relevant market for Internet security and antivirus technologies, because no reasonable substitutes exist for a license to those patents. Thus, if IV raises prices for its patents reading on Internet security and antivirus products above competitive levels, putative IV licensees cannot look to other patent holders for substitutes. A license to IV's patents reading on Internet security and antivirus products is therefore, according to IV's own assertions, indispensable. The fact that IV has been able consistently and profitably to charge monopoly prices demonstrates that demand-side substitutability does not limit IV's monopoly power.

IV has conditioned and sought to condition a license to the patents reading on Internet security and antivirus products on the putative licensee's willingness to also take and pay for irrelevant and unwanted patents. Those unwanted patents are not simply added to the patents

reading on Internet security and antivirus products "for free." Rather, once again based on IV's own internal classifications, IV attributes more than ███ of the payments extracted from the licensee to those irrelevant and unwanted patents. IV is thus seeking to extract supra-competitive royalties for the package license. IV's extraction of supra-competitive royalties affects a substantial amount of commerce. Indeed, as demonstrated by IV's existing portfolio licenses, IV's conduct of compelling licensees to take and pay for licenses to irrelevant and unwanted patents is not limited to companies in the Internet security and antivirus space.

Forced package license demands, such as IV's, are "classic grounds of patent misuse . . . ." *See, e.g.*, *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). *citing* 6 Donald S. Chisum, *Chisum on Patents* § 19.04[3] (2011) ("classic acts of misuse are . . . conditioning the granting of a license under one patent upon the acceptance of another and different license"). *See also Am. Securit Co. v. Shatterproof Glass Corp.*, 268 F.2d 769, 777 (3d Cir. 1959) ("Mandatory package licensing is no more than the exercise of the power created by a particular patent monopoly to condition the licensing of that patent upon the acceptance of another patent . . . . if [the patent owner] compels a licensee to accept a package of patents or none at all, he employs one patent as a lever to compel the acceptance of a license under another. Equity will not countenance such a result.").

Second, IV has illegally monopolized relevant markets for patent portfolios that it asserts are indispensable for making, selling, and using Internet security and antivirus products, as well as products in other fields. IV has created monopolies in these markets by aggregating and bundling a collection of patents for which, according to IV, no substitutes exist. By maintaining exclusive licensing authority over the portfolio and the patents comprising it, IV creates, maintains, and exploits bottleneck access to the patents covering these essential technologies.

IV repeatedly has demonstrated its power to raise prices for its portfolio of patents by profitably charging supra-competitive royalties without suffering loss of demand or sales toward other licensors. The payments that IV extracts from licensors do not reflect the inherent value of the patents in IV's portfolio, which a licensee would pay in a competitive market. Rather, the payments reflect "hold up" value, resulting from IV's deliberate strategy of mass patent aggregation followed by serial patent assertion.

By aggregating patents with the intent of subsequently asserting them in serial litigation, IV makes it prohibitively costly for a target to invest in defending against alleged infringement of IV's patent portfolio. For even if the target succeeds in defeating IV's first wave of asserted patents, IV's strategy is to file another lawsuit, and then another, and so on. Consequently, a rational target would pay for limited patent peace, *even if IV does not have a single valid and infringed patent in its portfolio*. Such payments are therefore not compensation for the inventive value of the patent. Rather, they are hold-up payments, entirely attributable to IV's willful patent aggregation and serial assertion strategy. Deliberately maximizing the cumulative cost of patent litigation in order to extract payments above and beyond the value of the patent in a competitive marketplace extends the patent monopoly to derive a benefit not attributable to the use of the patent and therefore constitutes misuse.

IV has acted throughout with specific intent to monopolize. It has carefully chosen, aggregated, and asserted patents specifically in order to maximize their cumulative hold-up value.

IV's conduct has harmed the competitive process by, for example, forcing and seeking to force makers of Internet security and antivirus products to pay monopoly overcharges in the markets for Internet security and antivirus technologies and portfolios. Such supra-competitive

royalties also restrict output and raise prices in the downstream market for the technology-bearing products, therefore harming consumers. Moreover, by raising the costs of competitors of IV's investors, IV injures competition in the market for Internet security and antivirus products, as well as other products that it purports to cover with its patent portfolio.

By compelling licensees to take and pay for unwanted, irrelevant patents as a condition for obtaining licenses to patents reading on Internet security and antivirus products and by monopolizing the market for patent portfolios that IV asserts are indispensable for making, selling, and using Internet security and antivirus products, IV has committed patent misuse rendering the patents-in-suit unenforceable for so long as the misuse continues. *See, e.g.*, *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 668 n.10 (Fed. Cir. 1986).

Since learning of IV's misuse, Symantec diligently prepared this motion for leave to amend its Answer. Good cause exists to allow the proposed Amended Answer because Symantec could not have met the Court's scheduled deadline to amend pleadings despite its diligence.

**B.**     <u>**IV Cannot Establish Any Reason to Deny Leave Under Rule 15(a)**</u>

        **1.**     <u>**Symantec Has Sufficiently Pled Its Affirmative Defense of Patent Misuse**</u>

Symantec has sufficiently pleaded its affirmative defense of patent misuse. An amendment is futile only where it is frivolous or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). In determining futility, courts apply the same test as with a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under Rule 12(b)(6), courts do not weigh the facts nor determine whether a party will ultimately prevail. *See, e.g.*, *Agere Sys. Guardian Corp. v.*

*Proxim, Inc.*, 190 F. Supp. 2d 726, 736 (D. Del. 2002). "Only where it is clear to the court . . . that a claim has *no* possibility of succeeding on the merits, will the court disallow it by denying leave to amend." *Id.*

Further, patent misuse defenses do not need to be pleaded with particularity under Rule 9(b) unless the patent misuse defense alleges fraud. *See, e.g.*, *Cadence Pharm., Inc. v. Paddock Laboratories, Inc.*, 2012 WL 4565013, at *2 n.2 (D. Del. Oct. 1, 2012) (Stark, J.); *Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 WL 6934557, at *4 (D. Del. Dec. 30, 2011). Moreover, courts have held that the heightened pleading standards of *Twombly* and *Iqbal* do not apply to affirmative defenses such as patent misuse. *See, e.g.*, *Bayer CropSciences*, 2011 WL 6934557, at *4; *Cadence*, 2012 WL 4565013, at *1 n.1; *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 384 n.3 (D. Del. 2012). Indeed, affirmative defenses "need not be plausible to survive." *Internet Media Corp. v. Hearst Newspapers, LLC*, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012). Rather, an affirmative defense "must merely provide fair notice of the issue involved." *Id.* Thus, a defendant has to "merely state, not show, an affirmative defense." *Cadence*, 2012 WL 4565013, at *1 n.1 (quoting *Weed v. Ally Fin. Inc.*, 2012 WL 2469544, at *3 (E.D. Pa. June 28, 2012)).

Symantec's proposed amended Answer easily meets the liberal pleading standards for affirmative defenses. As stated in Symantec's proposed Amended Answer and as summarized above, IV (alone and in combination with affiliates and other entities) has engaged and is continuing to engage in a scheme to impermissibly broaden the scope of its patents, including the patents-in-suit, with anticompetitive effect. The proposed Amended Answer puts IV on clear notice of the issues involved.

### 2. IV Will Not Be Prejudiced by the Amendment Because It Possesses All of the Information Relevant to Symantec's New Defense

Allowing Symantec to amend its Answer will not prejudice IV in any way. In the Third Circuit, the non-moving party has the burden of proving that actual prejudice will result from the amendment. *Aerocrine AB v. Apieron Inc.*, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010). Delay alone is an insufficient reason to deny leave to amend. *See, e.g.*, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, to prove undue prejudice, the non-movant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

Here, IV will not be unfairly disadvantaged because all of the evidence supporting Symantec's patent misuse claims is within IV's possession and control. As summarized above, all of the relevant facts come from IV's own documents and statements made by IV's witnesses. Because IV possesses all of the relevant evidence, it will not need any additional discovery from Symantec to support its response to Symantec's allegations. Likewise, given the facts that already have come to light during discovery, Symantec will not need any additional discovery to support its new affirmative defense.

Moreover, IV acknowledges that ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ IV will suffer no surprise from allegations of patent misuse.

18

### 3. Symantec Diligently Pursued Discovery Regarding Patent Misuse and Requests Leave to Amend in Good Faith

Symantec diligently pursued information concerning IV's licensing practices throughout discovery and brought the instant motion soon after discovering evidence of IV's misuse. Numerous courts have provided leave to amend when defendants learn of relevant facts after the scheduled amendment deadline. *See, e.g.*, *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 578-79 (D. Del. 2009) (holding both Rule 16(b) and 15(a) were satisfied when motion to amend to add inequitable conduct claim was filed after discovery had already closed because defendant had diligently pursued discovery relating to its claim); *Enzo Life Sciences*, 270 F. Supp. 2d at 489 (allowing leave to amend seven months after the deadline because even though information was available from prosecution history, defendant prudently confirmed factual allegations through discovery); *BigBand Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898286, at *2 (D. Del. July 20, 2010) (allowing leave to amend after amendment deadline because defendant filed its motion within weeks of learning the required information from depositions conducted after the amendment deadline); *Roquette Freres*, 2009 WL 1444835, at *5-6 (allowing leave to amend seven months after deadline because even though public documents were available earlier, it was proper to wait until inventor depositions).

Here, Symantec was diligent in gathering facts to support its defense of patent misuse. Symantec discovered numerous facts supporting a patent misuse defense only recently—and could only have done so after the amendment deadline, given IV's voluminous later productions and the fact that all depositions of IV's witnesses were scheduled at least three months after the amendment deadline. Symantec only learned and confirmed recently that IV actually ██████ ████████████████████████████████ in its portfolio licenses. Symantec learned of the existence of certain ████████████████████ documents for the first time at

Mr. Kosiara's deposition on November 9, 2012, and IV only produced one such document on December 5, 2012. IV has yet to produce similar relevant documents despite Defendants' repeated and diligent requests.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Symantec respectfully requests that the Court grant its motion for leave to file an Amended Answer that includes a new affirmative defense based on patent misuse of the patents-in-suit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

_____
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

January 18, 2013
6958724