IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 10-1067 (LPS) |
| CHECK POINT SOFTWARE | ) | |
| TECHNOLOGIES LTD.; CHECK POINT | ) | **REDACTED** |
| SOFTWARE TECHNOLOGIES, INC.; | ) | **PUBLIC VERSION** |
| McAFEE, INC.; SYMANTEC CORP.; | ) | **FILED 3/15/13** |
| TREND MICRO INCORPORATED and | ) | |
| TREND MICRO, INC. (USA), | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SYMANTEC CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO
AMEND ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

March 1, 2013

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com

*Attorneys for Defendant Symantec Corporation*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES……………………………………………………………...ii

I. SYMANTEC HAS GOOD CAUSE TO AMEND ITS ANSWER; THIS WILL
NOT UNDULY PREJUDICE IV ........................................................................................1

II. SYMANTEC HAS SUFFICIENTLY ALLEGED PATENT MISUSE; IV HAS
FAILED TO ESTABLISH THAT THE DEFENSE IS FUTILE .......................................4

    A. Legal Standard ........................................................................................5

    B. IV's Targeted Patent Aggregation and Assertion Campaign Constitutes
Patent Misuse ..........................................................................................6

    C. IV Has Committed Patent Misuse Through Its Forced Package Licensing.............7

        1. Symantec Explicitly Alleged IV's Misuse of the Patents-in-Suit................8

        2. The Amended Answer Clearly Pleads the Fact of Coercion ......................8

        3. Symantec Has Plausibly Alleged Harm to Competition.............................9

III. CONCLUSION..................................................................................................................9

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Auto. Radio Mfg. Co. v. Hazeltine Research, Inc.*,
   339 U.S. 827 (1950)..................................................................................................6

*Bayer AG v. Housey Pharmaceuticals, Inc.*,
   228 F. Supp. 2d 467 (D. Del. 2002).............................................................................8

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989).........................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................5

*Cadence Pharm., Inc. v. Paddock Labs., Inc.*,
   No. 10-cv-733, 2012 WL 4565013 (D. Del. Oct. 1, 2012) (Stark, J.) ................5, 8, 9

*Internet Media Corp. v. Hearst Newspapers, LLC*,
   No. 10-cv-690, 2012 WL 3867165 (D. Del. Sept. 6, 2012).........................................5

*McCullough Tool Co. v. Well Surveys, Inc.*,
   343 F.2d 381 (10th Cir. 1965) .....................................................................................9

*Minebea Co., Ltd. v. Papst*,
   444 F. Supp. 2d 68 (D.D.C. 2006) ..............................................................................8

*Princo Corp. v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010)....................................................................................6

*Roquette Freres v. SPI Pharma, Inc.*,
   No. 06-cv-540, 2009 WL 1444835 (D. Del. May 21, 2009) .......................................5

*U.S. Philips Corp. v. ITC*,
   424 F.3d 1179 (Fed. Cir. 2005)....................................................................................7

### Statutes

Fed. R. Civ. P. 8....................................................................................................................5, 9

### Other Authorities

ABA Section of Antitrust Law, Antitrust Law Developments (7th ed. 2012) ................1

## I. SYMANTEC HAS GOOD CAUSE TO AMEND ITS ANSWER; THIS WILL NOT UNDULY PREJUDICE IV

On September 28, 2012, co-defendant McAfee settled out of this lawsuit by agreeing to pay IV ███████ for a license to a huge portfolio of patents owned by IV. Of the ███████ McAfee paid for the portfolio license, IV allocated nearly ███████ to the four patents-in-suit, ███████ to ███████ that it threatened McAfee with but did not assert, and ███████ of the settlement value—to ███████ that were unasserted and/or irrelevant to McAfee's business. (Kapgan Decl. Ex. J, Ex. M at IV-SEC-00008386-87, Ex. 6.)

IV's conduct and own internal allocations demonstrate that IV is engaged in a textbook example of patent misuse, because IV has compelled McAfee to take—and pay for—licenses to irrelevant and unwanted patents as a condition for obtaining licenses to patents relevant to McAfee's Internet security and antivirus products. *See* ABA Section of Antitrust Law, Antitrust Law Developments 1119-20 (7th ed. 2012) ("[C]ourts have found misuse . . . where a patentee compelled a licensee of one patent to take unwanted licenses under other patents.") This evidence is directly relevant to Symantec's misuse defense, because Symantec is complaining about the same conduct, involving the same patents, reading on very similar products, in the same lawsuit.

Moreover, while IV paid a mere ███████ for the IP groups containing the four patents-in-suit (and others), IV's February 2013 damages reports claim that Symantec should be required to pay more than ███████ for a non-exclusive license to just those four patents. (Kapgan Decl. Ex. 1 at 3, Ex. 2 at 5, Ex. 7.) Evidence of this ███████ valuation gap is relevant to Symantec's misuse defense, because it shows that IV's anticompetitive patent aggregation practices are being used to acquire monopoly power not embraced in the patents-in-suit, and on that basis to wildly inflate purported damages claims in order to extort a portfolio license

overwhelmingly comprised of admittedly unnecessary patents. Indeed, IV's general counsel boasted about the publicity IV was receiving for ███████████████ and the ███████████████ demonstrated by its patent assertions, in a presentation entitled ███████████████ dated May 3, 2012. (*Id.* Ex. 5 at HHM_000775, 780.) Symantec did not obtain a copy of this IV document until September 14, 2012. (*Id.* Ex. A at 16.)

None of this evidence was available before the May 25, 2012 deadline to amend pleadings without leave of court. Rather, these and other important facts trickled out from October 2012 through February 2013 in documents produced by IV, in depositions of IV employees, and in IV's expert reports. IV cannot dispute the timing of these disclosures. IV disclosed its settlement with McAfee in October 2012 (D.I. 382); IV's witness concerning its internal accounting system testified in November 2012 (Kapgan Decl. Ex. X); and IV produced documents from that system in December 2012 which revealed that McAfee (and its parent, Intel) were compelled to take a license to over ███ unwanted and unasserted patents in order to obtain a license to the four asserted patents (*id*. Ex. I, Ex. J).

Remarkably, IV did not mention any of this in its Answering Brief.

Of course, IV could not keep all of its activities a complete secret before this litigation—or before the May 25, 2012 deadline to amend pleadings without leave of court. The fact that IV was aggregating thousands of patents in different industries was known for some time. But that fact, and the other general facts about IV's business that IV cites as being known to Symantec

2

prior to May 25, 2012, are cherry-picked in isolation, tell only a fraction of the story, and hardly demonstrate that it should be too late to do anything about IV's conduct.[1]

The specifics about IV's conduct that are just now coming to light are too important to sweep under the rug because IV makes a general claim of prejudice. To show undue prejudice, IV "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotations omitted). Here, no prejudice will result from permitting the defense. No trial date has been set, and no expert depositions have taken place.

IV claims that it would have sought discovery concerning "all of Symantec's licenses" with third parties in order to counter the allegation that IV includes irrelevant patents in its package licenses. But Symantec's licenses with third parties are irrelevant to IV's licensing practices and their anticompetitive intent and effect. Moreover, Symantec has already produced a broad swath of its licenses involving technology areas that one might argue are related or comparable to the technology described in the asserted patents (and more) in response to IV's discovery requests. IV is attempting to shift the focus away from its own conduct.

IV's internal documents further demonstrate the lack of any real prejudice to IV. Those documents show that IV has long anticipated

---

[1] IV alleges that Symantec knew of certain facts before the amendment deadline because a Quinn Emanuel attorney, Ms. Suong Nguyen, represented another defendant against IV in a separate lawsuit. This argument is misguided and plainly wrong for at least three reasons. First, Ms. Nguyen and Quinn Emanuel did not begin work on this case until after the May 25, 2012 deadline. (*See* D.I. 229, 232.) Second, Ms. Nguyen obviously could not and did not use confidential information that she learned on behalf of another client in another case, which had its own protective order in place, for the benefit of her current client in this case. Finally, any facts Ms. Nguyen could have learned in the other case have no bearing on Symantec's ability to allege a patent misuse defense in this case, which is based largely on facts that have only recently come to light.

3

███████████. IV has openly acknowledged to its investors that it ████████████

████████████████████████████████████████████ (Kapgan Decl. Ex. N at

IV-SEC-00114493.) Indeed, these concerns date back at least to 2003, when one of IV's large

investors raised the issue of "████████████████████ (*id.* Ex. 3 at IV-SEC-00017777); and

no doubt others have as well. IV has spent many years thinking about antitrust issues in

connection with its business, and how to avoid potential antitrust scrutiny. Symantec's misuse

defense simply cannot come as a surprise to IV.

In any event, if the Court were to agree that IV needs time to take additional discovery or provide additional expert testimony, the parties can agree on a reasonable time period to permit that to occur, without an undue burden or impact on the Court's schedule. But IV should not be rewarded for engaging in conduct that is only now fully coming to light, with effects that are only now being seen. IV has sued 30 defendants in 11 separate lawsuits and has succeeded in extracting enormous settlements in exchange for providing licenses to hundreds or thousands of undoubtedly irrelevant and weak patents, based on the same business model it has already used to its advantage against one defendant in this lawsuit. (*Id.* Ex. 4.)

Symantec has been diligent in uncovering and confirming IV's improper and anticompetitive licensing practices. It should have the opportunity to plead a misuse defense to conform the pleadings to the evidence recently disclosed. IV has not shown, and cannot show, any unfair disadvantage or prejudice that would result from permitting the amendment.

## II.  SYMANTEC HAS SUFFICIENTLY ALLEGED PATENT MISUSE; IV HAS FAILED TO ESTABLISH THAT THE DEFENSE IS FUTILE

Symantec's Amended Answer far exceeds the pleading requirements for establishing that IV has committed patent misuse (*see* D.I. 452 at 13-16), and IV has not met its burden of establishing that Symantec's defense is futile. In attacking the defense, IV musters only the

weakest of arguments and wrongly conflates the standards applicable to final adjudication with those applicable to affirmative defenses. (*See* D.I. 463 at 12-17.) Each of IV's arguments fails.

### A. <u>Legal Standard</u>

IV concedes, as it must, that "the majority of district courts in [the Third] Circuit . . . have held that *Twombly* and *Iqbal* do not apply to the pleading of affirmative defenses." (D.I. 463 at 13.) Unlike Federal Rule of Civil Procedure 8(a), which requires a litigant to plead facts "showing" a right to relief, Rule 8(c) merely requires that a party "affirmatively state any . . . affirmative defense." Hence, courts in this district hold "that a party must merely state, not show, an affirmative defense." *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, No. 11-cv-733, 2012 WL 4565013, at *1 n.1 (D. Del. Oct. 1, 2012) (citation omitted); *see also Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10-cv-690, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012).

For that reason, IV's argument that Symantec did not allege sufficiently detailed facts concerning coercion, the patents-in-suit, and anticompetitive effects in a specific market is irrelevant. (D.I. 463 at 13-16.) Even if *Twombly* were to apply, however, Symantec would only need to plead enough facts to "nudge[] [its defense] . . . across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Roquette Freres v. SPI Pharma, Inc.*, No. 06-cv-540, 2009 WL 1444835, at *3 (D. Del. May 21, 2009) (courts only reject motions to amend as futile where it is "clear to the court that a claim has ***no*** possibility of succeeding on the merits . . . .") (emphasis in original) (citations omitted). Symantec has far surpassed this standard.

## B. IV's Targeted Patent Aggregation and Assertion Campaign Constitutes Patent Misuse

The basic rule of patent misuse is "that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Princo Corp. v. ITC*, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (citation omitted). That is precisely what IV has done through its strategic aggregation and enforcement of "the asserted claims of the '610, '142, '050 and '155 patents." (D.I. 451-1 at 11, 12-14.) By strategically combining the patents-in-suit with other patents to create an allegedly indispensable portfolio licensing bottleneck, and by threatening serial assertion to extract hold-up value, IV is using the patents-in-suit "to acquire a monopoly not embraced in the patent." Therein lies the misuse, which Symantec has pleaded clearly. (D.I. 451-1 at 13.)

Far from "mak[ing] new law" (D.I. 463 at 16), Symantec relies on the basic principles of misuse outlined in *Princo* and on the Supreme Court's express recognition that, although "[t]he mere accumulation of patents . . . is not in and of itself illegal," the "accumulation . . . for the exaction of tribute and collec[tion of] royalties by means of the overpowering threat of disastrous litigation" may be. *Auto. Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950). That, as Symantec has pleaded, is precisely what IV is doing here. (D.I. 451-1 at 13.)

IV claims that asserting a misuse defense requires "proof that the patent holder leveraged the specific accused patent to increase its physical or temporal scope," and that Symantec merely "alleges [that] IV has generally created supracompetitive prices." (D.I. 463 at 16-17.) Putting aside the fact that *proof* is (of course) irrelevant to *stating* an affirmative defense, Symantec has alleged that IV leveraged the physical scope of the four patents-in-suit. (D.I. 451-1 at 11-14.) Furthermore, IV's reliance on *Princo* is misguided. *Princo* held that a conspiracy not actively involving the patents-in-suit does not support a misuse defense. Here, IV *is* actively misusing

the patents-in-suit, along with other patents held by IV. IV's argument boils down to the absurd proposition that misusing *more than* just the four patents-in-suit somehow immunizes its conduct. It does not. Symantec has clearly and specifically pleaded that IV misused the '610, '142, '050, and '155 patents through improper aggregation and threats of serial assertion, and IV has not shown that Symantec's claims are futile.

### C. IV Has Committed Patent Misuse Through Its Forced Package Licensing

IV argues that *U.S. Philips Corp. v. ITC*, 424 F.3d 1179 (Fed. Cir. 2005), undermines Symantec's misuse claim based on IV's coercion of prospective licensees into purchasing licenses to unwanted patents. (D.I. 463 at 14.) It does not. *Philips* concerned a pro-competitive blanket license by a bona fide patent pool covering "all the patents needed to practice a particular technology"—there, the making and selling of recordable CDs. *Philips*, 424 F.3d at 1193. The package included essential and a small number of non-essential patents. The latter were added to the bundle for free. *Id.* at 1191. The Federal Circuit held that "as applied to the circumstances of [that] case," the mandatory package licensing did not constitute *per se* misuse. *Id.* at 1187.

The circumstances in *Philips* could not be more different from those here. Unlike the recordable CD patent pool, which lowered *ex ante* licensing costs by bundling all essential patents for the benefit of those that make and sell recordable CDs, IV's business model raises *ex post* licensing costs, constituting a patent hold-up. (D.I. 451-1 at 11-14.) Unlike the non-essential patents in *Philips*, which were added to the package for free, IV has allocated a significant percentage of its royalty demands to thousands of unwanted patents. (*Id.* at 12.)

Under *Philips*, therefore, *per se* misuse may still apply to the present case. Symantec has alleged sufficient facts not merely to show—but indeed to establish—all the elements required for such a defense. Furthermore, IV acknowledges that *Philips* does not invalidate patent packaging as grounds for misuse. Rather, *Philips* holds that, as applied to the circumstances of

7

that case, "patent packaging (aka patent-to-patent tying arrangements) must be analyzed under the rule of reason." (D.I. 463 at 14.)

IV next argues that under the rule of reason, Symantec has failed to plead that (i) IV used the patents-in-suit for coercion, (ii) Symantec was actually coerced, and (iii) that the coercion harmed a relevant market. (D.I. 463 at 14-16.) Each of these contentions lacks merit.

### 1. Symantec Explicitly Alleged IV's Misuse of the Patents-in-Suit

The very first sentence of the patent-misuse defense specifically identifies "the asserted claims of the '610, '142, '050 and '155 patents" as the ones that IV has misused. (D.I. 451-1 at 11.) Just two sentences later, Symantec alleges that "Intellectual Ventures has compelled and sought to compel licensees to take—and pay for—licenses to irrelevant and unwanted patents as a condition for obtaining licenses to patents reading on Internet security and antivirus products." (*Id.*) IV concedes that the patents-in-suit fall within the sphere of "patents reading on Internet security and antivirus products." (D.I. 463 at 15.) Symantec has therefore alleged that IV used the patents-in-suit to coerce prospective licensees to take unwanted rights to unrelated patents.

### 2. The Amended Answer Clearly Pleads the Fact of Coercion

IV next claims that Symantec's misuse defense based on forced package licensing fails because Symantec does not allege that "someone was coerced by IV's alleged patent packaging scheme." (D.I. 463 at 15.) This argument is baseless. Symantec has alleged that "Intellectual Ventures has compelled . . . licensees to take—and pay for—licenses to irrelevant and unwanted patents . . . ." (D.I. 451-1 at 11-12, 14.) Nothing more is required in pleading an affirmative defense of patent misuse. *See, e.g.*, *Cadence*, 2012 WL 4565013, at *1 n.1.[2]

---

[2] The cases that IV cites in support of its position all concern the adequacy of proof of patent misuse at the time of a determination on the merits. *Bayer AG v. Housey Pharm., Inc.*, 228 F. Supp. 2d 467, 470 (D. Del. 2002); *Minebea Co., Ltd. v. Papst*, 444 F. Supp.

8

### 3. Symantec Has Plausibly Alleged Harm to Competition

IV erroneously argues that its patent packaging does not constitute misuse because Symantec must, but did not, "prove that the patent holder links two separate patents and its behavior has anticompetitive effects in a relevant market." (D.I. 463 at 15.) Once again, proof is not required at this stage. The Rule only requires an affirmative statement. Fed. R. Civ. P. 8(c)(1). As indicated in the preceding section, Symantec has alleged that IV "linked" the licensing of the patents-in-suit (as a subset of IV's patents reading on Internet security and antivirus products) to the licensing of and paying for unwanted patents. (D.I. 451-1 at 11-12, 14.) Symantec has further alleged that IV has market power—monopoly power, in fact—"in the relevant market for Internet security and antivirus technologies." (*Id.* at 11.)

Lastly, Symantec has alleged that IV's "conduct has harmed the competitive process" by forcing Symantec and other implementers to pay higher prices as a result of the monopolization of the upstream technology market, and by raising Symantec's costs relative to its rivals, among other harms alleged in the Amended Answer. (D.I. 451-1 at 13.) This is more than sufficient to plead an affirmative defense of patent misuse. *See, e.g.*, *Cadence*, 2012 WL 4565013, at *1 n.1.

In short, Symantec's proposed Amended Answer goes well beyond the minimal pleading standard for affirmative defenses, and puts IV on clear notice of the issues involved. IV has not demonstrated that Symantec's proposed amendment is futile.

## III. CONCLUSION

For the foregoing reasons, Symantec respectfully requests that the Court grant its motion for leave to file an Amended Answer that includes a new affirmative defense based on patent misuse of the patents-in-suit.

---

2d 68, 215 (D.D.C. 2006); *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 408 (10th Cir. 1965). None of these cases addresses pleading requirements.

|  | MORRIS, NICHOLS, ARSHT, TUNNELL LLP |
|---|---|
|  | */s/ Thomas C. Grimm* |
|  | Jack B. Blumenfeld (#1014)<br>Thomas C. Grimm (#1098)<br>1201 North Market Street<br>P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899<br>(302) 658-9200 |
| Mark A. Flagel | jblumenfeld@mnat.com |
| Dean G. Dunlavey | tgrimm@mnat.com |
| Neil A. Rubin |  |
| LATHAM & WATKINS LLP | *Attorneys for Defendant Symantec Corporation* |
| 355 South Grand Avenue |  |
| Los Angeles, CA 90071-1560 |  |
| (213) 485-1234 |  |

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

March 1, 2013