## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | C.A. No. 10-1067 (LPS) |
| CHECK POINT SOFTWARE TECHNOLOGIES LTD., CHECK POINT SOFTWARE TECHNOLOGIES, INC., MCAFEE, INC., SYMANTEC CORP., TREND MICRO INCORPORATED, and TREND MICRO, INC. (USA), | ) ) ) ) ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) ) ) | |

### SYMANTEC CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO INTELLECTUAL VENTURES' MOTION TO EXCLUDE SYMANTEC'S EXPERT'S OPINIONS REGARDING AN "INDICATION OF A CHARACTERISTIC" AND RELATED CLAIM TERMS AND "TECHNICALLY RELEVANT" PATENTS

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

July 12, 2013 Original Filing
July 19, 2013 Redacted - Public Version

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas Grimm (#1098)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II.     SUMMARY OF ARGUMENT ................................................................................... 1

III.    STATEMENT OF FACTS ......................................................................................... 2

IV.     LEGAL STANDARD ................................................................................................ 2

V.      ARGUMENT ............................................................................................................. 3

        A.      Dr. Spafford's "Indication of the Characteristic" Opinions .................................. 3

        B.      Dr. Spafford's Opinions Regarding the "Indication of the Characteristic"
                Terms Are Well-Grounded in the Court's Claim Constructions and in IV's
                Arguments Offered to Avoid Anticipation and Are Thus Admissible .................. 5

                1.      The Dispute That the Court Addressed in Its *Markman* Order
                        Concerned Whether the Process Leading to the "Indication" Could
                        Involve Probabilities or Likelihoods, Not Whether the Result
                        Could Be a Probability or Likelihood ....................................................... 6

                2.      The Accused Symantec Reputation Score Is Not a Probability or
                        Likelihood .................................................................................................. 9

                3.      Dr. Spafford's Opinion That the Accused Products Lack the
                        "Indication of the Characteristic" Limitations Stands Even If His
                        Opinion That a Probability or Likelihood Is Not an Indication of
                        the Characteristic Were Rejected ............................................................ 10

        C.      The Arguments in IV's Brief Confirm that Townshend Anticipates the
                '050 Patent and that Summary Judgment of Invalidity Should Be Granted ........ 11

        D.      Dr. Spafford Has Applied a Valid Methodology in Determining Which
                Patents Are Comparable to the Patents-in-Suit .................................................. 13

                1.      Dr. Spafford's Opinions Regarding Comparable Patents are
                        Adequately Supported and At Least as Rigorous as the Opinions of
                        IV's Technical Expert ............................................................................... 14

                2.      The Case Law IV Cites Does Not Support Its Argument ......................... 17

VI.     CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).................................................................................................2

*Holbrook v. Lykes Bros. S.S. Co.*,
  80 F.3d 777 (3d Cir. 1996).......................................................................................2

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) .....................................................................................2

*Inline Connection Corp. v. AOL Time Warner Inc.*,
  472 F. Supp. 2d 604 (D. Del. 2007).........................................................................3

*Kannankeril v. Terminix Int'l Inc.*,
  128 F.3d 802 (3d Cir. 1997) .....................................................................................2

*Lapsley v. Xtek, Inc.*,
  689 F.3d 802 (7th Cir. 2012).....................................................................................3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ..................................................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ..............................................................................18

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ..........................................................................17, 18

*Rude v. Westcott*,
  130 U.S. 152 (1889).................................................................................................13

## RULES

Fed. R. Evid. 702 ...........................................................................................................2

ii

## I.      NATURE AND STAGE OF PROCEEDINGS

In this case, Plaintiff Intellectual Ventures I LLC ("IV") has asserted four patents against

Defendant Symantec Corporation ("Symantec").  Symantec's non-infringement expert,

Professor Eugene H. Spafford, has submitted expert reports and given deposition testimony

concerning his opinions that the accused Symantec products do not infringe and on related

issues.  IV has moved to exclude Dr. Spafford's opinions on two specific issues.  (D.I. 517, the

"Motion"; D.I. 518, the "Brief").  This is Symantec's answering brief in opposition to that

Motion.

## II.      SUMMARY OF ARGUMENT

Dr. Spafford is a highly qualified and nationally recognized expert in the fields of

computer science and computer security.  He carefully analyzed the evidence of record, the

patent claims, and the Court's claim constructions, and offered opinions on whether the accused

Symantec products infringe, on non-infringing alternatives available to Symantec, and on

whether patents covered by certain other patent licenses were comparable to the patents-in-suit.

IV does not dispute Dr. Spafford's qualifications and does not question the admissibility

of the vast majority of his opinions.  Instead, IV's motion raises two issues.  First, IV seeks to

exclude the entirety of Dr. Spafford's opinion that the Symantec products do not meet the

"indication of the characteristic" limitation and related limitations of the '050 patent based on its

disagreement with Dr. Spafford's interpretation of the Court's *Markman* Order.  That argument

has no merit.  Dr. Spafford's opinions are fully consistent with the Court's claim constructions

and with what the Court actually decided in the *Markman* Order, as is clear from the Order itself

and from the statements that IV made at the *Markman* hearing.  Even if IV were correct,

however, which it is not, the result would not be the exclusion of all of Dr. Spafford's opinions

on that limitation, but only those opinions based upon the particular claim interpretation

underlying IV's objection.  Tellingly, IV's argument about the "indication of the characteristic" limitation further confirms that the Townshend prior art reference anticipates the '050 patent, as set forth in Symantec's pending Motion for Summary Judgment (D.I. 509 at 5-20).

Second, IV seeks to exclude Dr. Spafford's opinions concerning whether patents covered by certain license agreements are technically comparable to the patents-in-suit.  However, Dr. Spafford adequately supported his opinions regarding comparability and IV's criticisms are matters for cross-examination, not exclusion.  Indeed, IV's criticisms apply with equal force to its own expert, Dr. McDaniel.  Thus, if either expert is allowed to testify about the alleged comparability of different patents, there is no basis for excluding Dr. Spafford's opinions on this topic.

## III.    STATEMENT OF FACTS

For clarity, the relevant facts are set forth in the Argument sections as appropriate.

## IV.    LEGAL STANDARD

Expert testimony is admissible under Federal Rule of Evidence 702 if it "rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (expert testimony admissible if the "particular opinion is based on valid reasoning and reliable methodology").  "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact."  *Kannankeril*, 128 F.3d at 806 (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996)).

An expert's proffered opinion is admissible if supported by "good grounds," "even if the judge thinks that there are better grounds for some alternative conclusion."  *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (citation omitted).  "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy."

*Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).  The party seeking to exclude an expert "may not agree with his conclusions, but that is not a basis to strike an expert's opinion . . . . [Such] arguments primarily focus on the weight to be afforded his opinions, and not on reliability."  *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 613 (D. Del. 2007).

## V.    ARGUMENT

IV's motion does not challenge Dr. Spafford's credentials, and for good reason. Dr. Spafford has over 25 years of experience of research and practice in the field of computer security.  (Ex. A, Spafford Rpt. ¶ 11.)[1]  He is a full professor of Computer Science at Purdue University.  He is also the founder and Executive Director of the Center for Education and Research in Information Assurance and Security (CERIAS), "the nation's oldest and largest multidisciplinary academic research institute in information security issues."  (*Id.* ¶ 12.)  Over the past decade, he has served as an advisor or consultant on information security and computer crime with a wide range of U.S. government agencies, including the Executive Office of the President, the U.S. Departments of Justice and of Energy, the FBI, the NSA, and the U.S. Air Force.  (*Id.* ¶ 15.)  He has testified before U.S. Congressional committees numerous times.  (*Id.*)

### A.    Dr. Spafford's "Indication of the Characteristic" Opinions

The first opinion of Dr. Spafford that IV seeks to exclude concerns a set of three related claim limitations that the Court has construed:

| Claim Term | Court's Construction |
|---|---|
| "an indication of the characteristic" (claim 9) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" |

---

[1] All exhibits cited herein are attached to the Declaration of Neil A. Rubin filed herewith.

| Claim Term | Court's Construction |
|---|---|
| "identify the existence or absence of said characteristic" (claim 16) | "identify whether or not the message is of a certain type or classification" |
| "indicating the presence or absence of a characteristic" (claim 22) | "indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email) |

IV contends that each of these limitations is met by a "reputation score" used in the accused Symantec products.  (Ex. B, McDaniel Infringement Rpt. ¶¶ 193-194.)  Dr. Spafford has concluded, however, that Symantec's reputation score does not satisfy these limitations based on the Court's construction.  IV seeks to have this opinion excluded based on its disagreement with Dr. Spafford's application of that construction.  (Brief at 2.)  As discussed below, IV is wrong.

As its name suggests, the Symantec reputation score provides information about a reputation.  The accused client products send a set of information to Symantec's servers, including a file hash,[2]                                    REDACTED

In response, Symantec's servers

provide a reputation score,                                    REDACTED

---

[2] A "hash function" is a mathematical algorithm that takes a long string of data, such as an email message, and computes a short numerical value – a "hash" or "identifier" – which represents that larger string of data.  (Ex. B, McDaniel Infringement Rpt. ¶ 183.)  Hashing algorithms are designed such that, while identical messages will generate the same identifier/hash,  it is extremely unlikely that two different messages will produce the same identifier/hash.  (*Id.* ¶ 184; *see* D.I. 509 at 10 n.3.)

REDACTED

The accused Symantec client products use this reputation score as one ingredient, out of several, in making their determinations of how likely a file is to be malicious, and consequently of whether it should be blocked.  (*Id.* ¶¶ 212-214.)  The client products also analyze the file using a variety of "heuristic" technologies, looking for traits or characteristics in the file that are common in malicious files.  (*Id.* ¶¶ 213-214.)  Additionally, the client products observe a file while it is running to see if it exhibits behaviors that may be malicious.  (*Id.* ¶¶ 213-214.) REDACTED

IV does not dispute that Symantec's accused products operate in this manner.  (Brief at 7.)

**B.     Dr. Spafford's Opinions Regarding the "Indication of the Characteristic" Terms Are Well-Grounded in the Court's Claim Constructions and in IV's Arguments Offered to Avoid Anticipation and Are Thus Admissible**

IV's argument for excluding Dr. Spafford's opinions regarding the "indication of the characteristic" limitations has three components:  (1) that the Court determined in its *Markman* opinion that a probability, a likelihood, or a score that is "reflective" or "related" in any way to a probability or a likelihood, necessarily satisfy this limitation; (2) that Dr. Spafford has opined that the reputation scores in the accused Symantec products are probabilities or likelihoods; and

(3) that Dr. Spafford's opinion that this limitation by the accused products is not met rests solely on his opinion that a likelihood or probability does not satisfy the Court's construction of this limitation.  Each of these premises is defective.

1.       **The Dispute That the Court Addressed in Its *Markman* Order Concerned Whether the Process Leading to the "Indication" Could Involve Probabilities or Likelihoods, Not Whether the Result Could Be a Probability or Likelihood**

In its Brief, IV portrays the dispute resolved in the Court's *Markman* opinion as one over whether the "indication of the characteristic" and related limitations can themselves be met by an output that is a probability, likelihood, or score.  (Brief at 4-5, 9-12.)  At the *Markman* hearing, however, counsel for IV characterized the dispute very differently.  There, IV counsel argued repeatedly, and at length, that he understood the "result of a true/false test" language in the constructions Defendants proposed to be a restriction on the ***process*** used to create the output, and not related to what the output itself is.

In adopting IV's proposed constructions rather than Defendants' proposed constructions, the Court held that the ***process*** used should not be limited to exclude the use of probabilities or likelihoods.  The Court's *Markman* Order did not expressly address the question of whether, or when, the ***output*** sent to the first tier systems (i.e., the "indication of the characteristic") could itself be a probability or likelihood.  Dr. Spafford's opinion focuses on the output and concludes that the Symantec system output identified by IV does not meet the Court's claim construction.  His opinion does not rely in any way on the process used to generate the output, and thus is fully consistent with the Court's *Markman* Order.

At the *Markman* hearing, IV's counsel argued that Defendant's proposed construction required that ***the process*** that generates the output ***use*** a "true/false test":

> In each of the defendants' proposed constructions, they don't so much attempt to define the term we think as they attempt to inject any [sic] limitation **which describes the process** that supposedly leads to the identification of the characteristic.
>
> * * *
>
> So the defendants' construction should be rejected in the first place **because reference to a true/false test** isn't an interpretation of these claims as all.  It **doesn't purport to explain what a characteristic is**.
>
> It attempts to **add a limitation to the process that leads to the indication** or the identification.

(D.I. 340 at 24:12-16, 25:6-12; *see also id.* at 67:2-20.)[3]

Moreover, according to IV, the term "true/false test" does not simply mean that the output of the test has to be true or false.  Rather, IV claimed that "true/false test" is a term of art, with a narrow – but never specified – meaning:

> They use the word **true/false test as a term of art.  I mean that is why it is there.** I'm sure that we'll have expert testimony about what a true/false test is as a term of art.  He gave you a hint of it when you asked him questions about **whether it would exclude probabilistic determinations**?  And he said, yes, it would; which is exactly why they want it in here.
>
> * * *
>
> What the patent contemplates is making determinations.  The patent doesn't say that it has to be **that the step used to make the determination is a true/false test** with respect to the hash or the content.

(*Id.* at 64:15-22, 64:24-65:2; *see also id.* at 27:17-28:4.)

Although counsel for McAfee initially agreed that IV had accurately characterized the dispute as one about whether the process used by the system yielded 100% accurate results (D.I. 340 at 39:10-14, 41:1-14), counsel then clarified his initial response:

---

[3] Emphasis is added in the quoted material unless otherwise noted.

MR. WINTERS:  Apparently, I may have left a misimpression and I want to clear that up now.

The central point of this patent, the claims in our construction is that it's the output of the test that is the true/false.  ***So it's the output, the end of this method is true or false.***
* * *
THE COURT:  ***Well, certainly Mr. Folse seemed to understand your construction to be the <u>process of determining the output</u> was true/false.***

(*Id.* at 72:13-18, 72:24-73:1.)

It is clear from the Court's claim construction opinion that the Court understood the

dispute in the way IV's counsel, Mr. Folse, described it.  The Court's opinion states, in part:

The parties dispute whether these limitations ***must be the result*** of a true/false test or whether they may, instead, ***be the result of something else***, such as a probability, likelihood, or related scores.
* * *
The Court discerns nothing in the claims or the specification suggesting that ***the use of true/false tests*** is a defining feature of the claimed invention.  The Court, therefore, will adopt Plaintiff's proposed construction.

(D.I. 425 at 11-12.)

Thus, the Court's opinion focuses on the process that produces the result and whether that

process must utilize a true/false test or may utilize probabilities, likelihoods, or scores.  The

opinion is silent on whether the output (i.e., the "indication of the characteristic") can actually ***be***

a probability or likelihood.  Having so thoroughly framed the dispute in these terms at the

*Markman* hearing – as a dispute over what ***process*** must be used to generate the "indication" –

IV cannot now argue that the Court resolved a different dispute when the Court adopted IV's

preferred constructions.

Dr. Spafford's "indication of the characteristic" opinions are firmly grounded in the

Court's claim constructions, and they do not mention or depend in any way upon whether the

process used by Symantec's products to generate reputation scores uses probabilities or

likelihoods.  His opinions are fully consistent with the Court's *Markman* Order and are admissible.

### 2. The Accused Symantec Reputation Score Is Not a Probability or Likelihood

The second prong of IV's argument is its claim that Dr. Spafford has opined that the reputation scores in the accused Symantec products are probabilities or likelihoods.  Dr. Spafford has not offered such an opinion, however.

Dr. Spafford's opinion responds to the following, very specific opinion offered by IV's expert, Dr. McDaniel, regarding "characteristics":

REDACTED

*see* Ex. A, Spafford Rpt. ¶ 249.)

Dr. Spafford concluded that Dr. McDaniel's opinion is inconsistent with the Court's claim constructions.  Each of the Court's constructions describes a characteristic as something that the file or message either has or does not have, and Dr. Spafford has opined that Dr. McDaniel's far more expansive view of what qualifies as a characteristic (i.e., the likelihood that the file "may" have a certain property) is contrary to those constructions.

In fact, the Symantec reputation score is not itself a characteristic; nor does it constitute a probability or likelihood that a file is malicious.  Instead, as explained above, the reputation score provides information about a reputation,                  REDACTED

.  The accused Symantec client products use this reputation score as one ingredient, out of several, in making their determinations of how likely a file is to be malicious, and consequently of whether it should be blocked.  (Ex. A, Spafford Rpt. ¶¶ 212-214.)

9

REDACTED

3.    **Dr. Spafford's Opinion That the Accused Products Lack the "Indication of the Characteristic" Limitations Stands Even If His Opinion That a Probability or Likelihood Is Not an Indication of the Characteristic Were Rejected**

Dr. Spafford's opinion that the reputation score is not an "indication" as construed by the Court is based upon the fact that the information provided by the reputation score must be combined with other information before a determination is made as to whether the file is or is not malicious.  (Ex. A, Spafford Rpt. ¶¶ 246-248.)  In other words, his opinion is based upon how the score is used in the accused products, and the fact that as it is used, it does not fill the claimed role of "indicat[ing] the characteristic" / "identify[ing] the existence or absence of said characteristic" / "indicating the presence or absence of a characteristic" as the asserted claims require.  Dr. Spafford's opinion stands regardless of whether the reputation score is deemed to be a probability or likelihood and regardless of whether probabilities or likelihoods can, at least in certain cases, satisfy the claims.

Dr. Spafford's opinion regarding the "indication" limitations is also based upon statements made by IV's expert, Dr. Wenke Lee, in a declaration IV submitted to the PTO in the pending reexamination proceeding for the '050 patent, and reiterated by Dr. McDaniel in his expert report concerning the Townshend prior art patent.  (Ex. A, Spafford Rpt. ¶¶ 250-254; Ex. E, Spafford Reply Rpt. ¶ 25.)  Both Dr. Lee and Dr. McDaniel argue that the "count" in Townshend is not an "indication of the characteristic" because it can vary over time even if the content of the data file remains the same.  (Ex. F, McDaniel Validity Rpt. ¶ 90; Ex. G, Inter Partes Reexamination 95/002,2002, Amendment and Reply dated 2/11/2013, at 20-21.)  Dr. Lee further argues that the count in Townshend is not an "indication of the characteristic" because

the ultimate determination of whether an email is bulk is made at the first tier system, and not at the second tier system.  (Ex. G at 22.)  Both Dr. Lee and Dr. McDaniel offered these opinions after the Court had issued its claim construction opinion.

While IV's arguments in this regard do not avoid the invalidity of the asserted claims of the '050 patent in light of Townshend, they do further support Dr. Spafford,  REDACTED

If Symantec's motion for summary judgment were denied and the issue of the validity of the '050 patent were to go before the jury, IV apparently intends to argue that the "indication of the characteristic" limitations exclude any system that:  (1) uses a count, rather than a binary value based upon a count; (2) sends a value that changes over time; or (3) makes a final determination of what to do with a file on a client system.      REDACTED

.[4]

## C.    The Arguments in IV's Brief Confirm that Townshend Anticipates the '050 Patent and that Summary Judgment of Invalidity Should Be Granted

IV's statements concerning Dr. Spafford's opinions directly contradict its previous attempts to distinguish the '050 patent claims from the Townshend prior art reference, thus providing further confirmation that Townshend anticipates all of the '050 patent claims.  This is

---

[4] In any event, even if this Court were to grant IV's motion to exclude, the exclusion would apply only to the opinions in ¶ 249 of Dr. Spafford's report and those offered during his deposition in response to a series of questions about (hypothetical) systems that send probabilities or likelihoods.  (Brief, Ex. 3, Spafford Dep. 179:2-182:8.)  Nowhere else does Dr. Spafford offer any opinions that exclude probabilities or likelihoods or that rely upon probabilities or likelihoods being excluded.

yet another reason the Court should grant the portion of Symantec's pending motion for summary judgment addressing invalidity of the asserted '050 patent claims. (D.I. 508.)

As set forth in Symantec's summary judgment brief, Dr. McDaniel has attempted to distinguish between the system described in Townshend and that covered by the '050 patent claims by claiming that the "count" in Townshend is not an "indication of the characteristic." (D.I. 509 at 15-17.) Dr. McDaniel concedes, however, that if the second tier system in Townshend sent a "true" or "false" value to the first tier system – true if the count was above the threshold value and false if it was not – rather than sending the count itself to the first tier system (where the comparison to the threshold would otherwise take place), Townshend would anticipate. (D.I. 509 at 19-20; Ex. H, 4/15/2013 McDaniel Dep. 88:22-90:23.)

IV's *Daubert* Brief confirms that the fictional distinction that Dr. McDaniel would like to draw between Townshend (sending the count) and a system that he admits would be covered by the '050 patent claims (sending a true/false value based upon the count) is inconsistent with the Court's claim constructions. As IV's brief aptly states:

> Nothing in the plain language of the Court's construction limits the "descriptor"[5] to a binary value. A likelihood, probability, or score describes the content just as much as—if not more than—true, false, yes, or no.

(Brief at 10.)[6]

This statement categorically destroys IV's attempt to distinguish the "count" in Townshend from the "indication of the characteristic" limitation in the claims. Townshend describes a system that treats emails as bulk or not bulk solely based upon the count. (D.I. 509 at

---

[5] The word "descriptor" appears in the Court's construction of the term "indication of the characteristic."

[6] As Symantec demonstrated in its summary judgment motion, Townshend additionally anticipates because it also discloses an embodiment that converts the "count" into a bulk email signature at the central server itself. (D.I. 509 at 17-19.)

14-15.)  By sending the first tier systems the count, instead of just a true/false value that says whether the count is above the threshold, the system in Townshend describes the email "just as much as—if not more than" the system sending the true/false values that Dr. McDaniel concedes would anticipate.  IV's own words belie Dr. McDaniel's attempt to limit the "indication of the characteristic" to binary values to avoid anticipation by Townshend.  For this reason, along with all of the others set forth in Symantec's brief, the Court should grant summary judgment that the asserted '050 patent claims are invalid, which would render moot this aspect of IV's *Daubert* motion.

### D. Dr. Spafford Has Applied a Valid Methodology in Determining Which Patents Are Comparable to the Patents-in-Suit

The second opinion of Dr. Spafford that IV seeks to exclude concerns whether various patents that have been the subject of settlement agreements or patent licenses are technically comparable to the patents-in-suit.[7]  IV's criticisms are misplaced, as Dr. Spafford has adequately supported his opinions regarding comparability.  Dr. Spafford's methodology, moreover, is at least as rigorous and reliable as the approach taken by IV's expert, Dr. McDaniel.  Thus, if either expert is allowed to testify about the alleged comparability of different patents, there is no basis for excluding Dr. Spafford's opinions.

---

[7] As set forth in Symantec's pending *Daubert* Motion to Exclude the Testimony of Intellectual Ventures' Damages Expert, Michael Wagner (D.I. 512), both the Supreme Court and the Federal Circuit repeatedly have disapproved of using settlement agreements – even settlement agreements covering the patent-in-suit – as baseline agreements for a reasonable royalty opinion. *See, e.g., Rude v. Westcott*, 130 U.S. 152, 164 (1889); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).  Furthermore, Symantec has moved for summary judgment of no damages due to the numerous fundamental defects in Mr. Wagner's "methodology."  (D.I. 509 at 40.)

1.      **Dr. Spafford's Opinions Regarding Comparable Patents are Adequately Supported and At Least as Rigorous as the Opinions of IV's Technical Expert**

Symantec has produced a number of settlement agreements, patent licenses, and patent valuations in this matter. (Brief, Ex. 4, Bakewell Rpt. ¶ 200.) Although none of these Symantec licenses or patent valuations covers any of the patents-in-suit, both parties' technical experts have opined that certain patents covered by some of those licenses or valuations are comparable to the patents-in-suit. In addition, IV's damages expert, Mr. Wagner, wants to rely upon certain license agreements that Trend Micro has produced to IV in that case.

IV's technical expert, Dr. McDaniel, identifies six patents that he opines are technically comparable to either the '142 patent or the '155 patent. (Ex. B, McDaniel Infringement Rpt. ¶¶ 218-227.) Dr. Spafford identifies several dozen patents that he opines are comparable to the '050 patent, the '142 patent, or the '155 patent. (Ex. A, Spafford Rpt. ¶¶ 408-412.) IV seeks to exclude these opinions, notwithstanding the similar opinions of its own expert.[8]

IV contends that Dr. Spafford's opinions fail to establish a link between the comparable patents and the patents-in-suit. This is incorrect. Dr. Spafford testified that he personally reviewed the licensed patents and determined which were comparable by looking for features disclosed in the licensed patents that were similar to those in the patents-in-suit. (Brief, Ex. 3, Spafford Dep. 223:6-20.) Dr. Spafford listed the patents he determined to be comparable and provided a brief summary of the features in each patent that make it technically comparable to the relevant patent-in-suit. (Ex. A, Spafford Rpt. ¶¶ 409, 411-412.) Dr. McDaniel's analysis was similar, although his discussion took up more space because he provided a separate

---

[8] Dr. Spafford also offers an opinion concerning whether the '600 patent – a patent assigned to Trend Micro – is comparable to the '610 patent. IV does not seek to exclude that opinion.

summary for each patent.  Certainly, Dr. McDaniel's opinions do not provide any more detail than Dr. Spafford's.

All of IV's disagreements with Dr. Spafford's opinions about the technical comparability of specific patents are matters for cross examination, not exclusion.  For example, IV objects to Dr. Spafford's opinion that one set of patents is comparable to the '050 patent, because his *summary* of these patents uses two words – "validating" and "registration" – that are not used in the '050 patent.[9]  (Brief at 18.)  IV can cross examine Dr. Spafford about his summaries at trial; they are not a basis for exclusion.

IV also quibbles with Dr. Spafford's opinions regarding the comparability of the '719 patent.  IV claims that there is a contradiction in the fact that Dr. Spafford opines that this patent is comparable to both the '050 patent and the '142 patent, because it relates to both "data queries" and to "spam filters."  (Brief at 18.)  In fact, there is no contradiction.  Dr. McDaniel opines that                         REDACTED


Thus, under the very standard applied by Dr. McDaniel – *i.e.*, REDACTED

                                                                                        – the '719 patent is comparable to the '142 patent.

The "data query" technique that Dr. Spafford references in the '719 patent is likewise comparable to the techniques described in the '050 patent.  Both the '719 patent and the '050

---

[9] If this dubious standard were applied to Dr. McDaniel's opinions on comparable patents, it would result in the exclusion of some of those opinions.  For example, Dr. McDaniel describes
                         REDACTED

patent describe techniques for detecting spam based on the contents of a message.  (Brief, Ex. 6, '719 patent, Fig. 5; Ex. D, '050 patent at 3:14-18.)  The '050 patent looks for spam by determining whether a message matches other messages that have been seen previously.  (Ex. D, '050 patent at 6:2-5.)  The '719 patent notes that systems exist to defeat spam detection techniques that are based upon matches – for example, a spammer could insert random characters into emails so that they will no longer match.  (Brief, Ex. 6, '719 patent at 2:1-10, 2:25-38; *see* Ex. B, McDaniel Infringement Rpt. ¶ 223.)  The '719 patent teaches a technique that permits content matching systems to still detect spam, even though that spam has random characters in it.  (Brief, Ex. 6, '719 patent at 3:5-14.)  This technique identifies the random characters using database queries, and ignores those random characters when performing matches.  (*Id.* at 3:5-14, 4:32-54.)

IV also argues that Dr. Spafford's opinion that the '719 patent is comparable to both the '050 and '142 patents is incorrect because these patents are "markedly different" and have claims "directed to very different functionalities."  IV ignores the fact that previously in this litigation it has accused a single Symantec product – Web Gateway – of infringing both the '142 patent and the '050 patent.  (D.I. 1 ¶ 28; Ex. I, Pl.'s Fifth Suppl. Resp. Defs.' Interrog. No. 1, Third Am. Ex. K at 1.)  Moreover, the '050 patent describes and claims a technique for detecting spam and, as explained above, Dr. McDaniel has opined that if a patent covers spam detection, then it is comparable to the '142 patent.  The '050 and '142 patents are not so different from one another that the '719 patent cannot be technically comparable to both.[10]

---

[10] If anything, it is Dr. McDaniel's opinions regarding the '719 patent that are a mystery.    REDACTE

Dr. Spafford is unquestionably qualified to render opinions on the technology of the patents covered by the settlement agreements and patent licenses, if the Court permits the consideration of such evidence.  Dr. Spafford applies a valid and reliable methodology in assessing whether the patents covered by those licenses are comparable to the patents-in-suit. All of the criticisms that IV makes regarding these opinions go at most to the weight that should be accorded these opinions, and not to their admissibility, should the Court permit any testimony as to settlement agreements or license agreements dealing with patents other than the patents-in-suit.

### 2.    The Case Law IV Cites Does Not Support Its Argument

None of the cases IV cites indicates that Dr. Spafford's methodology in classifying some patents as comparable is improper.  Rather, those cases strongly support the conclusion that regardless of the methodology employed, settlement agreements and patent licenses involving patents other than the patent-in-suit are not reliable evidence as to what constitutes a reasonable royalty.[11]

In *ResQNet*, the Federal Circuit vacated a damages award that was based upon licenses that lacked "any . . . discernible link to the claimed technology."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010).  If a "discernible link" is sufficient to make a patent comparable, Dr. Spafford clearly has met that hurdle as he has offered specific opinions linking features in the licensed patents to those in the patents-in-suit.  (Ex. A, Spafford Rpt. ¶¶ 409, 411-412.)  The Federal Circuit also noted that a damages analysis must "account[] for the technological and economic differences" between the comparable license and a license to the

---

[11] Symantec's damages expert, Mr. Bakewell, has noted he has "no opinions regarding the admissibility of litigation settlements as evidence, and my opinions do not change whether or not these agreements are included."  (Brief, Ex. 4, Bakewell Rpt. ¶ 204.)

patents-in-suit.  *ResQNet*, 594 F.3d at 873.  IV has made no showing that there is any technological difference between the licensed patents and the patents-in-suit that would mandate a particular adjustment to Mr. Bakewell's reasonable royalty analysis, and that Dr. Spafford has failed to account for.

In *Lucent*, the Federal Circuit rejected a damages award that was based upon various purportedly comparable license agreements, where the only showing that the licenses were comparable was a statement that they all covered personal computer-related patents. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009).  This principle is not relevant here, because Dr. Spafford has not based any opinion regarding comparability on the flimsy observation that the comparable patents are in some way related to the same broad industry as the patents-in-suit.  Rather, Dr. Spafford has pointed to specific features in the licensed patents that tie particular licensed patents to particular patents-in-suit.  (Ex. A, Spafford Rpt. ¶¶ 409, 411-412.)

In this case, by far the most relevant agreements concerning the value of the patents-in-suit are the purchase agreements for those patents, which reflect the prices that IV paid, in arm's-length transactions, for the entirety of the patent right (including the right to grant licenses to the patents).  Under the governing case law, settlement agreements (particularly those concerning patents other than the patents-in-suit) are not relevant to the issue of damages and are inadmissible.  Similarly, license agreements between third parties as to different patents should not be permitted into evidence.  However, if IV is allowed to present either type of evidence, Dr. Spafford should be permitted to testify as to the comparability of the patents covered by such agreements or licenses to the patents-in-suit.

## VI.     CONCLUSION

For the foregoing reasons, Symantec respectfully requests that the Court deny IV's

Motion.


Dated:  July 12, 2013                              Respectfully submitted,

                                                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                                   */s/ Michael J. Flynn*
                                                   Jack B. Blumenfeld (#1014)
                                                   Thomas Grimm (#1098)
                                                   Michael J. Flynn (#5333)
                                                   1201 North Market Street
                                                   P.O. Box 1347
                                                   Wilmington, DE 19899-1347
                                                   (302) 658-9200
                                                   jblumenfeld@mnat.com
                                                   tgrimm@mnat.com
                                                   mflynn@mnat.com

                                                   *Attorneys for Defendant*
                                                   *Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

19

Yar R. Chaikovsky, Esquire                    *VIA ELECTRONIC MAIL*
D. Stuart Bartow, Esquire
Michael F. Martin
MCDERMOTT WILL &EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
*Attorneys for Trend Micro Incorporated*
*and Trend Micro, Inc. (USA)*

David M. Beckwith, Esquire                    *VIA ELECTRONIC MAIL*
MCDERMOTT WILL &EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
*Attorneys for Trend Micro Incorporated*
*and Trend Micro, Inc. (USA)*


                                    */s/ Michael J. Flynn*
                                    Michael J. Flynn (#5333)

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 19, 2013, upon the following in the manner indicated:

Joseph J. Farnan, III, Esquire                                       *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Parker C. Folse, III, Esquire                                        *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
*Attorneys for Plaintiff*

John P. Lahad, Esquire                                               *VIA ELECTRONIC MAIL*
Weston O'Black, Esquire
Richard W. Hess, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 1500
Houston, TX  77002
*Attorneys for Plaintiff*

Karen Jacobs Louden, Esquire                                         *VIA ELECTRONIC MAIL*
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE  19801
*Attorneys for Trend Micro Incorporated
and Trend Micro, Inc. (USA)*

Yar R. Chaikovsky, Esquire                                              *VIA ELECTRONIC MAIL*
D. Stuart Bartow, Esquire
Michael F. Martin
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
*Attorneys for Trend Micro Incorporated*
*and Trend Micro, Inc. (USA)*

David M. Beckwith, Esquire                                              *VIA ELECTRONIC MAIL*
MCDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA  92614-2559
*Attorneys for Trend Micro Incorporated*
*and Trend Micro, Inc. (USA)*


                                          */s/ Michael J. Flynn*
                                          Michael J. Flynn (#5333)