IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>  Plaintiff,<br><br>v.<br><br>CHECK POINT SOFTWARE<br>TECHNOLOGIES LTD., et al.,<br><br>  Defendants. | § Case No. 10-cv-1067-LPS<br>§<br>§ JURY TRIAL DEMANDED<br>§<br>§ **FILED UNDER SEAL**<br>§ |

## IV1'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THREE SYMANTEC EXPERT OPINIONS

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Parker C. Folse III *(admitted pro hac vice)*
Brooke A.M. Taylor *(admitted pro hac vice)*
Lindsey N. Godfrey *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:   (206) 516-3880
Facsimile:   (206) 516-3883

Richard W. Hess (admitted pro hac vice)
Weston O'Black *(admitted pro hac vice)*
John P. Lahad *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:   (713) 653-7859
Facsimile:   (713) 654-3386

Dated: August 2, 2013          *Counsel for Plaintiff*

## TABLE OF CONTENTS

I. Mr. Bakewell's Opinions Are Unreliable and Fact-Free ...................................................................... 1

    A.    Bakewell's Use of ▮▮▮▮ Flunks *Daubert's* "Fit" Requirement .................................................................................................................. 1

    B.    Mr. Bakewell's Methodology to Analyze Symantec's ▮▮▮▮ is Unreliable and Should Be Excluded .................................................................. 3

    C.    Symantec's Expert Opinions on Its Allegedly Available Non-Infringing Alternative Are Unsupported and Should Be Disqualified ..................... 6

        1.    Symantec cannot hide the bases for its expert opinions by claiming those opinions require "no complex analysis." ............................ 7

        2.    Symantec cannot point to where Mr. Bakewell disclosed an opinion on the cost of the '050 alternative design. ............................ 8

II. Conclusion .................................................................................................................. 9

# TABLE OF AUTHORITIES

Cases

Arista Records LLC v. Usenet.com, Inc.,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009) .................................................................................8

AstraZeneca LP v. TAP Pharm. Prods.,
    444 F. Supp. 2d 278 (D. Del. 2006)................................................................................4, 6

DSU Med. Corp. v. JML Co. Ltd.,
    471 F.3d 1293 (Fed. Cir. 2006) .........................................................................................9

Elcock v. Kmart Corp.,
    233 F.3d 734 (3d Cir. 2000) ..............................................................................................3

In re Paoli R.R. Yard PCB Litig.,
    35 F.3d 717 (3d Cir. 1994) ................................................................................................3

Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,
    103 F. Supp. 2d 268 (S.D.NY. 2000) ...............................................................................9

Rules

Fed. R. Evid. 702(a).........................................................................................................................6

Federal Rules of Evidence 702 and 403 .........................................................................................7

Under the Third Circuit's *Daubert* case law, experts must connect their conclusions to the reliable facts on which they rest. The fundamental disconnect between Symantec's expert opinions and their foundational facts—Mr. Bakewell actually makes up one transaction on which he bases his conclusions—requires excluding these opinions.

- Neither Symantec nor Mr. Bakewell point to any facts in the record to form a reliable foundation for Mr. Bakewell's fictional license negotiation between IV ▮▮▮▮.

- Mr. Bakewell's use of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ excludes over 90 percent of ▮▮▮▮▮▮▮▮▮ and never accounts for their missing information. No expert would rely on such unreliable data, particularly when the ▮▮▮ in question had nothing to do with the patents-in-suit.

- Symantec's expert opinions, including Mr. Bakewell's, regarding a purported non-infringing design should be excluded as lacking foundation and improperly relying on information regurgitated from Symantec.

I.
## Mr. Bakewell's Opinions Are Unreliable and Fact-Free

Symantec's Answering Brief does little to attempt to rehabilitate its experts' opinions on the three challenged topics.

A. Bakewell's Use of IV1's Spreadsheet Flunks *Daubert's* "Fit" Requirement

Mr. Bakewell uses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—untethered to other documents or witness testimony—as a jumping off point for Mr. Bakewell to imagine an entirely fictional transaction. Mr. Bakewell starts with ▮▮▮▮▮▮▮ and constructs a series of events for which no support exists in the record. Exh. 1, Bakewell Report ¶¶ 188–99. Mr. Bakewell then uses those fictional events to conclude that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 188–91. To reach his ultimate conclusion, Mr. Bakewell uses this imaginary transaction to speculate what IV would have accepted to license those same patents to Symantec. *Id.* ¶ 197.

1

IV1's Opening Brief identified three "facts" that Mr. Bakewell assumes occurred, but for which no support in the record exists: (1) ███████████████████████████████████████████████████████████████████████████████████████████████████████ ██████ ██████

Symantec's Answering Brief does not even attempt to refute these invented facts. It points to no testimony or contemporaneous email about ██████████. It identifies no communications with ████████████████████████████████ ██████████████ And Symantec provides no support for Mr. Bakewell's far-fetched notion that ██████████████████████████. Tellingly, Symantec's Answering Brief largely ignores Mr. Bakewell's sworn testimony on the ██████████ D.I. 531 at 4–9 (quoting Mr. Bakewell exactly once, *id.* at 7, confirming the undisputed fact that IV ████████████).

Borrowing the hoary notion that the best defense is a good offense, Symantec deflects criticism of Mr. Bakewell's fiction writing by accusing *IV1* of hiding the information on which Bakewell wanted to rely. D.I. 531 at 5–6. This is untrue. In fact, Symantec cites nothing to support its charge because, like Mr. Bakewell's opinion, it has no basis in fact. IV1 has not relied on any information about ██████████████████ that is not in the record and available to Symantec. *See, e.g.,* Exh. 2, Wagner Apr. 3, 2013 Reply Report ¶¶ 48–49 (████████████ ████████████████████████████████████████████████████████████████████████████████). Symantec's fallacious attempt to blame IV1 for the holes in Mr. Bakewell's opinions is particularly galling *because there are no facts for IV1 to hide.* No facts show that IV1 ██████ ████████████████████████████████████████████████████████

The Third Circuit's *Daubert* jurisprudence requires experts connect each step in their analysis to factual support before arriving at the expert's conclusion. Courts may not admit

2


expert testimony which is based on assumptions lacking any factual foundation in the record. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 n.13 (3d Cir. 2000). Mr. Bakewell's opinions about ▮▮▮▮▮▮▮▮ should be excluded because he seeks to testify about events that never happened, and to support his conclusions with his uninformed speculation. While experts may testify about conclusions based on real-world facts and transactions, Mr. Bakewell may not simply decide to roll his own. The Court should exclude this testimony.

B.   Mr. Bakewell's Methodology to Analyze Symantec's Survey Data is Unreliable and Should Be Excluded

Symantec erroneously frames IV1's challenge to Mr. Bakewell's ▮▮▮▮▮▮▮▮ as a Rule 703 challenge to the reasonableness of an expert relying on ▮▮▮▮▮▮▮▮. That is incorrect. The problem with Symantec's ▮▮▮▮▮▮▮▮ lies with *how* Bakewell uses it. It could be perfectly reasonable to use a certain category of information, but if an expert draws incorrect conclusions from that data, then the testimony fails Rule 702's "fit" requirement and must be excluded. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("*Daubert's* requirement that the expert testify to scientific knowledge—conclusions supported by good grounds for each step in the analysis—means that any step that renders the analysis unreliable. . . renders the expert's testimony inadmissible.").

While in another case specific ▮▮▮▮▮▮▮▮ may be helpful, the particular data in this case does not allow valid inferences regarding how customers value the infringing features. And the way Mr. Bakewell uses those data makes his conclusions even less reliable. Symantec's brief ignores the problematic aspects of the data and the methodology. Those aspects guarantee that Bakewell's testimony fails the "fit" requirement between the data and what the expert concludes from that data, and in turn, the testimony must be excluded for failing to be helpful to

the jury. *See AstraZeneca LP v. TAP Pharm. Prods.*, 444 F. Supp. 2d 278, 292–93 (D. Del. 2006).

In *AstraZeneca*, the Court excluded an open-ended Internet survey and the corresponding expert testimony because the underlying data could not support the expert's testimony, which in turn, could not be helpful to the jury. *Id.* AstraZeneca sought declaratory judgment that its advertising did not mislead consumers. The defendant's expert witness designed an Internet survey with closed and open-ended questions to estimate consumer confusion from the advertising. The expert opined that responses to the questions, taken together, showed that a substantial number of people had been misled. But only a portion of the survey questions (the open-ended questions) were even capable of determining whether people were, in fact, misled, and even then, only a portion of survey participants responded at all.

The court determined that the only logical conclusion from the data was that at least 11 percent of respondents had been misled. The court pointed out that there was "no evidence on which the jury could draw an inference about whether the other eighty-nine percent of survey participants were misled by the advertisement." *Id.* at 292. Like Symantec, the defendant argued that any flaws in reasoning went to weight rather than admissibility, but the testimony was excluded because it did not meet the standards set forth in Rule 702 for helpfulness and fit. *Id.* at 292–93.

Mr. Bakewell concludes that . Like the defense expert's claim of high percentages of people being misled in *AstraZeneca*, Bakewell's conclusion does not follow from the data.

First, ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████.

████████████████████████████████████████████████████ First, ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████.

Finally, ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████012255

[REDACTED]

During his deposition, Mr. Bakewell justified his "search-and-find" methodology, and guessed that it had been peer-reviewed. *See* Exh. 6, Bakewell Tr. 229:16–230:3. But Symantec's brief identifies no publication at all, let alone a peer-reviewed publication, that validates Mr. Bakewell's methodology.

This is unsurprising as Mr. Bakewell's conclusions are not logically supported by the data. Like the expert in *AstraZeneca*, the best Mr. Bakewell can do is to say that [REDACTED]

But "there is no evidence on which the jury could draw an inference about whether" the [REDACTED]. *AstraZeneca*, 444 F. Supp. 2d at 292. Mr. Bakewell's survey testimony does not fit the underlying data and is not helpful to the jury; it must be excluded pursuant to Rule 702.

C. <u>Symantec's Expert Opinions on Its Allegedly Available Non-Infringing Alternative Are Unsupported and Should Be Disqualified</u>

Symantec's Answering Brief lays bare the fundamental contradiction in its experts' alternative design opinion that requires this Court to exclude it. Courts permit expert testimony when that "scientific, technical or specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). But that testimony must be based on a sufficient facts or data, reliable principles and methods applied to the facts of the case. *Id.*

6

Now Symantec attempts to explain its experts' failure to perform any analysis, testing or detailed study of its putative non-infringing alternative by insisting that "no complex analysis is necessary" because "[REDACTED] [REDACTED]" If Symantec's alleged alternative were as simple as its Answering Brief portrays, Mr. Bakewell and Dr. Spafford's opinions should be excluded as unhelpful to the trier of fact and as unduly prejudicial under Federal Rules of Evidence 702 and 403. Because if Symantec is right that "no complex analysis is necessary" then surely testimony from a computer scientist and economist is also unnecessary for a jury to understand it.

1. <u>Symantec cannot hide the bases for its expert opinions by claiming those opinions require "no complex analysis."</u>

The fact that Symantec now characterizes its alternative as simple as [REDACTED] [REDACTED] *id.* shows that its experts have not performed even a cursory analysis of the technical, operational and legal hurdles required for Symantec to [REDACTED] [REDACTED] In truth, Symantec has proposed a massive undertaking that only works in the hypothetical world, while attempting to shield the complexities of that project from scrutiny.

- Mr. Bakewell has no software or network training, and relies on Dr. Spafford's technical analysis. That technical analysis is two paragraphs. D.I. 515-14 ¶¶ 399–400.

- Neither Mr. Bakewell nor Dr. Spafford did any testing, feasibility analysis or studies that showed Symantec could have implemented this alternative without any effect on customers. D.I. 515-7, 260:19–261:2. Thus, there has been no showing that the alternative would be acceptable to Symantec customers.

- Mr. Bakewell seeks to bolster this thin gruel by repeated citations to his interviews of interested-party employees. But there are no notes of those conversations, no cross-examinations of them, and those employees have every incentive to shade whatever they told Mr. Bakewell in their employer's favor. "An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application

7

of specialized knowledge." *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009)

- Symantec's infringing ███████████████████████████████████████████████████████████████. When asked to detail his discussions with Symantec's employees about those functions, Mr. Bakewell drew a blank. D.I. 515-7, 266:25–267:7.

Symantec wants to have it both ways. It wants to avoid substantiating its proposed alternative by calling it so simple it requires no analysis, but so complicated that it needs hired witnesses with the imprimatur of an expert to recite their conclusions-only testimony based on flimsy, if any, facts.

2. <u>Symantec cannot point to where Mr. Bakewell disclosed an opinion on the cost of the '050 alternative design.</u>

Mr. Bakewell did no work to determine, and thus has not identified, the cost for Symantec to implement its '050 Patent alternative design. At his deposition, Mr. Bakewell testified that ███████████████████████████████████████████████████████████████." D.I. 515-7, 261:18–264:16. But that ███████ cost-to-Symantec estimate appears nowhere in Mr. Bakewell's report. Instead, that ███████ figure is the damages number Mr. Bakewell lands on for a lump-sum reasonable royalty for infringing the '050 Patent. *See* Exh. 1 at ¶¶ 12 & 329.

Symantec describes Mr. Bakewell's erroneous testimony about a ███████ incremental cost to implementing its ███████████" for the '050 Patent as a "mistake" and a "momentary lapse." D.I. 531 at 20. Symantec's Answering Brief compounds his error by insisting that Mr. Bakewell *did* opine about the '050 alternative design costs. *See* D.I. 531 at 20 (claiming that Mr. Bakewell "presented in his expert report" that the '050 alternative "would involve ███████ incremental costs" and citing "Bakewell Rpt. ¶ 363"). Paragraph 363 of Mr. Bakewell's Report, by its terms, discusses only the '610 Patent alternative, not the '050 Patent alternative.

8

Thus, Mr. Bakewell's opinion on the costs to implement an '050 alternative design traces a perfect circle. Mr. Bakewell testified that implementing the '050 alternative design would cost Symantec [REDACTED] because that was the amount of damages Mr. Bakewell had concluded Symantec should owe for infringing the '050 Patent. But Federal Circuit precedent requires defendants to use "sound economic proof" when evaluating proposed non-infringing alternatives. This, in turn, requires "sound economic and factual predicates." *DSU Med. Corp. v. JML Co. Ltd.*, 471 F.3d 1293 1309 (Fed. Cir. 2006); *see also Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 286 (S.D.N.Y. 2000) (requiring alternatives to be "grounded on the most relevant and reliable data available."). As with his speculative opinions regarding the [REDACTED], Mr. Bakewell is not permitted simply to make it up.

## II.
## Conclusion

IV1 respectfully requests that the Court exclude (1) Mr. Bakewell's testimony on his hypothesized transaction [REDACTED]; (2) his opinions related to Symantec's [REDACTED]; and (3) all Symantec testimony on its proposed non-infringing alternative design.

Dated: August 2, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800

Seattle, WA 98101-3000  
Telephone:   (206) 516-3880  
pfolse@susmangodfrey.com  
btaylor@susmangodfrey.com  
lgodfrey@susmangodfrey.com  

Richard W. Hess (admitted *pro hac vice*)  
Weston O'Black (admitted *pro hac vice*)  
John P. Lahad (admitted *pro hac vice*)  
SUSMAN GODFREY L.L.P.  
1000 Louisiana Street, Suite 5100  
Houston, TX 77002  
Telephone:   (713) 653-7859  
rhess@susmangodfrey.com  
woblack@susmangodfrey.com  
jlahad@susmangodfrey.com  

*Attorneys for Plaintiff*