IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-1067 (LPS) |
| | ) | |
| CHECK POINT SOFTWARE | ) | |
| TECHNOLOGIES LTD.; CHECK POINT | ) | |
| SOFTWARE TECHNOLOGIES, INC.; | ) | REDACTED - PUBLIC VERSION |
| McAFEE, INC.; SYMANTEC CORP.; | ) | |
| TREND MICRO INCORPORATED and | ) | |
| TREND MICRO, INC. (USA), | ) | |
| | ) | |
| Defendants. | ) | |

## SYMANTEC CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

*Attorneys for Defendant Symantec Corporation*

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Original Filing Date: August 2, 2013
Redacted Filing Date: August 9, 2013

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 1

      A.    The Asserted Claims of the '050 Patent are Invalid ................................... 1

            1.    There Is No Relevant Dispute of Fact Between the Parties
                  Regarding the Townshend Prior Art Reference ........................................ 1

            2.    Townshend's "Count" as Disclosed in Fig. 3 Meets the Second and
                  Third Steps of the '050 Patent's Asserted Claims .................................... 2

            3.    Townshend's Fig. 4 Embodiment, Which Includes the Count and
                  the "Bulk Signature Element," Independently Meets the Second
                  and Third Steps of the '050 Patent's Asserted Claims ............................. 5

            4.    The Asserted Claims of the '050 Patent are Obvious in Light of
                  Townshend ................................................................................................ 8

      B.    The '142 Patent Is Invalid Due to the On-Sale Bar ................................... 10

            1.    An Offer For Sale Originating in the United States is Sufficient to
                  Trigger the On-Sale Bar .......................................................................... 11

            2.    Regardless of Whether the "Prefatory Activity" Test Applies,
                  Clear and Convincing Evidence Shows that the On-Sale Bar is
                  Triggered ................................................................................................. 12

      C.    Symantec Does Not Infringe the Asserted Claims of the '142 Patent ...... 13

            1.    The Accused Products Do Not Combine Email Messages With a
                  New Distribution List .............................................................................. 13

            2.    The Accused Products Do Not Combine E-Mail Messages With a
                  Rule History ............................................................................................ 14

      D.    Symantec Does Not Infringe the Asserted Claim of the '610 Patent ....... 15

            1.    Private Networks Are Never "Within the Telephone Network" .............. 15

      E.    Symantec Does Not Infringe the Asserted Claims of the '155 Patent ...... 17

      F.    Summary Judgment of No Willful Infringement Should Be Entered ........ 18

1.      IV Has No Evidence to Support the Objective Prong of *Seagate*.............18

2.      IV Has No Evidence to Support the Subjective Prong of *Seagate*............19

III.    CONCLUSION ............................................................................................20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Acceleron, LLC v. Hewlett-Packard Co.,*
   755 F. Supp. 2d 551 (D. Del. 2010) .........................................................................19

*Aguayo v. Universal Instr. Corp.,*
   356 F. Supp. 2d 699 (S. D. Tex. 2005) ....................................................................12

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .................................................................................................18

*Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.,*
   635 F.3d 1373 (Fed. Cir. 2011) .................................................................................1

*Ecolochem, Inc. v. S. Cal. Edison Co.,*
   227 F.3d 1361 (Fed. Cir. 2000) .................................................................................9

*Gandy v. Main Belting Co.,*
   143 U.S. 587 (1892) .................................................................................................11

*In re Seagate Tech., LLC,*
   497 F.3d 1360 (Fed. Cir. 2007) .........................................................................18, 19

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
   383 F.3d 1337 (Fed. Cir. 2004) ...............................................................................20

*Koplove v. Ford Motor Co.,*
   795 F.2d 15 (3d Cir. 1986) .......................................................................................19

*KSR Int'l Co. v. Teleflex Inc.,*
   550 U.S. 398 (2007) ...................................................................................................8

*Linear Tech. Corp. v. Micrel,*
   275 F.3d 1040 (Fed. Cir. 2001) ...........................................................................11, 12

*MDS Assoc., LP v. U.S.,*
   37 Fed. Cl. 611 (Ct. Cl. 1997) ..................................................................................12

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
   2007 WL 3231709 (N.D. Cal. Oct. 30, 2007) .......................................................11, 12

*P&G v. Teva Pharms. USA, Inc.,*
   566 F.3d 989 (Fed. Cir. 2009) ...................................................................................9

*Robbins Co. v. Lawrence Mfg. Co.*,
  482 F.3d 426 (9th Cir. 1973) .................................................................................... 11, 12

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
  707 F. Supp. 2d 737 (N.D. Ohio 2010) ............................................................................ 18

*Solvay v. Honeywell Spclty. Mtrls. LLC*,
  827 F. Supp. 2d 358 (D. Del. 2011) ................................................................................ 19

*SPX Corp. v. Bartec USA, LLC*,
  2008 WL 3850770 (E.D. Mich. Aug. 12, 2008) ............................................................ 11, 12

*Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*,
  796 F. Supp. 2d 520 (D. Del. 2011) .................................................................................. 2

*Tarkus Imaging, Inc. v. Adobe Sys.*,
  867 F. Supp. 2d 534 (D. Del. 2012) ................................................................................ 18

*Texas Instruments v. United States ITC*,
  988 F.2d 1165 (Fed. Cir. 1993) ...................................................................................... 13

*WMS Gaming Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999) ........................................................................................ 9

*Yan v. Penn State Univ.*,
  2013 WL 2996192 (3d Cir. June 18, 2013) ........................................................................ 2

## FOREIGN AUTHORITIES

*Brinkibon Ltd. v. Stahag Stahl*
  [1983] 2 A.C. 34 (H.L.) (appeal taken from Eng.) ............................................................ 11

*Entores Ltd. v. Miles Far East Corp.*
  [1955] EWCA (Civ.) 3 (Eng.) ........................................................................................ 12

## STATUTES

35 U.S.C. § 102(b) ............................................................................................... 11, 12

35 U.S.C. § 102(e) .................................................................................................... 1

## RULES

Fed. R. Civ. P. 56(c)(1) ................................................................................................ 2

Fed. R. Civ. P. 56(d) ................................................................................................. 19

## I.     INTRODUCTION

IV's opposition (D.I. 536 ("Opp.")) misstates the facts of record, ignores key limitations in the asserted claims, invents new ones, and manufactures "disputes" of fact that do not avoid summary judgment.  Symantec respectfully requests that summary judgment be granted.

## II.    ARGUMENT

### A.     The Asserted Claims of the '050 Patent are Invalid

#### 1.     There Is No Relevant Dispute of Fact Between the Parties Regarding the Townshend Prior Art Reference

IV does not dispute that the Townshend patent qualifies as prior art under 35 U.S.C. § 102(e).  IV also does not dispute the factual statements made in Symantec's opening brief regarding how the system disclosed in Townshend generates the "counts" and the "bulk email signatures" and how the system uses them.  Instead, the "factual" disputes IV seeks to create actually concern how to apply the claim language and the Court's claim constructions to the uncontested facts regarding the Townshend counts and bulk email signatures.  (Opp. at 4, 6, 8, 10, 11.)  IV cannot avoid summary judgment through this stratagem.[1]  As explained further below, IV applies the asserted claims in a manner that (1) is contrary to their plain language and the Court's constructions, (2) would exclude embodiments disclosed in the '050 patent, (3) contradicts arguments made by IV in its *Daubert* brief concerning Dr. Spafford, and (4) contradicts the sworn testimony of its own expert, Dr. McDaniel.  For these reasons, IV's arguments should be rejected and summary judgment should be granted.

---

[1] IV's "disputes" are fundamentally different in character than the factual dispute in the *Crown Packaging* case IV cites.  The dispute in *Crown Packaging* concerned what techniques could have been used to manufacture a particular structure shown in a figure of the prior art reference – clearly a factual question – and hence whether that figure inherently disclosed the use of a particular one of those techniques.  *Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011).

2.     **Townshend's "Count" as Disclosed in Fig. 3 Meets the Second and Third Steps of the '050 Patent's Asserted Claims**

As set forth in Symantec's opening brief, the Central Server / Second Tier System in Townshend satisfies the second and third step of each asserted '050 patent claim by generating the "count" and transmitting it to the first tier system.  (D.I. 509 ("Brief") at 11-13, 15-17.)

a.     **The System Disclosed in Townshend Uses Precisely the Same Information and Precisely the Same Calculations to Determine Whether an Email Has a Characteristic as Does an Embodiment Described and Claimed in the '050 Patent**

IV claims that Townshend does not satisfy the second step of the asserted claims because its Central Server "contains <u>no</u> information regarding characteristics of messages or data files" and because the "central server performs no determination or characterization."  (Opp. at 6-7.) IV bases these arguments solely on statements in the unsworn expert report of Dr. McDaniel. Even if this were competent evidence – which it is not[2] – these statements are contradicted by the '050 patent itself, the Townshend reference, and by Dr. McDaniel's sworn deposition testimony.

The Central Server in Townshend computes the count.  Dr. McDaniel agreed, under oath, that the Townshend count is a frequency.  McDaniel Dep. at 70:15-23, 151:24-152:7 (App. at 637, 656).  Like Townshend, the '050 specification explicitly recognizes that an email can be classified as having a characteristic based solely upon the frequency of the email:

> In one embodiment, where spam determination is the goal, the algorithm computes, for example, the frequency with which a message (or, in actuality, the ID for the message), is received within a particular time frame.  For example, *if a particular ID indicating the same message is seen some number of times per hour, the system classifies the message (and ID) as spam*.

'050 patent at 6:2-8 (App. at 185) (emphasis in quoted material added unless otherwise noted).

---

[2] IV's opposition relies extensively upon the unsworn expert reports of its technical expert, Dr. Patrick McDaniel.  Fed. R. Civ. P. 56(c)(1) requires that written statements by witnesses used to support a party's factual positions be presented as affidavits or declarations.  An unsworn expert report is not competent evidence to be considered on a motion for summary judgment. *Yan v. Penn State Univ.*, 2013 WL 2996192, at *2 (3d Cir. June 18, 2013); *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, 796 F. Supp. 2d 520, 553 n.39 (D. Del. 2011).

This explicit recognition is also apparent in claim 8 of the '050 patent, which provides that the characteristic is in fact "**defined** by a frequency." *Id.* at 8:9-12 (App. at 186).  Because the Central Server in Townshend tracks the frequency of a particular ID (which defines the characteristic) (*see* Townshend at 3:55-67; 7:7-30; 10:19-32 (App. at 165, 167-68)), just like the system described in the '050 patent, IV's contention that the Townshend Central Server / Second Tier System somehow lacks sufficient information to perform the claimed steps is demonstrably wrong and does not avoid summary judgment.[3]

> **b.   The Fact that the Townshend First Tier System "Marks" Emails as Bulk Has No Bearing on Whether the Second Tier System Satisfies the Asserted Claims**

IV also claims that Townshend's Central Server / Second Tier System does not meet the second and third steps of the asserted claims when it computes and then transmits the count, because the Townshend Email Server / First Tier System is the system that actually "marks" the email messages as bulk.  (Opp. at 7, 11.)  This argument also fails, as it is contrary to the language of the claims, the Court's claim constructions, and the teachings of the '050 patent. Townshend explains how its Email Server / First Tier System "marks" emails as bulk:

> [T]he electronic mail server marks the electronic mail message as bulk electronic mail. . . .  [E]lectronic mail message 210 is marked as bulk electronic mail *by adding to electronic mail message 210 bulk mail flag 224 header element with the string "Precedence: Bulk"*.

Townshend at 8:62-67 (App. at 167).  The '050 specification describes how its First Tier System engages in the same type of marking, by inserting information into an email header:

---

[3] To illustrate further, the second step of '050 patent claim 9 is "[D]etermining . . . whether each received content identifier matches a characteristic of other identifiers."  '050 patent at 8:20-23 (App. at 186).  Claim 14, which depends from claim 9, expressly requires that this "step of determining identifies said e-mail as SPAM *by tracing the rate per unit time a digital ID is generated*" – i.e., by computing the frequency for that identifier.  *Id.* at 8:38-40 (App. at 186). Thus, IV's assertion that computing a count / frequency (as Townshend does) fails to meet the second step of claim 9 is necessarily incorrect as a matter of law, because it would mean that claim 14 falls outside of claim 9, from which it depends.

> [T]he configuration file DS1 10 on the first tier allows other decisions about the e-mail received from the e-mail sender 10 to be made, based on the reply from the second tier 30.  For example . . . ***the subject line may be appended to indicate that the e-mail is "spam"*** . . . .

'050 patent at 5:41-46 (App. at 185).  Thus, nothing in the asserted claims or in the Court's claim constructions could or does exclude a system where the First Tier System "marks" the email message by appending a header to the email.  IV's argument has no merit.

### c.   The '050 Patent, Townshend, IV's Expert, and IV's *Daubert* Brief Regarding Dr. Spafford Confirm that the Count in Townshend Describes the Content of the Email

IV argues that the count returned by the Townshend Central Server / Second Tier System – such as "11" – "does not describe the content."  (Opp. at 10.)  But to make this argument, IV has to contradict its own patent ("said characteristic is defined by a frequency" – claim 8 (App. at 186)), Townshend ("Identifying Bulkmail Based on Counts" – 3:55-67 and 7:7-30 (App. at 165, 167)), and its expert's admission that Townshend discloses that the count describes the content:



McDaniel Dep. at 90:19-23, 105:12-18 (App. at 642, 645); Townshend at 3:55-67 and 7:7-30 (App. at 165, 167).  Thus, the '050 patent, Townshend, and Dr. McDaniel all agree that a number such as "11" will describe/define the characteristic so long as the system is designed to understand that this number means that the email is bulk.  For example, when the predetermined

threshold is 10, both the Email Server / First Tier System and the Central Server / Second Tier System of Townshend understand that a count of "11" means that the email is bulk. Townshend Fig. 3 element 336, 8:54-67, Fig. 4 element 420, 10:4-8, 10:19-27 (App. at 160-61, 167-68).[4]

Finally, IV's argument that the Townshend count cannot describe and indicate a characteristic is directly contradicted by its assertion, in its *Daubert* motion regarding Dr. Spafford, that a "likelihood, probability, or score" can do just that:

> Nothing in the plain language of the Court's construction limits the "descriptor"[5] to a binary value. A likelihood, probability, or score describes the content just as much as—if not more than—true, false, yes, or no.

(D.I. 518 at 10.)[6] Thus, in IV's own words, the Townshend count "describes the content just as much as—if not more than" a true/false value that says whether the count exceeds the predetermined threshold. Townshend's calculation, storage, retrieval and processing of the count clearly satisfies the second and third steps of the asserted claims of the '050 patent.

### 3. Townshend's Fig. 4 Embodiment, Which Includes the Count and the "Bulk Signature Element," Independently Meets the Second and Third Steps of the '050 Patent's Asserted Claims

#### a. IV's Expert Confirmed That Townshend Fig. 4 Meets the Second Step of the Asserted Claims

IV's expert unequivocally admitted that Townshend's Fig. 4 embodiment discloses the second step of the asserted claims:

██████████████████████████████████████████

---

[4] IV cites to deposition testimony concerning whether the size of a file is an "indication of the characteristic," as that term has been construed by the Court. (Opp. at 10-11.) That testimony is irrelevant here, because Townshend sends a count, not a file size.

[5] The word "descriptor" appears in the Court's construction of the term "indication of the characteristic."

[6] IV made this argument because its infringement theory as to the second and third steps is that a single number, retrieved by Symantec's purported Second Tier System and transmitted to the purported First Tier System, meets those elements. (*See, e.g.,* D.I. 518 at 7, 10.) There is no principled distinction that would allow IV to maintain this infringement position while at the same time avoiding the anticipatory impact of the Townshend count.



McDaniel Dep. at 124:6-12, 124:25-125:4, 125:11-15 (App. at 649); *see also* Brief at 13, 17-19.

IV's attempt to point to the fact that the First Tier system in Townshend marks emails is of no moment; as noted above, the '050 patent discloses the same marking by its First Tier system.  (*See supra* at 3-4.)  IV also misleadingly cites to McDaniel's testimony *regarding Fig. 1 of Townshend* (Opp. at 8), but that is irrelevant and does nothing to contradict or change his explicit (and correct) admission that Fig. 4 discloses the second step of each asserted claim.

### b.     Townshend Fig. 4 Meets the Third Step of the Asserted Claims

IV also argues that the "bulk signature elements" of Townshend Fig. 4 are not "responsive to" a request or query, and thus do not satisfy the third step of claims 9 or 16.  In essence, IV argues it is the count that is sent in response to the query, and the subsequently sent bulk signature element is thus *not* sent in response to the query.  (Opp. at 12.)

IV's argument (1) concedes that the Townshend count satisfies the third step, and (2) is demonstrably wrong as to the bulk email signature because that is also responsive to the query.  First, matching the file/ID and calculating/retrieving the count is clearly part of the second step (i.e., determining/comparing).  Accordingly, the sending of the count to the initiating First Tier system (as per Fig. 4) is responsive to the query, thus satisfying the third step of all asserted

claims.  (*See also* McDaniel Dep. at 105:12-18; 141:24-142:3 (App. at 645, 653-54) (admitting that "the Townshend patent says that the count indicates which signatures represent bulk email," and that "[t]he count is responding to the query.").)

Second, it is apparent from both the '050 patent and Townshend Fig. 4 that the bulk email signature is also responsive to the query.  The '050 patent expressly contemplates, discloses and claims "a plurality" of First Tier systems (*see, e.g.*, '050 patent, 8:15-19, 8:51-55, and 9:20-24 (App. at 186-87)), and notes that the "responsive" indication sent as part of the third step of claims 9 and 16 (claim 22 does not require that it be "responsive") is sent to "at least one" of the source systems – i.e., the indication is sent both to the initiating system and to other First Tier systems.  This is exactly what Townshend discloses.  Townshend at 10:19-24, 10:64-67 (App. at 168).  Moreover, IV's expert admitted that the query "trigger[s] bulk signatures being sent" (McDaniel Dep. at 127:18-23 (App. at 650)), which is an admission that the bulk email signatures are "responsive" to the query.  And there is nothing in the claims or in the Court's constructions that requires that only one "indication of the characteristic" can be responsive to the query.  The count, the bulk signature, or both, can satisfy the "responsive to" limitation.

> **c.    Townshend's "Bulk Signature Elements" Also Provide an Indication of a Characteristic**

IV's argument that the bulk signature elements do not "indicate" a characteristic not only is incorrect but is contradicted by Dr. McDaniel, who admits that these elements are sent by the Central Server if and only if the corresponding message is bulk email.  McDaniel Dep. at 131:13-16 (App. at 651).[7]  And Townshend explicitly teaches that the Central Server will "generate and

---

[7] Similarly specious is IV's argument that because the bulk email signature is a "hash," it is not indicative of a characteristic (Opp. at 12).  Townshend explicitly teaches that the bulk email signature indicates which signatures represent bulk email.  IV's expert concurred, agreeing that when the Townshend Central Server sends bulk signature elements to the First Tier System, it is saying that the corresponding emails are bulk.  McDaniel Dep. at 130:15-24 (App. at 651).

transmit data [e.g., the count and/or the bulk email signature] *indicating which signatures represent bulk electronic mail*." Townshend at 3:55-67; 10:19-24 (App. at 165, 168).

For all of these reasons, and for the reasons set forth in Symantec's moving papers, Townshend's Fig. 4 embodiment independently anticipates all the asserted claims, and summary judgment invalidating all the asserted claims should be granted. (Brief at 5-19.)

### 4.    The Asserted Claims of the '050 Patent are Obvious in Light of Townshend

IV asserts, incorrectly, that Symantec's obviousness argument is unsupported by expert opinions. Dr. Rubin's declaration explains that even if IV somehow were able to identify a valid distinction between the asserted claims and Townshend, Townshend would, at a minimum, render the '050 patent obvious as a matter of law. Rubin Invalidity Report, Ex. 050-A at 1 (App. at 809); *see id.* ¶ 580 (8/1/2013 Rubin Decl., Ex. A). Even more importantly, IV's own expert's sworn testimony establishes each factor that is necessary to render the '050 patent obvious under *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). (Brief at 19-20.)

IV cannot dispute that Dr. McDaniel conceded, under oath, that an extremely minor modification to Townshend Fig. 3 would make it (alone) satisfy every asserted claim of the '050 patent.[8] Instead, IV responds with irrelevant statements comparing the '050 patent to "conventional malware screening" and with "evidence" of secondary considerations that falls far short of the standard required to establish non-obviousness. (Opp. at 13-14.)

The unsworn statement in Dr. McDaniel's report that the '050 patent "represents a significant advancement over conventional malware screening" (Opp. at 14) is irrelevant to

---

[8] As set forth in Symantec's opening brief, the minor modification to Townshend Fig. 3 that Dr. McDaniel conceded would anticipate/invalidate was to have the Central Server / Second Tier System compare the count to the threshold. As described above and in Symantec's opening brief, Townshend Fig. 4 includes this very modification. (Brief at 20.)

whether Townshend discloses or renders obvious every element of the asserted claims of the '050 patent. As discussed above and in Symantec's opening brief, Townshend does so.

IV's arguments concerning secondary considerations fare no better. "The patentee bears the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness." *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999) (citation omitted); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1377 (Fed. Cir. 2000) (same). IV relies only on Dr. McDaniel's unsworn report. (Opp. at 14.) Even if that could be considered in opposing summary judgment, it fails to establish any nexus between the purported secondary considerations and the patented invention.

The only "evidence" IV identifies as supposedly showing a long-felt need for the patented invention is a series of documents from 2008, 2009, and 2010 describing advantages of then-brand-new versions of Symantec, Trend Micro, and McAfee products compared to the immediately preceding versions of those products. McDaniel Validity Report ¶¶ 119-124 (Lahad Decl., Ex. 1). This actually evidences that there was *no* long-felt need for the claimed invention – the accused products were not introduced until at least 2008, nine years after the '050 patent was filed and six years after it issued. The evaluation of whether there was a long-felt and unmet need is determined as of "the filing date of the challenged invention" (*P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009)), not nine years later. Moreover, the accused products admittedly include a myriad of non-infringing features. Finally, IV's damages expert acknowledged that Symantec's market share *decreased* after it added the purportedly infringing technology to its products. 5/3/2013 Wagner Dep. at 309:8-12 (Yu Decl., Ex. PP). There simply is no evidence of a long-felt need or of the requisite nexus.

Dr. McDaniel's report also states that "several companies have taken licenses to the '050 patent" (McDaniel Validity Report ¶ 126 (Lahad Decl., Ex. 1)), but neither IV's brief nor Dr. McDaniel's report identifies a single such licensee, states how many licenses have been taken or how many other IV patents were covered by those licenses (presumably thousands), or provides any evidence that the '050 patent was a significant reason for any of the unnamed companies to take its license.

Dr. McDaniel also mentions ███████ ██ Agreement with ██████, but that third-party software development, supply, and maintenance agreement does not mention the '050 patent at all.  It covers two different ████████ software products: █████, which IV contends infringes the '050 patent, and █████, which IV does not accuse of infringing.  *Id.* ¶ 127.  The ████ Agreement charged ████████ exactly the same amount for both the allegedly infringing and the non-infringing products (D.I. 512 at 9-10), which shows that the parties to the agreement did not place any premium on the supposedly patented technology.  Thus, IV has no evidence whatsoever of the nexus that is required to support a secondary consideration argument.

### B.      The '142 Patent Is Invalid Due to the On-Sale Bar

IV does not dispute that (1) Park City Group (PCG) sold the Gatekeeper product embodying the asserted claims of the '142 patent to The Boots Company PLC (Boots) on or around September 29, 1995, more than eight months prior to the critical date of June 23, 1996, or (2) that Gatekeeper was "ready for patenting" by January 9, 1996, more than five months prior to the critical date.  IV's *sole* argument against an invalidating on-sale bar is to claim Gatekeeper was not "on sale *in this country*." (Opp. at 15-20.)  IV is incorrect as a matter of law.

#### 1.    An Offer For Sale Originating in the United States is Sufficient to Trigger the On-Sale Bar

In *Linear Tech. Corp. v. Micrel*, 275 F.3d 1040, 1052-53 (Fed. Cir. 2001), the Federal Circuit held that a U.S. manufacturer's formal acceptance of purchase orders from European distributors is sufficient to create "a binding contract to sell the [product] that invalidates the [asserted] patent [under 102(b)]."  Where an offer from a U.S. manufacturer to a foreign buyer originates in the U.S. and results in a sale prior to the critical date, the on-sale bar is triggered.[9] *See id.*  Indeed, an offer alone, originating from a U.S. manufacturer but directed to a potential foreign buyer, is sufficient to trigger the on sale bar.  *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2007 WL 3231709, at *3 (N.D. Cal. Oct. 30, 2007); *SPX Corp. v. Bartec USA, LLC*, 2008 WL 3850770, at *8-9 (E.D. Mich. Aug. 12, 2008) (offer letter sent to Canada from the U.S. could provide a basis for finding on-sale bar).

Here, the September 29, 1995 Letter Agreement indicates that it was sent ███████ ██████ from Park City, Utah, to Ian Hawtin at Boots in Nottingham, UK. PARKCITY_0006236 (App. at 20).  This document clearly was an offer, manifesting PCG's willingness to enter into the ████████████████████████████████████████" *Id.*  Boots' representative provided ███████████████████████████████ that the agreements were signed, and that Boots accepted PCG's offer.  PARKCITY_0006353 (App. at 67.)  To the extent IV argues that English law governs any of the September 29, 1995 agreements, English law provides that when an offer is accepted by telephone, ***the place of contract is the place at which the acceptance was received***.  *See Brinkibon Ltd. v. Stahag Stahl* [1983] 2 A.C. 34 (H.L.) (appeal taken from Eng.) (Yu Decl., Ex. QQ); *Entores Ltd. v. Miles Far*

---

[9] *Gandy v. Main Belting Co.*, 143 U.S. 587 (1892), cited by IV in a footnote (Opp. at 15), is easily distinguished, because that case involved the sale of a product exclusively manufactured and sold overseas.  *Id.* at 592.  *See Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973).

*East Corp.* [1955] EWCA (Civ.) 3 (Eng.) (Yu Decl., Ex. RR).  Thus, under English law, the

agreement would be considered to have been **consummated in the United States**.

> ## 2.    Regardless of Whether the "Prefatory Activity" Test Applies, Clear and Convincing Evidence Shows that the On-Sale Bar is Triggered

IV argues that the "prefatory activity" test set forth in *Robbins Co* has not been expressly

adopted by the Federal Circuit.  (Opp. at 17-19.)  But numerous courts have followed *Robbins*

*Co.*[10] and *Linear Tech.* states the same principle – certain activity in the United States resulting

in a commercial offer is sufficient to trigger § 102(b).  Furthermore, even if IV were correct that

only sales-related prefatory activity in the U.S. is considered relevant (Opp. at 19, 21), there was

plenty of U.S.-based sales-related activity.  In addition to the PCG offer originating in Utah,

there were meetings in Utah that led to the Gatekeeper deal.  Geiger Dep. at 83:16-84:16 (App. at

315).  PCG's sales force was located in Utah.  Tondevold Dep. at 20:23-24:12 (App. at 343).

Boots personnel met in Utah with PCG technical personnel and with PCG sales/financial

executives such as ███████████████ and ███████████████████████ .  (App.

at 8, 10.)  And PCG source code was held in escrow in ████████ as a condition of the sale,

under conditions not nearly as restrictive as IV urges with respect to "confidentiality and

geographic restrictions."  *Compare* Source Code Escrow Agreement § 3 (App. at 50) *with* EULA

pp. 2-3 (App. at 43-44).

As a matter of law, the binding sales contract alone suffices to trigger the on-sale bar.

Here, the undisputed evidence also shows that substantial prefatory activity to the sale, including

sales-related activity, took place in the United States.

---

[10] See, e.g., *Monolithic Power*, 2007 WL 3231709, at *3; *SPX Corp.*, 2008 WL 3850770, at *8-9; *MDS Assoc., LP v. U.S.*, 37 Fed. Cl. 611 (Ct. Cl. 1997); *Aguayo v. Universal Instr. Corp.*, 356 F. Supp. 2d 699 (S. D. Tex. 2005).

### C.   Symantec Does Not Infringe the Asserted Claims of the '142 Patent

#### 1.   The Accused Products Do Not Combine Email Messages With a New Distribution List

The Court's constructions expressly require combining the email message with a new distribution list "for delivery together."  (D.I. 425 at 16.)  None of the purported "distribution lists" identified in IV's opposition are ever "deliver[ed] together" with the email message.

IV concedes that its infringement theory is dependent upon the argument that the Court's constructions are met by systems that merely "deliver emails" to "quarantine addresses."  (Opp. at 27.)  In IV's view, *the address doesn't need to be combined with the message or sent with the message*.[11]  (*Id*.)  Because IV ignores express requirements of the Court's claim constructions, the Court should grant Symantec summary judgment of non-infringement.

Moreover, IV's position would render the "combin[ing] . . . with a new distribution list" limitation of each asserted claim superfluous.  Each asserted claim contains a limitation requiring "deliver[ing] the [e-mail message] to a . . . post office."  '142 patent at 27:29-30, 29:57-59, 31:6-7, 31:29-30, 32:33-34, 34:4-5 (App. at 125-28).  If simply delivering the message to the quarantine satisfied the "combining . . . with a new distribution list" limitation, as IV asserts, then the "combining" limitation would be redundant.  *See Texas Instruments v. United States ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (constructions must not "render the disputed claim

---

[11] For the MessageLabs products, IV does not cite to any evidence that the address of the quarantine (or any other "distribution list") is ever delivered anywhere.  For the Messaging Gateway, Brightmail Gateway, Mail Security Appliance, and Mail Security for SMTP products, IV cites to nothing suggesting that the address (or any other "distribution list") remains combined with the message when the message leaves that holding area and is delivered.  For the Message Filter and Brightmail Antispam products, IV does not claim that the relevant file contains the email message itself or is combined with the email message, or that the "port" (or any other "distribution list") is ever delivered anywhere.  For the Mail Security for Domino product, IV does not claim that the quarantine address is combined with the email message or that this address (or any other "distribution list") is ever delivered anywhere.  For the Mail Security for Exchange product, IV never mentions any address (or any other "distribution list"), let alone that it is combined or delivered with anything.

language mere surplusage"). For all of these reasons, IV's claim that the accused Symantec products combine the message with a new distribution list should be rejected and summary judgment of non-infringement should be granted.[12]

### 2. The Accused Products Do Not Combine E-Mail Messages With a Rule History

The Court has construed the term "business rule" as requiring two parts: (1) one or more "antecedent condition(s)" and (2) one or more "consequent action(s)." (D.I. 425 at 14-15.) As explained in Symantec's opening brief, in the accused Symantec products, a given antecedent condition does not always result in the same consequent action. Users are assigned to "policy groups," and each policy group is associated with its own set of policies that specify what actions are taken for users that belong to that policy group. (Brief at 28). A single antecedent condition may correspond to a different consequent action for each policy group. (*Id.*) In other words, there may be multiple "business rules" that each contain the same antecedent condition but a different consequent action, depending upon the particular policy group. This means that for the accused products, simply identifying the antecedent condition does not identify the business rule.

Although the accused Rule ID identifies an entity that Symantec's documents and witnesses call a "rule," this Symantec "rule" is not a "business rule" as the Court has construed that term. As Dr. McDaniel testified, in the accused Symantec products, the "rule identifies the action through the policy." McDaniel Dep. at 805:21-806:4 (App. at 678-79). Without knowing

---

[12] IV wrongly argues that Defendants' invalidity charts concede that "moving a file to a quarantine directory" satisfies the "combining with a new distribution list" limitation. (Opp. at 27.) The cited charts are for prior art versions of the Trend Micro ISVW product, a product IV accuses of infringing the '142 patent. These charts expressly state that IV's allegations that the '142 patent claims cover the ISVW product are "meritless and unsupported by evidence," but that "based upon Plaintiff's improper application of the asserted claims to ISVW products," the prior art versions of ISVW would anticipate the asserted claims. Ex. 142-N at 1, Ex. 142-O at 1 (Lahad Decl., Ex. 18).

the policy that was applied, or even which policy group that policy came from – things that the Rule ID does not identify – the rule does not specify or identify the action to be taken.

IV goes to great lengths to avoid this key point, with arguments about whether the rule history must identify a "reason" (Opp. at 24), must literally "include" the condition and action (*id.*), or must identify a "verdict" (*id.* at 25).  None of these arguments, however, changes the fact that Symantec's Rule ID does not identify a "business rule" and is thus not a "rule history."

### D.  Symantec Does Not Infringe the Asserted Claim of the '610 Patent

The relevant facts are uncontested.  IV does not dispute that the accused Symantec products scan for and detect viruses exclusively on private networks, utilizing IP addresses in the 10.x.x.x address range, which cannot be accessed from the public Internet.  ***IV's own expert has admitted that such a private network "can never be 'within the telephone network,'"*** as the asserted claim requires.  McDaniel Validity Report ¶ 44 (App. at 608); Brief at 34.  IV's opposition does not and cannot undercut this clear admission from its own expert, which conclusively establishes non-infringement.

### 1.  Private Networks Are Never "Within the Telephone Network"

Unable to avoid Dr. McDaniel's admission regarding private networks, IV seeks to rewrite his opinion regarding the NAV-IEG prior art product demonstration performed by Symantec's expert Dr. Rubin.  IV now claims that Dr. McDaniel's opinion was actually based on the purported fact that the NAV-IEG demonstration "was completely isolated from the public Internet," and not based upon the fact that the demonstration used a private network with private IP addresses.  (Opp. at 28.)  This is pure attorney argument, devoid of any evidence or expert opinion.  Dr. McDaniel's admission is explicitly directed to the IP addresses.  (*Id.*)  In fact, he testified that he had "no idea" whether the network in the NAV-IEG demonstration was connected to the Internet or isolated from it, and that that did not matter to his opinions:



McDaniel Dep. 663:10-20, 664:16-665:14 (App. at 670).  IV cannot claim that Dr. McDaniel

rendered a different opinion based on its assertion that he relied on purported "facts" that Dr.

McDaniel himself conceded he did not know.

IV next argues that "a reasonable factfinder could conclude that Symantec's accused

products screen for viruses in networks and gateway nodes outside those of the calling or called

party."  (Opp. at 29.)  To infringe, however, it is not sufficient that the virus screening occur in *a*

network.  Rather, under the Court's construction of the term "within the telephone network," the

screening must occur "in *the* voice or data network connecting the calling party and the called

party."  (D.I. 425 at 24.)  And IV's expert has admitted that Symantec's screening occurs *on a*

*private network "that can never be 'within the telephone network.'"*

IV's argument that Symantec's accused products must infringe because they are

somehow "connected to" the public Internet (Opp. at 30) is another non-starter.  IV's expert

admitted that the Symantec screening is not done "within the telephone network," as the claims

require.  The Court construed "within the telephone network" to mean "in the voice or data

network connecting the calling party and the called party . . .," not "in *a network that is*

*connected to* the voice or data network connecting the calling party and the called party . . . ."

Connections of private networks to the internet, which then delivers the results of private

network screening, do not bring those networks "within the telephone network" – just as the

connection of the networks of the calling and called parties to the internet do not bring those

networks "within the telephone network."  As set forth in Symantec's opening brief and Dr.

McDaniel's sworn testimony, a private network such as Symantec's *can never be* "within the

telephone network," as the Court has construed the term.  Therefore, summary judgment of non-

infringement should be granted.[13]

### E.     Symantec Does Not Infringe the Asserted Claims of the '155 Patent

The accused products do not "forward[] the non-executable format" as the asserted

claims of the '155 patent require.  IV's Opposition cites to Dr. McDaniel's unsworn reports, but

ignores his subsequent concession, under oath, that the only time that the accused products

convert an email into a non-executable format is *after the email is forwarded,* when the email is

rendered for display in the web quarantine interface:



McDaniel Dep. at 642:17-643:8 (App. at 666).  Emails are only displayed in the web quarantine

interface *after* they have been sent to the quarantine.  McDaniel Infringement Report ¶¶ 207-209

(Lahad Decl., Ex. 4).  Because the claims require "conversion" to a non-executable format prior

---

[13] IV's opposition concedes that Symantec's screening is performed on "private networks"
belonging to Symantec and associated with gateway nodes that transfer data between the public
Internet and the private networks.  (Opp. at 30-31.)  Assuming that the Court grants Symantec's
pending motion for clarification, this is yet another reason summary judgment should be granted.

to forwarding, and even Dr. McDaniel admits that the accused products forward the executable format and then "convert," summary judgment of non-infringement should be granted.

### F.      Summary Judgment of No Willful Infringement Should Be Entered

Summary judgment is proper because Symantec has demonstrated the absence of evidence that could support a claim of willful infringement.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### 1.      IV Has No Evidence to Support the Objective Prong of *Seagate*

IV does not dispute that *Seagate*'s objective prong "cannot be satisfied" where the defendant has asserted "reasonable claim construction positions," "legitimate defenses to infringement," and/or "credible invalidity arguments."  Although IV argues that the Court adopted only two of Defendants' proposed constructions, the issue of whether a party has asserted "reasonable claim construction positions" is not based on the number of constructions adopted, but the reasonableness of the positions, which is established by "extensive argument from both sides" and "significant time [in] deciding the proper construction" – like here.[14]  *See, e.g.*, *Tarkus Imaging, Inc. v. Adobe Sys.*, 867 F. Supp. 2d 534, 537 (D. Del. 2012).

Similarly, for Symantec's "credible" non-infringement and "legitimate" invalidity positions to warrant summary judgment, IV seems to suggest that Symantec must prevail on its defenses.  (*See, e.g.*, Opp. at 37.)  However, Symantec need only set forth "reasonable" defenses, which it has done.  *See, e.g.*, *Tarkus*, 867 F. Supp. 2d at 538, n.3 (granting summary judgment of no willful infringement despite not having yet ruled on motion for summary judgment of non-infringement because defendant's defenses were "reasonable, even if they may not be

---

[14] IV cites *Saint-Gobain* for the proposition that Symantec's "facially unreasonable claim construction positions counsels against summary judgment" but offers no explanation regarding *how* Symantec's positions were facially unreasonable.  (Opp. at 36) (citing *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737 (N.D. Ohio 2010).)

dispositive"); *Solvay v. Honeywell Spclty. Mtrls. LLC*, 827 F. Supp. 2d 358, 366 (D. Del. 2011) (granting summary judgment of no willful infringement even though defendant's invalidity defense had been rejected by the Federal Circuit).

### 2.      IV Has No Evidence to Support the Subjective Prong of *Seagate*

Because IV has no evidence – much less clear and convincing evidence – to support the subjective prong of *Seagate*, it resorts to raising discovery issues with Symantec.  (Opp. at 38-40.)  Those assertions are without merit, and cannot in any event avoid summary judgment.

First, as a procedural matter, IV had fifteen months to conduct any fact discovery it felt it needed.  IV could have moved to compel (as it did many times on other issues) or opposed this Motion through Fed. R. Civ. P. 56(d).  IV did neither.  *See Acceleron, LLC v. Hewlett-Packard Co.*, 755 F. Supp. 2d 551, 555 (D. Del. 2010) (plaintiff must "diligently pursue the discovery necessary to prove the elements of the claims asserted in its complaint"); *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (no abuse of discretion in granting summary judgment in part because there was "no explanation why plaintiffs had failed to file a motion to compel responses to discovery in sufficient time to enable them to meet their responsibilities under the court's scheduling order").

With respect to the '050 patent (where all asserted claims currently stand rejected in reexamination), IV argues that it can establish the subjective prong because Symantec received an email in October 2003 offering to sell the '050 patent and "at least one Symantec engineer reviewed the '050 Patent and discussed it with at least one Symantec executive."  (Opp. at 39-40.)  Even a cursory examination of that email, however, demonstrates that it could not trigger an "objectively-defined risk" of infringement that was "known or so obvious that it should have been known" to Symantec.  *In re Seagate*, 497 F.3d at 1371.  First, the email was sent in 2003 – five years **before** the earliest accused version of the products accused of infringing the '050

patent.  Pl.'s Fifth Suppl. Resp. Defs.' Interrog. No. 1, Third Am. Ex. K ("Pl.'s Fifth Suppl.

Resp.") at 1 (Yu Decl., Ex. SS).  Further, the seller's agent, Mr. Dybdhal, captioned the email

"*Anti-Spam* patent," whereas, now ten years later, IV has accused only *anti-virus* products of

infringing the '050 patent.  (*Compare* Lahad Decl., Ex. 24 at SYMIV00135025 ███████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ *with* Pl.'s Fifth Suppl.

Resp. at 1 (Yu Decl., Ex. SS) (accusing Symantec anti-virus products)).

 As to the remaining patents, IV weakly argues that the "citation of a patent-in-suit during

prosecution of an eventually-issued patent is sufficient to show knowledge, at least at the

pleading stage."  (Opp. at 40.)  But this case is not at the pleading stage.  And each of the cases

cited by Symantec – and uncontested by IV – hold that threadbare allegations of mere knowledge

of the patents-in-suit, whether by prosecution or otherwise, are insufficient to avoid summary

judgment.  (Brief at 40.)

 Finally, IV's suggestion that Symantec's assertion of privilege might somehow support a

finding of willful infringement reflects a basic misunderstanding of the law.  Indeed, the Federal

Circuit has expressly held en banc that no adverse inference can be drawn from the assertion of

the privilege.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337,

1344-45 (Fed. Cir. 2004) (en banc).

## III. CONCLUSION

 For the foregoing reasons and the reasons set forth in Symantec's opening brief,

Symantec respectfully requests that the Court grant its motion for summary judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM  & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

August 2, 2013
7425082.1