IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,

Plaintiff,

v.

CHECK POINT SOFTWARE TECHNOLOGIES LTD.; CHECK POINT SOFTWARE TECHNOLOGIES, INC.; McAFEE, INC.; SYMANTEC CORP.; TREND MICRO INCORPORATED and TREND MICRO, INC. (USA),

Defendants.

C.A. No. 10-1067 (LPS)

PUBLIC VERSION - REDACTED

**SYMANTEC CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF INTELLECTUAL VENTURES' DAMAGES EXPERT, MICHAEL WAGNER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Original Filing Date: August 2, 2013
Redacted Filing Date: August 9, 2013

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. U.S. Patent No. 6,460,050 ..... 1

1. IV Mischaracterizes the [REDACTED] Agreement that Mr. Wagner Used as the Basis for His Damages Opinions ..... 2

2. IV Fails to Address the Fact that the [REDACTED] Agreement Charged the Same Fee for Software that Admittedly Did Not Infringe as for Software that Allegedly Does Infringe ..... 3

B. U.S. Patent No. 5,987,610 ..... 4

1. The EMVR Does Not Apply Where the Patented Technology is Not the Sole Basis for Customer Demand ..... 4

2. [REDACTED] Settlement Agreements Concerning Multiple [REDACTED] Patents Cannot Serve as Proper "Benchmark" Patent Licenses for the '610 Patent ..... 5

C. U.S. Patent No. 6,073,142 ..... 7

1. The [REDACTED] Document is Not a Proper "Baseline" ..... 7

2. IV Ignores Mr. Wagner's Failure to Apportion Profits and Damages ..... 9

3. Mr. Wagner's Opinion Is Contrary to the Facts of the Case ..... 9

D. U.S. Patent No. 7,506,155 ..... 10

III. CONCLUSION ..... 10

TABLE OF AUTHORITIES

Page(s)

**CASES**

*ActiveVideo Networks Inc. v. Verizon Commc'ns Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................2

*Ankele v. Hambrick*,
286 F. Supp. 485 (E.D. Pa. 2003) ....................1

*Arendt v. Vetta Sports, Inc.*,
99 F.3d 231 (7th Cir. 1996) ....................1

*AVM Techs., LLC v. Intel Corp.*,
2013 WL 126233 (D. Del. Jan. 4, 2013) ....................4

*Coastal Outdoor Advertising Grp., LLC v. Township of Union, N.J.*,
676 F. Supp. 2d 337 (D.N.J. 2009) ....................1

*ICU Med., Inc. v. Rymed Techs., Inc.*,
752 F. Supp. 2d 486 (D. Del. 2010) ....................10

*IP Innovation LLC v. Red Hat, Inc.*,
705 F. Supp. 2d 687 (E.D. Tex. 2010) ....................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ....................4, 5, 6, 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................2, 4

*Multimedia Patent Trust v. Apple Inc.*,
2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ....................8

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ....................2, 5, 6, 7

*Rude v. Westcott*,
130 U.S. 152 (1889) ....................5, 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ....................9

*Versata Software v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. May 1, 2013) ....................2

# I. INTRODUCTION

The Court should grant Symantec's *Daubert* motion (D.I. 511 and 512 ("Brief")) and exclude the testimony of IV's damages expert, Mr. Wagner, in its entirety. IV's opposition (D.I. 538 ("Opp.")) fails to address some of Symantec's principal arguments, thereby waiving its right to oppose those arguments. *See, e.g., Coastal Outdoor Advertising Grp., LLC v. Township of Union, N.J.*, 676 F. Supp. 2d 337, 340 (D.N.J. 2009); *Ankele v. Hambrick*, 286 F. Supp. 485, 496 (E.D. Pa. 2003); *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996). IV also ignores or misstates incontrovertible facts and misstates the controlling case law.

# II. ARGUMENT

## A. U.S. Patent No. 6,460,050

Mr. Wagner's damages "methodology" concerning the '050 patent is unprincipled and should be excluded. The Agreement between and is not analogous to a patent license for the '050 patent and cannot serve as a proper "baseline agreement" for purposes of determining a reasonable royalty. The Agreement covers two software products, one of which is not accused of infringing the '050 patent. Moreover, Mr. Wagner conceded that the Agreement covers malware detection and removal technologies that pre-date the '050 patent. Thus, IV's claim that the Agreement "is narrowly focused on the technology embodied in the '050 Patent" (Opp. at 6) is demonstrably incorrect.

Even more glaring, IV makes no attempt to address a fundamental logical flaw in Mr. Wagner's reliance on the Agreement: the fees charged for the product that IV does not accuse of infringement are ***identical*** to the fees charged for the product that IV does accuse of infringement. Thus, if the Agreement has any relevance as to the appropriate reasonable royalty, it shows that the parties to the agreement placed ***no value*** on the purported incremental benefit of the '050 patent. IV's damages claim should be excluded.

### 1. IV Mischaracterizes the [REDACTED] Agreement that Mr. Wagner Used as the Basis for His Damages Opinions

As set forth in Symantec's opening brief, the foundation of Mr. Wagner's "methodology" regarding the '050 patent is not a patent license at all, but rather a software supply agreement. (Brief, Ex. H, [REDACTED] Agreement). Pursuant to the [REDACTED] Agreement, [REDACTED] agreed to supply [REDACTED] with the [REDACTED] The [REDACTED] Agreement contains other provisions addressing such issues as marketing, renewal maintenance, etc. This is precisely the type of agreement that the Federal Circuit has held cannot be used to support a damages opinion. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-71 (Fed. Cir. 2010) (vacating damages award where expert had relied upon licenses that "furnished finished software projects and source code, as well as services such as training, maintenance, marketing, and upgrades, to other software companies").[1]

Faced with this fatal defect, IV repeatedly mischaracterizes the [REDACTED] Agreement. IV variously claims that the [REDACTED] Agreement "covers the '050-infringing technology" (Opp. at 1), "*licenses the infringing technology itself*" (*id*. at 4 (emphasis in original)), "covers the precise

[1] IV misstates Symantec's argument, claiming that Symantec advocates a complete prohibition on the consideration of "technology licenses." (Opp. at 3.) Symantec advocates what the case law dictates – that it is improper to base a damages opinion on an agreement (such as the [REDACTED] Agreement) that is vastly different from a patent license to the '050 patent. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009). Neither of the cases IV cites supports its position. In *Versata Software v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. May 1, 2013), the court rejected the defendant's attempt to challenge the comparability of an agreement that its own damages expert identified as comparable. In *ActiveVideo Networks Inc. v. Verizon Commc'ns Inc.*, 694 F.3d 1312, 1332-33 (Fed. Cir. 2012), the court noted that the defendant had "*never* challenged the admissibility" of a third-party license agreement and stated that while it might have made different evidentiary decisions had it presided over the trial, it was not prepared to reverse on that particular factual record. *Id.* at 1333 (emphasis in original). Here, Symantec ***is*** challenging the admissibility and relevance of the [REDACTED] Agreement, which is a confidential, third-party [REDACTED] agreement of which Symantec was unaware, that apparently netted [REDACTED], and which IV improperly seeks to convert into a [REDACTED] damages claim.

infringing technology embodied in the '050 Patent" (*id*. at 5), "is narrowly focused on the technology embodied in the '050 Patent" (*id*. at 6), and "isolates the technology comparable to the '050 Patent" (*id.*). But these statements are demonstrably incorrect, because the [REDACTED] Agreement covers [REDACTED], a [REDACTED] product that IV does not accuse of infringement. IV cites to Dr. McDaniel's Report ((Opp. at 5) (quoting McDaniel Inf. Report (Symantec), at ¶ 215)), but that does nothing to support IV's assertions. The cited paragraph simply states that the [REDACTED] Agreement licenses [REDACTED] For that matter, even Mr. Wagner conceded that the [REDACTED] Agreement licenses [REDACTED] technologies in the non-infringing [REDACTED] product, including some covered by [REDACTED] own patents, which technologies are not accused of infringing the '050 patent.[2]

**2. IV Fails to Address the Fact that the [REDACTED] Agreement Charged the Same Fee for Software that Admittedly Did Not Infringe as for Software that Allegedly Does Infringe**

Symantec's opening brief devoted an entire section to a glaringly obvious defect in Mr. Wagner's "methodology" concerning the [REDACTED] Agreement – the [REDACTED] Agreement covers two [REDACTED] software products, one that IV has accused of infringement [REDACTED], one that IV did not [REDACTED]. The fees charged for both products are identical. (Brief at 9-10; Ex. H, Exhibit B to [REDACTED] Agreement; Ex. F, 5/3/2013 Wagner Depo Tr. at 331:3-23.) Thus, assuming that the [REDACTED] Agreement reflects *anything* about the value of the technology covered by the '050 patent, it shows that the value is ***zero*** because there is no premium associated with its usage.

---

[2] The [REDACTED] Agreement requires [REDACTED] to mark the documentation of its bundled product with U.S. Patent No. 5,951,698, a patent issued to [REDACTED]. (Brief, Ex. H, [REDACTED] Agreement, ¶ 2(c); Ex. L ('698 patent).) The application for the '698 patent was filed in October 1996, more than three years before the application for the '050 patent was filed. Mr. Wagner conceded that [REDACTED] (Ex. M, 5/2/2013 Wagner Depo. Tr. at 108:19-111:2.) Thus, even IV's expert has admitted that IV's description of the [REDACTED] Agreement as "narrowly focused on the technology embodied in the '050 Patent" is flat wrong – the [REDACTED] Agreement covers [REDACTED] technology that predates the '050 patent ***by years***.

IV's Opposition does not address this argument at all and thus IV has waived its right to oppose it. Symantec should prevail on that basis alone. *See supra*, at 1.

**B. U.S. Patent No. 5,987,610**

IV's Opposition ignores controlling case law that the Entire Market Value Rule ("EMVR") can be applied ***only*** if "it can be shown that the patented feature drives the demand for [the entire] product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("*LaserDynamics II*"). Mr. Wagner's admission that the technology allegedly protected by the '610 patent is not the sole basis for customer demand (Brief, Ex. F, 5/3/2013 Wagner Depo. Tr. at 377:8-14) is the death knell of IV's damages claim concerning that patent.

1. **The EMVR Does Not Apply Where the Patented Technology is Not the Sole Basis for Customer Demand**

"For the entire market value rule to apply, the patentee must prove that the patent-related feature is ***the*** basis for customer demand." *Lucent*, 580 F.3d at 1336 (emphasis supplied) (citation/quotations omitted). Despite this clear rule, IV contends that the EMVR can be applied where the patented feature only constitutes "***a*** substantial basis of . . . customer demand." (Opp. at 11 (emphasis supplied).) IV is flat wrong. "The Federal Circuit has emphasized that [the EMVR] test can ***only*** be met by showing that the ***patented feature alone*** causes customers to purchase the accused products." *AVM Techs., LLC v. Intel Corp.*, 2013 WL 126233, at *2 (D. Del. Jan. 4, 2013) (emphasis supplied) (quoting *LaserDynamics II*, 694 F.3d at 68 ("It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential")). IV does not even attempt to satisfy this test. Instead, it makes the legally irrelevant assertions that the patented technology is "fundamental" to Symantec's products (Opp. at 10) and "[t]he importance of the invention in the '610 Patent to security-as-a-service cannot be overstated" (*id.* at 11).

**2. [REDACTED] Settlement Agreements Concerning Multiple [REDACTED] Patents Cannot Serve as Proper "Benchmark" Patent Licenses for the '610 Patent**

IV's Opposition also largely ignores established precedent concerning the use of settlement agreements. IV says "No rule prohibits the consideration of settlement agreements." (Opp. at 14.) IV is wrong. The Supreme Court has held that settlement agreements – even those that concern the patent-in-suit – ***cannot*** serve as a proper measure for patent damages: "It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude v. Westcott*, 130 U.S. 152, 164 (1889). IV ignores *Rude* completely, because it has no answer to it.

IV tries to defend Mr. Wagner by pointing to the *ResQNet* opinion, where the Federal Circuit vacated a district court's damages award because it relied upon agreements similar to the [REDACTED] Agreement that IV wants to use in connection with the '050 patent. The Federal Circuit went on to state that, at the retrial (a bench trial), the district court could consider a settlement agreement that involved the patent-in-suit. But *ResQNet* does not support IV, because (1) IV does not seek to rely upon a settlement agreement that involves the patent-in-suit, but rather settlement agreements that involve multiple different patents, (2) since *ResQNet*, the Federal Circuit has emphasized the "limited circumstances" that caused the *ResQNet* panel to allow consideration of one particular settlement agreement, and (3) in any event, *ResQNet* cannot be read inconsistently with the Supreme Court's decision in *Rude*, which dictates the outcome here.

In *LaserDynamics II*, decided after *ResQNet*, the Federal Circuit cited *Rude* and noted "the longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages." 694 F.3d at 77 (citing *Rude*, 130 U.S. at 164). The court observed that *ResQNet* had broken with that precedent, and had permitted the cautious consideration of a settlement

agreement involving the patent-in-suit on remand, but emphasized that *ResQNet* had involved "limited circumstances." *Id*. In particular, the ResQNet settlement agreement was the only agreement that involved the patent-in-suit, in contrast to the license agreements on which the patentee's damages expert had relied. *Id*.; *see ResQNet*, 594 F.3d at 869-72.

Ignoring *Rude* and *LaserDynamics II*, IV takes the position that *ResQNet* opened the flood gates to reliance upon such agreements. And IV goes even further, arguing that as long as an expert opines that the patent covered by a third-party's settlement agreements is "similar" to the patent-in-suit, those third-party settlement agreements are admissible as well. IV's position is simply contrary to established law.

Finally, Symantec's opening brief noted that even if IV were correct on the law, which it is not, its own expert concedes that the [REDACTED] settlement agreements cover a patent that discloses a "fundamentally different implementation[]" of virus screening than that disclosed in the '610 patent. (Brief, Ex. A, Initial Report at 112-13.) Symantec further noted that IV's superficial assertion that a patent that covers screening at a gateway node is comparable to a patent that covers virus screening "within the telephone network" because "both contemplate virus screening at a particular location" (*id*. at 113) is meaningless.

IV tries to overcome these fatal deficiencies by asserting that "Mr. Wagner devoted more than 40 paragraphs comprehensively analyzing both the technical and economic aspects of each patent license, down to the particular products licensed, the geographic and temporal scope of the license grants, and many other factors. *See* Exh. G, at ¶¶ 342-388." (Opp. at 14.) Mr. Wagner did no such thing. The cited paragraphs summarize, at a very high level, the terms of the settlement agreements that cover [REDACTED] patents, not the '610 patent. The "more than 40 paragraphs" do not contain any analysis of what is important to valuing the '610 patent, namely,

"the claimed invention's footprint in the market place." *See ResQNet*, 594 F.3d at 869 (citation omitted); *LaserDynamics II*, 694 F.3d at 67 (same).

Mr. Wagner did nothing to investigate the economic attributes of what he concedes are "fundamentally different implementations" of virus scanning covered by the [REDACTED] patents versus the '610 patent, such as the relative commercial advantages and disadvantages of screening viruses at a gateway node versus within a telephone network, the importance that potential customers would place on one versus the other, whether one would be considered a suitable substitute for the other, etc. Summarizing the terms of settlement agreements for a different set of patents is not a principled basis for reaching an opinion on the '610 patent.

**C. U.S. Patent No. 6,073,142**

IV's argument concerning the '142 patent (1) misstates the [REDACTED] document that Mr. Wagner used as his "baseline" agreement, (2) ignores Mr. Wagner's failure to apportion even if the [REDACTED] document were an appropriate baseline, and (3) fails to address the internal conflicts between Mr. Wagner's [REDACTED] "opinion" for a mere patent license and the patent owner's demonstrated willingness to sell the entire patent for [REDACTED].

**1. The [REDACTED] Document is Not a Proper "Baseline"**

IV's Opposition argues that it was proper for Mr. Wagner to base his damages claim for the '142 patent upon two nebulous, unsubstantiated statements in a document from [REDACTED] [REDACTED] because "Symantec itself relied" on those two statements when it purchased [REDACTED] in 2004. (Opp. at 15). Those two statements were:



IV does not address the problem Symantec identified in its opening brief – the two statements do not provide a principled basis for setting a reasonable royalty ***for the [REDACTED] patents***, much less the supposedly comparable '142 patent. Broad generalizations about patent rates in an industry – even if they are contained in a Symantec document – do not provide a principled basis for setting a reasonable royalty. *Multimedia Patent Trust v. Apple Inc.*, 2012 WL 5873711, at *9 (S.D. Cal. Nov. 20, 2012) (improper to base reasonable royalty opinion on "various industry surveys" and "generic industry data"); *IP Innovation LLC v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690-91 (E.D. Tex. 2010) (improper to base reasonable royalty opinion on average royalty rates for the "software industry" and the "computer and electronic products manufacturing industry").

Symantec's opening brief noted that Mr. Wagner did nothing to investigate what sort of "technology licensing programs" were being referenced in the [REDACTED] document, what sort of technology or technologies IBM was licensing in its "active patent licensing program" or what was meant by "similar areas." (Brief at 17.) Here again, IV's Opposition is completely silent, conceding the point.[3] Mr. Wagner's reliance on these two nebulous, unsubstantiated statements is unprincipled and unreliable. As a result, the entire foundation of IV's damages claim is unsound, regardless of what use Symantec supposedly made of the [REDACTED] document.[4]

---

[3] IV engages in misdirection, arguing that "No one from [REDACTED] has disputed the valuation. No Symantec executive has disputed the average patent royalties in similar areas." (Opp. at 16.) But IV, not Symantec, has the burden of proving damages. IV, not Symantec, had the obligation to take discovery to support its damages theory. IV did not do so and it has no evidence as to the accuracy or applicability of either statement. Moreover, Symantec had no reason to address these arguments because it did not even learn that Mr. Wagner would base his opinion for the '142 patent on the two unsubstantiated statements in the [REDACTED] document until it received Mr. Wagner's expert report on February 15, 2013 – long after the close of fact discovery.

[4] IV's statement that its technical expert, Dr. McDaniel, opined that the [REDACTED] patents identified in the [REDACTED] document are comparable to the '142 patent (Opp. at 16) has no relevance to the problems identified in Symantec's brief.

### 2. IV Ignores Mr. Wagner's Failure to Apportion Profits and Damages

Symantec's opening brief noted that even if Mr. Wagner's unsubstantiated [REDACTED] royalty rate were defensible, he failed to properly apportion profits and damages. (Brief at 18) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).) IV's opposition brief is completely silent on this issue. For this additional reason, Mr. Wagner's testimony should be excluded. *See supra*, at 1.

### 3. Mr. Wagner's Opinion Is Contrary to the Facts of the Case

Mr. Wagner's damages opinion is also unprincipled and unreliable because it contradicts the real world facts. Mr. Wagner opines that at the time of the hypothetical negotiation in December 2004, the patent owner (Park City Group) would have insisted upon a running royalty of [REDACTED] for a non-exclusive license to the '142 patent, amounting to a revenue stream totaling [REDACTED] for the period from 2004 to 2012. But in the real world, the same owner was willing to sell the entire patent for [REDACTED] in [REDACTED]. (Brief, Ex. A, Initial Report at 169; Ex. C, Second Correction and Supplemental Report at 5.)[5]

Mr. Wagner testified that in evaluating the hypothetical negotiation, one must account for the real-world events that occurred at any time prior to "the end of discovery." (Ex. M, 5/2/2013 Wagner Depo Tr. at 31:16-32:13; 144:6-12; Ex. N, 5/3/2013 Wagner Depo. Tr. at 304:21-305:2; 339:8-10.) Yet he failed to do so here. The irreconcilable conflict between Mr. Wagner's opinion that the parties would have agreed to a [REDACTED] royalty for a patent license in a hypothetical world, and the actual sale of all rights to the patent for [REDACTED] in the real world, demonstrates that his "methodology" is unprincipled and unreliable.

---

[5] Mr. Wagner does not attempt to defend his opinion based upon the difference between 2004 and 2007: [REDACTED]

IV tries to salvage Mr. Wagner's opinion by arguing that during the hypothetical negotiation, unlike in the real world, the negotiators are presumed to have perfect knowledge, including knowledge of the licensee's use of the patented technology. (Opp. at 19.) But that argument ***undercuts***, rather than supports, Mr. Wagner. Since Park City Group and Symantec would have known, with certainty, that Park City Group was willing to sell the patent (and all associated licensing rights) for [REDACTED], it defies logic to claim that Park City Group would have insisted upon (and Symantec would have agreed to pay) [REDACTED] ***times that amount*** for a non-exclusive patent license. Mr. Wagner's [REDACTED] opinion simply cannot be squared with the real world.[6] If a damages expert were free to ignore the real world facts, there would be no bounds on damages at all. *See, e.g., ICU Med., Inc. v. Rymed Techs., Inc.*, 752 F. Supp. 2d 486, 495 (D. Del. 2010) (Stark, J.) (expert's opinion must "fit[] the facts of the case").

**D. U.S. Patent No. 7,506,155**

Symantec's opening brief identified several fundamental errors in Mr. Wagner's methodology concerning the '155 patent. (Brief at 19-20.) IV has failed to address the merits of at least two: (1) Mr. Wagner bases his opinion upon settlement agreements, and (2) those settlement agreements did not concern the '155 patent but rather ***collections of numerous different patents***. For these reasons alone, the Court should exclude Mr. Wagner's damages opinions concerning the '155 patent. *See supra*, at 1.

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in Symantec's opening brief, Symantec respectfully submits that the Court grant Symantec's *Daubert* Motion to Exclude the Testimony of IV's Damages Expert, Michael Wagner.

---

[6] IV's alternative "explanation" for the huge disparity – Park City Group's alleged lack of expertise in valuing patents (Opp. at 19) – is logically irrelevant. The [REDACTED] sale is a real-world fact that must be accounted for.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Dean G. Dunlavey
Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

August 2, 2013
7423577.1