IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § § | |
| Plaintiff, | § § | Case No. 10-1067-LPS |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| CHECK POINT SOFTWARE | § § | |
| TECHNOLOGIES LTD., et al | § § | **FILED UNDER SEAL** |
| Defendants. | § § § § § | |

**IV1'S RESPONSIVE BRIEF TO SYMANTEC'S
MOTION TO SEVER AND STAY CLAIMS RELATED TO U.S. PATENT NO. 6,460,050
PENDING CONCLUSION OF *INTER PARTES* REEXAMINATION**

Parker C. Folse III (admitted  *pro hac vice*)
Brooke A.M. Taylor (admitted  *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:    (206) 516-3880
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lngodfrey@susmangodfrey.com

Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Richard W. Hess (admitted *pro hac vice*)
Weston O'Black (admitted *pro hac vice*)
John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:    (713) 653-7859
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

Dated: May 19, 2014

*Attorneys for Plaintiff*

<u>Table of Contents</u>

I.      Nature and Stage of Proceedings ......................................................................1

II.     Summary of Argument ....................................................................................1

III.    Applicable Law ..............................................................................................3

IV.     Argument .......................................................................................................3

        A.      Severing and Staying the '050 Patent Trial Will Complicate – Not
                Simplify – This Lawsuit...........................................................................3

                1.      Four Trials Are Less Efficient Than Two Trials .........................3

                2.      This Court Can Resolve All Disputed Issues In A Single Forum...............7

                3.      The PTO's "Action Closing Prosecution" Does Not Change
                        The Analysis .................................................................................9

        B.      A Stay Is Inappropriate Because Discovery is Complete and The Court
                Set Trial Dates.....................................................................................11

        C.      Severing and Staying the '050 Patent from the Other Patents-In-Suit
                Would Reward Defendants' Attempt to Secure a Tactical Advantage,
                and Unfairly Prejudice IV .....................................................................12

                1.      Defendants Seek An Unfair Tactical Advantage .......................12

                2.      IV Will Be Prejudiced If The Court Severs and Stays the '050
                        Patent.........................................................................................16

                3.      Symantec Will Suffer No Clear Hardship from Trying All
                        Patents-In-Suit............................................................................17

        D.      Conclusion ...........................................................................................18

## Table of Authorities

Cases

*Belden Tech. Inc. v. Superior Essex Commc'ns LP*,
No. 08-cv-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010)....................... 8, 11, 13, 17

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. 09-cv-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ............................... 3, 19

*GE Co. v. Vibrant Media Inc.*,
No. 12-cv-00526-LPS, 2013 WL 6328063 (D. Del. Dec. 4, 2013) ................................... 8

*Intellectual Ventures I LLC v. Xilinx, Inc.*,
No. 10-cv-1065-LPS, 2014 WL 906551 (D. Del. Mar. 5, 2014)........................... 9, 11, 18

*Life Techs. Corp. v. Illumina, Inc.*,
No. 09-cv-706-RK, 2010 WL 2348737 (D. Del. June 7, 2010) ...................................... 12

*Personalized User Model, L.L.P. v. Google, Inc.*,
No. 09-cv-525-LPS, 2012 WL 5379106 (D. Del. Oct. 31, 2012).................. 10, 11, 13, 19

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12-cv-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) .............................. 8, 9, 17

*Softview LLC v. Apple Inc.*, No. 12-cv-989-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013) ...... 8

*St. Clair Intellectual Prop. Consultants v. Sony Corp.*,
No. 01-cv-557-JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003)................................ 3, 17

*St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Holdings Corp.*,
No. 08-cv-373-LPS, 2009 WL 192457 (D. Del. Jan. 27, 2009) ...................................... 19

*Voltstar Tech., Inc. v. Superior Commc'ns, Inc.*,
No. 12-cv-82, 2013 WL 4511290 (E.D. Tex. Aug. 22, 2013)......................................... 11

Statutes

28 U.S.C. § 1404(a) ................................................................................................................. 12

35 U.S.C. § 112........................................................................................................................ 7

35 U.S.C. § 315(b) (2011) ..................................................................................................... 13

35 U.S.C. § 315(c) (2010)........................................................................................................ 9

Regulations

37 C.F.R. § 1.951(a) ................................................................................................................. 10

37 C.F.R. Part 42 ..................................................................................................................... 8

## I.   Nature and Stage of Proceedings

Intellectual Ventures I LLC ("IV") filed this lawsuit on December 8, 2010.  (D.I. 1).  On March 31, 2014, the Court issued its Memorandum and Order on all pending motions, denying Defendants' *Daubert* motions and summary judgment motions on infringement and validity, clearing a path to trials on all asserted patents.  (D.I. 574).  On April 15, 2014, the parties filed a Joint Status Report requesting (1) a single trial between IV and Symantec Corp. ("Symantec") on all patents-in-suit in September 2014, and (2) a single trial between IV and Trend Micro Inc. and Trend Micro, Inc. (USA) ("Trend Micro") in December 2014.  (D.I. 580).  Two weeks later on May 1, 2014, Defendants moved to sever and stay the claims related to U.S. Patent No. 6,460,050 ("the '050 patent") from the other three patents-in-suit – 6,073,142 ("the '142 patent"), 5,987,610 ("the '610 Patent") and 7,506,155 ("the '155 Patent") – on the basis of a non-final decision of the Patent and Trademark Office.  (D.I. 582).  On May 15, 2014, the Court ordered that it intends to try the IV/Symantec case from October 6–17, 2014, and try the IV/Trend case from January 26 to February 6, 2015.  (D.I. 585).

## II.   Summary of Argument

Defendants made a strategic decision to make their best arguments about the '050 patent to this Court and now they seek a severance and stay because they are unhappy with the Court's rulings.  Instead of seeking a stay during the three-and-a-half year pendency of this case, Defendants just now decided that a severance and stay is appropriate because trial is imminent. Defendants laid in wait for years before filing their motion to stay.  Symantec first waited nearly two years into this case before requesting reexamination of the '050 and '155 patents.  By the time that Symantec filed its reexamination requests on September 12, 2012, the parties had completed claim construction, the Court had held a *Markman* hearing, and the initial fact discovery deadline would have expired in five days had Defendants not requested and obtained

1

an extension.  The PTO agreed to reexamine the '050 patent on December 12, 2012, by which time expert discovery had commenced.  Rather than seek a stay to avoid the burden of expert discovery, Defendants decided to press forward with an exhaustive expert effort on all patents-in-suit.

Defendants could have requested a severance and stay of the '050 patent at the end of expert discovery before drafting and responding to dispositive and *Daubert* motions.  Defendants made their choice: they decided that their best strategy was to ask this Court – through numerous, extensive and voluminous briefing – to invalidate the '050 patent and to exclude IV's expert opinions about that patent.  Their gambit failed.  Now, after the Court denied their motions and Symantec faces trial in October 2014, Defendants' fallback strategy is to complicate and delay trial on the '050 patent by splitting up the case.

Unbelievably, Defendants now say they are motivated to seek a stay in order to preserve "the Court's and the parties' resources."  Defendants were *not* concerned about "the Court's and the parties' resources" when they waited two years to put the '050 patent into reexamination, or when they decided to press forward with expert discovery, or when they decided to file lengthy dispositive and *Daubert* motions about the '050 patent.  The obvious truth is that Defendants seek an unfair tactical advantage with their belated request.

The Court should deny Defendants' motion to sever and stay the '050 patent from the other patents-in-suit because:

- Defendants' proposal will not meaningfully reduce the cost and effort to try the two cases set for trial in the coming months, but it does create two additional trials in the future with many of the same witnesses and arguments.  Conducting two trials now with all patents-in-suit is unquestionably more efficient – and simple – than conducting two trials with some patents *and then* two more trials years later on another patent.

- The Court has set trial dates based on the agreed dates that the parties proposed in their Joint Status Report, which was filed just four weeks ago.

- Severing and staying the '050 trial from the other patents-in-suit would improperly reward Defendants' attempt to secure a tactical advantage and prejudice IV. Under case law, Defendants' delay tactics show that they seek an unfair advantage. Case law also establishes that IV will be prejudiced if Defendants are able to deprive it of its choice of forum and delay the trials. By contrast, Defendants have no basis in law or in fact for claiming that they will be prejudiced by trying *the lawsuits that they agreed to try* in the Joint Status Report filed just four weeks ago.

### III.    Applicable Law

Courts weigh three general factors when deciding whether to stay a case pending reexamination:

(1)    whether a stay will simplify the issues for trial;

(2)    whether discovery is complete and a trial date has been set; and

(3)    whether a stay would allow the moving party to gain a clear tactical advantage over the non-moving party or cause the non-moving party to suffer undue prejudice from any delay.

*See St. Clair Intellectual Prop. Consultants v. Sony Corp.*, No. 01-cv-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003). A movant's failure to articulate clear hardship or inequity in the absence of a stay also weighs against such relief. *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-cv-865-LPS, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010).

### IV.    Argument

**A.    Severing and Staying the '050 Patent Trial Will Complicate – Not Simplify – This Lawsuit**

#### 1.    Four Trials Are Less Efficient Than Two Trials

Defendants' proposal to sever and stay the '050 issues will cause duplication – not simplification. This is not a situation where a stay avoids a trial. Even if the Court stays the '050 claims, then IV and Symantec will still go to trial in October 2014 on the '142, '610, and '155 patents, and IV and Trend will still go to trial in January 2015 on the '142 and '610 patents. Having a trial on three fourths, or two-thirds, of the patents-in-suit provides no cost savings and saves very little trial time.

First, the parties' claims and defenses will, of course, be presented through trial witnesses. But *all* of the parties' experts, and many of the other witnesses, who will testify on issues relating to the '050 patent will also testify about the '142, '610, and '155 patents:

- Defendants designated a single validity expert, Dr. Aviel Rubin, to testify about the validity of all patents-in-suit.
- Symantec designated a single non-infringement expert, Dr. Eugene Spafford, as its non-infringement expert for all patents-in-suit.
- Symantec designated a single damages expert, W. Christopher Bakewell, to testify about damages for all patents-in-suit.
- IV designated a single technical expert, Dr. Patrick McDaniel to testify about infringement and validity for all patents-in-suit.
- IV designated a single damages expert, Michael J. Wagner, to testify about damages for all patents-in-suit.

These witnesses will provide the bulk of the testimony at any trial, regardless of whether that trial is on one, two, three, or four of the patents. Under Defendants' proposal, many of these witnesses would have to testify in four trials.

Second, the evidence regarding the '050 patent overlaps with evidence about other patents-in-suit. Symantec's primary non-infringing alternative to the '050 and '610 patents is the same, and that single alternative informs Symantec's damages models for both patents. Symantec's non-infringement expert, Dr. Spafford, opines that Symantec could avoid infringing *both* the '050 and '610 patents by moving the cloud servers used by those patents' accused products to a location outside the United States. ███████ ██ █████████████████ ███████████ This alleged non-infringing alternative will likely be one of Symantec's primary trial arguments for the '050 patent (and '610 patent). After all, Symantec's main non-infringement argument for the '050 patent was excluded.[2]

---

[1] Cites to "Exhibit" refer to the exhibits attached to the Declaration of Weston O'Black.

[2] Symantec's non-infringement expert, Dr. Spafford, opined that Symantec's accused products do not infringe the '050 patent because Symantec's cloud servers did not return to the local

Additionally, Symantec's damages models for the '050 and '610 patents incorporate the same theory.  Symantec's damages expert, Mr. Bakewell, relies on Dr. Spafford's proposed design-around to form his opinions about IV's damages from Symantec's infringement of both the '050 and '610 patents. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████

██████████████████████████████████ Indeed, Trend even argued that this design-around theory about expatriating cloud servers was identical for both the '050 and '610 patents *to prevent the Court from striking its experts' opinions*.  IV moved to exclude the opinions of Trend's experts regarding expatriating the cloud servers used by the '610 accused products because Trend's experts never opined that moving servers outside the country is an available and acceptable alternative to the claims in the '610 patent.  (C.A. No. 12-cv1581, D.I. 79 at 3–10).  Trend responded that its non-infringing alternative for the '610 patent was identical and intertwined with its non-infringing alternative to the '050 patent.  Trend characterized its experts' opinions as follows:

> [Trend's damages expert] Dr. Leonard . . . explains his understanding that the alternative described by [its '050 non-infringement expert] Dr. Prakash—locating

---

computers an "indication of a characteristic," based on his own "reinterpretation" of that term. (*See* D.I. 579 at 24).  The Court excluded Dr. Spafford's opinion for contradicting the Court's claim construction order.  (*Id.* ("Dr. Spafford's opinion contradicts the Court's construction, and, accordingly, the Court will strike the challenged portions of his opinion.")).

[3] All emphasis in quotations were added unless stated otherwise.

> servers with certain accused '050 patent functionalities in a different location—*is independent of the specifics of the '050 patent. By performing the equivalent action with respect to the '610 patent—locating servers with certain '610 patent functionalities in a location outside the United States—it would likewise be impossible for Trend to infringe the '610 patent.*

(C.A. No. 12-cv-1581, D.I. 91 at 15); (*Id.* at 18).[4]   Indeed, Trend's effort to connect its offshoring arguments for the '610 and '050 patents was the reason that the Court refused to strike the opinions of Trend's experts.  In its Memorandum and Order, the Court held:

> [Trend's '610 and '142 non-infringement expert] Dr. Tygar does not opine that Trend Micro could have moved its servers off-shore; just that, if the servers were moved offshore, Trend Micro would no longer infringe the '610 patent. Although Dr. Prakash only considered the '050 patent when he offered offshoring as a non-infringing alternative, *Dr. Leonard explains that, in offering his opinion, Dr. Prakash was not talking about the '050 patent specifically. He is instead talking about a specific action Trend Micro could take that would avoid the infringement of that patent, but also, as it turns out, would avoid infringement of the '610 patent as well.* (*See* D.I. 91 at 15). *A reasonable jury could find a sufficient nexus between Dr. Prakash's analysis of the '050 patent and Dr. Tygar's or Dr. Leonard's opinions with respect to the '610 patent.*

(D.I. 579 at 23).  Defendants cannot avoid a *Daubert* challenge by arguing that their '610 and '050 design-around arguments are identical and intertwined and now argue that they should be tried separately.

Third, the expenses and resources spent by the parties and the Court to try three-fourths of the patents-in-suit will not be meaningfully less than a trial on all four patents, but the cost of two additional trials in the future would be substantial.  Under Defendants' proposal, when the '050 patent emerges from reexamination, the parties and the Court would have to prepare again for two trials on the '050 patent with many identical witnesses and several overlapping issues.  It would require substantial effort and expense simply to get back up to speed on the relevant issues—issues that can be resolved now.

---

[4] (*See also* Exhibit 3, Tr. of Aug. 29, 2013 MSJ and *Daubert* Hearing, at 155:15–155:18 (COURT: So Dr. Tygar brings to bear his experience. Add that to what Dr. Prakash opined about the '050, and that lead to the conclusion on the '610?  MR. BARTOW: I believe that is correct.)).

In essence, Defendants want this Court to accept a schedule offering little, if any, reduction in the cost and effort to try two cases in the coming months, with a significant risk of duplication in the future.

> 2.      This Court Can Resolve All Disputed Issues In A Single Forum

This Court's previous decisions in similar cases demonstrate that Defendants' request to sever and stay should be denied.  Defendants ignore the many decisions from this Court holding that a case will *not* be simplified and should *not* be stayed when – like here – many issues in the lawsuit will not be resolved in reexamination.  "The more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during the reexamination proceedings, the greater this cuts against a finding that the reexamination proceedings will lead to simplification of the issues."  *SenoRx, Inc. v. Hologic, Inc.*, No. 12-cv-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) (Stark, J.); *see also Belden Tech. Inc. v. Superior Essex Commc'ns LP*, No. 08-cv-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) ("[A] stay is more appropriate when the *only issues* left for trial *completely overlap* with those typically resolved upon reexamination" but is "not favored when infringement, validity under 35 U.S.C. § 112, *or other issues* outside the purview of reexamination remain to be tried.").

Instead of citing and attempting to distinguish these cases, Defendants' brief focuses on two decisions from the other end of the spectrum: where *all* asserted claims of *all* patents-in-suit will finish PTO review before trial.  Obviously, courts are more likely to find that a stay will simplify a case in such limited situations.  It is just as clear that such a situation is not present here. Yet Defendants cite:

- *GE Co. v. Vibrant Media Inc.*, No. 12-cv-00526-LPS, 2013 WL 6328063 (D. Del. Dec. 4, 2013).
- *Softview LLC v. Apple Inc.*, Civ. No. 12-cv-989, 2013 WL 4757831 (D. Del. Sept. 4, 2013).

7

In both *GE* and *Softview* – unlike here – <u>*all*</u> asserted claims of <u>*all*</u> patents-in-suit were in *inter partes <u>review</u>*, which is time-limited by statute.[5]  Those IPRs were going to finish before a trial could begin, and a stay was sought and granted "to avoid the expense of expert discovery." None of that is true here.

Further down the spectrum are cases where either: (1) all of the patents-in-suit, but not all of the asserted claims, are in reexamination, or (2) the trial will finish before the reexamination. In such cases, the Court generally has found that the simplification factor weighs "only slightly" or only "marginally" in favor of a stay:

- In *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-cv-1065-LPS, 2014 WL 906551 (D. Del. Mar. 5, 2014), all patents-in-suit were put into reexamination but "at least three of the five patents-in-suit had seen some of their claims allowed, so the litigation could not be entirely resolved by the reexamination proceedings." *Id.* at *1.  Defendant Xilinx moved for a stay at the beginning of the case and again six months before trial once the PTO issued non-final rejections for two patents-in-suit and Actions Closing Prosecution for the others.  *Id.*  "The Court found that the *<u>marginal increase in simplification</u> that would result from granting a stay <u>was not substantial</u>*."  *Id.*  Moreover, the Court could resolve all issues at trial long before the reexamination would be complete.  The Court refused to stay the case.

- In *SenoRx, Inc. v. Hologic, Inc.*, No. 12-cv-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013), both patents-in-suit were in reexamination and the majority of asserted claims were subject to a non-final rejection from the PTO. *Id.* at *3-4.  The Court held that the simplification factor "weigh[s] in favor of a stay, though not strongly so" because issues such as infringement and damages would not be resolved in the reexamination.  *Id.* at *4-5.  The Court refused to stay the case.

- In *Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-cv-525-LPS, 2012 WL 5379106 (D. Del. Oct. 31, 2012), all asserted claims of the first patent-in-

---

[5] As of September 16, 2012, the *inter partes* reexamination was replaced by the "*inter partes* review" pursuant to rules promulgated to implement the provisions of the America Invents Act. *See* Changes to Implement Inter Partes Review Proceedings, 77 Fed. Reg. 7,041 (Feb. 10, 2012), codified at 37 C.F.R. Part 42. The rules require that a final determination in the *inter partes* review be issued no later than 12 to 18 months after the Director notices the institution of a review under this chapter.  Because Symantec decided to file its reexamination request just days before the changes took effect, the parties will not benefit from the accelerated timeline. *Id.* at 7,048 (noting that requests filed before the effective date of September 16, 2012, are not subject to the new *inter partes* review process).

suit were rejected by a Final Office Action by the PTO and all asserted claims of the second patent were rejected in an Action Closing Prosecution.  *Id.* at *1.  The Court found that "the potential for simplification favors a stay, <u>*but only slightly*</u>" because "final conclusion of the reexaminations (including appeals) is likely to take quite some time, and certainly longer than it is likely to take to bring this case to trial.   Additionally, there are issues pending in this litigation which cannot be addressed during the reexamination (other than by being rendered moot if the PTO invalidates both patents-in-suit), including issues of infringement and invalidity."  The Court refused to stay the case.

This case is at the opposite end of the spectrum from *Softview* and *GE*.  Here, unlike in *Softview* and *GE*, only two of the four patents-in-suit are in reexamination.  As a result, severing and saying the patents in reexam will *not* reduce the number of trials but *may double* the number of trials.  There is no guarantee how long the parties would have to wait for those additional trials because, unlike the IPRs in *GE* and *Softview*, there is no statutory limit on the duration of the *inter partes* reexamination of the '050 patent.[6]  The 2014 trial in this lawsuit, like the trials in *Xilinx*, *SenoRx*, and *Personalized User Model* will resolve <u>all</u> disputed issues long before the reexamination *might* resolve *some* issues.  Under the relevant case law, the simplification factor weighs soundly against a stay.

3.   The PTO's "Action Closing Prosecution" Does Not Change The Analysis

Defendants' central argument for severing and staying the '050 patent from the other patents-in-suit hinges on the fact that the PTO has released an Action Closing Prosecution

---

[6]   Moreover, there is not complete overlap between the reexamination proceeding and Defendants' invalidity contentions for the '050 patent in this lawsuit.  While Symantec will be estopped from rearguing invalidity claims that it raised or could have raised during the *inter partes* reexamination proceedings, see 35 U.S.C. § 315(c) (2010), Trend Micro may not be estopped.  Trend Micro is not a participant in the reexamination proceedings and has yet to agree to be estopped like Symantec.  *See Voltstar Tech., Inc. v. Superior Commc'ns, Inc.*, No. 2:12-cv-00082, 2013 WL 4511290, at *3 (E.D. Tex. Aug. 22, 2013) ("A stay may potentially simplify these issues as relates to Superior, [the third-party requester]. However, this is far from certain. Clearly, AT&T is not a party to the reexamination proceedings and would not be subject to the same potential estoppel as Superior. Thus, to the extent that estoppel may simplify any issues in this case, its effect is speculative and limited.").

("ACP").  Defendants suggest that the ACP is a milestone that trumps the other factors for determining whether to stay the case.  Not so.

Courts have repeatedly denied stay requests when asserted claims were rejected in ACPs or even subsequent actions from the PTO.  But Defendants ignore these cases, too:

- *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-cv-1065-LPS, 2014 WL 906551, at *1 (D. Del. Mar. 5, 2014) (discussed above).

- *Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-cv-525-LPS, 2012 WL 5379106, at *1 (D. Del. Oct. 31, 2012) (discussed above).

- *Belden Tech. Inc. v. Superior Essex Commc'ns LP*, No. 08-cv-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) (finding that the status of the reexamination proceedings, in which ACPs had recently been issued, still weighed against a stay based on a "comprehensive understanding of the reexamination timeline.").

- *Voltstar Tech., Inc. v. Superior Commc'ns, Inc.*, No. 12-cv-00082, 2013 WL 4511290, at *3 (E.D. Tex. Aug. 22, 2013) ("Defendants further argue that any delay caused by a stay pending reexamination would be minimal given that the PTO has issued ACPs rejecting all claims of each of the Patents in suit. However, an Action Closing Prosecution is far from a final rejection. . . . the reexamination proceedings in this matter are still very far from complete and may take years to conclude.").

These cases demonstrate that an issuance of an ACP is far from the end of an *inter partes* reexamination.  (*See* D.I. 584-1, Exh. A at 55 (the PTO's ACP for the '050 patent states that "it is not a final [o]ffice action")).  In response to the issuance of an ACP, the patent owner has the right to make a submission to the patent examiner under 37 C.F.R. § 1.951(a).  MPEP § 2673. IV's submission to the patent examiner is due on June 12, 2014.  (Exhibit 4 (PTO 5/5/2014 communication)).  This submission effectively initiates another round of arguments before the PTO examiner, after which the examiner may reverse the rejection and allow the claims.  The reexamination does not end even if the examiner maintains the rejection of the claims.  Should that happen, a Right of Appeal Notice ("RAN") will be issued, freeing the parties to appeal the examiner's decision to the Board of Patent Appeals and Interferences ("BPAI").  The BPAI will

take up the case and hear another round of arguments.  Appeals to the BPAI last an average of 36 additional months after a notice of appeal is filed.  (Exhibit 5 (PTO 2013 Performance Measures)).  Considering any subsequent appeal to the Federal Circuit, "reexaminations . . . are likely to take 6.5 to 8 years to reach a final decision."  *Life Techs. Corp. v. Illumina, Inc.*, No. 09-cv-706-RK, 2010 WL 2348737, at *2 (D. Del. June 7, 2010).  This lawsuit will be over long before the reexamination.

B.     <u>A Stay Is Inappropriate Because Discovery is Complete and The Court Set Trial Dates</u>

The second factor strongly cuts against severing and staying the '050 patent because expert discovery is complete and the Court has set trial dates based upon the parties' proposed trial schedule in their Joint Status Report.  (D.I. 580).  The Court ordered that it intends to try the IV/Symantec case in October 2014, and try the IV/Trend case starting January 2015.  (D.I. 585).

Defendants cite the same two cases to support their argument that the status of this lawsuit supports a stay – *GE* and *Softview*.  Those cases actually undermine Defendants' motion.  In *GE* and *Softview*, unlike here, the defendants asked for a stay *before or at the very beginning of* expert discovery and *<u>the Court explicitly granted stays to avoid the expense of expert discovery</u>*.  And in *GE* and *Softview*, <u>*all*</u> asserted claims of <u>*all*</u> patents-in-suit were in IPR proceedings that would conclude before the lawsuits would be tried.

Contrast those cases with Symantec and Trend's gambit.  Symantec and Trend sat on their motion to stay until after expensive expert discovery and motion practice.   They *asked* the Court to invest resources in the case because they were hoping the Court would rule in their favor by granting their summary judgment and *Daubert* motions.  They now seek a stay because that did not happen.  Courts have resoundingly refused to stay cases in circumstances that are less compelling than those here.  For instance, in *Personalized User Model*, this Court held:

11

The stage of the instant proceedings _strongly disfavors a stay_. Indeed, the fact that Google waited to seek a stay until after the parties, and the Court, had invested substantial resources in this case is a central consideration in the Court's evaluation of Google's motion. The Court has already construed the disputed claim terms, fact discovery is complete, the parties have served opening and rebuttal expert reports, expert discovery will be complete by November 14, 2012, and case dispositive motions are due shortly thereafter. Though no trial date is set, the case will be ready for trial following resolution of case dispositive motions. All of this, again, disfavors granting a stay.

2012 WL 5379106, at *2 (internal citations omitted); _see also Belden Tech._, 2010 WL 3522327, at *2 (finding that the defendant's decision to seek a stay weeks before trial and only after the Court denied defendant's summary judgment motion on invalidity "clearly cuts against a stay" and "does not comport with the notion of judicial efficiency.").

C.    Severing and Staying the '050 Patent from the Other Patents-In-Suit Would Reward Defendants' Attempt to Secure a Tactical Advantage, and Unfairly Prejudice IV

1.    Defendants Seek An Unfair Tactical Advantage

Defendants now say that they are not trying to gain a tactical advantage but instead seek a stay "[t]o avoid the waste of the Court's and the parties['] resources."  (D.I. 583 at 2).  The way Defendants have handled this case belies their newfound concern for the Court and the parties.

IV filed the Complaint against Symantec and Trend three-and-a-half years ago.  From the beginning, the Defendants' strategy was to avoid this forum at all costs.  Defendants repeatedly asked – and then tried to force – this Court to transfer the case to California under 28 U.S.C. § 1404(a).  Defendants filed their first motion to transfer venue on March 8, 2011.  (D.I. 35). After the Court denied Defendants' motion (D.I. 94), Defendants waited _nine_ months, during which the parties exchanged written discovery and documents, before filing a mandamus petition at the Federal Circuit to argue that this Court abused its discretion by denying transfer. (D.I. 187).  That mandamus petition was summarily denied without prejudice. (D.I. 196).

Undeterred, Defendants then moved this Court for reconsideration of its refusal to transfer the case, which was also denied.  (D.I. 205 & 294).

Unable to transfer out of this Court, Defendants did not give up on the idea of having another forum decide disputed issues.  Symantec decided to put the '050 and '155 patents into reexamination – but not just yet.  Symantec waited until the last possible minute to initiate the *inter partes* reexaminations for the '050 and '155 patents.  Symantec filed the reexamination petitions for the '050 and '155 patents on September 12, 2012, which was four days before the America Invents Act (AIA) cutoff reexaminations.   On September 16, 2012, *inter partes* reexaminations were replaced by *inter partes* reviews (IPR) under the AIA.  Symantec could not initiate an IPR because IPRs had to be initiated within a year of being served with a patent infringement complaint. *See* 35 U.S.C. § 315(b) (2011).  So, Symantec waited to initiate the *inter partes* reexaminations in the window after the *Markman* hearing and before the September 16, 2012 cutoff.  Presumably, Symantec wanted to see how their *Markman* arguments were received by the Court at the hearing before committing to try another forum.

By the time that the Symantec initiated the reexaminations on September 12, 2012:

- Claim construction was complete;
- The *Markman* hearing had been held;
- The Court had conducted *eight* hearings and phone conferences;
- Nearly all documents had been exchanged;
- Multiple versions of infringement and validity contentions had been exchanged; and
- The original fact discovery deadline would have been five days away had Defendants not requested and received an extension until November 21, 2012, which the Court provided on August 31, 2012.

Obviously, Symantec was not worried about "the Court and the parties['] resources" during the nearly two years it waited to put the '050 and '155 patents into reexamination.

The PTO agreed to reexamine the '050 patent on December 12, 2012, which was at the very beginning of the expert discovery period that was scheduled to end on April 24, 2013. (D.I. 403 at 2).  Like the defendants in *GE* and *Softview* – the cases that Defendants rely upon – Symantec and Trend could have asked the Court for a stay at that point to avoid the expenses of expert discovery.  They *considered* it, but opted not to.  (Exhibit 6 (Dec. 20, 2012 email from M. Flagel to B. Taylor)).

Defendants decided they were better off exchanging expert reports and deposing IV's experts rather than seeking to stay the '050 claims.  Indeed, Defendants took full advantage of their strategy of making IV fight validity challenges on two fronts.  Defendants' experts cited heavily to IV's reexamination filings in their non-infringement and validity reports.  (*See, e.g.*, D.I. 510-15, Exh. KK-B, Spafford Report ¶¶ 240–43); (*id.*, Exh. KK-C, Spafford Reply Report ¶¶ 23–26); (No. 12-cv-1581, D.I. 75, Exh. 8, Rubin Report *passim*); (*id.*, Exh. 39, Prakash Report ¶¶ 118-19).  At the time, Defendants obviously were not worried about "avoiding waste of the Court's and the parties['] resources" when they decided to push forward with exhaustive expert discovery on all patents-in-suit.  Defendants deposed IV's technical expert for over twenty-two hours on all patents-in-suit, and deposed and IV's damages expert on all patents-in-suit for over nine-and-a-half hours.  Expert discovery ended in June 2013.

Once again, Defendants could have asked the Court for a stay, and once again, they did not.  Defendants decided that their best chance at victory on the '050 claims was to (1) move for summary judgment that the '050 patent is invalid under alleged prior art and (2) move to strike various opinions from IV's experts about the '050 patent and its accused products.[7]  Obviously, Defendants were not concerned with "avoiding waste of the Court's and the parties['] resources"

---

[7] Symantec also moved for summary judgment on its argument that it did not infringe the '155 patent. (D.I. 509 at 34–37).  The Court denied that motion.  (D.I. 579 at 36–37).

14

when they decided to file summary judgment and *Daubert* motions instead of requesting a stay. On August 29, 2013, the Court heard four hours of oral argument on pending motions. At the hearing, Defendants said nothing about seeking a stay to relieve the Court from having to evaluate and rule on the *eighteen* pending motions.

The replay of the case shows that Defendants have not been concerned with preserving anyone's resources. To the contrary, Defendants *asked* the Court to invest resources in deciding whether the '050 patent is invalid as a matter of law and whether IV's experts' opinions regarding the '050 patent are reliable. Now that Defendants' summary judgment and *Daubert* motions have been denied and they face trial in the coming months, the Defendants have resorted to their fallback strategies: complicate, delay, and seek another forum. *Cf. SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *6 (D. Del. Jan. 11, 2013) (noting that filing a request for a stay on the heels of a "negative case event affecting [defendants]" indicates an "inappropriate or bad faith desire to stall this litigation."). Defendants' actions show that they are seeking an inappropriate tactical advantage. *See Belden Tech.*, 2010 WL 3522327, at *2 (finding that requests for reexamination made 17–20 months after lawsuit was initiated, followed by motion to stay filed eleven days before trial, created an inference that defendants were seeking a tactical advantage); *see also St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. 01-cv-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (denying motion to stay and noting, "[T]he fact that the instant motion was filed after the close of discovery and weeks before the commencement of the scheduled trial date" supported inference of prejudice in the delay).

2.    <u>IV Will Be Prejudiced If The Court Severs and Stays the '050 Patent</u>

IV will be prejudiced if the Court severs and stays the '050 trial for three reasons.  <u>First</u>, severing and staying the '050 trial will deprive IV of its right to choose this forum and reward Defendants' longstanding strategy to forum-shop and delay IV's day in court, as shown above.

<u>Second</u>, a severance and stay could hinder IV's ability to license or enforce the '050 patent.  Defendants assert in their brief that IV cannot be prejudiced because it "does not practice the '050 patent, nor does it make any products that compete with Symantec or Trend Micro."  (D.I. 583 at 10).  That is not the law.  A patentee like IV will be prejudiced from a lengthy stay because its rights to enforce and license the patent are severely hindered during a stay, even though it can get compensation for past infringement when the patent emerges from reexamination.  *See, e.g.*, *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-cv-1065-LPS, 2014 WL 906551, at *2 (D. Del. Mar. 5, 2014) (finding that IV would be "substantially prejudiced" from a say of its lawsuit against Xilinx even though the parties were not direct competitors); *Xerox Corp. v. Google, Inc.*, No. 10-cv-136-LPS (D. Del. Feb. 28, 2011) (D.I. 136 at 28) ("The plaintiff's rights also will be hindered during the pendency of a stay. Plaintiff represents that its business includes the development of technology which it subsequently tried to license and the cloud of reexamination but also the inability, if it were to happen, to get the case fully resolved at a trial, which would be the result of a stay, would hinder the plaintiff's efforts to license the technology, reducing unfairly in these circumstances its business interests.").

<u>Third</u>, although discovery is closed, there is still a risk of evidentiary prejudice.  This is particularly true in regards to the '050 accused products, where infringement will "depend to some extent on how Defendants' accused products and services function today, which will be harder to prove years from now."  *Cooper Notification*, 2010 WL 5140573, at *4.

16

3.      Symantec Will Suffer No Clear Hardship from Trying All Patents-In-Suit

Symantec struggles to argue why it will be prejudiced from trying the case *that it agreed to try* in the Joint Status Report filed just four weeks ago.  Symantec make three arguments:

- First, Symantec argues that it will be prejudiced by having to incur "the cost and disruption of trial on the '050 patent."

- Second, Symantec argues that it will be prejudiced if "a substantial monetary judgment be entered against [it] for alleged infringement of the '050 patent, which could be rendered moot once the reexamination finished all of its appeals."

- Third, Symantec argues that "[p]roceeding to trial on the '050 patent claims would also distract from a proper consideration of the issues related to the asserted '142, '610, and '155 patents."

(D.I. 142 at 11).

Regarding the first two arguments, this Court has repeatedly found that the expense of trial and the risk that the reexamination will render the lawsuit moot are not undue hardships. *See Personalized User Model*, 2012 WL 5379106, at *2; *see also Cooper Notification*, 2010 WL 5149351, at *2 & n.1 (noting that added litigation cost does not constitute clear hardship or inequity).  Moreover, Symantec's prejudice arguments ring hollow.  Symantec does not even try to explain – because it cannot – why it is suddenly prejudiced by incurring expenses defending against the '050 patent when *it decided* to wait two years before putting the patent into reexamination and *kept waiting* for twenty additional months before requesting a stay. Defendants are in this situation because of their own strategic decisions.

Symantec's last argument – that trying the '050 patent with the other patents-in-suit will distract the jurors – is equally weak.  Symantec cannot claim that the patents-in-suit should not be tried together when *it just filed a Joint Status Report contemplating a single trial for all patents-in-suit*.  (D.I. 580).  Symantec's failure to articulate clear hardship cuts against a stay. *See St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Holdings Corp.*, No. 08-cv-373-LPS,

2009 WL 192457, at *2 (D. Del. Jan. 27, 2009) ("Generally, the party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward.'").

If, as Symantec asserts, the asserted claims of the '050 patent are invalid (they are not), then the fastest and simplest way for Symantec to make that showing is during trial in October 2014.

D.     Conclusion

The Court should deny Defendants' motion to sever and stay the claims relating to the '050 patent.

Dated:  May 19, 2014                                    Respectfully submitted,

                                                       FARNAN LLP

                                                       /s/ Brian E. Farnan
                                                       Brian E. Farnan (Bar No. 4089)
                                                       919 North Market Street
                                                       12th Floor
                                                       Wilmington, DE 19801
                                                       (302) 777-0300
                                                       (302) 777-0301
                                                       bfarnan@farnanlaw.com

                                                       Parker C. Folse III (admitted pro hac vice)
                                                       Brooke A.M. Taylor (admitted pro hac vice)
                                                       Lindsey N. Godfrey (admitted pro hac vice)
                                                       SUSMAN GODFREY L.L.P.
                                                       1201 Third Avenue, Suite 3800
                                                       Seattle, WA 98101-3000
                                                       Telephone:    (206) 516-3880
                                                       Facsimile:     (206) 516-3883
                                                       pfolse@susmangodfrey.com
                                                       btaylor@susmangodfrey.com
                                                       lngodfrey@susmangodfrey.com

                                                       Richard W. Hess (admitted pro hac vice)
                                                       Weston O'Black (admitted pro hac vice)
                                                       John P. Lahad (admitted pro hac vice)
                                                       SUSMAN GODFREY L.L.P.
                                                       1000 Louisiana Street, Suite 5100
                                                       Houston, TX 77002

Telephone:     (713) 653-7859
Facsimile:     (713) 654-3386
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

*Counsel for Plaintiff*