IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>  Plaintiff,<br><br>v.<br><br>SYMANTEC CORP.,<br><br>  Defendant. | Case No. 10-cv-1067-LPS<br><br>JURY TRIAL DEMANDED |

**<u>PROPOSED FINAL JURY INSTRUCTIONS</u>**

# CONTENTS

1.      GENERAL INSTRUCTIONS ........................................................................................ 2

1.1.    INTRODUCTION ...................................................................................................... 2

1.2.    DUTY OF THE JURY ............................................................................................... 3

1.3.    EVIDENCE DEFINED .............................................................................................. 4

1.4.    DEMONSTRATIVE EXHIBITS ............................................................................... 7

1.5.    DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................................. 8

1.6.    CONSIDERATION OF EVIDENCE ......................................................................... 9

1.7.    STATEMENTS OF COUNSEL ............................................................................... 10

1.8.    CREDIBILITY OF WITNESSES ............................................................................ 11

1.9.    NUMBER OF WITNESSES .................................................................................... 13

1.10.   EXPERT WITNESSES ............................................................................................ 14

1.11.   DEPOSITION TESTIMONY ................................................................................... 15

1.12.   BURDENS OF PROOF ............................................................................................ 16

1.13.   USE OF NOTES ....................................................................................................... 19

2.      THE PARTIES AND THEIR CONTENTIONS .............................................................. 20

2.1.    THE PARTIES ......................................................................................................... 20

2.2.    THE PARTIES' CONTENTIONS ............................................................................ 21

2.3.    SUMMARY OF PATENT ISSUES ......................................................................... 24

3.      THE PATENT LAWS ..................................................................................................... 26

3.1.    PATENT CLAIMS ................................................................................................... 27

3.2.    CLAIM CONSTRUCTION FOR THE CASE ......................................................... 30

3.3.    INDEPENDENT AND DEPENDENT CLAIMS ..................................................... 38

3.4.    OPEN-ENDED OR "COMPRISING" CLAIMS ...................................................... 39

4.      PATENT INFRINGEMENT ........................................................................................... 40

4.1.    PATENT INFRINGEMENT GENERALLY ................................................................. 40

4.2.    DIRECT INFRINGEMENT ......................................................................................... 41

4.3.    NO INFRINGEMENT IF STEP OF METHOD CLAIM IS
        PERFORMED OUTSIDE THE UNITED STATES ....................................................... 47

5.      PATENT INVALIDITY ................................................................................................ 48

5.1.    PRESUMPTION OF VALIDITY ................................................................................. 50

5.2.    ANTICIPATION .......................................................................................................... 52

5.3.    STATUTORY ON-SALE BAR .................................................................................... 54

5.4.    OBVIOUSNESS .......................................................................................................... 57

5.5.    OBVIOUSNESS - HINDSIGHT ................................................................................. 62

5.6.    OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART .......................... 63

5.7.    DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE
        PRIOR ART ................................................................................................................. 64

5.8.    OBVIOUSNESS – LEVEL OF ORDINARY SKILL ................................................... 67

5.9.    CONCEPTION ............................................................................................................ 68

6.      PATENT DAMAGES .................................................................................................. 71

6.1.    PATENT DAMAGES GENERALLY .......................................................................... 71

6.2.    REASONABLE ROYALTY ........................................................................................ 73

6.3.    RELEVANT FACTORS FOR THE HYPOTHETICAL NEGOTIATION
        METHOD .................................................................................................................... 75

6.4.    ENTIRE MARKET VALUE RULE ............................................................................. 80

7.      DELIBERATION AND VERDICT .............................................................................. 82

7.1.    INTRODUCTION ........................................................................................................ 82

7.2.    UNANIMOUS VERDICT ............................................................................................ 83

7.3.    DUTY TO DELIBERATE ............................................................................................ 84

7.4.    SOCIAL MEDIA ......................................................................................................... 85

7.5.    COURT HAS NO OPINION ........................................................................................ 86

Intellectual Ventures Preliminary Statement:  IV served a draft of proposed jury instructions on October 28, 2014.  Symantec served a responsive draft on November 25, 2014. Intellectual Ventures provided counter-proposals to Symantec's draft on December 18, 2014.  In the December 18, 2014 draft, Intellectual Ventures agreed to Symantec's proposals to six instructions and agreed to Symantec's reorganization of one section.  For several remaining sections, Intellectual Ventures crafted proposals very similar to Symantec's proposed instructions.  *See, e.g*., §§ 1.3 and 2.3.  Intellectual Ventures will continue to seek additional agreement when Symantec is ready to respond.

Symantec Preliminary Statement:  Intellectual Ventures provided this document to Symantec at 3:35 p.m. today.  The document includes many instructions that Intellectual Ventures revised from the instructions that were in the set of instructions it provided to Symantec on October 28, 2014, in accordance with the Court's October 16, 2014 order.  (D.I. 598.) Intellectual Ventures first provided those revised instructions to Symantec at 12:05 a.m. this morning.  Due to the 6 p.m. filing deadline, Symantec has not had an opportunity to review the proposed revised instructions to determine whether and how those revisions might affect Symantec's proposed instructions. Accordingly, while it appears that the parties are successfully working to reduce the number of disputed instructions, Symantec reserves its rights to revise its proposed instructions.

1.      **GENERAL INSTRUCTIONS**

        **1.1. INTRODUCTION[1]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

I will then explain some rules that you must use in evaluating particular testimony and evidence.

I will then explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[1] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

**1.2. DUTY OF THE JURY**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  You are the sole judges of the facts.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

3

## 1.3. EVIDENCE DEFINED

### IV's Proposal[2]

You must make your decision based only on the evidence that you saw and heard here in Court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that has been presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed upon, and any facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my rulings and completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

---

[2] *Tarkus Imaging, Inc. v. Adobe Systems, Inc., et al.*, C.A. No. 10-063-LPS, D.I. 454 (Preliminary Jury Instructions) (D. Del. June 18, 2012); *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010); *Intellectual Ventures v. Xilinx, Inc.*, C.A. No. 10-1065-LPS, D.I. 605 (D. Del. Apr.  22, 2014) (Final Jury Instructions).

4

### Symantec's Proposal[3]

You must make your decision based only on the evidence that you saw and heard here in Court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that has been presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed upon, and any facts that I have judicially noticed.

Certain charts and graphs have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics – called demonstrative exhibits – are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my rulings and completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[3]*Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014) Instruction 1.4; *Masimo Corp. v. Philips Electronics North America Corp., et al.*, Civil Action No. 09-80 (LPS) (Sept. 30, 2014) Instruction 1.3.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.4. DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  During the course of this case you have also seen some exhibits (including charts and animations) that the parties used to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," may not have been offered and admitted as evidence in this case.  If they have not been admitted, they should not be considered as evidence, and you will not have them in the jury room with you.  Rather, it is the underlying testimony of the witness that you heard or the exhibits that have been entered into evidence when you saw the demonstrative exhibits that is the evidence in this case.

## 1.5. DIRECT AND CIRCUMSTANTIAL EVIDENCE[4]

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[4] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014); *Intellectual Ventures v. Xilinx, Inc.*, C.A. No. 10-1065-LPS, D.I. 605 (D. Del. Apr.  22, 2014) (Final Jury Instructions).

### 1.6. CONSIDERATION OF EVIDENCE[5]

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

---

[5] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

### 1.7. STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

## 1.8. CREDIBILITY OF WITNESSES[6]

You are the sole judges of each witness's credibility.  You should consider each witness's means or source of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[6] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

This instruction applies to all witnesses.

### 1.9. NUMBER OF WITNESSES[7]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[7] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

## 1.10.   EXPERT WITNESSES[8]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

---

[8] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

## 1.11.   DEPOSITION TESTIMONY

**IV's Proposal**[9]

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded by a court reporter.  The deposition may also be recorded on videotape.

During this trial, you have heard testimony from the playing of video excerpts or the reading of written excerpts from depositions.  If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony.  You should not attribute any significance to the facts that the deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration you would give it had the witness testified in person here in the courtroom.

**Symantec's Proposal**[10]

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded by a court reporter.  The deposition may also be recorded on videotape.

During this trial, you have heard testimony from the playing of video excerpts or the reading of written excerpts from depositions.  Deposition testimony is entitled to the same consideration you would give it had the witness testified in person here in the courtroom.

---

[9] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).
[10] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

## 1.12.    BURDENS OF PROOF

**IV's Proposal**[11]

In any legal action, facts must be proved by a required weight of the evidence, known as the "burden of proof."  In a civil case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

In this case, Intellectual Ventures accuses Symantec of infringing the Patents-in-Suit and seeks money damages for this alleged infringement.  Intellectual Ventures has the burden of proving patent infringement and damages by a "preponderance of the evidence."  That means Intellectual Ventures has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Intellectual Ventures claims is more likely true than not.  To put it differently, if you were to put the evidence of Intellectual Ventures and Symantec concerning infringement and damages on opposite sides of a scale, the evidence supporting Intellectual Ventures' claims would have to make the scales tip slightly in its favor.  If Intellectual Ventures succeeds in meeting this burden for a particular claim, your verdict must be that there is infringement for that claim.  If the scale should remain equal or tip in favor of Symantec, you must find for Symantec.

In addition to denying infringement, Symantec asserts that the Patents-in-Suit are invalid. Patents are presumed to be valid.  Accordingly, Symantec must prove the facts supporting invalidity by "clear and convincing evidence."  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

---

[11] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden is a higher burden than those that apply in this case, and it does not apply in a civil case like this one.  You should, therefore, put it out of your mind in considering whether or not either party has met its burden of proof.

### Symantec's Proposal[12]

In any legal action, facts must be proved by a required weight of the evidence, known as the "burden of proof."  In a civil case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

In this case, Intellectual Ventures accuses Symantec of infringing the Patents-in-Suit and seeks money damages for this alleged infringement.  Intellectual Ventures has the burden of proving patent infringement and damages by a "preponderance of the evidence."  That means Intellectual Ventures has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Intellectual Ventures claims is more likely true than not.  To put it differently, if you were to put the evidence of Intellectual Ventures and Symantec concerning infringement and damages on opposite sides of a scale, the evidence supporting Intellectual Ventures' claims would have to make the scales tip in its favor.  If the scale should remain equal or tip in favor of Symantec, you must find for Symantec.

In addition to denying infringement, Symantec asserts that the Patents-in-Suit are invalid.  Symantec must prove the facts supporting invalidity by "clear and convincing evidence."  Clear and convincing evidence means evidence that convinces you that the factual proposition is highly probable.

---

[12] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden is a higher burden than those that apply in this case, and it does not apply in a civil case like this one.  You should, therefore, put it out of your mind in considering whether or not either party has met its burden of proof.

### 1.13.   USE OF NOTES

**IV's Proposal**[13]

You may use notes taken during trial to assist your memory.  Your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**Symantec's Proposal**[14]

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  You should not be overly influenced by your notes or those of your fellow jurors.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[13] *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).
[14] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014)

2.     **THE PARTIES AND THEIR CONTENTIONS**

**2.1. THE PARTIES**

This case is an action involving allegations of patent infringement under the patent laws of the United States.  The parties are Intellectual Ventures I, LLC, whom I may refer to as "Plaintiff" or "IV," on the one hand, and Symantec Corporation, whom I may refer to as "Defendant" or "Symantec," on the other hand.

## 2.2. THE PARTIES' CONTENTIONS

**IV's Proposal**[15]

The three United States Patents at issue in this case are United States Patent No. 5,987,610, United States Patent No. 6,073,142, and United States Patent No. 6,460,050. For simplicity, I will refer to these patents by their last three numbers, as the "'610 patent," the "'142 patent," and the "'050 patent." Together, these patents may be referred to as "the Asserted Patents" or "the Patents-in-Suit."

Intellectual Ventures alleges that Symantec directly infringes claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, and claims 9, 16, and 22 of the '050 patent. Each asserted claim must be considered separately to determine infringement. Intellectual Ventures alleges that Symantec infringes by making, using, offering for sale and/or selling within the United States products that embody the inventions set forth in those patent claims. The lawyers, witnesses, and I may sometimes refer to these products as the "Accused Products."

Symantec denies that its Accused Products infringe the Patents-in-Suit. Symantec also contends that the Asserted Claims of the Patents-in-Suit are invalid because they are anticipated and/or rendered obvious by prior art publications, patents, and systems that existed at the time of the invention. Symantec also contends that a product embodying the invention claimed in the '142 patent was on sale in this country more than a year before the inventors filed for the '142 patent.

**Symantec's Proposal**[16]

The three United States Patents at issue in this case are United States Patent No. 5,987,610, United States Patent No. 6,073,142, and United States Patent No. 6,460,050. For

---

[15] *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).
[16] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction No. 2.

simplicity, I will refer to these patents by their last three numbers, as the "'610 patent," the "'142 patent," and the "'050 patent." Together, these patents may be referred to as "the Asserted Patents" or "the Patents-in-Suit."

Intellectual Ventures alleges that Symantec directly infringes claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, and claims 9, 16, and 22 of the '050 patent. Each asserted claim must be considered separately to determine infringement. Intellectual Ventures alleges that Symantec infringes by making, using, offering for sale and/or selling within the United States products that embody the inventions set forth in those patent claims.

Specifically, Intellectual Ventures alleges that Symantec MessageLabs Email Security.cloud, Symantec MessageLabs Email Antivirus.cloud, Symantec MessageLabs Instant Messaging Security.cloud, and Symantec MessageLabs Web Security.cloud infringe the '610 Patent; that Symantec Messaging Gateway, Symantec Brightmail Gateway, Symantec Mail Security Appliance, Symantec Mail Security for SMTP, Symantec Message Filter, Symantec MessageLabs Email Security.cloud, Symantec Brightmail AntiSpam, Symantec Mail Security for Microsoft Exchange, and Symantec Mail Security for Lotus Domino infringe the '142 patent; and that Norton Internet Security, Norton AntiVirus, Norton 360, Norton One, and Symantec Endpoint Protection 12.1 infringe the '050 patent. The lawyers, witnesses, and I may sometimes refer to these products as the "Accused Products."

Symantec denies that its Accused Products infringe the Patents-in-Suit. Symantec also contends that the Patents-in-Suit are invalid because they are anticipated and/or rendered obvious by prior art publications, patents, and systems that existed at the time of the invention or obvious in view of the state of the art at the time. Symantec also contends that a product embodying the invention claimed in the '142 patent was on sale in this country more than a year before the

inventors filed for the '142 patent.  Non-infringement and invalidity are defenses to a charge of infringement.

## 2.3. SUMMARY OF PATENT ISSUES

**IV's Proposal**[17]

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following issues:

1.      Whether Intellectual Ventures has proven by a preponderance of the evidence that Symantec directly infringes any of claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, or 26 of the '142 patent, or claims 9, 16, or 22 of the '050 patent through its sales of the Accused Products.  Each claim of a patent is evaluated separately, and this issue is to be determined for each of the Accused Products individually.

2.      Whether Symantec has proven by clear and convincing evidence that claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, or claims 9, 16, and 22 of the '050 patent are invalid due to anticipation or obviousness. Each claim of a patent is evaluated separately.

3.      Whether Symantec has proven by clear and convincing evidence that claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent are invalid because a product embodying the invention claimed in the '142 patent was on sale in this country more than a year before the inventors filed for the patent.

4.      If you find that any one of the Asserted Claims is infringed by one or more of the Accused Products, and is not invalid, you must decide what damages for that Asserted Claim, if any, Intellectual Ventures has proven by a preponderance of the evidence.

**Symantec's Proposal**[18]

---

[17] *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).
[18] *B. Braun Melsungen AG, et al. v. Terumo Medical Corp., et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following issues:

1.      Whether Intellectual Ventures has proven by a preponderance of the evidence that Symantec directly infringes claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, or claims 9, 16, and 22 of the '050 patent through its sales of the Accused Products. This issue is to be determined for each of the Accused Products individually.

2.      Whether Symantec has proven by clear and convincing evidence that claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, or claims 9, 16, and 22 of the '050 patent are invalid due to anticipation or obviousness.

3.      Whether Symantec has proven by clear and convincing evidence that claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent are invalid because a product embodying the invention claimed in the '142 patent was on sale in this country more than a year before the inventors filed for the patent.

4.      If you find that any one of the Asserted Claims is infringed by one or more of the Accused Products, and is not invalid, you must decide what damages, if any, Intellectual Ventures has proven by a preponderance of the evidence.

3.      **THE PATENT LAWS**[19]

At the beginning of the trial, I gave you some general information about patents and the

patent system and a brief overview of the patent laws relevant to this case.  I will now give you

more detailed instructions about the patent laws that specifically relate to this case.

---

[19] *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).

### 3.1. PATENT CLAIMS

<u>IV's Proposal</u>[20]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims involved here are claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, and claims 9, 16, and 22 of the '050 patent.  I will refer to these claims collectively as the "Asserted Claims."

The claims of a patent are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provides a description and/or examples of the invention and provides a context for the claims, but it is the claims that define the breadth of the patent's coverage.  The claims are intended to define, in words, the boundaries of the invention that constitute the patent owner's property rights.  Infringement is the act of trespassing on those rights.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each claim is a separate statement of the patented invention, and each of the Asserted Claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I will explain to

---

[20] Uniform Jury Instructions for Patent Cases in the United States Court for the District of Delaware § 3.4 (March 1993); Federal Circuit Bar Association Model Patent Jury Instructions, § 2.1 (February 2013); Final Jury Instructions in *Finjan, Inc. v. Symantec Corp.*, (Dist.  Del., Civil Action No. 10-593-GMS) (D.I. 743) (12/20/12).

you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims and you must accept my definition of these words in the claims as correct.

It is your job to take these definitions and apply them to the issues you are deciding, such as infringement and validity.

## Symantec's Proposal[21]

I will now instruct you on the rules you must follow when deciding whether Intellectual Ventures has proven by a preponderance of the evidence that Symantec infringes the Asserted Claims of the Patents-in-Suit.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims involved here are claim 7 of the '610 patent, claims 1, 7, 17, 21, 22, 24, and 26 of the '142 patent, and claims 9, 16, and 22 of the '050 patent.  I will refer to these claims collectively as the "Asserted Claims."

The claims of a patent are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  The text in the rest of the patent provides a description and/or examples of the invention and provides a context for the claims, but it is the claims that define the breadth of the patent's coverage.  The claims are intended to define, in words, the boundaries of the invention that constitute the patent owner's property rights.  Infringement is the act of trespassing on those rights.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Infringement must be assessed on a product-by-product and claim-by-claim basis.  Each of the Accused Products must be individually compared with each and every claim being

---

[21] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction No. 3.1.

asserted against that product.  You should not compare the Accused Products to either the patent specification or any figures in the patent.  In making the comparison for any given claim, each of the limitations of that claim must be compared to the product to determine whether each of the limitations of that claim are present in the product.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  If an accused product does not meet even a single requirement of the claim, that product is not covered by the claim and so does not infringe the claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I will explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims and you must accept my definition of these words in the claims as correct.

It is your job to take these definitions and apply them to the issues you are deciding, such as infringement and validity.

29

### 3.2. CLAIM CONSTRUCTION FOR THE CASE

**IV's Proposal**[22]

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of claim terms. You must use the meaning that I give you for each claim term to make your decision as to whether the claim is infringed or invalid, and you must apply the same meaning for purposes of both your infringement and your invalidity analyses. You must ignore any different definitions used by the witnesses or the attorneys. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement or non-infringement and validity or invalidity. For a claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning.

I instruct you that the following claim terms have the following definitions:

**U.S. Patent No. 5,987,610**

| Term | Court's Construction |
|---|---|
| "routing a call between a calling party and a called party of a telephone network" | "transmitting a voice or data transmission between a party initiating a voice or data transmission and a party receiving a voice or data transmission" |
| "within the telephone network" | "in the voice or data network connecting the calling party and called party, exclusive of the networks and gateway nodes of the called party and calling party" |
| "identification code" | "a set of symbols that identify" |

**U.S. Patent No. 6,460,050**

---

[22] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

| TerFm | Construction |
|---|---|
| "plurality of files on the Internet" | "plurality of files on a computer coupled to the Internet" |
| "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on the Internet to a server having a database" | "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on a computer coupled to the Internet and outputting the digital content identifiers to a server having a database" |
| "wherein said file content is an email" | "wherein the data file is an email" |
| "data file(s)" | "a collection of information presented as a unit to a user" |
| "determining . . . whether each received content identifier matches a characteristic of other identifiers" | "determining …whether each received content identifier has the same characteristic as other content identifiers." |
| "file content identifier" "file content ID" "digital content identifier" "digital content ID" | "a digital content identifier reflecting at least a portion of the content of a data file, but not constituting merely an excised portion of that data file" |
| "file content identifier generator agent(s)" | "software running on a computer that creates and transmits file content identifiers to a second tier system." |
| "an indication of the characteristic" (claim 9)<br><br>"identify the existence or absence of said characteristic" (claim 16)<br><br>"indicating the presence or absence of a characteristic" (claim 22) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" (claim 9)<br><br>"identify whether or not the message is of a certain type or classification" (claim 16)<br><br>"indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" (claim 22) |
| "digital content identifier created using a mathematical algorithm unique to the message content" | "a digital content identifier (defined above) created using a mathematical algorithm; the identifier being particular to the message content." |
| "characterizing the files on the server system based on said digital content identifiers received relative to other digital identifiers collected in the database" | "classifying the files on the server system by comparing their digital content identifiers to other digital identifiers collected in the database" |

31

**U.S. Patent No. 6,073,142**

| Term | Construction |
|---|---|
| "post office" | "an agent for receiving, storing, and distributing e-mail messages or data objects" |
| "non-persistently storing" | "temporarily storing" |
| "deferring delivery" | "delaying delivery" |
| "for review by an administrator" | "for manual evaluation by a human having responsibility for evaluating e-mail messages or data objects prior to delivery to any intended recipient" |
| "receipt mechanism" | "a mechanism for receiving" |
| "distribution mechanism"/"distribution engine" | "a mechanism for distribution" |
| "database of business rules"/ "business rules" | "storage of statements that each specify one or more antecedent condition(s) and the consequent action(s) to be applied when the specified antecedent condition(s) are satisfied; ultimately only a single consequence results for each business rule." |
| "combines the email message with a new distribution list … and a rule history specifying the business rules that were determined to be applicable to email message by at least one rule engine" (claim 1)<br><br>"combining the e-mail message with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the e-mail message" (claims 17, 21)<br><br>"combining the selected e-mail message with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the e-mail message" (claim 22)<br><br>"combines the data object with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the data object by at least one rule engine" (claim 24) | "combining the e-mail message [or data object], a new distribution list, and a rule history, for delivery together, where a rule history identifies each of the [at least one] business rule(s) whose antecedent condition was satisfied by the e-mail message [or data object]" |

| | |
|---|---|
| "combining the selected data object with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the data object" (claim 26) | |
| "persistently storing" (claims 7, 21, 22, 25, 26)<br><br>"primary message store… for receiving and non-persistently storing e-mail messages" (claim 7)<br><br>"secondary message store…for receiving therefrom, and persistently storing an e-mail message" (claim 7) | "storing for extended periods of time (for example, hours or days as opposed to seconds)" |
| "automatically reviewing the email message after a specified time interval to determine an action to be applied" (claim 22)<br><br>"automatically reviewing the data object after a specified time interval to determine an action to be applied" (claim 25) | "computer determination of an action to be applied to [the email message/data object] after a specified period of time" |
| "rule engine" | "a mechanism that applies the business rules, in order to determine a set of actions (one or more) to be applied" |

**Symantec's Proposal**[23]

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of claim terms.  You must use the meaning that I give you for each claim term to make your decision as to whether the claim is infringed or invalid, and you must apply the same meaning for purposes of both your infringement and your invalidity analyses.  You must ignore any different definitions used by the witnesses or the attorneys.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement or non-infringement and validity or invalidity.  For a claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning.

I instruct you that the following claim terms have the following definitions:

**U.S. Patent No. 5,987,610**

| Term | Court's Construction |
|---|---|
| "routing a call between a calling party and a called party of a telephone network" | "transmitting a voice or data transmission between a party initiating a voice or data transmission and a party receiving a voice or data transmission" |
| "within the telephone network" | "in the voice or data network connecting the calling party and called party, exclusive of the networks and gateway nodes of the called party and calling party" |
| "identification code" | "a set of symbols that identify" |

**U.S. Patent No. 6,460,050**

| Term | Construction |
|---|---|
| "plurality of files on the Internet" | "plurality of files on a computer coupled |

---

[23] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

|  | to the Internet" |
|---|---|
| "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on the Internet to a server having a database" | "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on a computer coupled to the Internet and outputting the digital content identifiers to a server having a database" |
| "wherein said file content is an email" | "wherein the data file is an email" |
| "data file(s)" | "a collection of information presented as a unit to a user" |
| "determining . . . whether each received content identifier matches a characteristic of other identifiers" | "determining …whether each received content identifier has the same characteristic as other content identifiers." |
| "file content identifier" "file content ID" "digital content identifier" "digital content ID" | "a digital content identifier reflecting at least a portion of the content of a data file, but not constituting merely an excised portion of that data file" |
| "file content identifier generator agent(s)" | "software running on a computer that creates and transmits file content identifiers to a second tier system." |
| "an indication of the characteristic" (claim 9) "identify the existence or absence of said characteristic" (claim 16) "indicating the presence or absence of a characteristic" (claim 22) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" (claim 9) "identify whether or not the message is of a certain type or classification" (claim 16) "indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" (claim 22) |
| "digital content identifier created using a mathematical algorithm unique to the message content" | "a digital content identifier (defined above) created using a mathematical algorithm; the identifier being particular to the message content." |
| "characterizing the files on the server system based on said digital content identifiers received relative to other digital identifiers collected in the database" | "classifying the files on the server system by comparing their digital content identifiers to other digital identifiers collected in the database" |

**U.S. Patent No. 6,073,142**

| Term | Construction |
|---|---|
| "post office" | "an agent for receiving, storing, and distributing e-mail messages or data objects" |
| "non-persistently storing" | "temporarily storing" |
| "deferring delivery" | "delaying delivery" |
| "for review by an administrator" | "for manual evaluation by a human having responsibility for evaluating e-mail messages or data objects prior to delivery to any intended recipient" |
| "receipt mechanism" | "a mechanism for receiving" |
| "distribution mechanism"/"distribution engine" | "a mechanism for distribution" |
| "database of business rules"/ "business rules" | "storage of statements that each specify one or more antecedent condition(s) and the consequent action(s) to be applied when the specified antecedent condition(s) are satisfied; ultimately only a single consequence results for each business rule." |
| "combines the email message with a new distribution list … and a rule history specifying the business rules that were determined to be applicable to email message by at least one rule engine" (claim 1)<br><br>"combining the e-mail message with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the e-mail message" (claims 17, 21)<br><br>"combining the selected e-mail message with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the e-mail message" (claim 22)<br><br>"combines the data object with a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the data object by at least one rule engine" (claim 24)<br><br>"combining the selected data object with | "combining the e-mail message [or data object], a new distribution list, and a rule history, for delivery together, where a rule history identifies each of the [at least one] business rule(s) whose antecedent condition was satisfied by the e-mail message [or data object]" |

| | |
|---|---|
| a new distribution list … and a rule history specifying at least one business rule determined to be applicable to the data object" (claim 26) | |
| "an organizational hierarchy of a business, the hierarchy including a plurality of roles, each role associated with a user" | "a business's rankings of its roles, containing multiple levels and each level comprising at least one organization role to which at least one individual is assigned" |
| "persistently storing" (claims 7, 21, 22, 25, 26)<br><br>"primary message store… for receiving and non-persistently storing e-mail messages" (claim 7)<br><br>"secondary message store…for receiving therefrom, and persistently storing an e-mail message" (claim 7) | "storing for extended periods of time (for example, hours or days as opposed to seconds)" |
| "automatically reviewing the email message after a specified time interval to determine an action to be applied" (claim 22)<br><br>"automatically reviewing the data object after a specified time interval to determine an action to be applied" (claim 25) | "computer determination of an action to be applied to [the email message/data object] after a specified period of time" |
| "rule engine" | "a mechanism that applies the business rules, in order to determine a set of actions (one or more) to be applied" |

### 3.3. INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim sets forth all of the elements that must be met in order for a product or process to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims 1, 17, 21, 22, 24, and 26 of the '142 patent and claims 9, 16, and 22 of the '050 patent are independent claims.

The two remaining Asserted Claims are dependent claims.  A dependent claim does not itself recite all of the elements of the claim but refers to another claim or claims for some of its elements.  In this way, the claim "depends" on another claim or claims.  A dependent claim incorporates all of the elements of the claims to which it refers.  The dependent claim then adds its own additional elements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

In this case, the two dependent claims are claim 7 of the '610 patent and claim 7 of the '142 patent.  Claim 7 of the '610 patent depends from claim 1 of the '610 patent.  Claim 7 of the '142 patent depends from claim 1 of the '142 patent.

An accused product or process is only covered by a dependent claim if the accused product or process meets all the requirements of both the dependent claim and the claims to which the dependent claim refers.

38

### 3.4. OPEN-ENDED OR "COMPRISING" CLAIMS

**IV's Proposal**[24]

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others."  A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the Accused Products include each of the elements of a particular claim, the fact that the Accused Products might include additional elements does not avoid infringement of the claim.

**Symantec's Proposal**[25]

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others."  A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

---

[24] *Tarkus Imaging, Inc. v. Adobe Systems, Inc., et al.*, C.A. No. 10-063-LPS, D.I. 454 (Preliminary Jury Instructions) (D. Del. June 18, 2012); *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).
[25] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 3.5

**4.      PATENT INFRINGEMENT**

**4.1. PATENT INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not Symantec has infringed the Asserted Claims of the Patents-in-Suit.

Infringement is assessed on a claim-by-claim and product-by-product basis.  Therefore, there may be infringement as to one claim but no infringement as to another, or infringement by one product and not by another.  In this case, Intellectual Ventures alleges that Symantec literally and directly infringes one or more of the Asserted Claims of the Patents-in-Suit.

## 4.2. DIRECT INFRINGEMENT

**IV's Proposal**[26]

To prove infringement, Intellectual Ventures must prove by a preponderance of the evidence that the particular Symantec Accused Product being considered includes every element or requirement as it appears in the particular Asserted Claim.  The presence of other elements beyond those claimed does not avoid infringement, as long as each and every claimed element is present in the Accused Product.

However, if an Accused Product omits any requirement recited in one of the Asserted Claims, then that product does not infringe that claim.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.

If you find that an independent claim has been infringed by an Accused Product, you must still decide, separately, whether the Accused Product meets the additional requirements of any claim that depends from the independent claim to determine whether the dependent claim has also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

Symantec may directly infringe the Patents-in-Suit without knowledge that what it is doing is an infringement of the Patents-in-Suit.  Intellectual Ventures is not required to prove that Symantec intended to infringe or knew of the Patents-in-Suit.  Symantec may also infringe even though in good faith it believed that what it was doing is not an infringement of any of the Patents-in-Suit.

Intellectual Ventures contends that the following Symantec accused products infringe one or more asserted claims of each of the Patents-in-Suit.

---

[26] *B. Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).

| Patent | Asserted Claim(s) | Symantec Accused Products |
|---|---|---|
| '610 Patent | 7 | Symantec MessageLabs Email Security.cloud (f/k/a MessageLabs Hosted Email Security)<br><br>Symantec MessageLabs Email Antivirus.cloud (f/k/a MessageLabs Hosted Email Antivirus)<br><br>Symantec MessageLabs Instant Messaging Security.cloud (f/k/a MessageLabs Hosted IM Security and Enterprise Instant Messenger.cloud)<br>Symantec MessageLabs Web Security.cloud (f/k/a MessageLabs Hosted Web Security) |
| '050 Patent | 9, 16, and 22 | Norton Internet Security<br>Norton AntiVirus<br>Norton 360<br>Norton One<br>Symantec Endpoint Protection 12.1 |

| '142 Patent | 1, 7, 17, 18, 21, 22, 24, 25 and 26 | Brightmail AntiSpam v.6.0 |
| --- | --- | --- |
| | | Brightmail AntiSpam v.6.1 |
| | | Brightmail AntiSpam v.6.2 |
| | | Brightmail AntiSpam v.6.3 |
| | | Symantec Brightmail Message Filter v.6.1 |
| | | Symantec Brightmail Message Filter v.6.2 |
| | | Symantec Brightmail Message Filter v.6.3 |
| | | Symantec Mail Security for SMTP v.5.0 |
| | | Symantec Mail Security for SMTP v.6.0 |
| | | Symantec Mail Security for SMTP v.7.5 |
| | | Symantec Mail Security for SMTP v.8.0 |
| | | Symantec Mail Security for SMTP v.8.1 |
| | | Symantec Mail Security Appliance v.4.0 |
| | | Symantec Mail Security Appliance v.4.1 |
| | | Symantec Mail Security Appliance v.5.0 |
| | | Symantec Mail Security Appliance v.7.5 |
| | | Symantec Mail Security Appliance v.7.6 |
| | | Symantec Brightmail Gateway v.7.7 |
| | | Symantec Brightmail Gateway v.8.0 |
| | | Symantec Brightmail Gateway v.9.0 |
| | | Symantec Messaging Gateway v.9.5 |
| | | Symantec Messaging Gateway v.10.0 |
| | | Symantec Mail Security for Microsoft Exchange v.4.6 |
| | | Symantec Mail Security for Microsoft Exchange v.5.0 |
| | | Symantec Mail Security for Microsoft Exchange v.6.0 |
| | | Symantec Mail Security for Microsoft Exchange v.6.5 |
| | | Symantec Mail Security for Domino v.7.5 |
| | | Symantec Mail Security for Domino v.8.X |
| | | MessageLabs Email Anti-Spam |
| | | MessageLabs Email Content Control |
| | | MessageLabs Image Control |
| | | Symantec Hosted Email Security Anti-Spam |
| | | Symantec Hosted Email Security Content Control |
| | | Symantec Hosted Email Security Image Control |
| | | Symantec Email AntiSpam.cloud |
| | | Symantec Email Content Control.cloud |
| | | Symantec Email Image Control.cloud |

**Symantec's Proposal**[27]

To prove infringement, Intellectual Ventures must prove by a preponderance of the evidence that the particular Symantec Accused Product being considered includes every element or requirement exactly as it appears in the particular Asserted Claim.  The presence of other elements beyond those claimed does not avoid infringement, as long as each and every claimed element is present in the Accused Product.

However, if an Accused Product omits any requirement recited in one of the Asserted Claims, then that product does not infringe that claim.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.

In order to prove that an Accused Product infringes the Patents-in-Suit, IV must point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit.  The fact that it might be possible to configure an Accused Product to infringe the Patents-in-Suit is not sufficient to find infringement.[28]

If you find that an independent claim has been infringed by an Accused Product, you must still decide, separately, whether the Accused Product meets the additional requirements of any claim that depends from the independent claim to determine whether the dependent claim has also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

Most of the Asserted Claims cover methods.  In particular, all of the Asserted Claims of the '050 patent and the '610 patent, and claims 17, 21, 22, 24, and 26 of the '142 patent, are method claims.  Offering a system or service does not itself infringe a method claim.  In order for

---

[27] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 3.6

[28] *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004)).

a method claim to be infringed, Intellectual Ventures must prove that each step of the claimed method is actually performed by Symantec in the United States, not merely that a system or service has been offered that is capable of performing the claimed method.  Each step of the method claim must be performed by Symantec in the United States.  If even one step of the claimed method is performed by an entity other than Symantec, even if the entity is a Symantec customer, Symantec has not infringed the patent claim.[29]  If even one step of a claimed method is performed only outside of the United States, Symantec has not infringed the patent claim.[30]

Intellectual Ventures contends that the following Symantec products directly infringe the following Asserted Claims of each of the patents in suit:

| Patent | Asserted Claim(s) | Symantec Accused Products |
|---|---|---|
| '610 Patent | 7 | Symantec MessageLabs Email Security.cloud (f/k/a MessageLabs Hosted Email Security) <br><br> Symantec MessageLabs Email Antivirus.cloud (f/k/a MessageLabs Hosted Email Antivirus) <br><br> Symantec MessageLabs Instant Messaging Security.cloud (f/k/a MessageLabs Hosted IM Security and Enterprise Instant Messenger.cloud) <br><br> Symantec MessageLabs Web Security.cloud (f/k/a MessageLabs Hosted Web Security) |
| '050 Patent | 9, 16, and 22 | Norton Internet Security <br> Norton AntiVirus <br> Norton 360 <br> Norton One <br> Symantec Endpoint Protection 12.1 |

---

[29] *Limelight Networks, Inc. v. Akamai Techs. Inc.*, 134 S.Ct. 2111, 2117-18 (2014); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010); *Lucent Techs. v. Gateway, Inc.*, 580 F3d. 1301, 1317 (Fed. Cir. 2009); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).
[30] *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

| '142 Patent | 1, 7, 17, 21, 22, 24, and 26 | Symantec Messaging Gateway |
| | | Symantec Brightmail Gateway |
| | | Symantec Mail Security Appliance |
| | | Symantec Mail Security for SMTP |
| | | Symantec Message Filter |
| | | Symantec MessageLabs Email Security.cloud |
| | | Symantec Brightmail AntiSpam |
| | | Symantec Mail Security for Microsoft Exchange |
| | | Symantec Mail Security for Lotus Domino |

### 4.3. NO INFRINGEMENT IF STEP OF METHOD CLAIM IS PERFORMED OUTSIDE THE UNITED STATES

**IV's Proposal**

No instruction needed.

**Symantec's Proposal**

A method claim is not infringed if even a single claimed step is performed outside the

United States.[31]

---

[31] *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

5.      **PATENT INVALIDITY**

**IV's Proposal**[32]

Patent invalidity is a defense to patent infringement.  Even though the United States

Patent Office has allowed the claims of a patent, you have the ultimate responsibility for

deciding whether or not the claims of the Asserted Patents are valid.

For a patent to be valid, the subject matter claimed in the individual claims of the patent

must be new and non-obvious.  A patent cannot take away from the right of anyone who wants to

use what was already known or would have been obvious to those of skill in the art at the time

when the invention was made.

Symantec has challenged the validity of the Asserted Patents.  In making your

determination as to invalidity, you should consider each claim separately.

**Symantec's Proposal**[33]

Patent invalidity is a defense to patent infringement.  Even though the United States

Patent and Trademark Office has allowed the claims of a patent, Symantec has the right to

present evidence that the claims are invalid.  You have the ultimate responsibility for deciding

whether or not the claims of the Asserted Patents are valid.  In this case, as to each of the

Patents-in-Suit, the Patent and Trademark Office did not have available to it all of the prior art

that has been presented to you.  In making your decision whether Symantec has met its burden as

to the invalidity of a particular patent claim, you may consider that you have heard evidence

about prior art references that the Patent and Trademark Office did not have an opportunity to

evaluate before granting the patents.  It is your job to consider the evidence presented by the

---

[32] *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc., et al.*, C.A. No. 09-598-LPS, D.I. 287 (Joint Proposed Final Jury Instructions) (D. Del. Sept. 14, 2011).

[33] *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc., et al.*, C.A. No. 09-598-LPS, D.I. 287 (Joint Proposed Final Jury Instructions) (D. Del. Sept. 14, 2011).

parties and determine independently whether or not Symantec has proven the claims of the Patents-in-Suit are invalid.[34]

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious.  A patent cannot take away from the right of anyone who wants to use what was already known or would have been obvious to those of skill in the art at the time when the invention was made.

Symantec has challenged the validity of the Asserted Patents.  In making your determination as to invalidity, you should consider each claim separately.

---

[34]*Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 4.1

## 5.1. PRESUMPTION OF VALIDITY

**IV's Proposal**[35]

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid.  The law presumes that the Patent Office acted correctly in issuing the patent.  This presumption puts the burden of proving validity on the challenger, Symantec.

To prove that any claim of the Patents-in-Suit is invalid, Symantec must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.  This burden always remains with Symantec and never shifts to Intellectual Ventures.

Each of the asserted claims is presumed valid independently of the validity of each other claim.  In other words, even if you find one claim of a patent is invalid, other claims of the same patent are still presumed to be valid until proven otherwise by clear and convincing evidence.

**Symantec's Proposal**

No instruction should be given because the effect of the presumption is the heightened burden of proof as recited above and it is prejudicial and confusing to instruct on both the heightened burden and the presumption of invalidity.  If the Court chooses to instruct on the presumption over this objection, Symantec conditionally and without waiving its objection, proposes the following instruction:

To prove invalidity of any claim, Symantec must establish factual matters concerning invalidity by clear and convincing evidence.  The clear and convincing standard applies only to questions of fact and therefore does not apply to your determination where, on the facts as you have found them, a claimed invention was obvious.[36]

Symantec's burden may be easier to sustain if all material facts were not before the PTO when it issued a patent.  Thus, you should consider whether you have heard evidence that the PTO had no opportunity to evaluate before granting the patent.  You should determine whether

---

[35] *Braun Melsungen AG, et al. v. Terumo Medical Corporation, et al.*, C.A. No. 09-347-LPS, D.I. 334 (Preliminary Instructions) (D. Del. Nov. 14, 2010).
[36] *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2252 (2011); *id.* at 2253 (Breyer, J., concurring); *Addington v. Texas*, 441 U.S. 418, 423 (1979).

the evidence you have heard is materially new and was not considered by the PTO as part of its

decision to grant the patents.  You should consider the fact that the PTO was unaware of the

evidence in determining whether Symantec has met its burden of proof.[37]

---

[37] *Microsoft Corp. v. i4i Ltd. P'ship*. 131 S. Ct. 2238, 2251 (2011); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1563-64 (Fed. Cir. 1993).

## 5.2. ANTICIPATION

**IV's Proposal**[38]

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles or other patents, before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

In order to prove that an invention is "anticipated," a party must prove by clear and convincing evidence that a single piece of prior art describes or discloses each and every element of an Asserted Patent.  You may not combine two or more items of prior art to find anticipation.  A single prior art reference must also disclose those elements as arranged in the claim.  In determining whether every one of the elements of the claimed invention is found in a single prior art reference (such as a prior publication, patent or product), you must take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior publication, patent or product.

In evaluating whether a prior art reference anticipates a claim, you must also determine whether a person having ordinary skill in the art at the time would have been able to make the claimed invention, based solely on the description in the prior art reference and their own knowledge.  If the prior art reference would not have enabled a person having ordinary skill in the art to make the claimed invention, it cannot be considered as a prior art reference for the purposes of evaluating anticipation.

---

[38] AIPLA's Model Patent Jury Instructions, § 6.0 (2012); *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312 (Fed. Cir. 2008).

Anticipation must be proved on a claim-by-claim basis.

**Symantec's Proposal**[39]

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles or other patents, before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," a party must prove by clear and convincing evidence that a single piece of prior art describes or discloses each and every element of an Asserted Patent.  A single prior art reference must also disclose those elements as arranged in the claim.  The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied so that someone of ordinary skill in the relevant field looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently or necessarily results from the practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

---

[39] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 4.3.

## 5.3. STATUTORY ON-SALE BAR

**IV's Proposal**[40]

It is against public policy to allow an inventor to commercially exploit his invention in this country by putting it on-sale in this country more than one year before the effective filing date of the patent because this has the effect of extending the term of the patent as fixed by Congress.

In order for an invention to be "on sale," the invention must have been developed to the point of demonstrating that it will work for its intended purpose. The invention need not be fully perfected or in commercial production. It is not necessary that there be stock or inventory available for sale.

Although the law uses the phrase "on-sale," the law does not require that an actual sale was made. An offer for sale more than a year before the effective filing date of the patent can trigger the "on-sale" bar even though no actual sale takes place. An offer for sale generally occurs when the seller communicates to the buyer a willingness to enter into a bargain such that the buyer understands that his agreement results in conclusion of the bargain.

In order to qualify as "in this country," the offer to sell must be an offer contemplating a sale in the United States. The "on-sale" bar is not triggered if the offer is for a sale that would occur outside the United States. This is true even if the offer was made in the United States.[41]

Even one sale in this country or one offer to put the completed invention on-sale in this country, made more than one year prior to the filing date of the patent in suit, will render the patent invalid.

In this case, Symantec contends that the invention claimed in the '142 Patent was on-sale in this country before June 23, 1996. Intellectual Ventures disagrees and argues that the

---

[40] District of Delaware Model Patent Jury Instruction No. 4.5.
[41] *Halo Electronics, Inc. v. Pulse Electronics, Inc*., 769 F.3d 1371, 1380 (Fed. Cir. 2014).

invention claimed in the '142 Patent was only on-sale in England, not the United States, before

June 23, 1996.

You must determine whether Symantec has established by clear and convincing evidence

that the '142 Patent was on-sale in the United States before June 23, 1996.[42]

**Symantec's Proposal**[43]

If an inventor puts his or her invention on-sale in this country more than one year before

filing an application for a patent covering that invention, any resulting patent is invalid.

Although the law uses the phrase "on-sale," the law does not require that an actual sale

was made. An offer for sale more than a year before the effective filing date of the patent can

trigger the "on-sale" bar even though no actual sale takes place. An offer for sale generally

occurs when the seller communicates to a buyer a willingness to enter into a bargain such that

the buyer understands that his agreement results in conclusion of the bargain.

A patent claim is invalid if more than one year before the filing date of the patent an

embodiment of the claimed invention was both (1) subject to commercial offer for sale in the

United States; and (2) ready for patenting. The invention need not have been ready for patenting

at the time of the offer for sale, as long as both the date of the offer for sale and the date the

invention became ready for patenting occurred more than one year before the filing date of the

patent.[44]

An invention is ready for patenting either when it is reduced to practice or when the

inventor has prepared drawings or other descriptions of the invention sufficient to allow a person

of ordinary skill in the art to make or use the invention. An invention is reduced to practice

when it has been (1) constructed or performed within the scope of the patent claims; and

---

[42] 35 U.S.C. 102(b).
[43] District of Delaware Model Patent Jury Instruction No. 4.5.
[44] AIPLA's Model Patent Jury Instructions, § 6.3 (2012); *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *Atlanta Attachment Co., v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008).

(2) determined that it works for its intended purpose.  The claimed invention is ready for

patenting when there is reason to believe it would work for its intended purpose.[45]

An invention may be "on-sale" in this country even though the product that embodies the

invention is ultimately delivered to a customer located in a another country.  The invention is

considered to be "on-sale" in this country if substantial activity that ultimately led to a sale

occurred within the United States, even if the sale is finally consummated outside of this

country.[46]  Even one sale in this country or one offer to put the completed invention on-sale in

this country, made more than one year prior to the filing date of the patent application, will

render the patent invalid.

In this case, Symantec contends that the invention claimed in the '142 patent was on-sale

in this country before June 23, 1996.  Intellectual Ventures disagrees and argues that the

invention claimed in the '142 patent was only on-sale in England, not the United States, before

June 23, 1996.

You must determine whether Symantec has established by clear and convincing evidence

that the '142 patent was on-sale in the United States before June 23, 1996.[47]  In reaching your

decision, you may consider that the Patent and Trademark Office did not an opportunity to

evaluate this issue.

---

[45] AIPLA's Model Patent Jury Instructions, § 6.3 (2012); *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998).
[46] *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973); *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 2007 WL 3231709, at *3 (N.D. Cal. Oct. 30, 2007); *SPX Corp. v. Bartec USA, LLC*, 2008 WL 3850770, at *8-9 (E.D. Mich. Aug. 12, 2008); *MDS Assoc., LP v. U.S.*, 37 Fed. Cl. 611 (Ct. Cl. 1997); *Aguayo v. Universal Instr. Corp.*, 356 F. Supp. 2d 699 (S. D. Tex. 2005); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 825 F. Supp. 65, 71-72 (D. Del. 1993).
[47] 35 U.S.C. 102(b).

## 5.4. OBVIOUSNESS

**IV' Proposal**[48]

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Symantec contends that all of the Asserted Claims are obvious.  In order for Symantec to show that a patent claim is invalid for obviousness, Symantec must prove by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time each of the inventions were made.

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the art that someone would have had at the time the claimed invention was made, (2) the scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and (4) additional considerations, if any, that indicate that the invention was not obvious.

These additional considerations indicating that the invention was not obvious include:

1.      commercial success of a product due to the merits of the claimed invention;

2.      a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.      unsuccessful attempts by others to find the solution provided by the claimed invention;

4.      copying of the claimed invention by others;

---

[48] *Leader Technologies, Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, D.I. 580 (Preliminary Jury Instructions) (D. Del. July 5, 2010).

5.      unexpected and superior results from the claimed invention;

6.      acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;

7.      disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

8.      other evidence tending to show non-obviousness.

There must be a nexus, or connection, between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.

## Symantec's Proposal[49]

In addition to claiming that the Asserted Claims are anticipated, Symantec contends that each of the Asserted Claims is invalid for obviousness.

A patent claim is invalid if the claimed invention, as a whole, would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed. This means that even if all the requirements of the claim cannot be found in a single prior art reference, which includes patents, publications, devices, and prior uses, knowledge, or invention, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.      You must decide the scope and content of the prior art.

---

[49] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 4.4.

2.      You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

3.      You should consider any difference or differences between the prior art and the claim requirements.

I will provide more details on how you should make these factual determinations shortly.

You should also consider any of the following factors that you find have been shown by the evidence:

A.      Factors tending to show non-obviousness:

9.      commercial success of a product due to the merits of the claimed invention;

10.     a long-felt, but unsolved, need for the solution provided by the claimed invention;

11.     unsuccessful attempts by others to find the solution provided by the claimed invention;

12.     copying of the claimed invention by others;

13.     unexpected and superior results from the claimed invention;

14.     acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;

15.     disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

16.     other evidence tending to show non-obviousness.

You may consider the presence of any of the listed factors A.1-8 as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.

There must be a nexus, or connection, between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patents in suit, then any commercial success may have no relation to the issue of obviousness.

B.      Factors tending to show obviousness

1.      independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

2.      other evidence tending to show obviousness.

You may consider the presence of the listed factors B.1-2 as an indication that the claimed invention would have been obvious at such time.

Although you should consider any evidence of these factors, the relevance and importance of them to your decision on whether the claimed invention would have been obvious is up to you.  Further, you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions.  When a patent simply arranges old elements, with each

performing the same function it had been known to perform, and yields no more than what one of ordinary skill in the art would expect from such an arrangement, the combination is obvious.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  Multiple references in the prior art can be combined to show that a claim is obvious.

The fact that a combination was obvious to try may demonstrate that the combination itself was obvious.  Where there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance, the fact that a combination was obvious to try might show that it was obvious.[50]

If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

---

[50] *KSR, Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416-21 (2007).

## 5.5. OBVIOUSNESS - HINDSIGHT

**<u>IV's Proposal</u>**[51]

In determining whether a claimed invention was obvious, consider each claim separately. Do not use hindsight, that is, consider only what was known at the time of the invention. You should put yourself in the position of a person of ordinary skill in the field at the time the invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

**<u>Symantec's Proposal</u>**

No separate instruction is necessary and it should be included in 5.4 above.

---

[51] *Leader Technologies, Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, D.I. 580 (Preliminary Jury Instructions) (D. Del. July 5, 2010).

## 5.6. OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART

<u>IV's Proposal</u>[52]

In arriving at your decision on the issue of whether or not the claimed inventions were obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.

<u>Symantec's Proposal</u>[53]

As I have just instructed you, in arriving at your decision on the issue of whether or not the claimed inventions were obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.

The prior art may include any of the following items if received into evidence:

1.    patents that issued either before the date of invention or more than one year before the earliest effective filing date of the Asserted Patent;

2.    publications having a date either before the date of invention or more than one year before the earliest effective filing date of the Asserted Patent;

3.    products and systems that were in public use or on sale in the United States either before the date of invention or more than one year before the patent application of the Asserted Patent was filed.

---

[52] *Leader Technologies, Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, D.I. 580 (Preliminary Jury Instructions) (D. Del. July 5, 2010).
[53] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 4.4.1.

## 5.7. DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

**IV's Proposal**[54]

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on previously known building blocks, and inventions are very often combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that

---

[54] *Leader Technologies, Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, D.I. 580 (Preliminary Jury Instructions) (D. Del. July 5, 2010).

would have prompted a person of ordinary skill in the art in the relevant field to combine the

known elements in the way the claimed invention does, taking into account such factors as:

1.      whether the claimed invention was merely the predictable result of using prior art
        elements according to their known functions;

2.      whether the claimed invention provides an obvious solution to a known problem
        in the relevant field;

3.      whether the prior art teaches or suggests the desirability of combining elements
        claimed in the invention;

4.      whether the prior art teaches away from combining elements in the claimed
        invention;

5.      whether it would have been obvious to try the combinations of elements, such as
        when there is a design need or market pressure to solve a problem and there are a
        finite number of identified, predictable solutions; and

6.      whether the change resulted more from design incentives or other market forces.

Accordingly, you may evaluate whether there was some teaching, suggestion, or

motivation to arrive at the claimed invention before the time of the claimed invention, although

proof of this is not a requirement to prove obviousness.  If you find that a reason existed at the

time of the invention to combine the elements of the prior art to arrive at the claimed invention,

this evidence would make it more likely that the claimed invention was obvious.  Again, you

must undertake this analysis separately for each claim that Symantec contends is obvious.

## Symantec's Proposal[55]

A claim is not proved obvious merely by demonstrating that each of the elements was

independently known in the prior art.  In considering whether a claimed invention is obvious,

you may but are not required to find obviousness if you find that at the time of the claimed

invention there was a reason that would have prompted a person having ordinary skill in the field

---

[55] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014),
Instruction 4.4.3.

of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as:

7.      whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

8.      whether the claimed invention provides an obvious solution to a known problem in the relevant field;

9.      whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

10.     whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

11.     whether the change resulted more from design incentives or other market forces.

Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

### 5.8. OBVIOUSNESS – LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  This person is presumed to know all the prior art that you have determined to be reasonably relevant.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

It is up to you to decide the level of ordinary skill in the field of the claimed inventions. Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

Intellectual Ventures contends that the Patents-in-Suit are addressed to a person with a Bachelor of Science degree, preferably in either computer engineering or computer science, with 3–5 years of experience developing computer software with an emphasis in network and email security.  Alternatively, a person of ordinary skill in the art would have significant industry experience in the field of network and email security, including development of computer software.

Symantec contends that a person of ordinary skill in the art would have had a Bachelor of Science degree in computer science or a related field (such as information management systems), and two years' experience in working in the computer networking and security area, or a Master's degree in computer security and a year of experience working in the computer networking and security area.

### 5.9. CONCEPTION

**IV's Proposal**

The parties agree that the filing date of February 12, 1998 is the date of invention for the '610 patent. In this case, however, Intellectual Ventures contends that the inventions claimed in the '050 patent and the '142 patent are entitled to earlier invention dates. In particular, Intellectual Ventures contends that claims 9, 16, and 22 of the '050 patent are entitled to an invention date of November 13, 1998, that claims 1, 7, 17, and 24 of the '142 patent are entitled to an invention date in January 1996, and that claims 21 and 22 of the '142 patent are entitled to an invention date of May 1996.

For Intellectual Ventures to be entitled to an earlier invention date, it must prove, by a preponderance of the evidence, that the invention was conceived earlier and thereafter the inventors were diligent in reducing the invention to practice.[56]

"Conception" means the formation in the mind of an inventor of a definite and permanent idea of the complete and operative invention, such that, if the idea were communicated to a person of ordinary skill in the art, he or she would be able to make the invention without undue research or experimentation or the exercise of inventive skill. This requirement does not mean that the inventor has to have a prototype built, or have actually explained the invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete and operative idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Conception must include every feature or limitation of the claimed invention.

---

[56] *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 536 F. Supp. 2d 476, 490 (D. Del. 2008).

In addition to proving an earlier conception date, Intellectual Ventures must also establish by a preponderance of the evidence that the inventors engaged in reasonably continuous activity to reduce the invention to practice.  As with proof of the conception date, there must be evidence in addition to the inventor's testimony that shows diligence.

## Symantec's Proposal[57]

The date of an invention is presumed to be the filing date of the patent application.  The parties agree that the filing date of February 12, 1998 is the date of invention for the '610 patent.  In this case, however, Intellectual Ventures contends that the inventions claimed in the '050 patent and the '142 patent are entitled to earlier invention dates.  In particular, Intellectual Ventures contends that claims 9, 16, and 22 of the '050 patent are entitled to an invention date of November 13, 1998, even though the patent application was filed on December 22, 1999.  Intellectual Ventures contends that claims 1, 7, 17, and 24 of the '142 patent are entitled to an invention date in January 1996, and that claims 21 and 22 of the '142 patent are entitled to an invention date of May 1996, even though the patent application was filed on June 23, 1997.

For Intellectual Ventures to be entitled to an earlier invention date, it must prove, by a preponderance of the evidence, that the invention was conceived earlier and thereafter the inventors were diligent in reducing the invention to practice.[58]

"Conception" is the completion of the mental part of invention.  Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.  A conception must encompass all limitations of the claimed invention.[59]

---

[57] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014), Instruction 4.4.3.

[58] *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 536 F. Supp. 2d 476, 490 (D. Del. 2008).

[59] *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F. 3d 1223, 1228 (Fed. Cir. 1994); *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003).

The testimony of an inventor is not sufficient, standing alone, to prove a conception date. An inventor must provide independent, corroborating evidence in addition to his own statements and documents. There must be corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention.[60]

In addition to proving an earlier conception date, Intellectual Ventures must also establish by a preponderance of the evidence that the inventors engaged in reasonably continuous activity to reduce the invention to practice. As with proof of the conception date, there must be evidence in addition to the inventor's testimony that shows diligence. Efforts toward a solution that did not encompass all limitations of the claimed invention are not credited as diligence.[61]

---

[60] *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003); *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009); *Burroughs*, 40 F.3d at 1228.

[61] *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004); *In re Jolley*, 308 F.3d 1317, 1328 (Fed. Cir. 2002); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001).

6.     **PATENT DAMAGES**

**6.1. PATENT DAMAGES GENERALLY**

**IV's Proposal**[62]

      If you find that Symantec is liable for infringement of one or more of the asserted claims, by making, using, selling, or offering for sale any of its accused products, and you find the asserted claims valid, you must determine the amount of money damages to be awarded to Intellectual Ventures, if any.  The amount of damages must be adequate to compensate Intellectual Ventures for the infringement.  If you do not find patent infringement liability by Symantec's accused products, or you find the asserted claims invalid, you will not consider patent damages at all.

      Intellectual Ventures has the burden of proving damages by a preponderance of the evidence and is entitled only to damages that it has proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Intellectual Ventures.  On the other hand, Intellectual Ventures is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guesswork.  You may base your evaluation of "reasonable certainty" on any evidence, including expert or opinion evidence.

**Symantec's Proposal**[63]

      If you find that Symantec is liable for infringement of one or more of the asserted claims, by making, using, selling, or offering for sale any of its accused products, and you find the asserted claims valid, you must determine the amount of money damages to be awarded to

---

[62] Federal Circuit Bar Association Model Patent Jury Instructions, § 6.1 (February 2013).
[63] *Masimo Corp. v. Philips Electronics North America Corp., et al.*, Civil Action No. 09-80 (LPS) (Sept. 30, 2014) Instruction 5.1.

Intellectual Ventures, if any.  The amount of damages must be adequate to compensate Intellectual Ventures for the infringement.  If you do not find patent infringement liability by Symantec's accused products, or you find the asserted claims invalid, you will not consider patent damages at all.

Intellectual Ventures has the burden of proving damages by a preponderance of the evidence and is entitled only to damages that it has proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Intellectual Ventures.  On the other hand, Intellectual Ventures is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guesswork.  You may base your evaluation of "reasonable certainty" on any evidence, including expert or opinion evidence.

The damages award should be based on sound economic proof.

In determining the amount of damages, you are not necessarily limited by whether Symantec benefited from, realized profits from, or even lost money as a result of the acts of infringement.  The only issue is the amount necessary to adequately compensate Intellectual Ventures for Symantec's patent infringement.  Adequate compensation should return the party asserting infringement to the position it would have been in had there been no patent infringement.

## 6.2. REASONABLE ROYALTY

<u>IV's Proposal</u>[64]

Intellectual Ventures is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.  You should also assume that both parties to that hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.

<u>Symantec's Proposal</u>[65]

Intellectual Ventures is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.  You should also assume that

---

[64] AIPLA's Model Patent Jury Instructions, §§ 11.14, 11.15 (2012); Final Jury Instructions in *Shelbyzyme LLC v. Genzyme Corp.*, (Dist.  Del., Civil Action No. 09-768-GMS) (D.I. 183) (7/13/12).
[65] *Masimo Corp. v. Philips Electronics North America Corp., et al.*, Civil Action No. 09-80 (LPS) (Sept. 30, 2014) Instruction 5.11.

both parties to that hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating a reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits an alleged infringer made.

## 6.3. RELEVANT FACTORS FOR THE HYPOTHETICAL NEGOTIATION METHOD

**IV's Proposal**[66]

In determining the value of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.  The royalties received by Intellectual Ventures at the time of the hypothetical negotiation for the licensing of the patents in suit, proving or tending to prove an established royalty.

2.  The rates paid by Symantec to license or use other patents comparable to the patent in suit.

3.  The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.  The commercial relationship between Symantec and the patent owner at the time of the hypothetical negotiation, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

---

[66] Final Jury Instructions in *DePuy Synthes Products, LLC v. Globus Medical, Inc.*, Civil Action No. 11-652 (LPS) (D.I. 315) (June 13, 2013); Final Jury Instructions in *Tarkus Imaging, Inc. v. Adobe Systems, Inc.*, Civil Action No. 10-063 (LPS) (D.I. 479) (June 27, 2012).

6.      The effect of selling the patented product in promoting sales of other products of Symantec; the existing value of the invention to Intellectual Ventures as a generator of sales of his non-patented items at the time of the hypothetical negotiation; and the extent of such derivative or convoyed sales.

7.      The remaining life of the patents-in-suit and the terms of the license.

8.      The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

11.     The extent to which Symantec has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as the patent owner at the time of the hypothetical negotiation) and a licensee (such as Symantec) would have agreed upon (at the time the infringement began) if both had been reasonably and

voluntarily trying to reach an agreement; that is, the amount which a prudent

licensee—who desired, as a business proposition, to obtain a license to

manufacture and sell a particular article embodying the patented invention—

would have been willing to pay as a royalty and yet be able to make a reasonable

profit and which amount would have been acceptable by a prudent patentee who

was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under

similar circumstances, take into consideration in negotiating the hypothetical

license.

No one of these factors is dispositive in every case, and you can and should consider the

evidence that has been presented to you on any of these factors. You may also consider any

other factors that in your mind would have increased or decreased the royalty the accused

infringer would have been willing to pay and the patent holder would have been willing to

accept.

## Symantec's Proposal[67]

In determining the value of a reasonable royalty, you should consider all the facts known

and available to the parties at the time the infringement began. Some of the kinds of factors that

you may consider in making your determination are:

17. The royalties received by the patent owner at the time of the hypothetical

negotiation for the licensing of the patent in suit, proving or tending to prove an

established royalty.

18. The rates paid by Symantec for the use of other patents comparable to the patent

in suit.

---

[67] *Masimo Corp. v. Philips Electronics North America Corp., et al.*, Civil Action No. 09-80 (LPS) (Sept. 30, 2014)
Instruction 5.12.

19. The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

20. The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

21. The commercial relationship between Symantec and the patent owner at the time of the hypothetical negotiation, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

22. The effect of selling the patented product in promoting sales of other products of Symantec; the existing value of the invention to the patent owner as a generator of sales of his non-patented items at the time of the hypothetical negotiation; and the extent of such derivative or convoyed sales.

23. The remaining life of the patents-in-suit and the terms of the license.

24. The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

25. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

26. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

27. The extent to which Symantec has made use of the invention; and any evidence probative of the value of that use.

78

28.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

29.    The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

30.    The opinion testimony of qualified experts.

31.    The amount that a licensor (such as the patent owner at the time of the hypothetical negotiation) and a licensee (such as Symantec) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

32.    Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one of these factors is dispositive in every case, and you can and should consider the evidence that has been presented to you on any of these factors.  You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay and the patent holder would have been willing to accept.

## 6.4. ENTIRE MARKET VALUE RULE

**IV's Proposal**[68]

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product.  In other words, a plaintiff can receive damages for lost sales of non-patented components where the plaintiff proves that the patented feature drove customer demand for the non-patented components.  Further, the plaintiff must prove that the infringing and non-infringing components are sold together so that they constitute a functional unit or are parts of a complete machine or single assembly of parts.  Lastly, the plaintiff must prove that the individual infringing and noninfringing components are analogous to a single functioning unit.

Thus, if you find that Intellectual Ventures has proven by a preponderance of the evidence that customers demanded Symantec's software because of the features patented in the '610 Patent, you may award damages based on the value of the entire software.  However, if you find that customer's demand for Symantec's software is based on something other than the patented features, you should award damages based on the value of the patented features and not the value of the entire software.

**Symantec's Proposal**

Intellectual Ventures is seeking damages for the '610 patent under what is called the "entire market value rule."  A recovery of damages under the entire market value rule is rarely appropriate.  For the entire market value rule to apply, Intellectual Ventures must prove by a preponderance of the evidence that the Accused Products infringe the '610 patent and that the feature covered by the patent claim is the sole basis for customer demand.

---

[68] *Ateliers de la Haute-Garonne v. Broetje*, Case No. 1:09-cv-598, Final Jury Instructions (Apr. 11, 2014) (D.I. 415).

The products accused of infringing the '610 patent have more than one feature.  Thus, to recover damages under the entire market value rule, Intellectual Ventures must prove that none of the customer demand for the Accused Products is based on any of those non-patented features. If Intellectual Ventures has not proven this, you must reject its damages claim for the '610 patent.[69]

---

[69] *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 70 (Fed. Cir. 2012); *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

**7.    DELIBERATION AND VERDICT**

**7.1. INTRODUCTION**[70]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No.1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

---

[70] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

## 7.2. UNANIMOUS VERDICT[71]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinions of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges -judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  Then each of you will sign and date the form.  You will then return to the courtroom and your verdict will be read in open Court by my deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

---

[71] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

### 7.3. DUTY TO DELIBERATE[72]

Now that all the evidence is in and after the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[72] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

## 7.4. SOCIAL MEDIA[73]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case, or perform any research.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[73] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).

### 7.5. COURT HAS NO OPINION[74]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done before this trial or during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[74] *Personalized User Model, L.L.P. v. Google, Inc.*, Civil Action No. 09-525 (LPS) (D.I. 663) (Mar. 19, 2014).