# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 10-1067-LPS |
| SYMANTEC CORPORATION, | : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

At Wilmington this 23rd day of January, 2015, having reviewed the parties' letters regarding jury instructions (D.I. 626, 627, 631),

**IT IS HEREBY ORDERED** that:

1. The Court disagrees with IV that an instruction on the entire market value rule cannot be read under these circumstances presented in this case. To the contrary, reading such an instruction is a proper exercise of the Court's discretion, as doing so will assist the jurors' understanding of the evidence on damages.

However, as stated in the Court's prior rulings on Symantec's *Daubert* motion and motion in limine, the Court finds Symantec's interpretation of the law governing the entire market value rule overly narrow. The Court will instruct the jury on entire market value in accordance with the Court's understanding of the law.

Accordingly, the Court will read the following cautionary jury instruction, at or about the time IV's damages expert first references IV's theory of damages as to the '610 patent, and again as part of the final instructions:

1

Intellectual Ventures is seeking damages for the '610 patent under what is called the "entire market value rule." Pursuant to this rule, a plaintiff may be awarded damages as a percentage of revenues or profits attributable to an entire multi-component product where the plaintiff establishes that it is the patented feature that drives the demand for the entire product. As you will hear evidence on revenues or profits from the entire market value of certain products, there are several things you must keep in mind when considering such evidence.

First, a reasonable royalty is typically made up of (1) a base and (2) a rate (or percentage) that is applied to that base. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. IV bears the burden to establish the entire value of a product as a marketable article is properly attributable to the patented feature.

Second, in order for you to assess damages based on the entire market value of the product, IV must have established that the patented feature drove the demand for the entire product. If IV does not establish the patented feature drove the demand for the entire product, you must apportion the royalty down to a reasonable estimate of the value of the patented feature.

2. With respect to final jury instructions on general patent damages, the parties are largely in agreement as to the proper instructions. The Court finds IV's construction more straightforward and believes it will be slightly more helpful to the jury than Symantec's proposal. The Court also adds a sentence.

Accordingly, the Court adopts the following final jury instruction on "Patent Damages Generally" (D.I. 604 at § 6.1):

> If you find that Symantec is liable for infringement of one or more of the asserted claims, by making, using, selling, or offering for sale any of its accused products, and you find the asserted claims valid, you must determine the amount of money damages to be awarded to Intellectual Ventures, if any. The amount of damages must be adequate to compensate Intellectual Ventures for the infringement. If you do not find patent

2

infringement liability by Symantec's accused products, or you find
the asserted claims invalid, you will not consider patent damages at
all.

Intellectual Ventures has the burden of proving damages by
a preponderance of the evidence and is entitled only to damages
that it has proven with "reasonable certainty." On the one hand,
reasonable certainty does not require proof of damages with
mathematical precision. Mere difficulty in ascertaining damages is
not fatal to Intellectual Ventures. On the other hand, Intellectual
Ventures is not entitled to speculative damages; that is, you should
not award any amount for loss, which, although possible, is remote
or left to conjecture or guesswork. You may base your evaluation
of "reasonable certainty" on any evidence, including expert or
opinion evidence.

The damages award should be based on sound economic proof.

3. With regard to the final instructions on reasonable royalty and the *Georgia Pacific*

factors, while both parties' positions are consistent with the law, the Court finds Symantec's

instructions more thorough and more likely to assist the jury. The Court disagrees with IV that

Symantec's few additional sentences, which lend clarity to the instructions, are cumulative or

place undue emphasis on any one *Georgia Pacific* factor.

Accordingly, the Court adopts the following final jury instruction on "Reasonable

Royalty" (D.I. 604 at § 6.2):

Intellectual Ventures is seeking damages in the amount of a
reasonable royalty. A royalty is a payment made to the owner of a
patent by a non-owner in exchange for rights to make, use, or sell
the claimed invention.

A reasonable royalty is the royalty that would have resulted
from a hypothetical negotiation between the patent owner and the
alleged infringer just before the infringement began. In
considering this hypothetical negotiation, you should focus on what
the expectations of the patent holder and the infringer would have
been if they had entered into an agreement at that time, and if they
had acted reasonably in their negotiations. You should also

3

assume that both parties to that hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

The Court adopts the following final jury instruction on "*Georgia Pacific* Factors" (D.I. 604 at § 6.3):

In determining the value of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patent owner at the time of the hypothetical negotiation for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by Symantec for the use of other patents comparable to the patent in suit.

3. The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between Symantec and the patent owner at the time of the hypothetical negotiation, such as, whether they are competitors in the same territory in the same line of business; or

4

whether they are inventor and promoter.

6. The effect of selling the patented product in promoting sales of other products of Symantec; the existing value of the invention to the patent owner as a generator of sales of his non-patented items at the time of the hypothetical negotiation; and the extent of such derivative or convoyed sales.

7. The remaining life of the patents-in-suit and the terms of the license.

8. The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

11. The extent to which Symantec has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patent

owner at the time of the hypothetical negotiation) and a licensee (such as Symantec) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license. This may include the availability of commercially acceptable, noninfringing alternatives at the time of the hypothetical negotiation.

No one of these factors is dispositive in every case, and you can and should consider the evidence that has been presented to you on any of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay and the patent holder would have been willing to accept.

6. Any other disputes raised in the parties' letters – including any dispute relating to the proper use of settlement agreements and comparability of license agreements – will be addressed at trial, in connection with argument on final jury instructions or otherwise, to the extent necessary.

7. Finally, because Symantec has dropped the on-sale bar defense and marking is not being addressed at trial, the disputes over those instructions are moot.

_____
UNITED STATES DISTRICT COURT