IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, | Case No. 1:10-cv-01067-LPS |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SYMANTEC CORP., | |
| Defendant. | |

**<u>FINAL JURY INSTRUCTIONS</u>**

# CONTENTS

1.      GENERAL INSTRUCTIONS ........................................................................... 1

1.1.    INTRODUCTION ......................................................................................... 1

1.2.    DUTY OF THE JURY ................................................................................. 2

1.3.    EVIDENCE DEFINED ................................................................................ 3

1.4.    DEMONSTRATIVE EXHIBITS ................................................................. 4

1.5.    DIRECT AND CIRCUMSTANTIAL EVIDENCE ..................................... 5

1.6.    CONSIDERATION OF EVIDENCE ........................................................... 6

1.7.    STATEMENTS OF COUNSEL ................................................................... 7

1.8.    CREDIBILITY OF WITNESSES ............................................................... 8

1.9.    NUMBER OF WITNESSES ........................................................................ 9

1.10.   EXPERT WITNESSES ............................................................................. 10

1.11.   DEPOSITION TESTIMONY .................................................................... 11

1.12.   BURDENS OF PROOF ............................................................................. 12

2.      THE PARTIES AND THEIR CONTENTIONS ............................................ 14

2.1.    THE PARTIES ........................................................................................... 14

2.2.    THE PARTIES' CONTENTIONS .............................................................. 15

2.3.    SUMMARY OF PATENT ISSUES ........................................................... 16

3.      THE PATENT LAWS .................................................................................... 17

3.1.    PATENT CLAIMS ..................................................................................... 18

3.2.    CLAIM CONSTRUCTION FOR THE CASE ........................................... 20

3.3.    INDEPENDENT AND DEPENDENT CLAIMS ........................................ 23

3.4.    OPEN-ENDED OR "COMPRISING" CLAIMS ......................................... 24

4.      PATENT INFRINGEMENT .......................................................................... 25

4.1.    PATENT INFRINGEMENT GENERALLY .............................................. 25

4.2.    DIRECT INFRINGEMENT ............................................................................. 26

5.      PATENT INVALIDITY ................................................................................. 29

5.1.    PRESUMPTION OF VALIDITY .................................................................. 30

5.2.    ANTICIPATION ........................................................................................... 31

5.3.    OBVIOUSNESS ........................................................................................... 32

5.4.    OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART ........................... 35

5.5.    OBVIOUSNESS – DIFFERENCES BETWEEN THE CLAIMED
        INVENTION AND THE PRIOR ART .............................................................. 36

5.6.    OBVIOUSNESS – LEVEL OF ORDINARY SKILL .................................................... 38

5.7.    CONCEPTION .............................................................................................. 39

6.      PATENT DAMAGES ................................................................................... 41

6.1.    PATENT DAMAGES GENERALLY .......................................................... 41

6.2.    REASONABLE ROYALTY ......................................................................... 42

6.3.    *GEORGIA PACIFIC* FACTORS ................................................................... 43

6.4.    ENTIRE MARKET VALUE RULE .............................................................. 47

6.5.    USE OF SETTLEMENT AGREEMENTS .................................................... 48

6.6.    COMPARABILITY OF LICENSE AGREEMENTS .................................... 50

7.      DELIBERATION AND VERDICT .............................................................. 53

7.1.    INTRODUCTION ......................................................................................... 53

7.2.    UNANIMOUS VERDICT ............................................................................. 54

7.3.    DUTY TO DELIBERATE ............................................................................. 55

7.4.    SOCIAL MEDIA .......................................................................................... 56

7.5.    COURT HAS NO OPINION ......................................................................... 57

# 1.   GENERAL INSTRUCTIONS

## 1.1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

I will then explain some rules that you must use in evaluating particular testimony and evidence.

I will then explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2. DUTY OF THE JURY**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  You are the sole judges of the facts.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3. EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in Court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that has been presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed upon, and any facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my rulings and completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.4. DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  During the course of this case you have also seen some exhibits (including charts and animations) that the parties used to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," may not have been offered and admitted as evidence in this case.  If they have not been admitted, they should not be considered as evidence, and you will not have them in the jury room with you.  Rather, it is the underlying testimony of the witness that you heard or the exhibits that have been entered into evidence when you saw the demonstrative exhibits that is the evidence in this case.

## 1.5. DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.6. CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.7. STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

## 1.8. CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  You should consider each witness's means or source of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**1.9. NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 1.10.   EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.11.   DEPOSITION TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded by a court reporter.  The deposition may also be recorded on videotape.

During this trial, you have heard testimony from the playing of video excerpts or the reading of written excerpts from depositions.  If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony.  You should not attribute any significance to the facts that the deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration you would give it had the witness testified in person here in the courtroom.

### 1.12.   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."   In a patent case, there are two different burdens of proof.   The first is called "preponderance of the evidence."   The second is called "clear and convincing evidence."

As I have already told you, in this case, Intellectual Ventures alleges that Symantec infringes the Patents-in-Suit.   Intellectual Ventures, therefore, has the burden of proving infringement by what is called a preponderance of the evidence.   That means Intellectual Ventures has to produce evidence which, considered in the light of all the facts, leads you to believe that what Intellectual Ventures alleges is more likely true than not.

To put it differently, if you were to put the evidence of Intellectual Ventures and Symantec concerning infringement on opposite sides of a scale, the evidence supporting Intellectual Ventures's allegations would have to make the scale tip somewhat toward Intellectual Ventures's side.   If Intellectual Ventures fails to meet this burden, your verdict must be for Symantec.

If Intellectual Ventures proves infringement of any valid claim, Intellectual Ventures must also prove by a preponderance of the evidence the amount of damages that is adequate to compensate Intellectual Ventures for that infringement.

As I noted earlier, Symantec asserts that Intellectual Ventures' patents are invalid.   A patent is presumed to be valid.   Accordingly, Symantec has the burden of proving by clear and convincing evidence that the patents are invalid.   Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly

probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That burden is a higher burden than those that apply in this case, and it does not apply to a civil case like this one.  Therefore, you should put it out of your mind in considering whether or not either party has met its burden of proof.

## 2.   THE PARTIES AND THEIR CONTENTIONS

### 2.1. THE PARTIES

The parties are Intellectual Ventures I, LLC, whom I may refer to as "Plaintiff" or "Intellectual Ventures," or "IV," on the one hand, and Symantec Corporation, whom I may refer to as "Defendant," or "Symantec," on the other hand.

## 2.2. THE PARTIES' CONTENTIONS

The three United States Patents at issue in this case are United States Patent No. 5,987,610, United States Patent No. 6,073,142, and United States Patent No. 6,460,050.  You may have heard the lawyers and witnesses in this case refer to these patents as the "'610 patent," the "'142 patent," and the "'050 patent," respectively.  Together, these patents have been referred to as "the Asserted Patents" or "the Patents-in-Suit."

Intellectual Ventures alleges that Symantec infringes claim 7 of the '610 Patent, claims 1, 7, 21, and 22 of the '142 Patent, and claims 9, 16, and 22 of the '050 Patent. Intellectual Ventures asserts that Symantec infringes by making, using, offering for sale and/or selling within the United States products and services that embody the inventions set forth in those patent claims.

The lawyers, witnesses, and I have referred to these Symantec products and services as the "accused products."

Symantec denies that its accused products infringe the Patents-in-Suit.  Symantec also contends that the asserted claims of the Patents-in-Suit are invalid because they are anticipated and/or rendered obvious by prior art publications, patents, and systems that existed at the time of the invention.

### 2.3. SUMMARY OF PATENT ISSUES

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.   You must decide the following issues:

1.        Whether Intellectual Ventures has proven by a preponderance of the evidence that Symantec directly infringes any of claim 7 of the '610 patent, claims 1, 7, 21, or 22 of the '142 patent, or claims 9, 16, or 22 of the '050 patent through its sales of the Accused Products.   Each claim of a patent is evaluated separately, and this issue is to be determined for each of the Accused Products individually.

2.        Whether Symantec has proven by clear and convincing evidence that claim 7 of the '610 patent, claims 1, 7, 21 or 22 of the '142 patent, or claims 9, 16, or 22 of the '050 patent are invalid due to anticipation or obviousness.   Each claim of a patent is evaluated separately.

3.        If you find that any one of the Asserted Claims is infringed by one or more of the Accused Products, and is not invalid, you must decide what damages for that Asserted Claim, if any, Intellectual Ventures has proven by a preponderance of the evidence.

### 3.   THE PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.

### 3.1. PATENT CLAIMS

I will now instruct you on the rules you must follow when deciding whether Intellectual Ventures has proven by a preponderance of the evidence that Symantec infringes the Asserted Claims of the Patents-in-Suit.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims involved here are claim 7 of the '610 patent, claims 1, 7, 21, and 22 of the '142 patent, and claims 9, 16, and 22 of the '050 patent.  I will refer to these claims collectively as the "Asserted Claims."

The claims of a patent are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  The text in the rest of the patent provides a description and/or examples of the invention and provides a context for the claims, but it is the claims that define the breadth of the patent's coverage.  The claims are intended to define, in words, the boundaries of the invention that constitute the patent owner's property rights.  Infringement is the act of trespassing on those rights.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  Each claim is a separate statement of the patented invention, and each of the Asserted Claims must be considered individually.

Infringement must be assessed on a product-by-product and claim-by-claim basis.  Each of the Accused Products must be individually compared with each and every claim being asserted against that product.  You should not compare the Accused Products to either the patent specification or any figures in the patent.  In making the comparison for any given claim, each of the limitations of that claim must be compared to the product to determine whether each of the limitations of that claim is present in the product.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  If an accused product does not meet even a single requirement of the claim, that product is not covered by the claim and so does not infringe the claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I will explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims and you must accept my definition of these words in the claims as correct.

It is your job to take these definitions and apply them to the issues you are deciding, such as infringement and validity.

19

### 3.2. CLAIM CONSTRUCTION FOR THE CASE

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of claim terms.  You must use the meaning that I give you for each claim term to make your decision as to whether the claim is infringed or invalid, and you must apply the same meaning for purposes of both your infringement and your invalidity analyses.  You must ignore any different definitions used by the witnesses or the attorneys.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement or non-infringement and validity or invalidity.  For a claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning.

I instruct you that the following claim terms have the following definitions:

**U.S. Patent No. 5,987,610**

| Term | Court's Construction |
|---|---|
| "routing a call between a calling party and a called party of a telephone network" | "transmitting a voice or data transmission between a party initiating a voice or data transmission and a party receiving a voice or data transmission" |
| "within the telephone network" | "in the voice or data network connecting the calling party and called party, exclusive of the networks and gateway nodes of the called party and calling party" |
| "identification code" | "a set of symbols that identify" |

**U.S. Patent No. 6,460,050**

| Term | Construction |
|---|---|
| "plurality of files on the Internet" | "plurality of files on a computer coupled to the Internet" |

20

| | |
|---|---|
| "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on the Internet to a server having a database" | "client agent generating digital content identifiers created using a mathematical algorithm for each of a plurality of files on a computer coupled to the Internet and outputting the digital content identifiers to a server having a database" |
| "data file(s)" | "a collection of information presented as a unit to a user" |
| "determining . . . whether each received content identifier matches a characteristic of other identifiers" | "determining . . . whether each received content identifier has the same characteristic as other content identifiers." |
| "file content identifier"<br>"file content ID"<br>"digital content identifier"<br>"digital content ID" | "a digital content identifier reflecting at least a portion of the content of a data file, but not constituting merely an excised portion of that data file" |
| "file content identifier generator agent(s)" | "software running on a computer that creates and transmits file content identifiers to a second tier system." |
| "an indication of the characteristic" (claim 9)<br><br>"identify the existence or absence of said characteristic" (claim 16)<br><br>"indicating the presence or absence of a characteristic" (claim 22) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" (claim 9)<br><br>"identify whether or not the message is of a certain type or classification" (claim 16)<br><br>"indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" (claim 22) |
| "digital content identifier created using a mathematical algorithm unique to the message content" | "a digital content identifier (defined above) created using a mathematical algorithm; the identifier being particular to the message content." |
| "characterizing the files on the server system based on said digital content identifiers received relative to other digital identifiers collected in the database" | "classifying the files on the server system by comparing their digital content identifiers to other digital identifiers collected in the database" |

**U.S. Patent No. 6,073,142**

| Term | Construction |
|---|---|

| "post office" | "an agent for receiving, storing, and distributing e-mail messages or data objects" |
|---|---|
| "non-persistently storing" | "temporarily storing" |
| "deferring delivery" | "delaying delivery" |
| "for review by an administrator" | "for manual evaluation by a human having responsibility for evaluating e-mail messages or data objects prior to delivery to any intended recipient" |
| "receipt mechanism" | "a mechanism for receiving" |
| "distribution mechanism"/"distribution engine" | "a mechanism for distribution" |
| "database of business rules"/ "business rules" | "storage of statements that each specify one or more antecedent condition(s) and the consequent action(s) to be applied when the specified antecedent condition(s) are satisfied; ultimately only a single consequence results for each business rule." |
| "[combines/combining] the email message with a new distribution list . . . and a rule history . . ." (claims 1, 21, 22) | "combining the e-mail message, a new distribution list, and a rule history, for delivery together, where a rule history identifies each of the [at least one] business rule(s) whose antecedent condition was satisfied by the e-mail message" |
| "persistently storing" (claims 7, 21, 22) | "storing for extended periods of time (for example, hours or days as opposed to seconds)" |
| "automatically reviewing the email message after a specified time interval to determine an action to be applied" (claim 22) | "computer determination of an action to be applied to the email message after a specified period of time" |
| "rule engine" | "a mechanism that applies the business rules, in order to determine a set of actions (one or more) to be applied" |

### 3.3. INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim sets forth all of the elements that must be met in order for a product or process to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1, 21, and 22 of the '142 patent and claims 9, 16, and 22 of the '050 patent are independent claims.

The two remaining Asserted Claims are dependent claims. A dependent claim does not itself recite all of the elements of the claim but refers to another claim or claims for some of its elements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the elements of the claims to which it refers. The dependent claim then adds its own additional elements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

In this case, the two dependent claims are claim 7 of the '610 patent and claim 7 of the '142 patent. Claim 7 of the '610 patent depends from claim 1 of the '610 patent. Claim 7 of the '142 patent depends from claim 1 of the '142 patent.

An accused product or process is only covered by a dependent claim if the accused product or process meets all the requirements of both the dependent claim and the claims to which the dependent claim refers.

### 3.4. OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others."  A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the Accused Products include each of the elements of a particular claim, the fact that the Accused Products might include additional elements does not avoid infringement of the claim.  However, every recited element in the claim must still be present in the Accused Products for you to find infringement

## 4.  PATENT INFRINGEMENT

### 4.1. PATENT INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not Symantec has infringed the Asserted Claims of the Patents-in-Suit.

Infringement is assessed on a claim-by-claim and product-by-product basis.  Therefore, there may be infringement as to one claim but no infringement as to another, or infringement by one product and not by another.  In this case, Intellectual Ventures alleges that Symantec literally and directly infringes one or more of the Asserted Claims of the Patents-in-Suit.

### 4.2. DIRECT INFRINGEMENT

To prove infringement, Intellectual Ventures must prove by a preponderance of the evidence that the particular Symantec Accused Product being considered includes every element or requirement as it appears in the particular Asserted Claim.  The presence of other elements beyond those claimed does not avoid infringement, as long as each and every claimed element is present in the Accused Product.

However, if an Accused Product omits any requirement recited in one of the Asserted Claims, then that product does not infringe that claim.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.

If you find that an independent claim has been infringed by an Accused Product, you must still decide, separately, whether the Accused Product meets the additional requirements of any claim that depends from the independent claim to determine whether the dependent claim has also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

Symantec may directly infringe the Patents-in-Suit without knowledge that what it is doing is an infringement of the Patents-in-Suit.  Intellectual Ventures is not required to prove that Symantec intended to infringe or knew of the Patents-in-Suit.  Symantec may also infringe even though in good faith it believed that what it was doing is not an infringement of any of the Patents-in-Suit. Further, Symantec may also infringe even if it independently developed the allegedly infringing technology.

Many of the Asserted Claims cover methods.  In particular, all of the Asserted Claims of the '050 patent and the '610 patent, and claims 21 and 22 of the '142 patent, are method claims. Offering a system or service does not itself infringe a method claim.  In order for a method claim

to be infringed, Intellectual Ventures must prove that each step of the claimed method is actually performed by Symantec, not merely that a system or service has been offered that is capable of performing the claimed method.  If even one step of the claimed method is performed by an entity other than Symantec, even if the entity is a Symantec customer, Symantec has not infringed the patent claim.

Intellectual Ventures contends that the following Symantec products directly infringe the following Asserted Claims of each of the patents in suit:

| Patent | Asserted Claim(s) | Symantec Accused Products |
|---|---|---|
| '610 Patent | 7 | Symantec MessageLabs Email Security.cloud (f/k/a MessageLabs Hosted Email Security)<br><br>Symantec MessageLabs Email Antivirus.cloud (f/k/a MessageLabs Hosted Email Antivirus) |
| '050 Patent | 9, 16, and 22 | Norton Internet Security<br>Norton AntiVirus<br>Norton 360<br>Norton One<br>Symantec Endpoint Protection 12.1 |

| '142 Patent | 1, 7, 21, and 22 | (a) Symantec Brightmail Products<br>1. Symantec Messaging Gateway v. 9.5, 10.0<br>2. Symantec Brightmail Gateway v. 7.7, 8.0, 9.0<br>3. Symantec Mail Security Appliance v. 4.0, 4.1, 5.0, 7.5, 7.6<br>4. Symantec Brightmail Message Filter v. 6.1, 6.2, 6.3<br>5. Symantec Mail Security for SMTP v. 5.0, 6.0, 7.5, 8.0, 8.1 (Unix and Windows Version)<br>6. Brightmail Anti Spam v. 6.0, 6.1, 6.2, 6.3<br><br>(b) Symantec Email.cloud products<br>1. Symantec Email AntiSpam.cloud<br>2. MessageLabs Email Anti-Spam<br>3. MessageLabs Email Content Control<br>4. MessageLabs Image Control<br>5. Symantec Hosted Email Security Anti-Spam<br>6. Symantec Hosted Email Security Content Control<br>7. Symantec Hosted Email Security Image Control<br>8. Symantec Email Content Control.cloud<br>9. Symantec Email Image Control.cloud |
| --- | --- | --- |

28

5.   **PATENT INVALIDITY**

Patent invalidity is a defense to patent infringement.  Even though the United States Patent and Trademark Office has allowed the claims of a patent, Symantec has the right to present evidence that the claims are invalid.  You have the ultimate responsibility for deciding whether or not the claims of the Asserted Patents are valid.  In this case, as to each of the Patents-in-Suit, the Patent and Trademark Office did not have available to it all of the prior art that has been presented to you.  In making your decision whether Symantec has met its burden as to the invalidity of a particular patent claim, you may consider that you have heard evidence about prior art references that the Patent and Trademark Office did not have an opportunity to evaluate before granting the patents.  It is your job to consider the evidence presented by the parties and determine independently whether or not Symantec has proven the claims of the Patents-in-Suit are invalid.

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious.  A patent cannot take away from the right of anyone who wants to use what was already known or would have been obvious to those of skill in the art at the time when the invention was made.

Symantec has challenged the validity of the Asserted Patents.  In making your determination as to invalidity, you should consider each claim separately.

## 5.1. PRESUMPTION OF VALIDITY

The law presumes that the Patent Office acted correctly in issuing the patent.  This presumption puts the burden of proving validity on the challenger, Symantec, by clear and convincing evidence.

In determining whether Symantec has met its burden, you may consider that you have heard evidence about prior art references that the PTO had no opportunity to evaluate before granting the patent.  You should evaluate whether the evidence before you is materially new, and if so, consider that fact when determining whether an invalidity defense has been proven by clear and convincing evidence.

### 5.2. ANTICIPATION

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles or other patents, before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

In order to prove that an invention is "anticipated," a party must prove by clear and convincing evidence that a single piece of prior art describes or discloses each and every element of an Asserted Patent.  A single prior art reference must also disclose those elements as arranged in the claim.  You may not combine two or more items of prior art to find anticipation.

 The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied so that someone of ordinary skill in the relevant field looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently or necessarily results from the practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

**5.3. OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described in the prior art before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art to which the claim invention pertains at the time the invention was made.

Symantec contends that each of the Asserted Claims is invalid for obviousness.  A patent claim is invalid if the claimed invention, as a whole, would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.   You must decide the scope and content of the prior art.

2.   You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

3.   You should consider any difference or differences between the prior art and the claim requirements.

I will provide more details on how you should make these factual determinations shortly.

You should also consider any of the following factors that you find have been shown by the evidence:

A.   Factors tending to show nonobviousness:

1.   commercial success of a product due to the merits of the claimed invention;

2.   a long-felt, but unsolved, need for the solution provided by the claimed

invention;

3.   unsuccessful attempts by others to find the solution provided by the claimed

invention;

4.   copying of the claimed invention by others;

5.   unexpected and superior results from the claimed invention;

6.   acceptance by others of the claimed invention as shown by praise from others

in the field of the invention or from the licensing of the claimed invention;

7.   disclosures in the prior art that criticize, discredit, or otherwise discourage the

claimed invention and would therefore tend to show that the invention was not

obvious; and

8.   other evidence tending to show nonobviousness.

You may consider the presence of any of the listed factors A.1-8 as an indication that the

claimed invention would not have been obvious at the time the claimed invention was made.

There must be a nexus, or connection, between the evidence showing any of these factors

and the claimed invention if this evidence is to be given weight by you in arriving at your

conclusion on the obviousness issue.  For example, if commercial success is due to advertising,

promotion, salesmanship or the like, or is due to features of the product other than those claimed

in the patents in suit, then any commercial success may have no relation to the issue of

obviousness.

B.      Factors tending to show obviousness

1.   independent invention of the claimed invention by others before or at about the

same time as the named inventor thought of it; and

2.   other evidence tending to show obviousness.

You may consider the presence of the listed factors B.1-2 as an indication that the claimed invention would have been obvious at such time.

Although you should consider any evidence of these factors, the relevance and importance of them to your decision on whether the claimed invention would have been obvious is up to you.  Further, you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

34

**5.4. OBVIOUSNESS – SCOPE AND CONTENT OF THE PRIOR ART**

In arriving at your decision on the issue of whether or not the claimed inventions were obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.

The prior art may include any of the following items if received into evidence:

1.      patents that issued either before the date of invention or more than one year before the earliest effective filing date of the Asserted Patent;

2.      publications having a date either before the date of invention or more than one year before the earliest effective filing date of the Asserted Patent;

3.      products and systems that were in public use or on sale in the United States either before the date of invention or more than one year before the patent application of the Asserted Patent was filed; and

4.      U.S. patents or published applications having a filing date prior to the date of invention of a particular patent.

### 5.5. OBVIOUSNESS – DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on previously known building blocks, and inventions are very often combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does, taking into account such factors as:

1.      whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

2.      whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.      whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.      whether the prior art teaches away from combining elements in the claimed invention;

5.      whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

6.      whether the change resulted more from design incentives or other market forces.

Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  Again, you must undertake this analysis separately for each claim that Symantec contends is obvious.

### 5.6. OBVIOUSNESS – LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  This person is presumed to know all the prior art that you have determined to be reasonably relevant.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

It is up to you to decide the level of ordinary skill in the field of the claimed inventions. Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

Intellectual Ventures contends that the Patents-in-Suit are addressed to a person with a Bachelor of Science degree, preferably in either computer engineering or computer science, with 3–5 years of experience developing computer software with an emphasis in network and email security.  Alternatively, a person of ordinary skill in the art would have significant industry experience in the field of network and email security, including development of computer software.

Symantec contends that a person of ordinary skill in the art would have had a Bachelor of Science degree in computer science or a related field (such as information management systems), and two years' experience in working in the computer networking and security area, or a Master's degree in computer security and a year of experience working in the computer networking and security area.

### 5.7. CONCEPTION

The date of an invention is presumed to be the filing date of the patent application.  The parties agree that the filing date of February 12, 1998 is the date of invention for the '610 patent. In this case, however, Intellectual Ventures contends that the inventions claimed in the '050 patent and the '142 patent are entitled to earlier invention dates.  In particular, Intellectual Ventures contends that claims 9, 16, and 22 of the '050 patent (filing date of December 22, 1999) are entitled to an invention date of November 13, 1998, that claims 1, and 7 of the '142 patent (filing date of June 23, 1997) are entitled to an invention date in January 1996, and that claims 21 and 22 of the '142 patent are entitled to an invention date of May 1996.

For Intellectual Ventures to be entitled to an earlier invention date, it must prove, by a preponderance of the evidence, that the invention was conceived earlier and thereafter the inventors were diligent in reducing the invention to practice.

"Conception" means the formation in the mind of an inventor of a definite and permanent idea of the complete and operative invention, such that, if the idea were communicated to a person of ordinary skill in the art, he or she would be able to make the invention without undue research or experimentation or the exercise of inventive skill.  This requirement does not mean that the inventor has to have a prototype built, or have actually explained the invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete and operative idea.  In other words, the testimony of an inventor is not sufficient, standing alone, to prove a conception date.  An inventor must provide independent, corroborating evidence in addition to his own oral testimony. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.  Conception must include every feature or limitation of the claimed invention.

In addition to proving an earlier conception date, Intellectual Ventures must also establish by a preponderance of the evidence that the inventors engaged in reasonably continuous activity to reduce the invention to practice.  As with proof of the conception date, there must be evidence in addition to the inventor's testimony that shows diligence.

## 6.  PATENT DAMAGES

### 6.1. PATENT DAMAGES GENERALLY

If you find that Symantec is liable for infringement of one or more of the asserted claims, by making, using, selling, or offering for sale any of its accused products, and you find the asserted claims valid, you must determine the amount of money damages to be awarded to Intellectual Ventures, if any. The amount of damages must be adequate to compensate Intellectual Ventures for the infringement. If you do not find patent infringement liability by Symantec's accused products, or you find the asserted claims invalid, you will not consider patent damages at all.

Intellectual Ventures has the burden of proving damages by a preponderance of the evidence and is entitled only to damages that it has proven with "reasonable certainty." On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Intellectual Ventures. On the other hand, Intellectual Ventures is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guesswork. You may base your evaluation of "reasonable certainty" on any evidence, including expert or opinion evidence.

The damages award should be based on sound economic proof.

## 6.2. REASONABLE ROYALTY

Intellectual Ventures is seeking damages in the amount of a reasonable royalty. A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations. You should also assume that both parties to that hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

### 6.3. *GEORGIA PACIFIC* FACTORS

In determining the value of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.     The royalties received by the patent owner at the time of the hypothetical negotiation for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.     The rates paid by Symantec for the use of other patents comparable to the patent in suit.

3.     The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.     The patent owner's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between Symantec and the patent owner at the time of the hypothetical negotiation, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.     The effect of selling the patented product in promoting sales of other products of Symantec; the existing value of the invention to the patent owner as a generator of

sales of his non-patented items at the time of the hypothetical negotiation; and the extent of such derivative or convoyed sales.

7.      The remaining life of the patents-in-suit and the terms of the license.

8.      The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.

9.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the patent owner at the time of the hypothetical negotiation; and the benefits to those who have used the invention.

11.     The extent to which Symantec has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as the patent owner at the time of the

hypothetical negotiation) and a licensee (such as Symantec) would have agreed

upon (at the time the infringement began) if both had been reasonably and

voluntarily trying to reach an agreement; that is, the amount which a prudent

licensee - who desired, as a business proposition, to obtain a license to

manufacture and sell a particular article embodying the patented invention -

would have been willing to pay as a royalty and yet be able to make a reasonable

profit and which amount would have been acceptable by a prudent patentee who

was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under

similar circumstances, take into consideration in negotiating the hypothetical

license.  This may include the availability of commercially acceptable,

noninfringing alternatives at the time of the hypothetical negotiation.

In order to infringe, every step of a method patent must be performed within the

United States.  Symantec contends it could have implemented a commercially-

acceptable noninfringing alternative that performs one step of the patents in suit

outside the United States.  Intellectual Ventures disagrees.

In order to be relevant to a damages calculation, the proposed alternative must be

acceptable to the accused infringer's customers and available to the accused

infringer at the time of the hypothetical negotiation.  The accused infringer's

proposed alternative cannot rely on speculation, and must have a sound economic

and factual basis.

No one of these factors is dispositive in every case, and you can and should consider the evidence that has been presented to you on any of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay and the patent holder would have been willing to accept.

A reasonable royalty can take the form of either a running royalty or a lump sum payment.  The Court takes no position as to which form is correct.

**6.4. ENTIRE MARKET VALUE RULE**

Intellectual Ventures is seeking damages for the '610 patent under what is called the "entire market value rule." Pursuant to this rule, a plaintiff may be awarded damages as a percentage of revenues or profits attributable to an entire multi-component product where the plaintiff establishes that it is the patented feature that drives the demand for the entire product. As you have heard evidence on revenues or profits from the entire market value of certain products, there are several things you must keep in mind when considering such evidence.

First, a reasonable royalty is typically made up of (1) a base and (2) a rate (or percentage) that is applied to that base. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. IV bears the burden to establish the entire value of a product as a marketable article is properly attributable to the patented feature.

Second, in order for you to assess damages based on the entire market value of the product, IV must have established that the patented feature drove the demand for the entire product. If IV does not establish the patented feature drove the demand for the entire product, you must apportion the royalty down to a reasonable estimate of the value of the patented feature.

### 6.5. USE OF SETTLEMENT AGREEMENTS

The damages experts for both parties in this case have referred to settlement agreements in connection with their opinions as to the reasonable royalties that would be owed to Intellectual Ventures if you find that Symantec has infringed a valid patent claim.  Each of these settlement agreements cover patents other than, or in addition to, the three patents-in-suit.

There are several things you must keep in mind when considering such evidence of settlement agreements.

First, where a settlement agreement covers patents other than, or in addition to, the patent under consideration, you should consider whether the party advocating the use of the settlement agreement has established that the scope of the rights conveyed in the settlement agreement is comparable in scope to the license that would result from the hypothetical negotiation concerning the patent under consideration.  If it is not, you should consider whether the party advocating the use of the settlement agreement has established that a portion of the consideration for that agreement can be attributed with reasonable certainty to the use of the technology protected by the patent under consideration.

Second, the license fees negotiated during the course of a lawsuit may be influenced by factors unrelated to the value of the patent or patents that are the subject of the settlement agreement.  Such factors may include a threat of high litigation costs that may be strongly influenced by a desire to avoid full litigation, as well as the threat of an injunction, enhanced damages for willful infringement, and future litigation.

Third, settlement agreements are negotiated on dates that are later than the date on which the alleged infringement related to that settlement agreement began.  Conversely, the negotiation assumed in the hypothetical negotiation is assumed to take place just before infringement begins.

Finally, Intellectual Ventures has the burden of proving damages by a preponderance of the evidence and is entitled only to damages that it has proven with reasonable certainty.

### 6.6. COMPARABILITY OF LICENSE AGREEMENTS

One of the factors you should consider in determining a reasonable royalty is whether there are agreements that are comparable to the license that would result from the hypothetical negotiation concerning a particular patent in suit.  Both parties have presented expert testimony to establish a reasonable royalty.  In attempting to establish a reasonable royalty, agreements relied on by the parties must be sufficiently comparable to the hypothetical license at issue in suit.

When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice.  The circumstances surrounding a comparable agreement, however, do not need to be identical to those surrounding the hypothetical negotiation because any reasonable royalty analysis necessarily involves an element of approximation and uncertainty.

You should exercise vigilance when considering past licenses to technologies other than the patent in suit.  Your evaluation of the comparability of a past license to the hypothetical license agreement the parties to this lawsuit would have negotiated should involve consideration of the comparability of the technology (in the past agreement as compared with the hypothetical agreement the parties here would have reached) as well as consideration of the comparability of the commercial terms and economic circumstances (in the past agreement as compared with the hypothetical agreement the parties here would have reached).  When considering past agreements and technologies other than the patent in suit, the party advocating a particular agreement must account for differences in the technologies and economic circumstances of the contracting parties.

With these principles in mind, I want to specifically discuss two license agreements involved in this case given their complexity.  First, you have heard evidence related to a software

supply agreement, rather than a patent license agreement, that a company named Trend Micro entered into with another company named Blue Coat Systems, Inc.  I will refer to this as the Trend/Blue Coat agreement.  Intellectual Ventures relies upon the Trend/Blue Coat agreement and contends it is sufficiently comparable to a patent license covering the '050 patent that it can serve as a basis for assessing damages.  Symantec disputes Intellectual Ventures' contentions and contends the Trend/Blue Coat agreement is not comparable.

You have also heard evidence related to a patent license agreement entered into between Invention Investment Fund I, L.P. and Intel Corporation dated September 28, 2012.  The Intel License Agreement provides Intel a portfolio license to multiple patents and patent applications, including the three patents-in-suit.  Intellectual Ventures contends that the Intel License Agreement is probative of the reasonable royalty that would be reached in a hypothetical negotiation for the patent claims being asserted in this case.  Symantec disagrees with Intellectual Ventures's contentions and contends the Intel License Agreement is not comparable.

In evaluating whether the Trend/Blue Coat agreement, Intel License Agreement, or any other agreement advanced by a party is comparable to the license that would result from the hypothetical negotiation concerning a particular patent in suit, the following factors may be considered:

1.      The date of the agreement;

2.      The type of agreement;

3.      The scope of the agreement, including that it may include more patents than are at issue in this action;

4.      Whether the agreement includes both accused and non-accused technology;

5.      The relationship between the parties to the agreement;

6.      The intended use of the technology; and

51

7.      Any other factor listed in 6.3.

## 7.  DELIBERATION AND VERDICT

### 7.1. INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No.1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**7.2. UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinions of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges -judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  Then each of you will sign and date the form.  You will then return to the courtroom and your verdict will be read in open Court by my deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 7.3. DUTY TO DELIBERATE

Now that all the evidence is in and after the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**7.4. SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case, or perform any research.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5. COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done before this trial or during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

57