IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-1067 (LPS) |
| | ) | |
| SYMANTEC CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF SYMANTEC CORPORATION'S
MOTION FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101**

OF COUNSEL:

LATHAM & WATKINS LLP

Dean G. Dunlavey
Joseph H. Lee
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 540-1235

Douglas E. Lumish
Jeffrey G. Homrig
Michelle P. Woodhouse
Brett Sandford
140 Scott Drive
Menlo Park, CA 94025-1008
(650) 328-4600

Neil A. Rubin
Kathy Yu
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Robert J. Gajarsa
Michael J. Gerardi
555 11th St., NW
Washington, DC 20004-1304
(202) 637-2200

April 2, 2015

MORRIS NICHOLS ARSHT & TUNNELL LLP

Jack B. Blumenfeld
Thomas C. Grimm
Karen Jacobs
Michael J. Flynn
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

# TABLE OF CONTENTS

**Page**

I.      Introduction ............................................................................................................... 1

II.     Argument ................................................................................................................... 2

        A.      The "Clear And Convincing Evidence" Standard Does Not Apply To
                Symantec's § 101 Defense ........................................................................... 2

        B.      IV Misstates The Law On Patent Eligibility ................................................ 2

                1.      IV's Articulation Of The "Abstract Idea" Test Is Inaccurate ........... 2

                2.      IV Conflates "Inventive Concept" Analysis With An Inquiry Into
                        "Preemption" ................................................................................... 5

                3.      Conventional Computer Functions And Devices Cannot Preserve
                        Patentability .................................................................................... 7

                4.      IV's Key Legal Precedents Do Not Support It ................................ 7

        C.      Under The Correct Legal Standard, No Asserted Claim Is Directed To
                Patent-Eligible Subject Matter .................................................................... 9

                1.      '142 Patent ...................................................................................... 9

                2.      '050 Patent .................................................................................... 11

                3.      '610 Patent .................................................................................... 12

        D.      The PTO's Guidance On Subject-Matter Eligibility Does Not Save IV's
                Claims ......................................................................................................... 14

        E.      Symantec's Position Is Consistent With The Amicus Brief Filed By BSA
                In The *McRO* Case ..................................................................................... 14

III.    Conclusion .............................................................................................................. 15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013) ................................................................................ 1, 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ............................................................................... *passim*

*Bilski v. Kappos*,
561 U.S. 593 (2010) ...................................................................................... 6, 13

*buySAFE Inc. v. Google, Inc.*,
765 F.3d 13502 (Fed. Cir. 2014) .................................................................. 2, 4-6

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*,
No. 2:13-cv-07245, 2014 WL 5661290 (C.D. Cal. Nov. 3, 2014) ...................... 2, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) ................................................................... *passim*

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) ...................................................................... 5

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ......................................................................... 5

*DDR Holdings, LLC v. Hotels.com*,
773 F.3d 1245 (Fed. Cir. 2014) ................................................................... *passim*

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ...................................................................... 3, 7

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ..................................................................... 5, 13

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012) ......................................................................... 5

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ........................................................................................... 7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ...................................................................................... 6

*Microsoft Corp. v. i4i Ltd. P'ship,*
    131 S. Ct. 2238 (2011) (Breyer, J., concurring) ...................................................................2

*Parker v. Flook,*
    437 U.S. 584 (1978) ........................................................................................................ 6-7

*Planet Bingo, LLC v. VKGS LLC,*
    576 F. App'x 1005 (Fed. Cir. 2014).............................................................................5, 13

*Smartflash LLC v. Apple, Inc.,*
    Nos. 6:13cv447 & 6:13cv448, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015).........................13

*SmartGene, Inc. v. Advanced Biological Labs., SA,*
    555 F. App'x 950 (Fed. Cir. 2014)..................................................................................11

*Ultramercial, Inc. v. Hulu, LLC,*
    722 F.3d 1335 (Fed. Cir. 2013)...................................................................................2, 4-5

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014).....................................................................................2, 11

*Walker Digital, LLC v. Google, Inc.,*
    No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014) ........................................3-4, 10

**Rules and Statutes**

Rule 52(c) .............................................................................................................................15

Defendant Symantec Corporation ("Symantec") respectfully submits this reply brief in support of its motion for judgment that all patent claims asserted by Intellectual Ventures I LLC ("IV") at trial are invalid for failure to claim patent-eligible subject matter.  (D.I. 698.)

## I.   INTRODUCTION

IV's opposition brief largely ignores the language of the challenged patent claims and the analysis of those claims presented in Symantec's Opening Brief (D.I. 699).  Instead, IV resorts to histrionics, accusing Symantec of "launch[ing] a broadside attack on *all* software patents" and a "sweeping indictment of software patentability."  (D.I. 722 at 1 (emphasis in original)).  When IV does discuss the claims, it improperly attempts to bolster them by trying to incorporate discussions and language that appear in the specifications but not the claims.  (*Id.* at 13-17.)  The specifications, however, are irrelevant to the section 101 inquiry.  *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341, 1345 (Fed. Cir. 2013) (regardless of whether the specification contains "detailed software implementation guidelines, the important inquiry for a § 101 analysis is to look at the claim.").

IV also shies away from addressing the numerous cases cited in Symantec's Opening Brief that provide guidance as to the proper application of the two-step *Alice* analysis.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  Instead, IV attempts to dispatch them with a wave of its hand.  IV's principal defense of its patents is to misinterpret the 2-1 majority opinion in *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014) and then re-characterize its patent claims as somehow analogous to those upheld in that case.  IV's strategy is unavailing.  Under the proper analysis, there is no question but that the asserted claims are invalid.

## II.    ARGUMENT

### A.    The "Clear And Convincing Evidence" Standard Does Not Apply To Symantec's § 101 Defense

IV asserts that Symantec must prove its § 101 defense by "clear and convincing evidence." (D.I. 722 at 2.)  But if a "question of patent validity turns on . . . legal questions," the "clear and convincing evidence" standard does not apply. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (Breyer, J., concurring).  Cases applying the "clear and convincing evidence" standard in light of the vacated opinion in *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), should not be followed.  The "Supreme Court has never mentioned the clear and convincing standard in its post-*i4i* § 101 decisions." *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-cv-07245, 2014 WL 5661290, at *2 n.6 (C.D. Cal. Nov. 3, 2014) [hereinafter *Cal Tech*].  No Federal Circuit decision issued since *Alice* has invoked the standard, while numerous decisions have invalidated patents under § 101 on the pleadings.  *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *buySAFE Inc. v. Google, Inc.*, 765 F.3d 1350, 1351–52 (Fed. Cir. 2014).  Regardless of the standard applied, Symantec's motion should be granted.

### B.    IV Misstates The Law On Patent Eligibility

#### 1.    IV's Articulation Of The "Abstract Idea" Test Is Inaccurate

The first step in a proper § 101 analysis is to determine whether or not the asserted claims are directed to a patent-ineligible "abstract idea." *Alice*, 134 S. Ct. at 2355.  IV accuses Symantec of "ignor[ing] claim elements[] and collaps[ing] the invention into an overbroad idea" in step one of the *Alice* framework in order to show that the patents embody "abstract ideas." (D.I. 722 at 14–15, 24.)  In particular, IV asserts that Symantec improperly removed the claims

2

from the computing context.  (*Id.* at 13–17.)  IV's arguments reflect a misunderstanding of the law.  Symantec identified the abstract idea behind each patent-in-suit, tracking how recent Supreme Court and Federal Circuit decisions have analyzed computer-directed claims under § 101.  It did so by analyzing claims in their "simplest form" in order to identify the "basic concept" at issue and determine whether that concept is abstract.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (quoting *Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010)).

The "basic concept" often excludes a computer because a computer is not inextricably related to the "basic concept."  For instance, in *Alice*, the Court examined "the abstract idea of intermediated settlement" separate from the computing context, and then considered whether the patent's "generic computer implementation" of that abstract idea was sufficient to confer patentability (it was not).  *Alice*, 134 S. Ct. at 2355, 2357.  And in *Walker Digital, LLC v. Google, Inc.*, No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014), this Court showed that claims were directed to an "abstract concept" by comparing the computer-related methods to "routine steps performed by headhunters" without computers.  2014 WL 4365245 at *6, *9. Likewise, Symantec's opening brief demonstrated that the patents-in-suit are directed to "basic concepts" that can be defined without reference to a computer, which is sufficient to show they satisfy the first part of the *Mayo* test.

Relying on *DDR Holdings*, IV argues that when a claim presents a computer-implemented means of processing data that itself is generated on or by a computer, it lacks a "pre-computer analog," and the claim is not directed to an abstract idea.  (D.I. 722 at 7–9.)  IV's position is tautological, cannot be reconciled with Supreme Court and Federal Circuit precedent, and would render every computer- or Internet-directed claim patent-eligible.  Under IV's logic, for example, the claims in *Alice* were patent eligible because no one conducted intermediated

settlement on computers prior to the introduction of computers (134 S. Ct. at 2355–57); the claims in *Ultramercial* were patent eligible because no one was exchanging free Internet content for advertising before the invention of the Internet (772 F.3d at 714–15); and the claims in *buySAFE* were valid because no one was securing transactions on the Internet before the invention of the Internet (765 F.3d at 1353–54).

IV also argues that the asserted claims are not directed to abstract ideas because, according to IV, the claims cannot be performed by human thought alone or through the use of pen and paper.  IV reasons that human beings cannot perform computer-related steps without a computer, such as sending or receiving an e-mail message, generating a hash, or describing the content of a computer file.  (D.I. 722 at 27–28.)

IV's factual premise is wrong for at least two of the patents-in-suit.  A person is perfectly capable of applying a distribution policy to incoming e-mail messages as described in the '142 patent, and a person is also capable of creating and matching "content identifiers" to determine characteristics as required by the '050 patent using simple algorithms covered by the claim language.  As set forth in Symantec's Opening Brief, the inventors expressly acknowledged this during their depositions.  (D.I. 699 at 14, 16–17.)  But even if IV's factual premise were correct, the Federal Circuit has already rejected the proposition that a claim is not drawn to an abstract idea if the steps of the claim cannot be performed in the human mind.  *See Content Extraction*, 776 F.3d at 1347 (fact that "human minds are unable to process and recognize the stream of bits output by a scanner" irrelevant to section 101 determination).

The goal of the "human thought" test is to look past the surface of a claim's computer implementation to pinpoint the "basic concept" at which it is directed and determine if that "basic concept" is an abstract idea, as this Court did in *Walker Digital*.  Only after that step is

completed can the analysis move to consideration of whether computer implementation of that "abstract idea" in the claims is sufficient to confer patentability.  IV cannot make that showing.

Finally, IV tries to distance itself from precedent by arguing that the "vast majority" of patents found ineligible in past cases were "drawn to 'abstract ideas' cover[ing] long-standing fundamental economic and business practices."  (D.I. 722 at 3–4, 17–18.)  That is wrong and, in any event, ignores numerous cases not directed at such practices.  Virtually every case IV cites in its brief for this point (*Ultramercial*, *Bancorp*, *Fort Properties*, *buySAFE*, *Planet Bingo*, and *CyberSource*) involved *computer-implemented* business methods.  These are more specific iterations of the sort of generic data processing claims invalidated in *Content Extraction*; *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014); and *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014).  Unlike *DDR Holdings*, the common theme among all claims invalidated in these cases is that they mask well-understood abstract concepts in the language of generic computer functions, such as "receiving," "recognizing," and "storing" data, and generic computer hardware.  If anything, the claims in *Ultramercial, Bancorp,* and similar cases are *less* objectionable under IV's novel § 101 theories because they preempt a narrower field of activity, but the Federal Circuit nonetheless deemed them invalid under § 101.  This Court should do likewise.

## 2.     IV Conflates "Inventive Concept" Analysis With An Inquiry Into "Preemption"

Where claims are directed to an "abstract idea," the second step of the *Alice* test is to determine if they "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application" after disregarding elements that are conventional and well-known.  134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

132 S. Ct. 1289, 1294, 1298 (2012)).  Instead of following this step, IV improperly tries to transform it into an independent "preemption" inquiry.

Although preemption—that is, the "concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity"—is a key rationale animating the Supreme Court's § 101 decisions (*Alice*, 134 S. Ct. at 2354, *quoting Mayo*, 132 S. Ct. at 1301), it is not a freestanding inquiry and there has never been a requirement that a patent claim must wholly preempt to be invalid.  *Alice*, 134 S. Ct. at 2354, 2358.  Concerns about preemption are addressed in the two-step *Alice* test, including the requirement to identify an "inventive concept" that ensures the patent is on something "significantly more than" an abstract idea.  For instance, "[t]he laws of nature at issue" in *Mayo* were "narrow laws that may have limited applications, but the patent claims that embody them nonetheless implicate[d]" § 101.  *Mayo*, 132 S. Ct. at 1302; *see also buySAFE*, 765 F.3d at 1353.  Moreover, "limiting an abstract idea to one field of use . . . [does] not make the concept patentable" even if this would reduce the claim's preemptive effect.  *Bilski*, 561 U.S. at 611-12 (discussing *Parker v. Flook*, 437 U.S. 584 (1978)).

Under IV's approach, no claim would be patent ineligible as long as one could show that it does not preempt all activity within a wider, arbitrarily defined field of endeavor.  These considerations, however, have never controlled the § 101 inquiry.  To the contrary, claims have been found to be patent ineligible despite there being alternative methods of performing the abstract idea.  Similarly, there is no merit to IV's contention that because Symantec presented evidence of potential non-infringing alternatives, the existence of such alternatives dictates a

finding of patent eligibility.  (D.I. 722 at 21, 23.)  IV's effort to convert *Alice*'s second step

inquiry into a "preemption" analysis is without merit.[1]

### 3. Conventional Computer Functions And Devices Cannot Preserve Patentability

IV once again oversimplifies and mischaracterizes the law when it asserts that patents

"need not disclose unconventional technology, specific algorithms, or specialized computer

components" in order to be patent-eligible.  (D.I. 772 at 25–27.)  *Alice* reaffirmed that "merely

requiring generic computer implementation fails to transform [an] abstract idea into a patent-

eligible invention."  *Alice*, 134 S. Ct. at 2352; *see also Flook*, 437 U.S. at 585–86, 594;

*Gottschalk v. Benson*, 409 U.S. 63, 64, 67 (1972).  There must be some inventive concept.

Claims that "recite [an abstract idea] as performed by a generic computer," without

explaining how "to improve the functioning of the computer itself" or "effect an improvement in

any other technology or technical field," do not pass muster under *Alice*'s second step.  *Alice*,

134 S. Ct. at 2359–60.  As Symantec showed in its Opening Brief, IV's claims do not "specify

how the computer hardware and database are specially programmed to perform the steps claimed

in the patent," which gives the public no assurance that its claims are "less abstract than the

[abstract idea] itself."  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (internal

quotation marks omitted).  IV's opposition is silent on these points.

### 4. IV's Key Legal Precedents Do Not Support It

*DDR Holdings* is consistent with Symantec's analysis.  In that case, a split Federal

Circuit panel held that asserted claims directed to the idea of harmonizing the "look and feel" of

a host website with the content of a third-party merchant's website were patent-eligible under

---

[1] It is somewhat ironic that IV, having steadfastly disparaged the viability of such alternatives throughout this case, now champions them.

*Alice* for two reasons.  First, "the claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" and having no pre-Internet analogue (*i.e.*, preventing website visitors from being "instantly transported" to another website).  773 F.3d at 1257.  Second, the claim limitations described a "specific" and "inventive" way that "interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  *Id.*at 1258.

IV's claims are not saved by *DDR Holdings*.  First, unlike the Internet-specific problem addressed in the *DDR Holdings* patent, and as discussed in Symantec's Opening Brief, the patents-in-suit have obvious pre-Internet, and even pre-computer, analogues.  The inventors of the '142 patent openly admitted that their claims represented an effort to apply the concept of a company mail room to e-mail.  (D.I. 699 at 8–11.)  The '050 patent mimics many pre-computer systems that use identification numbers to recognize and correlate data, such as identification of stolen cars using license plate numbers.  (*Id.* at 18–19.)  And the '610 patent attempts to claim the concept of screening data at a location other than the location of either the sender or the intended recipient, like a mail censorship regime.  (*Id.* at 25–27.)  *DDR Holdings* reiterated that such subject matter does *not* become patent eligible merely because it is implemented on a computer or performed over the Internet.  773 F.3d at 1256-58.

Second, IV's patent claims do not claim "specific" techniques or algorithms similar to the "manipulation" of Internet hyperlinks in *DDR Holdings*.  *Id.* at 1258.  All of the claims are directed to general techniques for carrying out the abstract ideas set forth in the claims.  The '142 patent is premised on "conventional" computer networking concepts.  (D.I. 699 at 14–17.)  The '050 patent depends on the generation of "content identifiers" through well-known techniques

such as hashing.  (*Id.* at 20–22.)  And all the '610 patent claims is the performance of a virus-scanning step "within the telephone network" (rather than the location of the sender or recipient) using any virus scanning methodology.  (*Id.* at 27–28.)  Moreover, IV's claims do not purport to provide any specific improvement on the basic computer functions or computer hardware recited therein.  For these reasons, *DDR Holdings* does not preserve the patentability of any asserted claim.

IV relies on inapposite district court cases to try to bolster its unsupportable view of the law of patent eligibility.  Chief among these is *Cal Tech*, where the district court confirmed the patentability of claims directed to the abstract idea of "encoding and decoding data for the purpose of achieving error correction."  *Cal Tech*, 2014 WL 5661290, at *14.  After a lengthy analysis of recent § 101 jurisprudence, the district court held these claims to be patent eligible because they were "tied to a specific error correction process" and were not "necessary or obvious tools for achieving error correction." *Id.* at *15.

Unlike the claims at issue in *Cal Tech*, IV's claims provide no "specific computing solution for a computing problem."  *Id.* at *14.  Rather, IV's claims propose generic solutions to longstanding, non-technical problems.  *Cal Tech*'s reasoning does not preserve the patentability of the claims at issue here.

### C.     Under The Correct Legal Standard, No Asserted Claim Is Directed To Patent-Eligible Subject Matter

#### 1.     '142 Patent

IV attempts to re-characterize the claims of the '142 patent as "consist[ing] of deferring delivery of electronic mail through application of business rules and use of a quarantine" in order to "filter[] malicious and unwanted email" in an attempt to avoid the conclusion that they are directed to an abstract idea.  (D.I. 722 at 8–10.)  But limiting the invention to "e-mail" is a

classic field-of-use limitation that cannot preserve patentability. *Alice*, 134 S. Ct. at 2357–59. For instance, the claims in *Content Extraction* would not have been patentable if they had been limited to parsing e-mail, rather than physical documents. Moreover, the asserted claims of the '142 patent do not mention a "quarantine" or the filtering of "malicious . . . email." Rather, they speak to the application of "business rules" to messages, a "basic concept" from the pre-computer world that is not patentable. *Walker Digital*, 2014 WL 4365245, at *5 (invalidating claims that did not "add[] anything meaningful to the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters").

IV also draws a number of distinctions between the patented claims and other systems in an attempt to show that the claims embody more than an abstract idea, but they are distinctions without a meaningful difference. First, IV argues that deferring a message instead of delivering it without interruption is an unconventional and non-abstract concept. (D.I. 722 at 14). That is not correct, but even if it were, it would not save the claims. The claims in *Alice* were invalid even though they contemplated the deferral of a transaction settlement between parties until the system confirmed "the parties have sufficient resources" to complete the transaction, rather than allowing "unabated" transactions to take place. *Alice*, 134 S. Ct. at 2356. Second, IV contends that there are "glaring" differences between IV's patents and Symantec's pre-computer examples. The differences IV highlights, however, are no more glaring than the differences between a human settlement intermediary and a computer settlement intermediary in *Alice*, or the differences between human and computer headhunting systems in *Walker Digital*.

Finally, IV argues that its claims embody an "inventive concept" in the form of limitations such as a "rule engine" and a "post office" that "shrink the preemptive footprint of the invention" and are "limitation-rich." (*Id.* at 20–21.) But as Symantec explained in its opening

brief, these nebulous elements have "no limiting structure, add nothing inventive, and address simple, well-known, and conventional functions that any computer could perform." (D.I. 699 at 12.) In past cases, similarly "limitation rich" language has not preserved patentability. *Ultramercial*, 772 F.3d at 712 (eleven-step method not patent eligible). For instance, in *Accenture*, the claims were directed to "a system for generating tasks to be performed in an insurance organization" that incorporated "a task engine that determines the next tasks to be completed." 728 F.3d at 1338. Despite the "detailed software implementation guidelines" in the specification, *id.* at 1343, and claims even more dense than those at issue here, *id.* at 1338–39, the Federal Circuit held that the "claims themselves only contain generalized software components arranged to implement an abstract concept on a computer" and invalidated the claims. *Id.* at 1345; *see also SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014) (finding claims invalid that "call[] on a computer to do nothing that is even arguably an advance in physical implementations of routine mental information-comparison and rule-application processes.")

## 2.    '050 Patent

IV asserts that Symantec's brief erroneously describes the "abstract idea" at the heart of the '050 patent by stating the idea without reference to a "computer data file," an "email message," or a "unique digital identifier." (D.I. 722 at 14–16.) As discussed earlier, Symantec has accurately followed the guidance of the Supreme Court and Federal Circuit by stating the concept embodied in the claims in its simplest form, stripped of its generic computing environment.

IV misapprehends the Federal Circuit's decision in *DDR Holdings* and argues that by invoking computer elements, the claim is "necessarily rooted in computer technology to problems specifically arising in the realm of computer networks." (*Id.* at 15.) If IV were correct,

no computer-directed claim could be declared ineligible.  It is also not the case that "pre-computer" equivalents of the '050 patent did not address similar problems to those the '050 patent's inventors contemplated.  The police use "content identifiers," such as license plates, because it would be laborious and inefficient to provide complete information to a dispatcher about a vehicle every time a car is suspected to be stolen, much as sending an entire file across a network to determine a characteristic of that file creates bandwidth issues.

IV's heavy reliance on "the ability of computers to generate unique file content identifiers, such as hashes," in support of an "inventive concept" (D.I. 722 at 21–23) also fails.  As this Court recognized in its claim construction order, the claims do not require hashing or other techniques with a "high degree of 'collision resistance.'"  (*Id.* at 21; *see also* D.I. 425 at 8.)  Any sort of "digital content identifier" algorithm could be used, and simply requiring the use of such an algorithm is not an inventive concept.  Moreover, even if the claims *did* require hashing, that would be insufficient because hashing is "one of the most basic functions of a computer."  *Alice*, 134 S. Ct. at 2359–60.  The patent acknowledges that hashing algorithms were well-known, conventional techniques when the application was filed (PX 1 3:65–4:14), as did Dr. McDaniel, (*See, e.g.*, Trial Tr. at 466:20–467:10 (Direct Testimony of Dr. McDaniel).)  Adding well-understood technologies to claims without describing any development or improvement in them is not sufficient to form an inventive concept.  *Content Extraction*, 776 F.3d at 1348–49.

### 3.    '610 Patent

IV's opposition focuses on the "virus scanning" limitation of the asserted claim from the '610 patent and the fact that computer viruses did not exist before computers.  (D.I. 722 at 16–17.)  The asserted claim, however, is not directed to an improvement in virus scanning, but merely where the scanning takes place.  One could just as well say that the problem of extracting digital information from hard copy documents using scanners did not exist before the

development of scanners (*Content Extraction*, 776 F.3d at 1345) or that the problem of creating a device profile for digital image processing devices did not exist before the development of digital image processing devices (*Digitech*, 758 F.3d at 1347).  Such considerations did not make claims in those cases patent-eligible.  In both cases, the Federal Circuit invalidated the claims because they "merely recite[d] the use of this existing . . . technology" and "[t]here is no 'inventive concept'" in "well-understood, routine, and conventional activities commonly used in industry." *Content Extraction*, 776 F.3d at 1348–49.  That rule should also hold true here.

The "inventive concept" argument for the '610 patent fares no better.  First, the "within the telephone network" language in the claim that IV relies upon is a classic "field of use" limitation that cannot preserve patentability.  *Bilski*, 561 U.S. at 611-12.  IV added that limitation during prosecution to overcome prior art and it is tangential to the abstract idea protected by the patent.  (D.I. 699 at 23–24.)  Second, the "routing a call" and "received within the telephone network" limitations in the claims do not limit their scope, either.  IV ignores the Court's constructions of these terms, which only require that a call be "transmitted" and that messages be "received in the voice or data network connecting the calling party and called party," respectively.  (D.I. 425 at 22–25.)  Finally, while IV rejects the comparison between the '610 patent and the patent-in-suit in *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014), it cannot dispute that the use of subscriptions or identifier numbers to control access to a system is non-inventive.  576 F. App'x at 1007–08; *see also Smartflash LLC v. Apple, Inc.*, Nos. 6:13cv447 & 6:13cv448, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015) ("conditioning and controlling access to data based on payment" is an abstract idea).

### D.   The PTO's Guidance On Subject-Matter Eligibility Does Not Save IV's Claims

IV's invocation of recent guidance issued by the Patent and Trademark Office ("PTO") regarding subject-matter eligibility (D.I. 722 at 11–12) also does not save the asserted claims. As an initial matter, the PTO's view of a single sample claim that it drafted obviously would not trump binding Supreme Court and Federal Circuit precedent.  Furthermore, the PTO's sample claim (Lahad Decl., Ex. 2, at 2) is "inextricably tied to computer technology and distinct from the types of concepts found by the courts to be abstract."  (*Id.* at 3.)  Unlike IV's claims, the PTO's claim is directed to the inner workings of a computer processor and it recites a series of specific steps that improve the functioning of the computer itself by "extracting," through a lengthy "file parsing" process, the "malicious code from [an] electronic communication." (Lahad Decl., Ex. 2, at 2.)

### E.   Symantec's Analysis Is Consistent With The Amicus Brief Filed By BSA In The *McRO* Case

IV's response also invokes an amicus brief filed by a trade group to which Symantec belongs, BSA | The Software Alliance ("BSA"), in support of patentability in a specific case. According to IV, this is proof that Symantec defends software patents as an "amicus" only to "completely abandon" its principles in order to argue to this Court that "no software is eligible" for patenting.  (D.I. 722 at 24–25.)  Neither assertion is correct.

First, imputing the BSA brief to Symantec, as if it were itself an amicus in the case or a signatory to the brief, is an overstatement.  The BSA is a distinct legal entity with many members whose policy views often diverge.  Symantec is not an amicus in the *McRO* case by virtue of BSA's brief any more than a member of the American Bar Association would be an amicus to a case in which the ABA filed a brief.  Second, Symantec has never asserted in this case, or elsewhere, that "no software is eligible" for protection.  To the contrary, Symantec has

14

addressed, in great detail, the specific claims at issue here and demonstrated that those claims

cover only abstract ideas and do not disclose any inventive concept.

## III.    CONCLUSION

For these reasons and the reasons given in Symantec's opening brief, Symantec

respectfully request that the Court grant its motion pursuant to Rule 52(c) and invalidate all

claims asserted by IV at trial.

OF COUNSEL:

Dean G. Dunlavey
Joseph H. Lee
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 540-1235

Douglas E. Lumish
Jeffrey G. Homrig
Michelle P. Woodhouse
Brett Sandford
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Neil A. Rubin
Kathy Yu
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Robert J. Gajarsa
Michael J. Gerardi
Latham & Watkins LLP
555 11th St., NW
Washington, DC 20004-1304
(202) 637-2200

April 2, 2015
9048627

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2015, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

April 2, 2015, upon the following in the manner indicated:

Joseph J. Farnan, III, Esquire                       *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Parker C. Folse, III, Esquire                        *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
*Attorneys for Plaintiff*

John P. Lahad, Esquire                               *VIA ELECTRONIC MAIL*
Weston O'Black, Esquire
Richard W. Hess, Esquire
Max L. Tribble, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 1500
Houston, TX  77002
*Attorneys for Plaintiff*

/s/ Karen Jacobs

_____

Karen Jacobs (#2881)