IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, :<br>　　　　　　　　　　　　　　　　　　: <br>　　　　　　Plaintiff, 　　　　　　　　: <br>　　　　　　　　　　　　　　　　　　: <br>　　v. 　　　　　　　　　　　　　　　: <br>　　　　　　　　　　　　　　　　　　: <br>SYMANTEC CORP., 　　　　　　　　　: <br>　　　　　　　　　　　　　　　　　　: <br>　　　　　　Defendant. 　　　　　　　: | C.A. No. 10-1067-LPS |

**MEMORANDUM ORDER**

At Wilmington this **10th** day of **March, 2016**:

Pending before the Court is Symantec Corp.'s ("Symantec" or "Defendant") Motion for Judgment as a Matter of Law ("JMOL") on Noninfringement, Invalidity, and Damages for U.S. Patent No. 5,987,610 ("the '610 patent") ("the Motion"). (D.I. 752)[1] The Court held a 10-day jury trial beginning on January 26, 2015, which (as pertinent here) resulted in a jury verdict of infringement and no invalidity of claim 7 of the '610 patent, for which the jury awarded Intellectual Ventures I LLC ("IV" or "Plaintiff") lump-sum damages of $8 million. (*See* Trial Transcript (D.I. 703, 705, 709, 711, 713, 715, 716, 717, 719, 721) (hereinafter "Tr."))[2]  Having

---

[1] On March 4, 2015, the Court advised the parties by letter of its then-present inclinations, which were to deny Symantec JMOL with respect to non-infringement and invalidity of the '610 patent, and uncertainty as to whether Symantec should be granted JMOL relating to damages awarded for infringement of the '610 patent. (*See* D.I. 691 at 2) ("I am not sure at this point whether there is sufficient evidence in the record to support the jury's finding that the features of the accused products covered by the '610 patent 'drove demand' for those products.")

[2] Three IV patents were asserted at trial. Following the jury verdict, the Court held that two of those patents (the '050 and '142) were invalid due to lack of patentable subject matter. (*See* D.I. 726, 727)

1

reviewed the parties' briefing on the Motion (D.I. 753, 757, 759) and heard oral argument on December 1, 2015 (D.I. 762) ("Hearing Tr."), **IT IS HEREBY ORDERED** that the Motion (D.I. 752) is **DENIED**.

1. Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation marks omitted). To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

2. In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *see also Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000)

("[T]he court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . [The Court must] disregard all evidence favorable to the moving party that the jury is not required to believe."). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. Rather, the court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Wright & Miller, *Federal Practice & Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

3. Symantec's motion is directed to all three aspects of the jury's findings with respect to the sole asserted claim, claim 7, of IV's '610 patent: infringement, invalidity, and damages. Claim 7 states:

> The virus screening method of claim 1 further comprising the step of determining that virus screening is to be applied to the call based upon at least one of an identification code of the calling party and an identification code of the called party.

('610 patent at col. 14 l. 66 - col. 15 l. 3)

In turn, independent claim 1 provides:

> A virus screening method comprising the steps of:
>
> routing a call between a calling party and a called party of a telephone network;
>
> receiving, within the telephone network, computer data from a first party selected from the group consisting of the calling party and the called party;
>
> detecting, within the telephone network, a virus in the computer data; and
>
> in response to detecting the virus, inhibiting communication of at least a portion of the computer data from the telephone network to a second party selected from the group consisting of the calling party and the called party.

(*Id.* at col. 14 ll. 34-37)

4. With respect to infringement, substantial evidence supports the jury's finding that Symantec performs all the steps of claim 7. First, regarding the routing step, "routing a call between a calling party and a called party of a telephone network" was construed to mean "transmitting a voice or data transmission between a party initiating a voice or data transmission and a party receiving a voice or data transmission." (D.I. 425 at 22-23; D.I. 426 at 3) There is substantial evidence that the called party is the party to whom an email is addressed, and is not Symantec's ".cloud" server (Tr. at 506-16, 523, 2104-05), and further that Symantec performs the routing step by enabling transmission to the ".cloud" servers from the calling party and transmitting screened emails to the called party from its ".cloud" servers (*id.* at 510-13, 516, 522-24; PX 673-004). Symantec's own documents explain that "[i]nbound and outbound email is directed by Symantec.cloud where it is scanned." (PX 683; *see also* PX 377; PX 224-037)

5. Second, substantial evidence supports a finding that Symantec performs claim 7's receiving and detecting steps "within the telephone network." "Within the telephone network" was construed to mean "in the voice or data network connecting the calling party and called party, exclusive of the networks and gateway nodes of the called party and calling party." (D.I. 425 at 24-25; D.I. 426 at 4) As already stated, IV presented substantial evidence that the called party is the party to whom an email is addressed, as opposed to Symantec's ".cloud" server. (Tr. at 506-16, 523, 2104-05) Thus, Symantec's ".cloud" server is not a "gateway node[] of the called party" and not excluded from the Court's construction of "within the telephone network." Importantly, Dr. McDaniel did *not* concede that all private networks are necessarily outside of the telephone network; rather, he testified that whether or not they are within the telephone network depends on whether the private network is connected to the internet or another network as opposed to "unroutable." (*Id.* at 700-07)

6. Third, substantial evidence supports a finding that Symantec performs claim 7's inhibiting step. The inhibiting step requires "in response to detecting the virus, inhibiting communication of at least a portion of the computer data from the telephone network to a second party selected from the group consisting of the calling party and the called party." Symantec's documents explain that "[e]mail containing a virus is blocked and quarantined for 30 days, and the recipient is notified" (PX 683), and further that "Symantec.cloud also quarantines suspect virus and spam email via Web administration for review to further minimize false positives" (PX 381-007). This is consistent with both routing and inhibiting.

7. Turning to invalidity, substantial evidence supports a finding that Symantec did not present clear and convincing evidence that claim 7 of the '610 patent is either anticipated or

5

obvious.[3] The jury was free to find that the '170 Trend Micro patent does not anticipate claim 7 because substantial evidence supports a finding that the '170 Trend Micro patent did not disclose the "detecting," "receiving," or "routing" steps of claim 7. At trial, Symantec argued that the "virus detection server" in the '170 patent detected viruses "within the telephone network." (*Id.* at 1786-88, 2391-92) However, Figure 1 and other parts of the '170 patent (*see* DTX 2293), as well as Dr. McDaniel's testimony (*see* Tr. at 2035-37, 2040, 2100), support a finding that the '170 patent's "virus detection server" does not detect viruses "within the telephone network," but instead detects viruses within a client's own network. Similarly, Figure 1 and other parts of the '170 patent's specification (*see* DTX 2293), as supported by Dr. McDaniel's testimony (*see* Tr. at 2034-36, 2040, 2100, 2104-05, 2035-37; *see also id.* at 2391-92), provide substantial evidence on which a reasonable jury could find that the '170 patent's "virus detection server" never receives a complete file of "computer data" but, rather, receives only a request for a "virus detection object" – and, therefore, never "rout[es] a call between a calling party and a called party."

8.      The jury was likewise free to find that the '803 Intel patent does not anticipate claim 7 because substantial evidence supports a finding that it did not disclose at least the steps of "detecting" or "determining" "within the telephone network."[4] (*See* DTX 2294; Tr. at 2031-

---

[3] "A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention. . . . Anticipation is a question of fact . . . . A patent is invalid for obviousness [under 35 U.S.C. § 103(a)] if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Obviousness is a legal conclusion based on underlying facts." *Purdue Pharma L.P. v. Epic Pharm., LLC*, 811 F.3d 1345, 1351 (Fed. Cir. 2016).

[4] As IV points out, the jury also may have found that Symantec failed to meet its burden to show that the '803 patent disclosed the "identification code" step. (*See* D.I. 757 at 18)

33, 2093-94; *see also id.* at 1830-31) The jury was free to accept Symantec's invitation to find such testimony inconsistent, but the jury was not obligated to do so.

9. As for obviousness, substantial evidence supports the jury's finding that Symantec failed to prove by clear and convincing evidence that the '002 Quantum Leap patent, in combination with either of the other prior art patents, renders claim 7 obvious. Even accepting that the '002 patent discloses the allegedly novel feature of the '610 patent (*see* DTX 2217; Tr. at 2095; *see also* Tr. at 518) – detecting a virus "within the telephone network"– the jury was free to reject Dr. Rubin's testimony that it would have been obvious for a person of ordinary skill in the art to combine the '002 patent with either of the other prior art patents (*see* Tr. at 1795-96), particularly in light of Dr. McDaniel's contrary testimony that such a person would ***not*** have had the motivation to combine these references, given the significant differences between the patents (*id..* at 2040-42). Furthermore, substantial evidence supports a finding that secondary considerations demonstrate the non-obviousness of claim 7. (*See id.* at 838-42, 517-18)

10. Finally, the Court addresses damages. Symantec argues that substantial evidence does not support use of the entire market value rule ("EMVR"). For the EMVR to apply, a plaintiff must show that the patented feature "drives," *LaserDynamics, Inc. v. Qanta Comp., Inc.* 694 F.3d 51, 63 (Fed. Cir. 2012), "creates," *VirnetX Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014), "is," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009), or "constitutes," *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986), the basis for demand for the accused product. IV presented substantial evidence that virus detection and prevention in the cloud – the infringing component in the accused products – drives the basis for consumer demand for Symantec's accused products. IV's damages expert, Mr. Wagner,

testified that the "innovation of the '610 patent drive[s] demand for the entire product for those multicomponent products accused of infringing the '610." (Tr. at 947; *see also id.* at 946) IV's infringement expert, Dr. McDaniel, testified about the importance of virus detection in the cloud (*see id.* at 517-18), testimony which was corroborated by Symantec's own documents (*see* PX 213-001). Both Mr. Wagner and Dr. McDaniel testified that Symantec would not have been able to offer the accused products without the technology of the '610 patent. (*See* Tr. at 1114, 2054) Symantec's fact witnesses testified that there was a trend in consumer demand toward virus screening in the cloud – as opposed to on local networks (*see id.* at 833-34, 836-39, 841, 1294-95, 1321-23) – and this, too, was corroborated by Symantec's own documents (*see* PX 381 at 004, 006; PX 372-002). Mr. Wagner's admission that he did not have any evidence that ***only*** virus detection and prevention in the cloud drove sales of the '610 Accused Products (Tr. 1111-13) does not alter the Court's conclusion. Even Symantec concedes that of the numerous Federal Circuit cases on which it relies, none unambiguously state that, in order for EMVR to apply, it is necessary that only one component drive demand for a multi-component product. (*See* Hearing Tr. at 35)[5] Nor does the fact that the jury awarded IV a lower amount of damages than Mr. Wagner opined was most appropriate provide a persuasive basis for granting JMOL on damages

---

[5] The Court instructed the jury that pursuant to the EMVR, "a plaintiff may be awarded damages as a percentage of revenues or profits attributable to an entire multi-component product where the plaintiff established that it is the patented feature that drives the demand for the entire product. . . . IV bears the burden to establish the entire value of a product as a marketable article is properly attributable to the patented feature. . . . IV must have established that the patented feature drove the demand for the entire product. If IV does not establish the patented feature drove the demand for the entire product, you must apportion the royalty down to a reasonable estimate of the value of the patented feature." (Tr. at 2263-64 (final instructions); *see also id.* at 945-46 (interim EMVR instruction))

to Symantec.[6]

11. Symantec argues that Mr. Wagner improperly relied on settlement agreements involving different parties and different patents as the basis for his reasonable royalty rate of 4%. The Court disagrees. Although settlement agreements are not typically the best evidence of a reasonable royalty rate, *see Rude v. Westcott*, 130 U.S. 152, 164 (1889); *LaserDymanics*, 694 F.3d at 77, 80; *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872-73 (Fed. Cir. 2010), here there was substantial evidence to support their use. Mr. Wagner and Dr. McDaniel presented substantial evidence that the settlement agreements "relate to the actual patents-in-suit" or are "drawn to related technology," *see VirnetX*, 767 F.3d at 1330, and thus are sufficiently comparable to be used as the basis for determining an appropriate royalty rate. (*See* Tr. at 527-28, 952-62) The jury was free to credit Mr. Wagner's thorough application of the *Georgia Pacific* factors to adjust the royalty rates used in these settlement agreements to arrive at their damages award. (*See* Tr. at 952-62)

---

[6] IV's expert, Mr. Wagner, opined that IV should be awarded damages of $8.6 million, while Symantec's expert, Mr. Bakewell, opined that IV should be awarded damages of no more than $500,000. (*See* Hrg. Tr. at 11-12) *See generally VirnetX*, 767 F.3d at 1328 ("[W]e are cognizant of the difficulty that patentees may face in assigning value to a feature that may not have ever been individually sold. However, we note that we have never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.").

**IT IS FURTHER ORDERED** that, no later than March 17, the parties shall submit a joint status report, attaching any proposed order they request be entered in light of today's decision.[7]

/s/ Leonard P. Stark
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[7] It does not appear from the docket that redacted versions of all sealed filings have been submitted. (*See, e.g.*, D.I. 757, 758) To the extent this has not been done, the parties shall file redacted versions of any sealed filing no later than March 17, 2016.