IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>SYMANTEC CORPORATION,<br><br>                    Defendant. | §<br>§<br>§<br>§<br>§<br>§   Case No. 10-cv-1067-LPS<br>§<br>§   JURY TRIAL DEMANDED<br>§<br>§<br>§<br>§<br>§ |

## **JOINT STATUS REPORT**

Pursuant to the Court's March 10, 2016 Memorandum Order (D.I. 764), the parties submit this joint status report to propose how the case should proceed to final judgment.

### I.      **Intellectual Ventures' Proposal**

Intellectual Ventures ("IV") proposes[1] that the Court enter Final Judgment in favor of IV based on the jury's verdict finding Symantec liable for infringing U.S. Patent No. 5,987,610 (the '610 Patent) and awarding $8,000,000 in damages. (D.I. 676). As the Court has indicated in previous orders, the Court should decide now the amount of pre- and post-judgment interest to which IV is entitled on the '610 patent damages award. IV described the appropriate calculation for pre- and post-judgment interest in its Motion for Entry of Judgment and for Prejudgment and Post-Judgment Interest, (D.I. 688 at 4–9), and has updated its calculations based on the passage

---

[1] On March 16, IV provided Symantec its proposed joint status report, comprised of the two paragraphs of Section I. At 1:30 p.m. ET today, Symantec provided IV with its portion of the report, which included five pages of text. Symantec is, of course, free to respond as it chooses, but IV believes this response unnecessarily repeats the parties' prior briefing. Out of an abundance of caution, IV supplemented its joint report portion with sections A, B and C in response to Symantec's lengthy submission.

1

of time and the rise in the prime rate. In addition, the Court should decide now that IV is the prevailing party and is entitled to costs, as discussed in IV's briefing supporting that same motion. (D.I. 688, 701, 732). A proposed form of Final Judgment with those updated calculations is attached as Exhibit A.[2]

The Court should reject Symantec's request to delay the award of pre- and post-judgment interest and costs after the Federal Circuit rules on all appeals. The Court has previously ordered that it will rule on all adjudicated issues in the case after it resolved the post-trial motions with respect to the '610 patent, which it has done. (D.I. 741 at 3) (Non-Final Judgment) ("The Court will address the issues of interest and costs following its decision on the post-trial motions."); (D.I. 760) (oral order that IV's Rule 58(d) Motion for Entry of Judgment and for Prejudgment and Post-judgment interest (D.I. 688) was "DENIED WITHOUT PREJUDICE to renew (after the Court rules on the pending Rule 50(b) motion, see D.I. 752) with respect to prejudgment and post-judgment interest for the '610 patent."). Indeed, Symantec previously *agreed* that the Court should decide interest and costs after it disposed of Symantec's post-trial motions for the '610 patent. (D.I. 732 at 8) ("Symantec continues to believe that it is premature for the Court to address prejudgment interest before post-trial motions with regard to the '610 patent have been decided . . . . Symantec continues to believe that it is premature for the Court to address the award of costs before post-trial motions have been decided."); (D.I. 735).

---

[2] IV will submit an updated supporting declaration from its damages expert, Mr. Wagner, that demonstrates the proper amount of pre-judgment interest in the proposed Final Judgment. For post-judgment interest, the proposed judgment is blank on the proper rate, since it is calculated by statute, timed to date of judgment.

### A. Symantec Provides No Justification for Its Timing Flip-Flop

For months, Symantec agreed with the Court that it should take up interest and costs issues after the Court ruled on Symantec's post-trial motions for judgment as a matter of law. But now that the Court has denied Symantec's motions, Symantec changed its mind.

Now, Symantec argues that the Court "should wait until all appeals conclude—or, at the very least, until the conclusion of the pending § 101 appeals at the Federal Circuit." According to Symantec *now,* a further delay "would follow the course set by the Court in the severed Trend case." Symantec ignores the difference between the Trend and Symantec cases. The Symantec case was tried to judgment. A jury reached a verdict, and the Court has resolved post-trial motions. Soon, the Court will issue a final appealable judgment.

In the Trend matter, on the other hand, the parties never reached trial. Indeed, it was *Trend* that sought prevailing party status after the § 101 ruling, indicating that it planned to file a § 285 exceptional case motion. The Court recognized that it would consider the Federal Circuit's § 101 ruling before addressing an exceptional case motion:

> I think I would have to consider the totality of circumstances in making an exceptional case evaluation. And, further, if the appeal does not go the way that Trend Micro wants, then I think that means the case will come back and it will be ready for trial on one or two patents, and I don't think anyone would argue at that point I should be assessing if the case is exceptional. We would have to go through the trial and whatever else happened thereafter before it would be appropriate for me to assess the 285 analysis.

(D.I. 739 at 12). Thus there is very good reason that the Court decided to treat Symantec and Trend differently.

In addition, by delaying a decision on interest and costs until some unknown point in the future determined by the Federal Circuit, Symantec's new position means another round of Federal Circuit appeals. Symantec will surely appeal the Court's final judgment awarding damages on the '610 patent. Under Symantec's plan, should the Federal Circuit affirm, there will

3

be a remand for a costs and interest award, and then another Federal Circuit appeal. This makes no sense when the issues have been briefed and the Court can send both issues to the Federal Circuit now.

Symantec charges that IV "instigated" piecemeal appeals, but that is entirely off base. Symantec and Trend spawned the first appeal by not filing § 101 motions challenging patent eligibility until *after* the Symantec trial ended. Symantec cannot blame IV for that timing. In any event, Symantec *asked* the Court to enter judgment on the Court's April 22, 2015 § 101 Order so that appeal could proceed. *See* D.I. 732 at 6. Symantec's inconsistent positions are the worst kind of whipsawing: First, it sought and received judgment invalidating the '142 and '050 patents. It then complains about piecemeal appeals, while simultaneously proposing another, separate trip to the Federal Circuit on interest and costs should that Court affirm the '610 patent damages judgment.

### B. Prime Rate Pre-Judgment Interest is a Conservative, Mainstream Award Followed by Numerous Courts in this District and Circuit.

Symantec's status report largely reprises the parties' briefing on the interest rate dispute. Symantec has still never identified a single case from this Court or the Third Circuit to justify limiting IV from a typical and conservative award of prejudgment interest at the prime rate. *See* D.I. 688 at 5–7 & n.3; D.I. 701 at 7–9.

Symantec argues that prejudgment interest must be calculated from the date IV filed its complaint. Symantec cites no law in support of this novel approach, but supplies lawyer-argument that this was the first day that IV could have demanded a royalty. The jury did not award a running royalty beginning at the date of filing. It awarded a lump sum, paid at the time that infringement began. Symantec *argued to the jury* that any damages should be in the form of

a lump sum covering the life of the patent. Indeed, *the jury selected Symantec's position* on the verdict form (D.I. 677 at 3):

> Amount: $ 5,000,000.00
>
> In the form of:
>
> ☑ a one-time, lump sum paid as of the date of the hypothetical negotiation covering all past and future infringing use (Symantec's position),

The jury determined that Symantec should have "paid as of the date of the hypothetical negotiation." Symantec has no basis limit to interest on that payment to the date IV filed the lawsuit, and as previously briefed to this Court, the law in this District is the opposite.[3]

### C. Symantec Cannot Simultaneously be an $8 million Judgment Debtor AND the Lawsuit's Prevailing Party.

Finally, Symantec repeats the same arguments about being a prevailing party—the same arguments Symantec made *before* losing its post-trial motions. As in its previous request, Symantec cites no law. But, it argues that despite being found liable for patent infringement and being ordered to pay at least $8 million to IV, Symantec won the lawsuit.

A litigant need not prevail on all issues—or win all the damages it seeks—to be a "prevailing party." Indeed, even an award of nominal damages will entitle that litigant to prevailing party status. *See Farrar v. Hobby,* 506 U.S. 103, 108 (1992) ("A judgment for damages *in any amount*, whether compensatory or nominal, modifies the defendant's behavior

---

[3] *See St. Clair Intellectual Prop. Consultants, Inc.*, 674 F. Supp. 2d at 560 (denying request to withhold prejudgment interest despite an eight-year delay before filing suit); *Tristrata Tech., Inc.*, 423 F. Supp. 2d at 471 (same, six-year delay); *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (same, four-year delay).

...

for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay. As a result, the Court of Appeals for the Fifth Circuit erred in holding that petitioners' nominal damages award failed to render them prevailing parties." (emphasis added)).

In fact, in the only case cited by Symantec below regarding costs to prevailing parties, IV is plainly the prevailing party because it is entitled to a judgment for damages. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014) ("Despite some success by Citrix in defending against some of SSL's claims, we agree with SSL that it is the prevailing party. SSL has a judgment for damages against Citrix.")

Symantec's argument that it should be a prevailing party entitled to costs on the '050 and '142 patents ignores the federal rules, and it conflates a prevailing party determination with the court's later decision about what costs are properly considered taxable. Under FRCP 54(d), there can be but one prevailing party. ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to *the prevailing party*.").

To the extent Symantec believes some costs should not be taxed, it can make that point when IV submits a bill of costs under the deadline established in the Local Rule. Symantec's arguments that it won regarding certain patents has nothing to do with a prevailing party decision.

## II. Symantec's Proposal

The Court should enter final judgment on all non-final matters in this case and leave the decisions on prevailing party, costs, and interest until after the Federal Circuit resolves the scope of any pertinent issues and considerations on appeal concerning not only the '610 patent but also U.S. Patent Nos. 6,460,050 and 6,073,142, both of which the Court found to be invalid under 35 U.S.C. § 101. That would be the most efficient path for both the Court and the parties. This is

the approach the Court took with respect to the issue of fees and costs in the Trend Micro case (*see* D.I. 739 at 11-12), and the same result should follow here.

However, if the Court is inclined to address the issues of costs at this time, Symantec should be declared the prevailing party and awarded its costs. *See* D.I. 693 at 18-19; D.I. 732 at 8-10. And if the Court were to address prejudgment interest, such interest should be awarded at the one-year T-Bill rate compounded annually, in accord with Symantec's positions previously presented to the Court. *See* D.I. 693-97; D.I. 732 at 8. Finally, if the Court were to conclude that prejudgment interest should be based on the prime interest rate, then supplemental briefing with updated expert declarations should be permitted to address the appropriate interest amount. Notably, IV's updated numbers are not accompanied by any specific calculations or attestation regarding how and when the changed prime rate affects the amount of interest it has requested. Symantec's positions are discussed in detail below.

### A. Costs And Interest Should Wait Until After Appeal

Over ninety percent of IV's $300 million damages claim was based on its claim that Symantec infringed the '050 patent. The jury found that Symantec did not infringe that patent. Subsequently the Court found that patent and the '142 patent to be invalid under 35 U.S.C. § 101, leaving IV with a damages award of less than three percent of what it had pursued. IV has appealed from these rulings. The Court declined to find the '610 patent invalid under § 101. Symantec has appealed that ruling. The oral argument on the respective appeals is scheduled for April 6, 2016, less than three weeks from today.

A decision on prevailing party, costs, and interest at this point would not be judicially efficient and should wait until all appeals conclude—or, at the very least, until the conclusion of the pending § 101 appeals at the Federal Circuit. That path would follow the course set by the Court in the severed Trend case, where the Court ruled that the issues of fees and costs would

only be decided after the § 101 appeal concludes. *See* D.I. 739 at 11-12. If the Court undertook efforts now to decide the disputed prevailing party and interest issues, those efforts would be for naught if the Federal Circuit reversed any aspect of the Court's rulings. Indeed, even if the Court were to address prejudgment interest now and side with IV, expert declarations would be necessary to address the change in the prime interest rate and determine the exact level of prejudgment interest to which IV believes it is entitled (unless the Court agrees, as Symantec believes it should, that IV is only entitled to prejudgment interest at the T-Bill rate compounded annually).

Simply put, the issue of costs and interest is premature at this juncture. IV claims that Symantec somehow "agreed" that now would be the time to address those issues. Once again, IV muddies the waters. Symantec stated only that determining costs and interests prior to resolution of post-trial motions would certainly be premature. That was not an agreement to have the issues decided immediately following disposition of post-trial motions and did not discount the efficiency of waiting until all appeals conclude before addressing the issues.

The prudence and efficiency of waiting has become even clearer given IV's actions and the timing of the upcoming Federal Circuit argument. After previous briefing on costs and interest, IV noticed an appeal of the § 101 issues here.[4] If the Federal Circuit disturbs any of the Court's decisions, the difference in timing between that § 101 appeal and any appeal of the '610 patent determinations creates the possibility of a post-trial quagmire for the Court and the parties, with the potential for multiple rounds of briefing, overlapping issues, and additional out-of-sync future appeals. There is simply no principled reason to continue the piecemeal approach to

---

[4] IV claims that Symantec requested an appealable final judgment on the § 101 issues before IV filed its notice of appeal. That is simply not true. *See* D.I. 732 (leaving '610 patent issues open for post-trial motions and thus, no final appealable judgment).

appeal that IV has instigated here and propagate further tentative rulings on issues that may be narrowed or eliminated by the Federal Circuit within just a few weeks or months. The prevailing party and interest determinations should wait until all appeals are finalized, or at minimum until the § 101 appeals conclude.

### B.     Any Prejudgment Interest Awarded Should Be At The One-Year T-Bill Rate

As discussed, Symantec believes it is premature for the Court to address prejudgment interest at this time. If the Court is inclined to address the issue now, however, any interest awarded should be consistent with Symantec's positions previously presented to the Court (i.e., prejudgment interest at the one-year T-Bill rate, compounded annually). *See* D.I. 693-97. As shown in the declaration of Symantec's expert attached as Exhibit B, that amount would total $85,138 through March 17, 2016, and $126 per day thereafter until entry of final judgment, when properly calculated from the date of filing the complaint here—which was the first day IV demanded a royalty and thus the first day from which IV could have had suffered lost monetary use of an unpaid royalty.[5]

While IV agrees that post-judgment interest should accrue at the T-Bill rate, it claims that any interest prior to final judgment should accrue at the prime rate. But, as Symantec explained in its briefing, *see id.*, there is no reasoned basis for applying a different interest rate here pre- and post-judgment—IV's economic position will not change in any way based on the date the Court enters judgment. That dividing point between prejudgment and post-judgment interest in

---

[5] Even if the Court were to agree with IV to impose prejudgment interest at the prime interest rate, any such interest should run only from the day IV filed its complaint here (just as with interest at the T-Bill rate). A party cannot have suffered forgone monetary use of an unpaid royalty amount until it actually requests the royalty be paid. Here, there were no pre-suit demands made by IV for claim 7 of the '610 patent. Accordingly, no prejudgment interest in this case should accrue prior to the filing of the complaint because IV could not have lost use of money it never requested. Additional updated expert declarations would be necessary to address that cutoff if the Court determines that prejudgment interest is appropriate at the prime rate.

this case is completely arbitrary, and IV has failed to present any reason to find differently. *See* D.I. 693 at 12-14. Indeed, IV claims that the "prime rate" is directed to compensating a "*commercial bank*" for not only "opportunity costs" but "*default risk*" associated with a "loan"—but IV is *not a commercial bank*, the hypothetical royalty rate is *not a loan*, and there is no "default risk" here. *See, e.g.*, D.I. 693 at 12-18; *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 134 (D.N.J. 2007); *Laitram Corp. v NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (finding that the T-Bill rate is appropriate to compensate for any theoretical—but unproven—lost use of unpaid hypothetical royalty damages when "there [is] no evidence that [a patentee] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the] infringement"); *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 789 (Fed. Cir. 1990) (upholding district court finding that, absent proof of loss or other mitigating factors, the "Treasury Bill represents a benchmark as the shortest term, risk-free investment available to ordinary investors and is a proper basis upon which to compensate [a patentee] for the foregone use of the money.").

      C.    **Symantec Is The Prevailing Party Entitled To Costs**

As discussed, Symantec believes it is premature for the Court to address costs and the prevailing party question at this time. If the Court is inclined to decide the issue now however, the Court should award costs to Symantec, as it is the prevailing party here. *See* D.I. 732 at 8-10; D.I. 693 at 18-19; Fed. R. Civ. P. 54(d).

IV originally asserted *four* patents and *dozens* of claims against Symantec. But its case has now been reduced to a single surviving claim in a single patent. At trial, IV sought a $300 million judgment, just for the alleged infringement claimed to have occurred prior to October 2014, and before any consideration of interest. But IV will be awarded (at this juncture)

*less than 3%* of that amount. D.I. 741. Conversely, Symantec succeeded in invalidating all of the asserted claims in the '050 and '142 patents and forced IV to entirely abandon its infringement allegations for the '155 patent (D.I. 616, 617), consistent with its counterclaims of invalidity and non-infringement. *See* D.I. 23. Accordingly, considering the overall objectives of the litigation here, there can be no reasonable dispute that Symantec, as counterclaimant, is the prevailing party in this suit, irrespective of the fact that it did not request or obtain monetary relief. *See, e.g.*, D.I. 732 at 8-10; D.I. 693 at 18-19.

Furthermore, even if the Court were to find that IV is the prevailing party, IV has impermissibly requested to recover "all costs in this case." Costs should only be awarded to a party in connection with the claims on which it prevailed. *See SSL Services, LLC v. Citrix Systems, Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014). Thus, at most, IV would be entitled only to costs related to claim 7 of the '610 patent—nothing more. But since Symantec clearly prevailed here on the '050 and '142 patents, it should be entitled to recover all of its taxable costs as to those patents (the parties agreed to bear their own costs for the '155 patent).

| Dated: March 17, 2016 | Respectfully submitted, |
|---|---|
| FARNAN LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Brian E. Farnan* | */s/ Karen Jacobs* |
| Brian E. Farnan (Bar No. 4089) | Jack B. Blumenfeld (Bar No. 1014) |
| 919 N. Market Street, 12th Floor | Thomas C. Grimm (Bar No. 1098) |
| Wilmington, DE 19801 | Karen Jacobs (Bar No. 2881) |
| (302) 777-0300 | 1201 North Market Street |
| bfarnan@farnanlaw.com | P.O. Box 1347 |
| | Wilmington, DE 19899 |
| *Attorneys for Plaintiff Intellectual Ventures I, LLC* | (302) 658-9200 |
| | jblumenfeld@mnat.com |
| | tgrimm@mnat.com |
| | kjacobs@mnat.com |
| | *Attorneys for Defendant Symantec Corporation* |